COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
BETHANY C. LOBO (248109) (blobo@cooley.com)
NATHANIEL R. COOPER (262098) (ncooper@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

COOLEY LLP
MARK F. LAMBERT (197410) (mlambert@cooley.com)
ANGELA L. DUNNING (212047) (adunning@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

Attorneys for Defendants
PALMER LUCKEY and OCULUS VR, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>PALMER LUCKEY & OCULUS VR, INC.,<br><br>Defendants. | Case No.  15-cv-02281 (WHA)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          October 1, 2015<br>Time:          8:00 a.m.<br>Courtroom:  8, 19th Floor<br>Judge:         Hon. William H. Alsup<br>Trial Date:   Not Yet Set<br><br>**COMPLAINT FILED:** MAY 20, 2015 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................. 1

STATEMENT OF RELIEF SOUGHT .......................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

I.      INTRODUCTION ........................................................................................................... 2

II.     RELEVANT FACTS AND ALLEGATIONS .................................................................. 3

        A.      The Parties to this Lawsuit ................................................................................. 3

        B.      The Seidl/Luckey Contract ................................................................................. 4

        C.      Seidl and Luckey's Performance under the Seidl/Luckey Contract .................. 6

        D.      Summary of TRT's Claims ................................................................................. 6

III.    LEGAL STANDARDS .................................................................................................... 6

        A.      Dismissal for Lack of Standing (Rule 12(b)(1)) ............................................... 6

        B.      Dismissal for Failure to State a Claim (Rule 12(b)(6)) ..................................... 7

IV.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING .............. 8

V.      THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A
        CLAIM .......................................................................................................................... 11

        A.      TRT Cannot State a Claim for Breach of Contract (Count I) ........................... 11

                1.      Because TRT is not a party to the Seidl/Luckey Contract, it cannot
                        plead the first, second or fourth elements of a breach of contract
                        claim ...................................................................................................... 11

                2.      TRT fails to adequately plead any breach by Luckey ............................ 12

                        a.      TRT fails to allege facts to support a breach of the
                                Contract's confidentiality provisions ......................................... 13

                        b.      Any claim for breach of the Seidl/Luckey Contract's
                                "Exclusivity" provision fails because that provision is both
                                inapplicable and void ................................................................. 14

        B.      TRT Fails To State a Claim for Breach of the Implied Covenant of Good
                Faith and Fair Dealing (Count II) ..................................................................... 15

        C.      TRT Fails To State a Claim for Conversion (Count III) ................................... 16

                1.      TRT fails to allege that it owns a protectable property interest ............... 16

                2.      TRT fails to allege that it was dispossessed of any property ................... 17

        D.      TRT Fails To State a Claim for Constructive Fraud (Count IV) ....................... 18

                1.      TRT fails to plead a confidential relationship with Luckey.................... 18

                2.      TRT fails to plead a breach of the confidential relationship, reliance
                        or damages with the particularity required by Rule 9(b) ....................... 19

                3.      TRT fails to allege any facts to support a constructive fraud claim
                        against Oculus ....................................................................................... 20

**TABLE OF CONTENTS**
**(continued)**

Page

E.   TRT's Conversion and Constructive Fraud Claims Are Superseded by
     California's Uniform Trade Secrets Act ................................................................ 20

     1.   TRT's conversion claim is preempted by CUTSA to the extent it is
          based on alleged misuse of confidential information............................... 22

     2.   TRT's constructive fraud claim is also preempted by CUTSA to the
          extent it is based on Defendants' alleged use of TRT's confidential
          information ............................................................................................. 23

VI.  CONCLUSION ............................................................................................................ 24

Cooley LLP
Attorneys At Law
Palo Alto

ii.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Marine Corp. v. Blue Shield of Cal.*,
  No. C 11-00636, 2011 U.S. Dist. LEXIS 40452 (N.D. Cal. Apr. 13, 2011) ............................16

*Ambers v. Wells Fargo Bank, N.A.*,
  No. 13-cv-03940, 2014 U.S. Dist. LEXIS 28291 (N.D. Cal. Mar. 3, 2014)............................11

*Amc Tech. v. Cisco Sys.*,
  No. 11-cv-03403 PSG, 2012 U.S. Dist. LEXIS 6487 (N.D. Cal. Jan. 20, 2012)....................13

*Arrieta v. County of Kern*,
  No. 1:14-cv-00400, 2014 U.S. Dist. LEXIS 84339 (E.D. Cal. June 18, 2014) ........................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................8, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................7, 13, 18

*Brockington v. J.P. Morgan Chase Bank, N.A.*,
  No. C-08-05795 RMW, 2009 U.S. Dist. LEXIS 56622 (N.D. Cal. July 1, 2009)....................11

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990)..........................................................................................15, 16

*Carranza v. GEICO Gen. Ins. Co.*,
  No. 3:13-cv-1932-HZ, 2014 U.S. Dist. LEXIS 170621 (D. Or. Dec. 9, 2014) ...................9, 10

*Castro v. JPMorgan Chase Bank, N.A.*,
  No. 14-cv-01539 NC, 2014 U.S. Dist. LEXIS 89862 (N.D. Cal. June 30, 2014) ...................15

*Cetacean Cmty. v. Bush*,
  386 F.3d 1169 (9th Cir. 2004)..............................................................................................6, 7

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010)...................................................................................................7

*Conder v. Home Sav. of Am.*,
  680 F. Supp. 2d 1168 (C.D. Cal. 2010)............................................................................11, 12

*Consul, Ltd. v. Solide Enters., Inc.*,
  802 F.2d 1143 (9th Cir. 1986)...................................................................................................9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010)...............................................................................................4, 8

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

**DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)**

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Dominion Assets LLC v. Masimo Corp.*,
 No. 12-cv-2773, 2014 U.S. Dist. LEXIS 88285 (N.D. Cal. June 27, 2014) ............................7

*Dowell v. Biosense Webster, Inc.*,
 179 Cal. App. 4th 564 (2009) ................................................................................................15

*EduMoz, LLC v. Republic of Mozambique*,
 968 F. Supp. 2d 1041 (C.D. Cal. 2013) ................................................................................11

*Edwards v. Arthur Andersen LLP*,
 44 Cal. 4th 937 (2008) ...................................................................................................11, 15

*Farhang v. Indian Institute of Technology*,
 No. C-08-02658, 2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1, 2010) .......................23, 24

*Fortaleza v. PNC Fin. Servs. Group, Inc.*,
 642 F. Supp. 2d 1012 (N.D. Cal. 2009) ................................................................................17

*G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., Inc.*,
 958 F.2d 896 (9th Cir. 1992) ................................................................................................16

*Gautier v. Gen. Tel. Co.*,
 234 Cal. App. 2d 302 (1965) ................................................................................................11

*Hatchwell v. Blue Shield of Cal.*,
 198 Cal. App. 3d 1027 (1988) ................................................................................................9

*Hurtado v. Super. Ct.*,
 11 Cal. 3d 574 (1974) .............................................................................................................9

*Igra v. Seidl*,
 No. 14-1-0699 (2) (Haw. Cir. Ct. Dec. 5, 2014) ....................................................................3

*Jobscience, Inc. v. CVPartners, Inc.*,
 No. C 13-04519, 2014 U.S. Dist. LEXIS 26371 (N.D. Cal. Feb. 28, 2014) ..........................18

*K.C. Multimedia, Inc. v. Bank of America Tech & Ops, Inc.*,
 171 Cal. App. 4th 939 (2009) ..........................................................................................21, 24

*Karo v. San Diego Symphony Orchestra Ass'n*,
 762 F.2d 819 (9th Cir. 1985) ..................................................................................................9

*Kidron v. Movie Acquisition Corp.*,
 40 Cal. App. 4th 1571 (1995) ..............................................................................................20

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.

*DEFENDANTS' MOTION TO DISMISS COMPLAINT*
*(CASE NO. 15-CV-02281 WHA)*

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kirst v. Silna*,
   103 Cal. App. 3d 759 (1980)..............................................................................9

*Kolani v. Gluska*,
   64 Cal. App. 4th 402 (1998).............................................................................15

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003)....................................................................16, 17

*Kruso v. Int'l Tel. & Tel. Corp.*,
   872 F.2d 1416 (9th Cir. 1989)............................................................................8

*Lifeline Food Co. v. Gilman Cheese Corp.*,
   No. 5:15-cv-00034, 2015 U.S. Dist. LEXIS 64155 (N.D. Cal. May 15, 2015).......................22

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................................12

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...........................................................................................7

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions*,
   No. 07-cv-912, 2007 U.S. Dist. LEXIS 77132 (S.D. Cal. Oct. 16, 2007) ..............................13

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ...............................................................22

*Meyer v. Wells Fargo Bank*,
   No. C 13-3727, 2014 U.S. Dist. LEXIS 21368 (N.D. Cal. Feb. 19, 2014)....................8, 18, 19

*MobiApps, Inc. v. Quake Global, Inc.*,
   No. 06cv1745, 2007 U.S. Dist. LEXIS 34681 (S.D. Cal. May 9, 2007) ................................19

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003).................................................................20

*Novelposter v. Javitch Canfield Grp.*,
   No. 13-cv-05186, 2014 U.S. Dist. LEXIS 156268 (N.D. Cal. Nov. 4, 2014) ..........8, 10, 11, 15

*Openwave Sys. v. Myriad Fr. S.A.S.*,
   No. C 10-2805 WHA, 2011 U.S. Dist. LEXIS 69797 (N.D. Cal. June 29, 2011)....................16

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012)...............................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Robert Half Int'l, Inc. v. Ainsworth*,
    68 F. Supp. 3d 1178, 1184–86 (S.D. Cal. 2014) ....................................................15

*Rovince Int'l Corp. v. Preston*,
    No. 13-3527, 2013 U.S. Dist. LEXIS 145624, at *14 (E.D. Cal. 2013) ..................................23

*Savage v. Glendale Union High Sch. Dist. No. 205*,
    343 F.3d 1036 (9th Cir. 2003)..................................................................7

*Schulz v. Cisco WebEx, LLC*,
    No. 13-cv-04987, 2014 U.S. Dist. LEXIS 69885 (N.D. Cal. May 20, 2014) ........................11

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010)..........................................................21, 22, 23

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ..........................................................................6, 7

*Sunpower Corp. v. SolarCity Corp.*,
    No. 12-CV-00694, 2012 U.S. Dist. LEXIS 176284 (N.D. Cal. Dec. 11, 2012) ...........21, 22, 23

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)...................................................................8

*Swinerton Builders v. Am. Home Assur. Co.*,
    No. C-12-6047 EMC, 2013 U.S. Dist. LEXIS 36352 (N.D. Cal. Mar. 15, 2013) ....................12

*Tessera, Inc. v. UTAC (Taiwan) Corp.*,
    No. 10-cv-04335, 2012 U.S. Dist. LEXIS 43164 (N.D. Cal. Mar. 28, 2012)..........................14

*Third Story Music, Inc. v. Waits*,
    41 Cal. App. 4th 798 (1995)....................................................................16

*Travelers Cas. & Sur. Co. v. Amoroso*,
    No. C 03-5746 PJH, 2004 U.S. Dist. LEXIS 17604 (N.D. Cal. Aug. 24, 2004) ....................13

*Untalan v. Alliance Bancorp*,
    No. 11-422, 2011 U.S. Dist. LEXIS 114637, at *13–15 (D. Haw. Oct. 4, 2011)....................10

*Vess v. Ciba-Geigy Corp., USA*,
    317 F.3d 1097 (9th Cir. 2003)...............................................................8, 19

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003)...............................................................7, 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

vi.

*DEFENDANTS' MOTION TO DISMISS COMPLAINT*
*(CASE NO. 15-CV-02281 WHA)*

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Wayne Merritt Motor Co. v. N.H. Ins. Co.*,
  No. 11-cv-1762, 2011 U.S. Dist. LEXIS 122320 (N.D. Cal. Oct. 21, 2011)............................19

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000)....................................................................................................7

*White v. SSA*,
  No. 14-cv-05604, 2015 U.S. Dist. LEXIS 82193 (N.D. Cal. June 24, 2015)...........................18

**Statutes**

California Civil Code
  § 1559....................................................................................................................................9
  § 3426.1.........................................................................................................................20, 21
  § 3426.3.................................................................................................................................21
  § 3426.7.................................................................................................................................21

California Business & Professions Code
  § 16600......................................................................................................................2, 14, 15
  § 16601.................................................................................................................................15
  § 16602.................................................................................................................................15
  § 16602.5..............................................................................................................................15

California Code of Civil Procedure
  § 457......................................................................................................................................12

California Uniform Trade Secret Act.......................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure
  8....................................................................................................................................13, 20
  9(b) ...............................................................................................................................*passim*
  12(b)(1) .........................................................................................................................*passim*
  12(b)(6) .........................................................................................................................*passim*

U.S. Constitution, Article III..................................................................................................*passim*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

vii.

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**
**(CASE NO. 15-CV-02281 WHA)**

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2015 at 8:00 a.m., or as soon thereafter as this motion may be heard in Courtroom 8, 19th Floor, of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, defendants Palmer Luckey and Oculus VR, LLC ("OculusVR") will and hereby do move, under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), to dismiss the Complaint filed by plaintiff Total Recall Technologies ("TRT") on May 20, 2015.  This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; Declarations of Palmer Luckey ("Luckey Decl.") and Mark F. Lambert ("Lambert Decl."); the pleadings and papers on file in this matter; and such other matters as may be presented to the Court at the hearing.

## STATEMENT OF RELIEF SOUGHT

Defendants seek dismissal of the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Rules") for lack of standing and failure to state a claim.

## STATEMENT OF ISSUES TO BE DECIDED

**1.**   Whether the Complaint should be dismissed for lack of subject matter jurisdiction on the ground that TRT lacks Article III standing to pursue claims arising out of an alleged written contract to which it is not a party or designated third party beneficiary.

**2.**   Whether TRT's breach of contract claim should be dismissed for failure to state a claim upon which relief may be granted.

**3.**   Whether TRT's claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of its breach of contract claim.

**4.**   Whether TRT fails to state a conversion claim where it has not alleged a protectable property interest of which it was wrongfully dispossessed.

**5.**   Whether TRT fails to state a constructive fraud claim where it has not alleged a confidential relationship with either Defendant or pleaded its claim with Rule 9(b) particularity.

**6.**   Whether TRT's conversion and constructive fraud claims are superseded in whole or in part by the California Uniform Trade Secret Act ("CUTSA").

MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In a brazen attempt to secure for itself a stake in OculusVR's recent multi-billion acquisition by Facebook, TRT has filed this lawsuit against OculusVR and one of its co-founders, Palmer Luckey.  TRT claims that it provided unspecified confidential information to Luckey pursuant to a two-page nondisclosure agreement, and that Luckey later breached the agreement by using that information to design and build OculusVR's ground-breaking virtual reality technology, the Oculus Rift.  But TRT had nothing to do with the development of the Rift, and the claims TRT asserts are based on a nearly four-year-old agreement to which it is not a party and under which it has no rights.

TRT purports to be a general partnership between two individuals, Thomas Seidl and Ron Igra.  The agreement upon which its claims are based was entered between Seidl and Luckey in August 2011 (the "Seidl/Luckey Contract").  TRT is not a party to the Seidl/Luckey Contract and is nowhere even mentioned in it.  The same is true of Igra, who purports here to assert claims on TRT's behalf, without Seidl's consent.  Igra is a complete stranger to the Seidl/Luckey Contract. This is fatal to TRT's Complaint because it demonstrates that TRT lacks Article III standing to pursue any of its contract or related tort claims against Luckey or OculusVR.   The entire Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

Even if TRT could establish standing, dismissal under Rule 12(b)(6) would be appropriate.  TRT's breach of contract and implied covenant claims are premised on Luckey's alleged breach of two contractual provisions in the Seidl/Luckey Contract: (1) an exclusivity provision precluding Luckey from assisting anyone other than Seidl in building a head mounted display, or "HMD"; and (2) a confidentiality provision requiring Luckey not to use or disclose any confidential information received from Seidl.  The exclusivity provision, by its own terms, applied only if Seidl paid Luckey at least $10,000 in royalties by July 1, 2012 from Seidl's sale of the HMD Luckey built for him.  No royalties were ever paid to Luckey, however, and TRT does not, and cannot, allege otherwise.  Regardless, the exclusivity provision is void under California Business & Professions Code section 16600 as an unlawful restraint on trade.  And, as to the

1  confidentiality provision, the Complaint does not identify a single item of confidential

2  information purportedly provided to Luckey by TRT (or Seidl, for that matter), much less facts

3  establishing that Luckey incorporated any such information into the Oculus Rift (he did not).  The

4  contract claims are manufactured out of thin air and should be dismissed.

5          TRT similarly fails to plead a valid claim for conversion.  The only tangible property TRT

6  has identified in support of its conversion claim is the HMD that Luckey built for, and shipped to,

7  Seidl (the "Seidl HMD").  But TRT has not alleged an ownership interest in the Seidl HMD or

8  any interference in that non-existent interest by Luckey or OculusVR.  Nor can TRT prevail on a

9  claim for conversion of unspecified "intellectual property" related to the Seidl HMD.  It is well

10  settled that information falling short of a trade secret does not constitute property capable of being

11  converted, and claims for conversion of alleged trade secrets are preempted by CUTSA.

12          TRT's constructive fraud claim is equally deficient.  First, TRT fails to plead the

13  necessary confidential relationship (or any cognizable legal relationship) between itself and

14  Luckey or OculusVR.  TRT also fails to identify with particularity any act or omission by either

15  Defendant that allegedly breached a duty owed to TRT, or any detrimental reliance by TRT.

16  Finally, like the conversion claim, the constructive fraud claim is preempted by CUTSA as a

17  veiled attempt to assert a claim for trade secret misappropriation without satisfying basic CUTSA

18  requirements.

19  **II.      RELEVANT FACTS AND ALLEGATIONS**

20          **A.      The Parties to this Lawsuit**

21          According to the Complaint, TRT is a Hawaiian partnership formed in December 2010

22  between two individuals, Ron Igra and Thomas Seidl, for the purpose of "developing immersive

23  3D technology."  (Compl. ¶¶ 1–3, 9.)

24          At some point, Igra and Seidl apparently had a falling out.  On December 5, 2014, Igra

25  filed a lawsuit against Seidl in Hawaii state court.  (Lambert Decl., Ex. A (Complaint, *Igra v.*

26  *Seidl*, No. 14-1-0699 (2) (Haw. Cir. Ct. Dec. 5, 2014)).)  Among the claims asserted by Igra is

27  that Seidl has breached his fiduciary duty to TRT by not approving the filing of this lawsuit

28  against OculusVR and Luckey.  (*Id.* ¶¶ 35–37, 45.)

Palmer Luckey is a California resident and co-founder of Oculus LLC, a company created to develop virtual reality technology, including the Oculus Rift. (Compl. ¶¶ 5, 19, 20.) The Rift is a next-generation virtual reality headset that uses state-of-the-art displays, optics and tracking systems to provide incredible visual fidelity and an immersive, wide field-of-view. Together, these advanced technologies enable the sensation of presence—the feeling as though the person wearing the Rift is actually there, whether it be an action video game, an immersive movie, a destination halfway around the world, or a room with friends. Oculus LLC was later incorporated as Oculus VR, Inc., and then reregistered as Oculus VR, LLC, a Delaware limited liability company headquartered in Menlo Park, California. (Id. ¶ 4.)[1] In 2014, OculusVR was acquired by Facebook in a highly publicized, multi-billion dollar transaction. This suit followed.

### B.    The Seidl/Luckey Contract

According to the Complaint, Seidl approached Luckey in 2011 about building a prototype HMD to certain unidentified specifications, and Luckey agreed to build him one. (Id. ¶ 12.) Seidl and Luckey entered into a written "Nondisclosure, exclusivity and payments agreement," dated August 1, 2011. (Id. ¶¶ 14–15; see also Luckey Decl., Ex. A (the "Seidl/Luckey Contract" or the "Contract").)[2] The Seidl/Luckey Contract contains three provisions at issue here.

First, the Contract contains an "Integration" clause providing that the Contract "expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations, and understandings." (Luckey Decl., Ex. A ¶ 7.) This clause further states that the Contract "may not be amended except in a writing signed by both parties." (Id.)

---

[1] The Complaint confuses the Oculus entities. The only operative entity is Oculus VR, LLC (herein, "OculusVR"). The entity named in the Complaint, Oculus VR, Inc., no longer exists.
[2] TRT conveniently failed to attach the Seidl/Luckey Contract to its Complaint. However, the Court may consider the Contract in ruling on Defendants' motion to dismiss because the Contract is incorporated by reference into the Complaint and is not subject to reasonable dispute. (See, e.g., Compl. ¶¶ 14, 15, 21–29; see also Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998, 1005–06 (9th Cir. 2010) (affirming Rule 12(b)(6) dismissal of claims contradicted by documents incorporated by reference into complaint).

Second, the Contract provides that Luckey (defined as the "Receiving Party") shall maintain in confidence any "Confidential Information" provided by Seidl (defined as the "Disclosing Party"), and that Luckey will use such Confidential Information for Seidl's "sole and exclusive benefit." (*Id.* ¶ 3.) The Contract specifies that any Confidential Information provided by Seidl must be labeled as such if transmitted in writing, or promptly documented in writing as such if transmitted orally. (*Id.* ¶ 1.)

Third, the Contract contains an "Exclusivity" provision contemplating that Luckey would build and deliver to Seidl the Seidl HMD. The Contract further provides that Luckey would not develop or aid any other person in developing any other kind of HMD *if and only if* Luckey received at least $10,000 in royalty payments from sale of the Seidl HMD by July 1, 2012. (*Id.* ¶ 9.) That provision states:

> 9. Exclusivity. The Receiving party [Luckey] shall keep all details including drawings and part suppliers of the Head Mounted Display confidential and shall not aid any other person or entity in the design of a Head Mounted Display other than the disclosing party [Seidl]. [sic] Unless within a twelve month period from 1st july 2011 [Luckey] has not received a minimum payment in royalties of 10,000 US dollars by [Seidl]. The exclusivity shall remain in place for a period of 10 years providing a minimum of 10,000 US dollars is paid from [Seidl] to [Luckey] per annum.

(*Id.* (all grammatical and other drafting errors in original).)

TRT alleges, with no supporting facts, that Seidl entered the Seidl/Luckey Contract "on behalf of the Partnership," *i.e.*, TRT. (Compl. ¶ 14.) That allegation, however, is contradicted by the opening paragraph of the Contract itself, which states that it was "entered into by and between Thomas Seidl . . . and Palmer Luckey." (Luckey Decl., Ex. A at 1.)[3] The Seidl/Luckey Contract contains no mention of TRT or Ron Igra. It does not reference any alleged partnership between Igra and Seidl or state that Seidl was entering the Contract on behalf of anyone other than himself. And TRT does not allege that Seidl informed Luckey that he was entering into a contract with anyone other than Seidl, or that Luckey assented to such an arrangement.[4]

---

[3] The Seidl/Luckey Contract is signed by Luckey and two witnesses, but not by Seidl.

[4] To the contrary, in support of Defendants' motion under Rule 12(b)(1), Luckey has attested that he had no understanding that Seidl was entering the Contract for anyone other than himself, and no intention of entering the Contract with anyone other than Seidl. (Luckey Decl. ¶ 3.)

5.

### C.    Seidl and Luckey's Performance under the Seidl/Luckey Contract

TRT alleges that, after executing the Contract, Luckey developed and shipped the Seidl HMD to Seidl on August 23, 2011.  (Compl. ¶ 16.)  TRT further alleges that during the "latter half of 2011 and into 2012, Seidl provided confidential feedback and information to Luckey in order to improve the design of the [Seidl HMD]."  (*Id.* ¶ 17.)  The Complaint does not identify or describe any of the "confidential feedback and information" allegedly provided to Luckey, and does not claim that any such information was designated "Confidential" as required by Section 1 of the Contract.  Nor does the Complaint allege that Luckey received any royalty payments under the Contract, as no such payments were ever made.

### D.    Summary of TRT's Claims

Although TRT is not a party to the Seidl/Luckey Contract, it nevertheless asserts a claim against Luckey for breach of that Contract.  (*Id.* ¶¶ 21–32.)  TRT alleges, without any factual support, that after delivering the Seidl HMD to Seidl, Luckey breached the Contract's confidentiality and exclusivity provisions by using unspecified information he allegedly obtained from Seidl to build the Oculus Rift.  (*Id.* ¶¶ 18–20, 27.)  TRT also attempts to assert tort claims against both Luckey and OculusVR based on the Seidl/Luckey Contract: (1) a conversion claim based on allegations that Defendants "knowingly converted to [their] own use property . . . consist[ing], at a minimum, of a prototype virtual reality headset and associated technology" (*id.* ¶ 34), and (2) a constructive fraud claim based on an alleged "contractual, personal, and confidential relationship" between Luckey and TRT, and concealment of Luckey's alleged "intention to breach TRT's agreement and confidential relationship."  (*Id.* ¶¶ 40–42.)

## III.    LEGAL STANDARDS

### A.    Dismissal for Lack of Standing (Rule 12(b)(1))

Article III of the U.S. Constitution limits federal court jurisdiction to actual cases or controversies.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–03 (1998).  "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  *Cetacean Cmty. v. Bush*,

1   386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co.*, 523 U.S. at 101); *see also Lujan v. Defs. of*

2   *Wildlife*, 504 U.S. 555, 561 (1992); Fed. R. Civ. P. 12(b)(1).

3   "Standing addresses whether the plaintiff is the proper party to bring the matter to the

4   court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th

5   Cir. 2010). To establish Article III standing, a plaintiff must show that: (1) it has suffered a

6   concrete injury-in-fact; (2) the injury is fairly traceable to defendants' challenged conduct; and

7   (3) the injury will likely be redressed by a favorable court decision. *Lujan*, 504 U.S. at 560–61.

8   Absent Article III standing, a suit should be dismissed under Rule 12(b)(1). *Cetacean*, 386 F.3d

9   at 1174 (citing cases).

10   A Rule 12(b)(1) jurisdictional challenge may be either "facial" (based on the face of the

11   pleadings) or "factual" (based on extrinsic evidence). *Warren v. Fox Family Worldwide, Inc.*,

12   328 F.3d 1136, 1139 (9th Cir. 2003). On a "factual" standing challenge under Rule 12(b)(1), the

13   Court has "wide discretion" to consider extrinsic evidence, such as affidavits and documents,

14   without converting the motion into one for summary judgment. *Id.* at 1141 n.5; *Dominion Assets*

15   *LLC v. Masimo Corp.*, No. 12-cv-2773-BLF, 2014 U.S. Dist. LEXIS 88285, at *11 (N.D. Cal.

16   June 27, 2014). The Court need not presume the truthfulness of the plaintiff's allegations. *White*

17   *v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Once defendants have converted the motion to

18   dismiss into a factual motion by presenting evidence beyond the pleadings, the plaintiff must

19   furnish affidavits or other evidence necessary to satisfy its burden to establish subject matter

20   jurisdiction. *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th

21   Cir. 2003).

22   **B.      Dismissal for Failure to State a Claim (Rule 12(b)(6))**

23   A complaint should be dismissed under Rule 12(b)(6) if it fails to allege facts sufficient to

24   state a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ.

25   P. 12(b)(6). "To avoid dismissal, the complaint must provide 'more than labels and conclusions,

26   and a formulaic recitation of the elements of a cause of action will not do.'" *In re Rigel Pharms.,*

27   *Inc. Sec. Litig.*, 697 F.3d 869, 875 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555). It is not

28   enough that a claim be possible or conceivable; it must be "plausible." *Twombly*, 550 U.S. at 570.

In determining whether a complaint states a plausible claim, the Court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall*, 629 F.3d at 998. Mere conclusory statements, unsupported by well-pleaded factual allegations, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

On a Rule 12(b)(6) motion, the Court may consider a document referenced in the complaint but not explicitly incorporated "if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). This prevents the plaintiff "from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which [its] claims are based." *Id.* (citation omitted).

Heightened Pleading Requirements: Claims for constructive fraud trigger heightened pleading requirements under Rule 9(b). *Meyer v. Wells Fargo Bank*, No. C 13-3727, 2014 U.S. Dist. LEXIS 21368, at *8 (N.D. Cal. Feb. 19, 2014). Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." To satisfy this requirement, plaintiff must plead the "who, what, when, where, and how of the misconduct charged." *Meyer*, 2014 U.S. Dist. LEXIS 21368, at *7 (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

**IV.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING**

TRT lacks Article III standing to assert any of its claims. Because TRT is neither a party to, nor a third-party beneficiary of, the Seidl/Luckey Contract that gives rise to this suit, it cannot establish the injury-in-fact necessary to bring contract or tort claims premised on the Contract. *See Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1427 (9th Cir. 1989) (holding that nonparties to the relevant contract lacked standing to sue defendants for, *inter alia*, fraudulent inducement and intentional interference with business relationship); *Novelposter v. Javitch Canfield Grp.*, No. 13-cv-05186-WHO, 2014 U.S. Dist. LEXIS 156268, at *18–20 (N.D. Cal. Nov. 4, 2014) (counterclaimant who was not a party to, or third-party beneficiary of, the contract at issue lacked Article III standing to assert contract or tort claims based on alleged breach of that contract).

First, TRT is not a party to the Seidl/Luckey Contract.  The Contract, which TRT neglected to attach to the Complaint, is between Luckey and Seidl.  (Luckey Decl. ¶ 3 & Ex. A ¶ 1.)  It does not state, as TRT alleges, that Seidl entered the Contract "on behalf of" TRT. (Compl. ¶ 14.)  In fact, the Contract contains no mention of TRT whatsoever.  (Luckey Decl., Ex. A.)  Under California law[5], "[s]omeone who is not a party to the contract has no standing to enforce [it]."  *Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988); *see also Carranza v. GEICO Gen. Ins. Co.*, No. 3:13-cv-1932-HZ, 2014 U.S. Dist. LEXIS 170621, at *5– 9 & n.2 (D. Or. Dec. 9, 2014) (plaintiff lacked Article III standing where contract contradicted allegation that she was in contractual privity with defendant).

Second, TRT is not a third-party beneficiary of the Seidl/Luckey Contract.  California Civil Code section 1559 provides that "[a] contract, made *expressly* for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  (Emphasis added.)  A third party qualifies as a beneficiary under a contract only "if the parties intended to benefit the third party and the terms of the contract make that intent evident."  *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985) (citing *Kirst v. Silna*, 103 Cal. App. 3d 759, 763 (1980)).  The claimed beneficiary must either be expressly named in the contract or demonstrate that it is a member of a beneficiary class expressly referenced in or contemplated by the contract.  *Karo*, 762 F.2d at 821–22.  Here, the Seidl/Luckey Contract makes no mention of TRT or any purported "partnership."  (Luckey Decl., Ex. A.)  Nor has TRT alleged that Luckey and Seidl agreed and intended that the Contract would benefit TRT, which is something Luckey has explicitly disclaimed.  (*Id.* ¶ 3.)  In fact, TRT does not even allege that

---

[5]  This case poses a threshold choice-of-law issue, because the parties are diverse and the Contract does not contain a choice-of-law clause.  (Compl. ¶¶ 2–6; Luckey Decl., Ex. A at 1–2.)  Federal courts in California apply California's choice-of-law rules.  *Consul, Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1146–47 (9th Cir. 1986).  California's choice-of-law rules apply California substantive law by default, unless a party timely invokes another state's law.  *Hurtado v. Super. Ct.*, 11 Cal. 3d 574, 581 (1974).  Given that the contract was to be performed by Luckey in California, and that the conduct at issue in this dispute allegedly took place in California (*see* Compl. ¶ 5), California law controls.

Luckey knew of TRT's existence.  Thus, TRT cannot establish that it is a third-party beneficiary of the Seidl/Luckey Contract.

Third, and notably, Igra has effectively conceded that TRT lacks authority to assert claims based on the Seidl/Luckey Contract.  In a separate action pending in Hawaii state court, Igra has sued Seidl for withholding consent to an action by TRT against Luckey and OculusVR.  (*See* Lambert Decl., Ex. A ¶¶ 28–31, 36–37.)[6]  Igra acknowledges in his Hawaii complaint that his alleged partnership agreement with Seidl vests Seidl with veto power over any legal action by the purported partnership and that Seidl has refused "and continues to refuse to authorize IGRA, *or any other person or entity*" to bring suit against Luckey or OculusVR.  (*Id.* ¶ 37.)  It is thus no surprise that TRT cannot marshal a single fact to support its baseless attempt to claim rights under the Seidl/Luckey Contract.[7]

Because TRT is neither a party to, nor a third-party beneficiary, of the Seidl/Luckey Contract, it is not in contractual privity with Luckey.  Absent contractual privity, TRT cannot demonstrate injury-in-fact arising from Luckey's alleged breach of the Contract.  Accordingly, TRT's contract claims should be dismissed under Rule 12(b)(1) for lack of Article III standing. *See Novelposter*, 2014 U.S. Dist. LEXIS 156268, at *18–20 (collecting cases); *Carranza*, 2014 U.S. Dist. LEXIS 170621, at *5–9 & n.2 (sustaining factual Rule 12(b)(1) challenge as plaintiff lacked contractual privity with moving defendants and, as such, could not demonstrate the injury in fact necessary to establish Article III standing); *Untalan v. Alliance Bancorp*, No. 11-00422 SOM/BMK, 2011 U.S. Dist. LEXIS 114637, at *13–15 (D. Haw. Oct. 4, 2011) (same).

The same defect requires dismissal of TRT's tort claims for conversion and constructive fraud.  The conversion claim is premised on allegations that Luckey converted the "prototype virtual reality headset and associated technology" that he built pursuant to the Seidl/Luckey Contract.  (Compl. ¶ 34; *see also* ¶ 1.)  The constructive fraud claim is premised on allegations

---

[6]  Defendants submit Igra's complaint in the Hawaii action solely in support of their Rule 12(b)(1) factual standing challenge. *See Warren*, 328 F.3d at 1141 n.5.

[7]  Luckey and OculusVR are not parties to the Hawaii action, and the Hawaii action will not resolve the issue presented here: namely, whether TRT has standing to pursue claims against Luckey and OculusVR based on the Seidl/Luckey Contract.

Cooley LLP
Attorneys At Law
Palo Alto

10.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1  that Luckey failed to disclose "his intention to breach [the Seidl/Luckey Contract] and

2  confidential relationship" with TRT created by the Contract. (*Id.* ¶¶ 41–42.) As a stranger to the

3  Contract, however, TRT lacks standing "either to seek its enforcement or to bring tort claims

4  based on the contractual relationship." *Ambers v. Wells Fargo Bank, N.A.*, No. 13-cv-03940 NC,

5  2014 U.S. Dist. LEXIS 28291, at *13–15 (N.D. Cal. Mar. 3, 2014) (dismissing fraud and unfair

6  competition claims for lack of standing as only plaintiff's husband, not plaintiff, was a party to

7  the mortgage agreements at issue); *see also Novelposter*, 2014 U.S. Dist. LEXIS 156268, at *21–

8  22 (litigant lacked Article III standing to assert tort claims based on injuries allegedly arising

9  from breach of a contract to which it was not a party); *EduMoz, LLC v. Republic of Mozambique*,

10  968 F. Supp. 2d 1041, 1047, 1071–72 (C.D. Cal. 2013) (dismissing constructive fraud claim for

11  lack of Article III standing); *Brockington v. J.P. Morgan Chase Bank, N.A.*, No. C-08-05795

12  RMW, 2009 U.S. Dist. LEXIS 56622, at *8–9 (N.D. Cal. July 1, 2009) (dismissing tort claims).

13  Accordingly, both the conversion and constructive fraud claims should be dismissed.

14  **V.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

15      **A.    TRT Cannot State a Claim for Breach of Contract (Count I)**

16      To state a claim for breach of contract against Luckey, TRT must plead: (1) the existence

17  of a contract with Luckey to which it was a party; (2) TRT's performance or excuse for non-

18  performance; (3) Luckey's breach; and (4) TRT's damages. *Gautier v. Gen. Tel. Co.*, 234 Cal.

19  App. 2d 302, 305 (1965); *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal.

20  2010). TRT's claim fails for multiple independent reasons.

21      **1.    Because TRT is not a party to the Seidl/Luckey Contract, it cannot
22          plead the first, second or fourth elements of a breach of contract claim**

23      First, as established above, TRT is not a party to or third-party beneficiary of the

24  Seidl/Luckey Contract. (*See* § IV, *supra*.) As such, TRT cannot satisfy the threshold element of

25  a claim for breach of contract. *See Schulz v. Cisco WebEx, LLC*, No. 13-cv-04987-BLF, 2014

26  U.S. Dist. LEXIS 69885, at *10–14 (N.D. Cal. May 20, 2014) (dismissing contract and derivative

27  tort claims under Rule 12(b)(6) where plaintiff was neither a contracting party nor intended third-

28

1   party beneficiary); *Conder*, 680 F. Supp. 2d at 1174 (plaintiff could not state elements of contract

2   claim where he was not in contractual privity with defendant).

3       Second, although TRT asserts that it "performed all conditions, covenants, and promises

4   required to be performed on its part" (Compl. ¶ 26), that allegation is nonsensical because TRT is

5   not a party to the Seidl/Luckey Contract and, therefore, is not subject to any contractually-

6   required conditions.  Moreover, TRT fails to allege that Seidl—the real contracting party—

7   performed his obligations under the Contract.  TRT cannot maintain its breach of contract claim

8   absent such allegations.  Cal. Code Civ. Proc. § 457.

9       Third, TRT fails to adequately plead damages.  TRT baldly asserts that, "[a]s a result of

10  Luckey's contractual breach, TRT has been injured in an amount to be determined."  (Compl. ¶

11  28.)  But TRT offers no explanation as to how it was damaged by the alleged breach of a contract

12  to which it was not a party or beneficiary.  "[C]onclusory allegations" of damages, such as TRT's,

13  "are insufficient to survive a motion to dismiss."  *Swinerton Builders v. Am. Home Assur. Co.*,

14  No. C-12-6047 EMC, 2013 U.S. Dist. LEXIS 36352, at *3 n.1 (N.D. Cal. Mar. 15, 2013) (citing

15  *Iqbal*, 556 U.S. at 678); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal.

16  2012) (granting motion to dismiss contract claim, under California law, for failure to plead

17  "appreciable and actual damage").

### 2.    TRT fails to adequately plead any breach by Luckey

19      TRT also fails to plead facts sufficient to establish an actionable breach by Luckey.  The

20  Complaint alleges in conclusory fashion that "Luckey breached the [Seidl/Luckey C]ontract by,

21  among other things, sharing confidential information provided by TRT, using the property of the

22  Partnership, working with others instead of the Partnership, exploiting Partnership information for

23  his own gain, raising money for his own use based upon Partnership work and material, and other

24  acts of breach."  (Compl. ¶ 27.)  Although the Complaint makes no effort to tie any of these

25  alleged breaches to any specific provision of the Seidl/Luckey Contract, TRT apparently contends

26  that Luckey disclosed and used "Confidential" information from TRT in violation of the

27  Contract's confidentiality provisions, and violated the Contract's "Exclusivity" provision.  Both

28  contentions fail.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

a.     **TRT fails to allege facts to support a breach of the Contract's confidentiality provisions**

TRT's vague and conclusory allegations that Luckey "shar[ed]" "us[ed]" and "exploit[ed]" "confidential information provided by TRT" (*id.*), are insufficient to satisfy Rule 8's basic pleading requirements.  For one thing, the Complaint does not identify a single item of information provided by Seidl (or TRT) to Luckey.  Not one.  Moreover, the confidentiality provision is clear—to qualify as "Confidential Information" protected by the Contract, it must be explicitly designated as such (*i.e.*, labeled as "confidential" if provided in writing, or later designated in writing as "confidential" if provided orally).  (Luckey Decl., Ex. A ¶ 1.)  Entirely absent from the Complaint, however, is any allegation that TRT (or even Seidl) ever provided Luckey with any information that was designated as "confidential" under the terms of the Contract.   Nor does the Complaint allege any facts to establish that Luckey shared any information from TRT (or Seidl), confidential or otherwise, with any third party, or incorporated any such information into the Oculus Rift.  TRT does not even allege that the Seidl HMD is in any way similar to the Oculus Rift.  Having failed to identify or even attempt to describe the alleged "Confidential Information" at issue, TRT fails to allege a "plausible" claim for breach of the Contract's confidentiality provisions. *Twombly*, 550 U.S. at 570.[8]

---

[8] It is unclear from the Complaint whether TRT seeks to hold Luckey liable for promises allegedly made prior to execution of the Seidl/Luckey Contract. (*See, e.g.*, Compl. ¶¶ 10, 12, 22–27.)  If so, those claims are subject to dismissal for the additional reason that the Contract's "Integration" provision explicitly states that the Contract "expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations and understandings."  (Luckey Decl., Ex. A ¶ 7); *see also Mat-Van, Inc. v. Sheldon Good & Co. Auctions*, No. 07-cv-912 IEG (BLM), 2007 U.S. Dist. LEXIS 77132, at *15–16 (S.D. Cal. Oct. 16, 2007) (dismissing breach of contract claim based on defendants' alleged promises prior to written integrated agreement); *Travelers Cas. & Sur. Co. v. Amoroso*, No. C 03-5746 PJH, 2004 U.S. Dist. LEXIS 17604, at *7–8 (N.D. Cal. Aug. 24, 2004) (dismissing implied covenant claim based on alleged verbal contracts, which were invalid in light of written agreement's integration clause); *Amc Tech. v. Cisco Sys.*, No. 11-cv-03403 PSG, 2012 U.S. Dist. LEXIS 6487, at *17–19 (N.D. Cal. Jan. 20, 2012) (dismissing promissory estoppel claim based on defendant's promises to plaintiff prior to execution of integrated written agreement).

Cooley LLP
Attorneys At Law
Palo Alto

13.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

**b.    Any claim for breach of the Seidl/Luckey Contract's "Exclusivity" provision fails because that provision is both inapplicable and void**

Although the Complaint does not explicitly mention the Contract's exclusivity provision, TRT nevertheless appears to rely on it when it alleges that Luckey breached the Seidl/Luckey Contract by "working with others instead of the Partnership." (Compl. ¶ 27.) The exclusivity provision states that Luckey:

> shall not aid any other person or entity in the design of a Head Mounted Display other than [Seidl]. Unless within a twelve month period from 1st july 2011 [Luckey] has not received a minimum payment in royalties of 10,000 US dollars by [Seidl]. The exclusivity shall remain in place for a period of 10 years providing a minimum of 10,000 US dollars is paid from [Seidl] to [Luckey] per annum.

(Luckey Decl., Ex. A ¶ 9 (all grammatical and other drafting errors in original).) To the extent TRT attempts to assert a claim for breach of this provision, that claim fails for two fundamental reasons.

First, under the express terms of the Seidl/Luckey Contract, the obligation to refrain from "aid[ing] any other person or entity [other than Seidl] in the design of a Head Mounted Display" applied if, and only if, Luckey received $10,000 in royalties by July 1, 2012 from Seidl. (*Id.*) TRT does not allege that Luckey was ever paid a single penny in royalties under the Contract (nor is there any basis for such an allegation). Accordingly, TRT fails to plead facts sufficient to show that the exclusivity provision ever came into effect.[9]

Second, even if the exclusivity provision had been triggered, TRT's claim would still fail because the provision is void as a matter of law under California Business and Professions Code section 16600. Section 16600 "expresses California's strong public policy of protecting the right

---

[9] TRT's allegation that it "performed all conditions, covenants, and promises required to be performed on its part" does not save the claim from dismissal. (Compl. ¶ 26.) Payment of $10,000 in royalties in the first year was not "required to be performed" (by TRT, or even Seidl) since there were never any sales of the Seidl HMD, and TRT does not, and cannot, allege otherwise. *See, e.g., Tessera, Inc. v. UTAC (Taiwan) Corp.*, No. 10-cv-04335-EJD, 2012 U.S. Dist. LEXIS 43164, at *2, *6–7 (N.D. Cal. Mar. 28, 2012) (dismissing claim for breach of contractual obligation to pay royalties where plaintiff did not allege that the prerequisite condition was satisfied—that defendant made a product that triggered the royalty obligation).

Cooley LLP
Attorneys At Law
Palo Alto

14.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

of its citizens to pursue any lawful employment and enterprise of their choice." *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009). It voids virtually all "contract[s] by which *anyone* is restrained from engaging in a lawful profession, trade, or business of any kind" to any extent. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945 (2008) (citing Section 16600).[10] Here, the exclusivity provision violates section 16600 in its attempt to restrain Luckey from engaging in the lawful enterprise of building HMDs of any kind for parties other than Seidl. As such, the exclusivity provision is void and cannot form the basis of a breach of contract claim. *See Kolani v. Gluska*, 64 Cal. App. 4th 402, 407 (1998) (affirming dismissal of contract claim, without leave to amend, because non-compete clause was invalid under § 16600); *Robert Half Int'l, Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1184–86 (S.D. Cal. 2014) (dismissing contract claims based on alleged violation of contractual provision restricting defendants' ability to practice their profession); *cf. Dowell*, 179 Cal. 4th at 579 (court can determine invalidity of facially void non-compete provision as a matter of law) (collecting cases).

**B.      TRT Fails To State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)**

As a non-party to the Luckey/Seidl Contract, TRT can no more plead a claim for breach of the implied covenant than it can plead a claim for breach of the Contract's express terms. (*See supra*, §§ IV, V.A.1); *see also Castro v. JPMorgan Chase Bank, N.A.*, No. 14-cv-01539 NC, 2014 U.S. Dist. LEXIS 89862, at *8–9 (N.D. Cal. June 30, 2014) (dismissing implied covenant claim as plaintiff could not show that it was a party to a valid contract); *Novelposter*, 2014 U.S. Dist. LEXIS 156268, at *20–21 (collecting cases). For this reason alone, TRT's claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

TRT's implied covenant claim fails for another reason. Put simply, the law does not imply obligations identical to express ones. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394–95 (1990) (dismissing implied covenant claim as redundant and

---

[10] Courts uphold anticompetitive covenants like the exclusivity provision only in two narrow situations, neither of which is applicable here: (1) where a person sells the goodwill of a business; or (2) where a partner agrees not to compete in anticipation of the dissolution of his interest in a partnership or LLC. Cal. Bus. & Prof. Code §§ 16601–16602.5; *Edwards*, 44 Cal. 4th at 945–46.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

superfluous); *Am. Marine Corp. v. Blue Shield of Cal.*, No. C 11-00636 WHA, 2011 U.S. Dist. LEXIS 40452, at *7–10 (N.D. Cal. Apr. 13, 2011) (Alsup, J.) (same, citing *Careau*, 222 Cal. App. 3d at 1395). Here, TRT's implied covenant claim is simply a rehash of its failed breach of contract claim. In essence, TRT alleges that by breaching the express terms of the Seidl/Luckey Contract, Lucky also breached the implied duty of good faith and fair dealing. The implied covenant claim is, therefore, purely superfluous and should be dismissed accordingly.[11]

### C. TRT Fails To State a Claim for Conversion (Count III)

TRT also accuses both Defendants of conversion. To state a claim for conversion, TRT must allege that (1) it owned or had a right to possess a specific item of property; (2) Defendants wrongfully dispossessed TRT of that property; and (3) TRT was damaged as a result. *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). The Complaint fails to adequately plead any of these elements.

#### 1. TRT fails to allege that it owns a protectable property interest

To adequately allege the first element of a conversion claim, TRT must plead: (1) an "interest capable of precise definition"; (2) that is "capable of exclusive possession or control"; and (3) that it has "established a legitimate claim to exclusivity." *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (holding that domain names constitute convertible property in that, "like a share of corporate stock or a plot of land, a domain name is a well-defined interest," owned by a single registrant who has a legitimate claim to exclude others from using it) (citing *Rasmussen*, 958 F.2d at 903). Here, TRT alleges that Defendants converted, "at a minimum, [] a prototype virtual reality headset and associated technology built for and in conjunction with TRT." (Compl. ¶ 34.)

---

[11] As this Court has observed, the implied covenant comes into play only when a contract expressly grants discretion to the performing party. Without the implied covenant, such a contract would be illusory if interpreted literally and in the absence of a good faith limitation on the promisor's exercise of discretion. *Openwave Sys. v. Myriad Fr. S.A.S.*, No. C 10-2805 WHA, 2011 U.S. Dist. LEXIS 69797, at *16–17 (N.D. Cal. June 29, 2011) (Alsup, J.) (implied covenant "does not govern" absent "grant of [contractual] discretion"); *see also Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 806–08 (1995) (collecting cases). Here, TRT does not allege that the Seidl/Luckey Contract vested Luckey with any discretion, much less that he exercised that discretion in bad faith. Accordingly, the implied covenant claim fails for this additional reason.

Cooley LLP
Attorneys At Law
Palo Alto

16.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1    TRT also alleges, even more generally, that Defendants converted "TRT intellectual and personal

2    property." (*Id.* ¶ 1.) These allegations fail to adequately plead a protectable property interest.

3         As the Complaint makes clear, the only alleged basis for TRT's purported ownership

4    interest in the Seidl HMD is the Seidl/Luckey Contract—a contract to which TRT was not a party

5    and under which it has no rights. (*See supra*, § IV.) Accordingly, TRT has not pleaded facts

6    establishing that it has a legitimate claim to exclusive possession of the Seidl HMD.

7         TRT's assertion that Defendants also converted "associated technology" and "intellectual

8    property" fares even worse. TRT makes no effort to identify the "technology" or "intellectual

9    property" at issue. Is it a tangible thing? A trade secret? Some other item of information? If the

10   technology is "capable of precise definition," *Kremen*, 337 F.3d at 1030, TRT has made no effort

11   to actually define it, much less plead facts establishing TRT as the rightful owner. TRT does not

12   even allege whether it ever saw, possessed, or did anything with the unidentified "thing" that was

13   supposedly converted. As such, TRT has not adequately pleaded a claim for conversion.

14   *Fortaleza v. PNC Fin. Servs. Group, Inc.*, 642 F. Supp. 2d 1012, 1023 (N.D. Cal. 2009) (granting

15   motion to dismiss conversion claim "[b]ecause plaintiff does not allege, with sufficient

16   specificity, either the actual property that is the subject of plaintiff's conversion claim, or that

17   plaintiff owned or was properly entitled to possess such property at time of conversion").[12]

18                    **2.     TRT fails to allege that it was dispossessed of any property**

19        TRT also fails to allege that either Luckey or OculusVR interfered with TRT's possessory

20   interests in any specific item of property. The Complaint does not allege facts establishing that

21   TRT ever had possession of the Seidl HMD, much less that Luckey somehow interfered with that

22   possession. To the contrary, the Complaint acknowledges that Luckey sent the Seidl HMD *to

23   Seidl*—the actual contracting party. (Compl. ¶ 16.) Moreover, even assuming Luckey's delivery

24   of the Seidl HMD to Seidl somehow vested TRT with ownership or possessory interests in that

25

_____

26   [12] That TRT is intentionally vague about the "technology" and "intellectual property" in question
     is no wonder. As discussed below, CUTSA supersedes claims for conversion of trade secrets or
27   other alleged confidential information. Indeed, to the extent the conversion claim is directed at
     intangible information or "intellectual property" that falls short of trade secret status, such
28   allegations fail to assert a property right capable of conversion. *See* Section V.C.1, *supra*.

item, the Complaint contains no facts as to when or how Luckey is supposed to have interfered with those interests.  The Complaint's bare-bones assertion that, "[a]t various times throughout 2012 and after, the Defendants knowingly converted to [their] own use property owned by TRT" (*id.* ¶ 34), is devoid of any factual support or detail, and amounts to nothing more than a bald legal conclusion that should be disregarded by the Court.  *Twombly*, 550 U.S. at 555–56; *see also White v. SSA*, No. 14-cv-05604-JST, 2015 U.S. Dist. LEXIS 82193, at *19 (N.D. Cal. June 24, 2015) (dismissing conversion claim for failure to plead sufficient facts to allow Court to reasonably infer that Defendants were involved in alleged conversion); *Arrieta v. County of Kern*, No. 1:14-cv-00400-LJO-JLT, 2014 U.S. Dist. LEXIS 84339, at *34 (E.D. Cal. June 18, 2014) (dismissing conversion claim as inadequately pleaded where Complaint lacked facts establishing that plaintiff had been dispossessed of its property).  Absent allegations of wrongful dispossession of a specific item of property by Luckey or OculusVR, TRT's conversion claim fails.[13]

### D.     TRT Fails To State a Claim for Constructive Fraud (Count IV)

TRT's constructive fraud allegations against Luckey and OculusVR are similarly deficient.  "To state a claim for constructive fraud under California law, a party must allege: (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage." *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 U.S. Dist. LEXIS 26371, at *6 (N.D. Cal. Feb. 28, 2014).  A claim for constructive fraud "triggers heightened pleading under FRCP 9(b)." *Meyer*, 2014 U.S. Dist. LEXIS 21368, at *8; *see also Jobscience*, 2014 U.S. Dist. LEXIS 26371, at *6.  TRT fails to adequately allege any of the elements of a constructive fraud claim.  As a result, this claim, too, should be dismissed.

#### 1.     TRT fails to plead a confidential relationship with Luckey

TRT has not and cannot allege any facts to support the existence of a confidential or fiduciary relationship between TRT and Luckey.  TRT offers nothing more than the conclusory assertion that "[b]ecause of their contractual, personal, and confidential relationship, TRT put its

---

[13] As TRT has failed to plead a protectable property interest with which Defendants interfered, it follows that TRT has also failed to plead the third element of a conversion claim—damages.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

trust in Luckey." (Compl. ¶ 40.)  However, as discussed extensively above, TRT and Luckey did not have a contractual relationship: the Seidl/Luckey Contract was solely between Luckey and Seidl as individuals, and it never mentions TRT or Igra.  In fact, there is nothing in the Complaint to suggest that Luckey even knew TRT or Igra existed, let alone that they had the requisite confidential or fiduciary relationship.  The Court should therefore reject TRT's conclusory allegation that such a relationship existed.  *See MobiApps, Inc. v. Quake Global, Inc.*, No. 06cv1745-LAB (JMA), 2007 U.S. Dist. LEXIS 34681, at \*26 (S.D. Cal. May 9, 2007) (finding no confidential relationship and granting motion to dismiss constructive fraud claim because allegations were "wholly conclusory and [] lacking in any factual detail whatsoever").

### 2. TRT fails to plead a breach of the confidential relationship, reliance or damages with the particularity required by Rule 9(b)

TRT also fails to allege the second, third and fourth elements of its constructive fraud claim (breach, reliance and damages) with the requisite particularity.  Rule 9(b) requires that TRT provide "the who, what, when, where, and how of the misconduct charged[.]"  *Meyer*, 2014 U.S. Dist. LEXIS 21368, at \*7 (*quoting Vess*, 317 F.3d at 1106).  "[T]he reliance and damages elements of Plaintiffs' [fraud] claims must [also] be pled with particularity."  *Wayne Merritt Motor Co. v. N.H. Ins. Co.*, No. 11-cv-1762-LHK, 2011 U.S. Dist. LEXIS 122320, at \*36 (N.D. Cal. Oct. 21, 2011).

The Complaint's bald assertions that "Luckey . . . intentionally misled TRT and its partners" and that "TRT would have acted differently" if it had known Luckey intended to breach the Contract (Compl. ¶¶ 41–42), fall far short of Rule 9(b)'s heightened pleading standard.  Did Luckey have any communications at all with TRT?  When?  With whom?  Regarding what?  What is he supposed to have said or done that was misleading?  What actions does TRT claim to have taken in reliance on Luckey's statements or conduct, and how would it have acted differently had it known of Luckey's intentions?  How was TRT damaged by Luckey's alleged conduct?  The Complaint is entirely silent as to these basic and critical facts, and must therefore be dismissed as insufficiently pleaded.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

19.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

3.    **TRT fails to allege any facts to support a constructive fraud claim against Oculus**

The Complaint does not allege that OculusVR owed TRT any duty, committed any breach, or caused TRT any detrimental reliance.  In fact, the Complaint does not allege any contact or relationship whatsoever between TRT (or Seidl) and OculusVR.  As a result, TRT's constructive fraud claim against OculusVR is entirely derivative of its claim against Luckey and fails for the same reasons.

Even if TRT could state a claim against Luckey (it cannot), its claim against Oculus would still fail.  TRT alleges in the most general terms that OculusVR should be liable as an aider and abettor "and/or" conspirator of Luckey.  (*See* Compl. ¶ 44 ("Defendants . . . aided and abetted each other and/or conspired to commit such wrongful conduct.")).  This is plainly insufficient.

First, TRT's aiding and abetting allegations come nowhere close to satisfying Rule 9(b)'s heightened pleading standards.  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1131 (C.D. Cal. 2003).  "Where aiding and abetting is the gravamen of the claim, Rule 9(b) requires that the complaint inform the defendant what he did that constituted substantial assistance."  *Id.* (internal quotations and ellipses omitted).  TRT's Complaint, however, fails to offer *any* explanation as to how OculusVR assisted, "substantially" or otherwise, in Luckey's alleged fraud.

Second, to the extent TRT seeks to state a claim for conspiracy liability, it has similarly failed to allege any of the necessary elements.  To adequately plead a claim for conspiracy, a plaintiff must allege facts establishing: "(1) the formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct."  *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995).  TRT's boilerplate claim that "Defendants . . . conspired to commit such wrongful conduct" (Compl. ¶ 44), is insufficient to satisfy even Rule 8, let alone Rule 9(b)'s heightened pleading standard.

E.    **TRT's Conversion and Constructive Fraud Claims Are Superseded by California's Uniform Trade Secrets Act**

California adopted its version of the Uniform Trade Secrets Act to provide an exclusive civil cause of action for the theft and misappropriation of trade secrets.  *See* Cal. Civ. Code

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

§ 3426.1.  Under CUTSA, a plaintiff can recover damages or a reasonable royalty (if damages cannot be proven) for the misappropriation of its trade secret.  Cal. Civ. Code. § 3426.3.  A "trade secret" is defined as information that (1) derives an independent value from not being generally known, and (2) is subject to reasonable efforts to maintain its secrecy.  Cal. Civ. Code § 3426.1.  Misappropriation occurs where an alleged trade secret was acquired through improper means (including theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy) or was used without authorization.  *Id.*

CUTSA (Cal. Civ. Code § 3426.7) "'preempt[s] claims based on the same nucleus of facts as trade secret misappropriation.'"  *Sunpower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 U.S. Dist. LEXIS 176284, *9 (N.D. Cal. Dec. 11, 2012) (alteration in original) (*quoting K.C. Multimedia, Inc. v. Bank of America Tech & Ops, Inc.*, 171 Cal. App. 4th 939, 962 (2009)).[14]  A plaintiff may not avoid CUTSA preemption by omitting a CUTSA claim from its complaint and alleging the predicates of a CUTSA violation in support of a different tort theory.  Rather, "CUTSA provides the exclusive civil remedy for *conduct falling within its terms*, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'"  *Id.* (emphasis added) (citation omitted).  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010).

"The preemption inquiry . . . focuses on whether the claims are more than a restatement of the same operative facts supporting trade secret misappropriation.  If there is no material distinction between the wrongdoing alleged in a CUTSA claim and that alleged in a different claim, the CUTSA claim preempts the other."  *Sunpower*, 2012 U.S. Dist. LEXIS 176284, at *9 (internal citations and quotations omitted).  Applying this nucleus-of-facts test, "a number of Courts . . . have held that CUTSA may supersede various claims including . . . claims for conversion . . . and intentional and negligent misrepresentation."  *Id.* at *10–11 (internal citations omitted).  In such cases, "CUTSA supersedes claims based on the misappropriation of *information*, regardless of whether such information ultimately satisfies the definition of a trade secret."  *Id.* at *24 (emphasis added).

---

[14] The only claims *not* preempted by CUTSA are: (1) contract claims, (2) claims not based on trade secret misappropriation, and (3) criminal remedies.  Cal. Civ. Code § 3426.7(b).

Cooley LLP
Attorneys At Law
Palo Alto

21.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1.   **TRT's conversion claim is preempted by CUTSA to the extent it is based on alleged misuse of confidential information**

"To survive a motion to dismiss a conversion claim based on CUTSA preemption, a plaintiff . . . must demonstrate a property right outside of trade secrets law." *Lifeline Food Co. v. Gilman Cheese Corp.*, No. 5:15-cv-00034-PSG, 2015 U.S. Dist. LEXIS 64155, at *11 (N.D. Cal. May 15, 2015) (internal quotations and citation omitted).  In other words, the thing allegedly converted must be something other than a trade secret or confidential information.  *See Silvaco*, 184 Cal. App. 4th at 238–39 (a plaintiff must allege "some *other basis in fact or law* on which to predicate the requisite property right.  The time to do that *is at the pleadings*.") (emphasis added). Contractual rights to trade secrets or other information, such as TRT's alleged rights under the Seidl/Luckey Contract to the design for the Seidl HMD, do not satisfy the requirement of a "property right" outside of trade secrets law.  *Lifeline Food*, 2015 U.S. Dist. LEXIS 64155, at *5 (finding conversion claim based on breach of contract that gave plaintiff "complete and exclusive rights" to confidential formula for low-fat cheese preempted by CUTSA).

Here, the Complaint makes clear that TRT's conversion claim targets Defendants' alleged use of TRT's purported trade secrets.  (*See* Compl. ¶ 1 ("TRT brings this action for Defendants' . . . conversion of TRT intellectual . . . property"); *see also* Luckey Decl., Ex. A ¶ 4 (providing that any "Confidential Information" provided to Luckey must be kept in confidence until it "*no longer qualifies as a trade secret*" or until Seidl notifies Luckey that he is released from the obligation of confidentiality) (emphasis added).)  TRT has not alleged any other "basis in fact or law on which to predicate the requisite property right," *Silvaco*, 184 Cal. App. 4th at 238–39, apart from its alleged intangible rights to information allegedly provided to Luckey under the Seidl/Luckey Contract.  As a result, its conversion claim is one for conversion of alleged trade secrets and should be dismissed as superseded by CUTSA.  *Id.*; *see also Lifeline Food*, 2015 U.S. Dist. LEXIS 64155, at *5; *Sunpower*, 2012 U.S. Dist. LEXIS 176284, at *12–28 (granting motion to dismiss claim for conversion of trade secrets and "non-trade-secret information" as superseded by CUTSA); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

**DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CASE NO. 15-CV-02281 WHA)**

1   (granting motion to dismiss conversion claim where plaintiff did not "identify [the] 'property,'

2   nor make any attempt to distinguish it from the trade secret material identified in the FAC").

3          Dismissal is appropriate whether or not the information at issue actually qualifies as a

4   trade secret.  In *Rovince Int'l Corp. v. Preston*, for example, the court granted a motion to dismiss

5   the entirety of plaintiff's claim for conversion of allegedly confidential information.  No. CV 13-

6   3527-CAS (PJWx), 2013 U.S. Dist. LEXIS 145624, at *14 (C.D. Cal. Oct. 7, 2013).  The *Rovince*

7   court reasoned that the subject information either qualified as a trade secret, in which case the

8   claim was preempted by CUTSA, or did not, in which case the plaintiff could not "show that it

9   has a property interest" capable of conversion.  *Id.*; *see also Silvaco*, 184 Cal. App. 4th at 239 n.22

10  (finding that CUTSA preempts claims for conversion of trade secret and non-trade secret information

11  alike as non-trade secret information "belongs to no one, and cannot be converted or stolen");

12  *Sunpower*, 2012 U.S. Dist. LEXIS 176284, at *24 (same).  Here, beyond the physical Seidl

13  HMD, TRT has not identified any information or intellectual property that it claims was

14  converted, much less whether it purportedly constitutes a trade secret.  Either way, to the extent

15  TRT's conversion claim is premised on the alleged conversion of confidential information, it is

16  preempted by CUTSA and should be dismissed.

17          **2.    TRT's constructive fraud claim is also preempted by CUTSA to the
               extent it is based on Defendants' alleged use of TRT's confidential
18             information**

19          As discussed above, TRT's constructive fraud claim fails, among other reasons, because

20  TRT was not in a fiduciary or confidential relationship with either Luckey or OculusVR, who

21  therefore owed TRT no duty.  Regardless, TRT's manufactured fraud claim, arising from or

22  relating to that non-existent duty, is preempted by CUTSA.  *See, e.g., Silvaco*, 184 Cal. 4th

23  at 236 (finding that CUTSA superseded claim for "intentional and negligent misrepresentation"

24  based on allegation that Defendant "lied about continuing use" of confidential information).

25          In *Farhang v. Indian Institute of Technology*, the court examined allegations nearly

26  identical to those asserted by TRT here, and concluded that the plaintiffs' breach of fiduciary duty

27  and fraud claims were preempted by CUTSA.  No. C-08-02658 RMW, 2010 U.S. Dist. LEXIS

28  53975 (N.D. Cal. June 1, 2010).  The dispute in *Farhang* arose from an alleged joint venture

1   agreement and NDA between plaintiffs and defendants.  *Id.* at *18–25.  Plaintiffs alleged "that

2   defendants breached their fiduciary duties by: (1) using confidential business information for their

3   own benefit; [and] (2) thwarting the progress of the joint venture and deceiving plaintiffs so that

4   they could use plaintiffs' IP . . ."  *Id.* at *35.  Plaintiffs also alleged a fraud claim based on

5   allegations that "defendants made false representations to induce plaintiffs to permit development

6   of plaintiffs' IP and then developed and marketed plaintiffs' IP for their own benefit."  *Id.* at *36.

7   The court found that plaintiffs' breach of fiduciary duty and fraud claims were based on the

8   "same nucleus of facts" as their trade secret claims, namely: the alleged breach of the NDA,

9   misuse of plaintiffs' confidential information, and failure to disclose the existence of a competing

10  entity.  Accordingly, the court dismissed both claims with prejudice.  *Id.* at *35, *37.

11         The allegations here are on all fours with *Farhang.*  TRT's constructive fraud claim is

12  based on allegations that Luckey breached the confidentiality provisions in the Contract by

13  sharing TRT's confidential information with others and using it for his own benefit.  (*See* Compl.

14  ¶¶ 41–43.)  Assuming that TRT could sufficiently identify this alleged confidential information,

15  this "same nucleus of facts" would be necessary to state a claim under CUTSA.  TRT "cannot

16  escape preemption merely because it includes 'something more'" by couching its claims as

17  breaches of duty and intentional omissions.  *Farhang*, 2010 U.S. Dist. LEXIS 53975, at *36

18  (*quoting K.C. Multimedia*, 171 Cal. App. 4th at 957–58).  Accordingly, the constructive fraud

19  claim should be dismissed.

20  **VI.    CONCLUSION**

21         For the foregoing reasons, Defendants respectfully request that the Court grant their

22  Motion to Dismiss the Complaint in its entirety, with prejudice.

23  Dated: August 5, 2015                    COOLEY LLP

24

25                                          By:    /s/ Michael G. Rhodes
                                                  Michael G. Rhodes
26

27                                          Attorneys for Defendants
118144655                                   PALMER LUCKEY and OCULUS VR, LLC
28