COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
BETHANY C. LOBO (248109) (blobo@cooley.com)
NATHANIEL R. COOPER (262098) (ncooper@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

COOLEY LLP
MARK F. LAMBERT (197410) (mlambert@cooley.com)
ANGELA L. DUNNING (212047) (adunning@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

Attorneys for Defendants
PALMER LUCKEY and OCULUS VR, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>               Plaintiff,<br><br>     v.<br><br>PALMER LUCKEY & OCULUS VR, LLC,<br>as successor-in-interest to OCULUS VR,<br>INC.,<br><br>               Defendants. | Case No.  15-cv-02281 (WHA)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         October 29, 2015<br>Time:        8:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge:      Hon. William H. Alsup<br>Trial Date:  September 12, 2016<br><br>**COMPLAINT FILED:  MAY 20, 2015** |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF RELIEF SOUGHT .................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

I.     INTRODUCTION ................................................................................................. 2

II.    RELEVANT ALLEGATIONS .................................................................................. 3

       A.     THE PARTIES TO THIS LAWSUIT .............................................................. 3

       B.     THE SEIDL/LUCKEY CONTRACT ............................................................. 4

       C.     SEIDL'S AND LUCKEY'S PERFORMANCE UNDER THE
              SEIDL/LUCKEY CONTRACT ..................................................................... 6

       D.     SUMMARY OF TRT'S CLAIMS ................................................................. 6

III.   LEGAL STANDARDS .......................................................................................... 7

       A.     DISMISSAL FOR LACK OF STANDING (RULE 12(B)(1)) .............................. 7

       B.     DISMISSAL FOR FAILURE TO STATE A CLAIM (RULE 12(B)(6)) ................. 8

IV.    THE FAC SHOULD BE DISMISSED FOR LACK OF STANDING .............................. 9

V.     THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ............. 11

       A.     TRT CANNOT STATE A CLAIM FOR BREACH OF CONTRACT
              (COUNT I) .......................................................................................... 11

              1.     AS A STRANGER TO THE CONTRACT, TRT CANNOT
                     PLEAD THE FIRST, SECOND OR FOURTH ELEMENTS OF A
                     CLAIM FOR ITS BREACH ........................................................ 12

              2.     TRT FAILS TO ADEQUATELY PLEAD ANY BREACH BY
                     LUCKEY ............................................................................... 13

       B.     TRT FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED
              COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT II) ................. 15

       C.     TRT FAILS TO STATE A CLAIM FOR CONVERSION (COUNT III) ............. 16

       D.     TRT FAILS TO STATE A CLAIM FOR CONSTRUCTIVE FRAUD
              (COUNT IV) ........................................................................................ 18

       E.     TRT FAILS TO STATE A CLAIM FOR VIOLATION OF THE UCL
              (COUNT V) ......................................................................................... 20

       F.     TRT FAILS TO STATE A CLAIM FOR COMMON LAW UNFAIR
              COMPETITION (COUNT VI) .................................................................. 21

       G.     TRT'S CONVERSION, CONSTRUCTIVE FRAUD AND UNFAIR
              COMPETITION CLAIMS ARE SUPERSEDED BY CUTSA ........................... 21

              1.     TRT'S CONVERSION CLAIM IS PREEMPTED BY CUTSA ............. 23

              2.     TRT'S CONSTRUCTIVE FRAUD CLAIM IS PREEMPTED BY
                     CUTSA ................................................................................ 24

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

**DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)**

**TABLE OF CONTENTS**
**(CONTINUED)**

**PAGE**

3.    TRT'S UNFAIR COMPETITION CLAIMS ARE PREEMPTED
      BY CUTSA ............................................................................................ 25

VI.    CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Am. Marine Corp. v. Blue Shield of Cal.*,
   No. C 11-00636 WHA, 2011 U.S. Dist. LEXIS 40452 (N.D. Cal. Apr. 13,
   2011) ................................................................................................................................16

*Ambers v. Wells Fargo Bank*,
   No. 13-cv-03940 NC, 2014 U.S. Dist. LEXIS 28291 (N.D. Cal. Mar. 3, 2014) ....................11

*Amc Tech. v. Cisco Sys.*,
   No. 11-cv-03403 PSG, 2012 U.S. Dist. LEXIS 6487 (N.D. Cal. Jan. 20, 2012)....................13

*Arrieta v. County of Kern*,
   No. 1:14-cv-00400-LJO-JLT, 2014 U.S. Dist. LEXIS 84339 (E.D. Cal. June
   18, 2014) ............................................................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................8, 12

*Bank of the W. v. Super. Ct.*,
   2 Cal. 4th 1254 (1992) ........................................................................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................8

*Bennett v. Hibernia Bank*,
   47 Cal. 2d 540 (1956) ........................................................................................................17

*Brockington v. J.P. Morgan Chase Bank, N.A.*,
   No. C-08-05795 RMW, 2009 U.S. Dist. LEXIS 56622 (N.D. Cal. July 1, 2009)....................11

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990)............................................................................................16

*Carranza v. GEICO Gen. Ins. Co.*,
   No. 3:13-cv-1932-HZ, 2014 U.S. Dist. LEXIS 170621 (D. Or. Dec. 9, 2014) ........................10

*Castro v. JPMorgan Chase Bank, N.A.*,
   No. 14-cv-01539 NC, 2014 U.S. Dist. LEXIS 89862 (N.D. Cal. June 30, 2014) ...................15

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ........................................................................................................21

*Cetacean Cmty. v. Bush*,
   386 F.3d 1169 (9th Cir. 2004)..............................................................................................7

Cooley LLP
Attorneys At Law
Palo Alto

iii.

**Defendants' Motion to Dismiss First
Amended Complaint
(Case No. 15-cv-02281 WHA)**

1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

2

**PAGE**

3

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
    598 F.3d 1115 (9th Cir. 2010)................................................................7

4

*Conder v. Home Sav. of Am.*,
    680 F. Supp. 2d 1168 (C.D. Cal. 2010) ..............................................11, 12

5

6

*Consul, Ltd. v. Solide Enters., Inc.*,
    802 F.2d 1143 (9th Cir. 1986)................................................................9

7

8

*Cullen v. Netflix, Inc.*,
    880 F. Supp. 2d 1017 (N.D. Cal. 2012) ................................................20

9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010)..............................................................8, 12

10

11

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008).............................................................................7

12

13

*Dowell v. Biosense Webster, Inc.*,
    179 Cal. App. 4th 564 (2009) ..............................................................14

14

*EduMoz, LLC v. Republic of Mozambique*,
    968 F. Supp. 2d 1041 (C.D. Cal. 2013) ...............................................11

15

16

*Edwards v. Arthur Andersen LLP*,
    44 Cal. 4th 937 (2008) ........................................................................14

17

18

*Farhang v. Indian Institute of Technology*,
    No. C-08-02658 RMW, 2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1,
    2010) ...............................................................................................24, 25

19

20

*G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., Inc.*,
    958 F.2d 896 (9th Cir. 1992).................................................................16

21

22

*Gautier v. Gen. Tel. Co.*,
    234 Cal. App. 2d 302 (1965).................................................................11

23

*Hatchwell v. Blue Shield of Cal.*,
    198 Cal. App. 3d 1027 (1988)................................................................9

24

25

*Hurtado v. Super. Ct.*,
    11 Cal. 3d 574 (1974) ...........................................................................9

26

27

*In re Glenfed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994).................................................................19

28

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE

*Jensen v. Quality Loan Serv. Corp.*,
  702 F. Supp. 2d (E.D. Cal. 2010)...........................................................................21

*Jobscience, Inc. v. CVPartners, Inc.*,
  No. C 13-04519 WHA, 2014 U.S. Dist. LEXIS 26371 (N.D. Cal. Feb. 28,
  2014) ......................................................................................................................18

*K.C. Multimedia, Inc. v. Bank of Am. Tech & Ops, Inc.*,
  171 Cal. App. 4th 939 (2009) .........................................................................22, 25

*Karo v. San Diego Symphony Orchestra Ass'n*,
  762 F.2d 819 (9th Cir. 1985)..................................................................................10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).................................................................................8

*Kirst v. Silna*,
  103 Cal. App. 3d 759 (1980)...................................................................................10

*Kolani v. Gluska*,
  64 Cal. App. 4th 402 (1998) ...................................................................................14

*Kremen v. Cohen*,
  337 F.3d 1024 (9th Cir. 2003)..........................................................................16, 17

*Kruso v. Int'l Tel. & Tel. Corp.*,
  872 F.2d 1416 (9th Cir. 1989)..................................................................................9

*Layton v. Ocwen Loan Servicing, LLC*,
  No. EDCV 15-840-GW (Ex), 2015 U.S. Dist. LEXIS 97097 (C.D. Cal. July
  23, 2015) ...............................................................................................................9, 10

*Lifeline Food Co. v. Gilman Cheese Corp.*,
  No. 5:15-cv-00034-PSG, 2015 U.S. Dist. LEXIS 64155 (N.D. Cal. May 15,
  2015) ..................................................................................................................23, 24

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................12

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...................................................................................................7

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions*,
  No. 07-912 IEG (BLM), 2007 U.S. Dist. LEXIS 77132 (S.D. Cal. Oct. 16,
  2007) ........................................................................................................................13

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

v.

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**PAGE**

*Meyer v. Wells Fargo Bank*,
   No. C 13-03727, 2014 U.S. Dist. LEXIS 21368 (N.D. Cal. Feb. 19, 2014)................8, 18, 19

*MobiApps, Inc. v. Quake Global, Inc.*,
   No. 06cv1745-LAB (JMA), 2007 U.S. Dist. LEXIS 34681 (S.D. Cal. May 9,
   2007) .....................................................................................................................................18

*Morning Star Packing Co. v. SK Foods, L.P.*,
   754 F. Supp. 2d 1230 (E.D. Cal. 2010)................................................................................21

*Novelposter v. Javitch Canfield Grp.*,
   No. 13-cv-05186-WHO, 2014 U.S. Dist. LEXIS 156268 (N.D. Cal. Nov. 4,
   2014) ...................................................................................................9, 10, 11, 15

*Oracle Corp. v. DrugLogic, Inc.*,
   No. C-11-00910-JCS, 2011 U.S. Dist. LEXIS 133642 (N.D. Cal. Nov. 16,
   2011) .....................................................................................................................................21

*People ex rel. Lockyer v. Brar*,
   134 Cal. App. 4th 659 (2005) ...............................................................................................20

*Rashtian v. Allstate Ins. Co.*,
   No. CV-02-01138-EFS, 2003 U.S. Dist. LEXIS 1840 (C.D. Cal. Feb. 6, 2003) ...............8, 12

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012).................................................................................................8

*Robert Half Int'l, Inc. v. Ainsworth*,
   68 F. Supp. 3d 1178 (S.D. Cal. 2014) ..................................................................................14

*Schulz v. Cisco WebEx, LLC*,
   No. 13-cv-04987-BLF, 2014 U.S. Dist. LEXIS 69885 (N.D. Cal. May 20,
   2014) .....................................................................................................................................12

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ...............................................................................22, 23, 24

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998)...............................................................................................8

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)..................................................................................................................7

*Sunpower Corp. v. SolarCity Corp.*,
   No. 12-CV-00694-LHK, 2012 U.S. Dist. LEXIS 176284 (N.D. Cal. Dec. 11,
   2012) .............................................................................................................................22, 23

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE

*Swinerton Builders v. Am. Home Assur. Co.*,
   No. C-12-6047 EMC, 2013 U.S. Dist. LEXIS 36352 (N.D. Cal. Mar. 15, 2013) ...................12

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008)........................................................................................20, 21

*Thompson v. Impaxx, Inc.*,
   113 Cal. App. 4th 1425 (2003) ................................................................................................15

*Top Agent Network, Inc. v. Zillow, Inc.*,
   No. 14-cv-04769-RS, slip op. (N.D. Cal. Aug. 6, 2015)....................................................23, 25

*Travelers Cas. & Sur. Co. v. Amoroso*,
   No. C 03-5746 PJH, 2004 U.S. Dist. LEXIS 17604 (N.D. Cal. Aug. 24, 2004) .....................13

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003)..............................................................................................8, 19

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003)................................................................................................8, 9

*Wayne Merritt Motor Co. v. N.H. Ins. Co.*,
   No. 11-cv-01762-LHK, 2011 U.S. Dist. LEXIS 122320 (N.D. Cal. Oct. 21,
   2011) .......................................................................................................................................19

*White v. SSA*,
   No. 14-cv-05604-JST, 2015 U.S. Dist. LEXIS 82193 (N.D. Cal. June 24,
   2015) .......................................................................................................................................17

*Williams v. Wells Fargo Bank*,
   No. EDCV 13-2075-JUS, 2014 U.S. Dist. LEXIS 17215 (C.D. Cal. Jan. 27,
   2014) .......................................................................................................................................21

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004).....................................................................................................7

**Statutes**

California Business and Professions Code
   § 16600................................................................................................................3, 14, 15, 17
   § 16601.........................................................................................................................................14
   § 16602.5.....................................................................................................................................14
   § 17200.............................................................................................................................1, 7, 20
   § 17500.........................................................................................................................................20

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**PAGE**

Cal. Civ. Code
§ 3426 .................................................................................................................2
§ 3426.1 .........................................................................................................21, 22
§ 3426.3 ...............................................................................................................22
§ 3426.7 ...............................................................................................................22

California Code of Civil Procedure
§ 457 ...................................................................................................................12
§ 1559 ...................................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure
9(b) ....................................................................................................... *passim*
12(b)(1) ................................................................................................. *passim*
12(b)(6) ........................................................................................................1, 8, 12

Cooley LLP
Attorneys At Law
Palo Alto

### NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 29, 2015 at 8:00 a.m., or as soon thereafter as this motion may be heard in Courtroom 8, 19th Floor, of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, defendants Palmer Luckey and Oculus VR, LLC ("OculusVR") will and hereby do move, under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and (b)(6), to dismiss the First Amended Complaint ("FAC") filed by plaintiff Total Recall Technologies ("TRT") on August 31, 2015.   This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the pleadings and papers on file in this matter; and such other matters as may be presented to the Court at the hearing.

### STATEMENT OF RELIEF SOUGHT

Defendants seek dismissal of the complaint under Rules 12(b)(1) and 12(b)(6) for lack of standing and failure to state a claim.

### STATEMENT OF ISSUES TO BE DECIDED

**1.**    Whether the FAC should be dismissed for lack of subject matter jurisdiction because TRT lacks Article III standing to pursue claims arising from an alleged written contract to which it is not a party or designated third party beneficiary.

**2.**    Whether TRT's breach of contract claim should be dismissed for failure to state a claim upon which relief may be granted.

**3.**    Whether TRT's claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of its breach of contract claim.

**4.**    Whether TRT fails to state a conversion claim where it has not alleged a protectable property interest of which it was wrongfully dispossessed.

**5.**    Whether TRT fails to state a constructive fraud claim where it has not alleged a confidential relationship with either Defendant or pleaded its claim with Rule 9(b) particularity.

**6.**    Whether TRT's claim under California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200 *et seq.*, should be dismissed for failure to state a claim upon which relief may be granted.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

**7.**     Whether TRT fails to state a common law unfair competition claim where it has not alleged that Defendants sought to trade on TRT's name or marketplace reputation.

**8.**     Whether TRT's conversion, constructive fraud, UCL and common law unfair competition claims are superseded in whole or in part by the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code section 3426 *et seq.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

In a brazen attempt to secure for itself a stake in OculusVR's recent multi-billion dollar acquisition by Facebook, TRT has filed this lawsuit against OculusVR and one of its co-founders, Palmer Luckey.  TRT alleges that Luckey has breached a two-page nondisclosure agreement that purportedly obligated him to build a prototype virtual reality headset for TRT and to keep his work confidential by monetizing the headset design and passing it off as OculusVR's own product, the Oculus Rift.  The fatal flaw in TRT's case, as Defendants pointed out in their motion to dismiss the original complaint, is that TRT has no rights under the nondisclosure agreement, and it would have no legitimate claim to the Rift technology even if it did.

TRT purports to be a general partnership between two individuals, Thomas Seidl and Ron Igra.  The agreement upon which TRT's claims are based was entered between Seidl and Luckey in August 2011 (the "Seidl/Luckey Contract" or "Contract").  TRT is not a party or signatory to the Seidl/Luckey Contract, and is nowhere mentioned in it.  Moreover, none of the new allegations in the First Amended Complaint ("FAC") address, much less remedy, this fundamental defect.  As a result, TRT lacks Article III standing to pursue any of its contract or related tort and unfair competition claims, and the entire FAC should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

Dismissal under Rule 12(b)(6) is also appropriate.  TRT's contract claims are premised on Luckey's alleged breach of the "Exclusivity" provision in the Seidl/Luckey Contract, which purportedly (i) precluded Luckey from ever assisting anyone but Seidl in building any virtual reality head mounted display, or "HMD," and (ii) required Luckey to keep confidential all information pertaining to any HMD built for Seidl, including Luckey's own drawings, part

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

supplier lists, and know-how.  The "Exclusivity" provision stated explicitly, however, that it applied only if Seidl paid Luckey at least $10,000 in royalties by July 1, 2012.  Although Defendants repeatedly underscored this provision in their prior motion to dismiss, the FAC still fails to allege that Luckey received any such payment under the Contract.  Thus, the exclusivity provision was neither triggered nor breached, and TRT cannot claim otherwise.  Independent of that fatal pleading deficiency, the "Exclusivity" provision is void as a matter of law under California Business and Professions Code section 16600 as an unlawful restraint on trade.

TRT similarly fails to plead valid claims for conversion, constructive fraud, or unfair competition.  Absent an enforceable exclusivity provision, TRT cannot plead facts establishing that anything it claims Luckey did (*e.g.*, allegedly using the prototype HMD design to make and monetize the Rift, or sharing details about it with the public) was wrongful in any way.  This is true even if one assumes, as TRT alleges, that the prototype HMD and Rift are based on the same design (which is not the case): TRT fails to identify any confidential information that it claims to have provided Luckey that was incorporated into the Rift.  Moreover, to the extent these tort claims are premised on Luckey's alleged improper use and disclosure of the prototype HMD design (or any other "confidential" information he allegedly received or generated in the course of his development of the prototype HMD), such claims are indistinguishable from a claim for trade secret misappropriation and, as such, are preempted by CUTSA.

The entire FAC should be dismissed with prejudice.

## II.     RELEVANT ALLEGATIONS

### A.     The Parties to this Lawsuit

TRT alleges that it is a Hawaiian partnership formed in December 2010 between two individuals, Ron Igra and Thomas Seidl, to develop "immersive 3D technology."  (FAC ¶¶ 1–3, 9, Dkt. 40.)  Palmer Luckey is a California resident and co-founder of Oculus LLC, which later incorporated as Oculus VR, Inc. and then reregistered as defendant Oculus VR, LLC, a Delaware limited liability company headquartered in Menlo Park, California.  (*Id.* ¶ 4.)  OculusVR makes the Rift, a next-generation virtual reality headset that uses state-of-the-art displays, optics and tracking systems to provide incredible visual fidelity and an immersive, wide field-of-view.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

Together, these advanced technologies enable the sensation of "presence"—the feeling as though the person wearing the Rift is actually present in the scene being rendered, whether that is an action video game setting, a 3D movie, or a room with friends.  (*Id.* ¶¶ 24–25, 27–28, 31–32.)

**B.      The Seidl/Luckey Contract**

In December 2010, Seidl contacted Luckey to solicit his assistance in developing an HMD that could be used with Seidl's 3D camera.  (*Id.* ¶¶ 9–12.)  In April 2011, Seidl asked Luckey to build a prototype HMD with four attributes: (1) immersive stereoscopic 3D rendering; (2) an ultra-wide field of view such that the user could not see the screen's edges; (3) head tracking with low latency; and (4) a price point attractive to the consumer mass market.  (*Id.* ¶¶ 10, 12, 14.) TRT does not allege that Luckey agreed to keep any of these communications in confidence.

On April 8, 2011, Seidl emailed Luckey that he expected exclusive rights to the prototype since he would be paying for the parts: "Just so we are on the same page.  With the initial payment to you I would like exclusive rights to your design unless we decide not to use it."  (*Id.* ¶ 14.)  Luckey responded, "Yes, we are on the same page here. . . . I am sure we can put together a contract of some sort to finalize it all."  (*Id.* ¶ 15.)  Three days later, Igra allegedly sent $798 to Luckey via PayPal.  (*Id.* ¶ 16.)[1]

Nearly four months later, Seidl and Luckey entered into a written "Nondisclosure, exclusivity and payments agreement," dated August 1, 2011 (the "Seidl/Luckey Contract" or "Contract").  (*Id.* ¶¶ 14–15, FAC Ex. A, Dkt. 40-1.)  Notably, neither TRT nor Igra is mentioned anywhere in the Contract.  Nevertheless, TRT's allegations in the FAC implicate the following three provisions.

First, an "Integration" clause provides that the Contract "expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals,

---

[1] The FAC alleges "on information and belief" that Luckey somehow should have known as of the date of this payment that "Igra was Seidl's partner in connection with development of the [HMD] . . . ."  (*Id.*)  However, the FAC omits any allegation that Igra ever communicated with Luckey, does not identify the email address or account name under which the payment was made, and does not plead any other facts to explain how Luckey might have gleaned the nature of Igra's alleged relationship to Seidl or the existence of TRT.

Cooley LLP
Attorneys At Law
Palo Alto

4.

Defendants' Motion to Dismiss First
Amended Complaint
(Case No. 15-cv-02281 WHA)

agreements, representations, and understandings." (FAC Ex. A ¶ 7.)  This clause further states that the Contract "may not be amended except in a writing signed by both parties." (*Id.*)

Second, the Contract contains a confidentiality provision requiring Luckey (defined as the "Receiving Party") to keep confidential any "Confidential Information" he received from Seidl (defined as the "Disclosing Party"), and to use it for Seidl's "sole and exclusive benefit." (*Id.* ¶ 3.)  Any Confidential Information provided by Seidl was to be labeled as "Confidential" if transmitted in writing, or promptly documented in writing as such if transmitted orally. (*Id.* ¶ 1.) Paragraph 2 of the Contract sets forth "Exclusions from Confidential Information" and exempts Luckey from any "obligations under this Agreement" as to "information that is (a) publicly known at the time of disclosure or subsequently becomes publicly known through no fault of [Luckey]; (b) discovered or created by [Luckey] before disclosure by [Seidl]; (c) learned by [Luckey] through legitimate means other than from [Seidl] or [Seidl's] representatives; or (d) is disclosed by [Luckey] with [Seidl's] prior written approval." (*Id.* ¶ 2.)

Third, the Contract's "Exclusivity" provision contemplated that Luckey would build a prototype HMD for Seidl.  Subject to the exclusions of paragraph 2 of the Agreement, Luckey was to keep all details of the prototype HMD confidential and refrain from developing or aiding any other person in developing an HMD, but *only if* he received at least $10,000 in royalties from Seidl's sale of the HMD by July 1, 2012.  The provision states:

> 9.  Exclusivity.  The Receiving party [Luckey] shall keep all details including drawings and part suppliers of the Head Mounted Display confidential and shall not aid any other person or entity in the design of a Head Mounted Display other than the disclosing party [Seidl].  (sic)  Unless within a twelve month period from 1st july 2011 [Luckey] has not received a minimum payment in royalties of 10,000 US dollars by [Seidl].  The exclusivity shall remain in place for a period of 10 years providing a minimum of 10,000 US dollars is paid from [Seidl] to [Luckey] per annum.

(*Id.* ¶ 9 (all grammatical and other drafting errors in original).)

TRT alleges, without supporting facts, that Seidl entered the Seidl/Luckey Contract "on behalf of TRT." (FAC ¶ 18.)  That allegation, however, is contradicted by the opening paragraph of the Contract itself, which states that it was "entered into by and between Thomas Seidl . . . and Palmer Luckey." (FAC Ex. A at 1.)  The Contract does not reference any alleged partnership

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1    between Igra and Seidl or state that Seidl was entering the Contract on behalf of anyone other

2    than himself.  And TRT does not allege that Seidl informed Luckey that he was entering into a

3    contract with anyone other than Seidl, or that Luckey assented to such an arrangement.  Nor does

4    TRT allege any other facts from which an inference of Luckey's knowledge could arise.

5           **C.    Seidl's and Luckey's Performance under the Seidl/Luckey Contract**

6           After executing the Contract, Luckey allegedly built and shipped the prototype HMD to

7    Seidl on August 23, 2011.  (FAC ¶ 20.)  TRT alleges that the prototype "was later returned to

8    Luckey for further improvement" and that TRT provided "confidential feedback and information"

9    to Luckey to improve its design.  (*Id.* ¶¶ 20–21.)  TRT also alleges that Luckey never returned

10   "*[t]hat* Head Mounted Display," leaving unpleaded whether Seidl ever requested that Palmer

11   return "that" HMD and whether Luckey sent Seidl a subsequent prototype.  (*Id.* ¶ 20 (emphasis

12   added).)  The FAC does not identify any of the "confidential feedback and information" allegedly

13   provided to Luckey, and does not claim that any such information was designated "Confidential"

14   as required by Paragraph 1 of the Seidl/Luckey Contract.  Nor does the FAC allege that Luckey

15   received any royalties under the Contract, as no such payments were ever made.

16          TRT alleges on information and belief that the HMD prototype Luckey built for Seidl is

17   what became the Oculus Rift.  (*Id.* ¶ 22.)  TRT provides scant basis for its belief, alleging only

18   that the Rift had some of the general characteristics Seidl supposedly requested for the prototype

19   HMD: affordability, high immersion, and a wide field of view.  (*See id.* ¶¶ 10, 24, 27–28.)  TRT

20   alleges that, before the Contract had been in effect for one year, Luckey took steps in preparation

21   to commercialize the Rift by: (1) in April 2012, launching the website oculusvr.com with a high-

22   level description of the Rift; (2) in May 2012, providing a Rift prototype to a videogame

23   developer, who reviewed the Rift online; and (3) in June 2012, pursuing a Kickstarter campaign

24   to obtain funding for the Rift, forming Oculus LLC, and agreeing to work with others to

25   commercialize the Rift.  (*Id.* ¶¶ 23–33.)

26          **D.    Summary of TRT's Claims**

27          Although TRT is not a party to the Seidl/Luckey Contract, it nevertheless asserts a claim

28   against Luckey for breach of that Contract.  (*Id.* ¶¶ 36–41.)  TRT alleges that Luckey breached

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1  the Contract's exclusivity provision by developing and publicly discussing the Oculus Rift.  (*Id.*
2  ¶¶ 22, 37–38.)

3      TRT also attempts to assert a variety of other claims against both Luckey and OculusVR
4  based on the Contract: (1) a conversion claim based on allegations that Defendants converted the
5  HMD prototype Luckey built for Seidl and unspecified related "assets" (*id.* ¶¶ 46, 48); (2) a
6  constructive fraud claim based on Luckey's and TRT's alleged "contractual and personal
7  relationship as evidenced by the parties' Agreement," and concealment of Luckey's alleged intent
8  to breach the Contract's exclusivity provision (*id.* ¶¶ 52–54); and (3) claims for unfair
9  competition under the common law and California Business and Professions Code section 17200
10  *et seq.* (the "UCL") based on allegations that Defendants built and monetized the prototype HMD
11  and passed it off as their "own original product" (*id.* ¶¶ 61, 64).

12  **III.   LEGAL STANDARDS**

13      **A.      Dismissal for Lack of Standing (Rule 12(b)(1))**

14      Article III of the U.S. Constitution limits federal court jurisdiction to actual cases or
15  controversies.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–03 (1998).  "A suit
16  brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III
17  federal court therefore lacks subject matter jurisdiction . . . ."  *Cetacean Cmty. v. Bush*, 386 F.3d
18  1169, 1174 (9th Cir. 2004).  Article III standing addresses whether the plaintiff is the "proper
19  party" to litigate the dispute.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122
20  (9th Cir. 2010).  A plaintiff bears the burden to establish standing by showing: (1) it has suffered
21  a concrete injury-in-fact (2) that is fairly traceable to defendants' challenged conduct and (3) will
22  likely be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61
23  (1992).  A plaintiff must demonstrate standing for each claim and for each form of relief sought.
24  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).  Absent Article III standing, a suit
25  should be dismissed under Rule 12(b)(1).  *Cetacean*, 386 F.3d at 1174 (citing cases).

26      The Court may grant a "facial" Rule 12(b)(1) motion where the complaint's allegations
27  are facially insufficient to invoke federal jurisdiction.  *See Wolfe v. Strankman*, 392 F.3d 358, 362
28  (9th Cir. 2004).  In evaluating a facial standing challenge, the Court need not "accept as true

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1  conclusory allegations which are contradicted by documents referred to in the complaint" or

2  "assume the truth of legal conclusions merely because they are cast in the form of factual

3  allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

4    **B.**  **Dismissal for Failure to State a Claim (Rule 12(b)(6))**

5    A complaint should be dismissed under Rule 12(b)(6) if it fails to allege facts sufficient to

6  state a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ.

7  P. 12(b)(6). "To avoid dismissal, the complaint must provide 'more than labels and conclusions,

8  and a formulaic recitation of the elements of a cause of action will not do.'" *In re Rigel Pharms.,*

9  *Inc. Sec. Litig.*, 697 F.3d 869, 875 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555). It is not

10  enough that a claim be possible or conceivable; it must be "plausible." *Twombly*, 550 U.S. at 570;

11  *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) ("Where

12  a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

13  the line between possibility and 'plausibility of entitlement to relief.''"). In determining whether

14  a complaint states a plausible claim, the Court need not "accept as true allegations that contradict

15  exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations

16  that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

17  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Iqbal*, 556 U.S. at

18  679 (conclusory allegations "are not entitled to the assumption of truth"); *Rashtian v. Allstate Ins.*

19  *Co.*, No. CV-02-01138-EFS (SHx), 2003 U.S. Dist. LEXIS 1840, at *2 (C.D. Cal. Feb. 6, 2003)

20  (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998)) (express terms

21  of contract attached to the complaint control, defeating contradictory allegations in the complaint).

22    <u>Heightened Pleading Requirements</u>: Claims alleging fraud trigger heightened pleading

23  requirements under Rule 9(b). *Meyer v. Wells Fargo Bank*, No. C 13-03727, 2014 U.S. Dist.

24  LEXIS 21368, at *8 (N.D. Cal. Feb. 19, 2014); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

25  (9th Cir. 2009). Rule 9(b) requires a plaintiff to "state with particularity the circumstances

26  constituting fraud or mistake." To satisfy this requirement, plaintiff must plead the "who, what,

27  when, where, and how of the misconduct charged." *Meyer*, 2014 U.S. Dist. LEXIS 21368, at *7

28  (quoting *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Cooley LLP
Attorneys At Law
Palo Alto

8.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

## IV.    THE FAC SHOULD BE DISMISSED FOR LACK OF STANDING

TRT lacks Article III standing to assert any of its claims.  Because TRT is neither a party to, nor a third-party beneficiary of, the Seidl/Luckey Contract that gives rise to this suit, it cannot establish the injury-in-fact necessary to bring claims premised on the Contract.  *See Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1427 (9th Cir. 1989) (nonparties to the relevant contract lacked standing to sue defendants for, *inter alia*, fraudulent inducement and intentional interference with business relationship); *Novelposter v. Javitch Canfield Grp.*, No. 13-cv-05186-WHO, 2014 U.S. Dist. LEXIS 156268, at *18–20 (N.D. Cal. Nov. 4, 2014) (sustaining facial Rule 12(b)(1) standing challenge and dismissing contract, tort and unfair competition claims as counterclaimant was not a party to, or third-party beneficiary of, the contract at issue).

First, the FAC attaches and incorporates the Seidl/Luckey Contract, which demonstrates conclusively that TRT is not a party.  The Contract is between Luckey and Seidl.  It does not state, as TRT alleges, that Seidl entered the Contract "on behalf of TRT."  (FAC ¶ 18.)  In fact, the Contract contains no mention of TRT whatsoever.  (FAC Ex. A.)  Under California law,[2] "someone who is not a party to the contract has no standing to enforce [it]."  *Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988); *see also Warren*, 328 F.3d at 1139 (on facial standing challenge, court need not accept as true conclusory allegations that are contradicted by the complaint's exhibits); *Layton v. Ocwen Loan Servicing, LLC*, No. EDCV 15-840-GW (Ex), 2015 U.S. Dist. LEXIS 97097, at *3–4, *8–9 (C.D. Cal. July 23, 2015) (plaintiff lacked standing where contract attached to his complaint showed that he was not a party to that contract).

Second, TRT is not a third-party beneficiary of the Seidl/Luckey Contract.  California Civil Code section 1559 provides that "[a] contract, made *expressly* for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  (Emphasis added.)  A third party qualifies as a beneficiary under a contract only "if the parties intended to

---

[2]  Federal courts in California apply California's choice-of-law rules.  *Consul, Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1146–47 (9th Cir. 1986).  Those rules call for application of California substantive law by default, unless a party timely invokes another state's law.  *Hurtado v. Super. Ct.*, 11 Cal. 3d 574, 581 (1974).  Here, the contract was to be performed by Luckey in California, the conduct at issue allegedly took place in California (*see* FAC ¶¶ 4–5), and TRT has asserted California state law claims (*id.* ¶¶ 50, 59–66).  Thus, California law governs.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1   benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego*

2   *Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985) (citing *Kirst v. Silna*, 103 Cal.

3   App. 3d 759, 763 (1980)).  That is, the claimed beneficiary must either be expressly named in the

4   contract or demonstrate that it is a member of a beneficiary class expressly referenced in or

5   contemplated by the contract.  *Karo*, 762 F.2d at 821–22.  Here, the Seidl/Luckey Contract makes

6   no mention of TRT or any purported "partnership."  (FAC Ex. A.)  Nor has TRT alleged that

7   Luckey and Seidl agreed and intended that the Contract would benefit TRT.  (FAC ¶ 18.)  Thus,

8   TRT cannot establish that it is a third-party beneficiary of the Seidl/Luckey Contract.

9        In the FAC, TRT adds a single new allegation in support of its claim that it is the real

10   party in interest under the Seidl/Luckey Contract: the FAC alleges "on information and belief"

11   that Igra directed $798 to Luckey via PayPal on April 11, 2011, and that this payment should

12   have tipped Luckey off that "Igra was Seidl's partner in connection with development of the

13   [HMD] . . . ."  (*Id.* ¶ 16.)  Even if that allegation were plausible (the FAC lacks any of the details

14   that might make it so), the fact that Luckey and Seidl nevertheless went on to sign an integrated

15   contract that contains no mention of Igra, let alone TRT, contradicts any assertion that Luckey (or

16   Seidl) intended TRT to be a third party beneficiary.  Similarly, the fact that Igra and Seidl

17   allegedly agreed in April 2010 that TRT would have exclusive rights to the prototype HMD (*id.* ¶

18   14), is of no help to TRT.  There is no allegation that this purported agreement was ever

19   communicated to Luckey, and it does not appear in the integrated Contract, which "supersede[d]

20   all prior . . . agreements . . . and understandings."  (FAC Ex. A ¶ 7.)

21        Because TRT is not a party or third-party beneficiary, it is not in contractual privity with

22   Luckey and therefore cannot show an injury-in-fact arising from Luckey's alleged breach of the

23   Seidl/Luckey Contract.  Accordingly, TRT's contract claims should be dismissed under Rule

24   12(b)(1) for lack of Article III standing.  *See Novelposter*, 2014 U.S. Dist. LEXIS 156268, at

25   *18–20 (collecting cases); *Carranza v. GEICO Gen. Ins. Co.*, No. 3:13-cv-1932-HZ, 2014 U.S.

26   Dist. LEXIS 170621, at *5–9 & n.2 (D. Or. Dec. 9, 2014) (sustaining Rule 12(b)(1) challenge for

27   lack of Article III standing where contract documents showed that plaintiff lacked contractual

28   privity with moving defendants); *Layton*, 2015 U.S. Dist. LEXIS 97097, at *3–4, *8–9 (same).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1      The same defect requires dismissal of TRT's tort claims for conversion and constructive

2 fraud, as well as the UCL and common law unfair competition claims, all of which rely on the

3 Seidl/Luckey Contract.  The conversion claim alleges that Luckey converted the prototype HMD

4 that he built under the Contract.  (FAC ¶ 46.)  The constructive fraud claim is based on the

5 parties' alleged "contractual and personal relationship as evidenced by the [Contract]" and

6 Luckey's alleged failure to disclose his intent to breach the Contract's exclusivity provision.  (*Id.*

7 ¶¶ 52–54.)  And both of the unfair competition claims are based on allegations that Defendants

8 passed off the prototype HMD Luckey built for Seidl under the Contract as Defendants' own

9 product and monetized it for their own benefit in violation of the Contract's exclusivity provision.

10 (*Id.* ¶¶ 60–66.)  As a stranger to the Contract, TRT lacks Article III standing to bring any of these

11 claims "based on the contractual relationship."  *Ambers v. Wells Fargo Bank,* No. 13-cv-03940

12 NC, 2014 U.S. Dist. LEXIS 28291, at *13–15 (N.D. Cal. Mar. 3, 2014) (dismissing fraud and

13 UCL claims for lack of standing as only plaintiff's husband, not plaintiff, was party to the

14 mortgage agreements at issue); *see also Novelposter*, 2014 U.S. Dist. LEXIS 156268, at *21–22

15 (litigant lacked Article III standing to assert tort claims or UCL claim based on injuries allegedly

16 arising from breach of a contract to which it was not a party); *EduMoz, LLC v. Republic of

17 Mozambique*, 968 F. Supp. 2d 1041, 1047, 1071–72 (C.D. Cal. 2013) (dismissing constructive

18 fraud claim for lack of Article III standing); *Brockington v. J.P. Morgan Chase Bank, N.A.*, No.

19 C-08-05795 RMW, 2009 U.S. Dist. LEXIS 56622, at *8–9 (N.D. Cal. July 1, 2009) (dismissing

20 tort claims).  Thus, like the contract claims, TRT's claims for conversion, constructive fraud, and

21 unfair competition are facially defective and should be dismissed pursuant to Rule 12(b)(1).

22 **V.**    **THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

23     **A.**    **TRT Cannot State a Claim for Breach of Contract (Count I)**

24      To state a claim for breach of contract against Luckey, TRT must plead: (1) the existence

25 of a contract with Luckey to which it was a party; (2) TRT's performance or excuse for non-

26 performance; (3) Luckey's breach; and (4) TRT's damages.  *Gautier v. Gen. Tel. Co.*, 234 Cal.

27 App. 2d 302, 305 (1965); *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal.

28 2010).  TRT's claim fails for multiple independent reasons.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

**DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)**

**1.      As a stranger to the Contract, TRT cannot plead the first, second or fourth elements of a claim for its breach**

First, as established in Section IV, *supra*, TRT is not a party to or third-party beneficiary of the Seidl/Luckey Contract.  As such, TRT cannot satisfy the threshold element of a claim for breach of contract.  *See Schulz v. Cisco WebEx, LLC*, No. 13-cv-04987-BLF, 2014 U.S. Dist. LEXIS 69885, at *10–14 (N.D. Cal. May 20, 2014) (dismissing contract and derivative tort claims under Rule 12(b)(6) where plaintiff was neither a contracting party nor intended third-party beneficiary); *Conder*, 680 F. Supp. 2d at 1174 (plaintiff could not state elements of contract claim where he was not in contractual privity with defendant).

Second, although TRT asserts that it "performed all conditions, covenants, and promises required to be performed on its part" (FAC ¶ 39), the Court need not accept this conclusory allegation as true.  *See Daniels-Hall*, 629 F.3d at 998 (allegations that contradict exhibits attached to the complaint are not entitled to presumption of truth); *see also Rashtian*, 2003 U.S. Dist. LEXIS 1840 at *2 (express terms of contract trump conflicting allegations in complaint).  As a non-party, TRT has no obligations under the Contract, so the allegation is inherently nonsensical.  Moreover, TRT fails to allege that Seidl—the actual contracting party—performed his obligations under the Contract.  TRT cannot maintain its breach of contract claim absent such allegations. Cal. Code Civ. Proc. ("CCP") § 457.

Third, TRT fails to adequately plead damages.  TRT baldly asserts that, "[a]s a result of Luckey's contractual breach, TRT has been injured in an amount to be determined."  (FAC ¶ 40.) But TRT does not explain how it was damaged by the alleged breach of a contract to which it was not a party or beneficiary.   "[C]onclusory allegations" of damages, such as TRT's, "are insufficient to survive a motion to dismiss."  *Swinerton Builders v. Am. Home Assur. Co.*, No. C-12-6047 EMC, 2013 U.S. Dist. LEXIS 36352, at *3 n.1 (N.D. Cal. Mar. 15, 2013) (citing *Iqbal*, 556 U.S. at 678); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (dismissing contract claim under California law for failure to plead "appreciable and actual damage").

Cooley LLP
Attorneys At Law
Palo Alto

12.

Defendants' Motion to Dismiss First
Amended Complaint
(Case No. 15-cv-02281 WHA)

## 2.   TRT fails to adequately plead any breach by Luckey

TRT also fails to plead facts sufficient to establish an actionable breach by Luckey. TRT's claim for breach of contract is based solely on Luckey's alleged breach of the Contract's "Exclusivity" provision, which states that Luckey:

> shall keep all details including drawings and part suppliers of the [HMD] confidential and shall not aid any other person or entity in the design of a[n HMD] other than [Seidl].  Unless within a twelve month period from 1st july 2011 [Luckey] has not received a minimum payment in royalties of 10,000 US dollars by [Seidl].  The exclusivity shall remain in place for a period of 10 years providing a minimum of 10,000 US dollars is paid from [Seidl] to [Luckey] per annum.

(FAC ¶ 37, FAC Ex. A ¶ 9 (all grammatical and other drafting errors in original).)  TRT alleges that Luckey breached this provision by: (1) using the design of the prototype HMD to build the Rift for his own benefit and that of Oculus; and (2) disclosing unidentified information about the Rift on the web and to third parties.  (FAC ¶ 38.)  TRT's claim for breach of this provision fails because it is both inapplicable and void.[3]

First, under the express terms of the Seidl/Luckey Contract, the obligations to keep all details of the prototype HMD confidential and to refrain from aiding any person other than Seidl in the design of an HMD applied if, *and only if*, Seidl paid Luckey $10,000 by July 1, 2012. (FAC Ex. A ¶ 9.)  Although Defendants explicitly identified this requirement in their original motion to dismiss, TRT does not allege (nor can it) that Luckey was ever paid a single penny in royalties under the Contract, either before or after July 1, 2012.  Accordingly, TRT fails to plead facts sufficient to show that the exclusivity provision ever became effective.

---

[3] It is unclear whether TRT seeks to hold Luckey liable for alleged promises made prior to his entering the Contract.  (*See, e.g.*, FAC ¶¶ 14–17.)  If so, those claims are subject to dismissal for the additional reason that the Contract's "Integration" provision explicitly states that the Contract expresses the parties' "complete understanding with respect to the subject matter" and supersedes all prior agreements.  (FAC Ex. A ¶ 7); *see also Mat-Van, Inc. v. Sheldon Good & Co. Auctions*, No. 07-912 IEG (BLM), 2007 U.S. Dist. LEXIS 77132, at *15–16 (S.D. Cal. Oct. 16, 2007) (dismissing breach of contract claim based on defendants' alleged promises prior to written integrated agreement); *Travelers Cas. & Sur. Co. v. Amoroso*, No. C 03-5746 PJH, 2004 U.S. Dist. LEXIS 17604, at *7–8 (N.D. Cal. Aug. 24, 2004) (dismissing implied covenant claim based on alleged verbal contracts, which were invalid in light of written agreement's integration clause); *Amc Tech. v. Cisco Sys.*, No. 11-cv-03403 PSG, 2012 U.S. Dist. LEXIS 6487, at *17–19 (N.D. Cal. Jan. 20, 2012) (dismissing promissory estoppel claim based on defendant's promises to plaintiff prior to execution of integrated written contract).

Cooley LLP
Attorneys At Law
Palo Alto

13.

Defendants' Motion to Dismiss First
Amended Complaint
(Case No. 15-cv-02281 WHA)

Second, even if the exclusivity provision were triggered, TRT's claim would still fail because its terms are void as a matter of law under California Business and Professions Code section 16600. Section 16600 "expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice." *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009). It voids virtually all "contract[s] by which *anyone* is restrained from engaging in a lawful profession, trade, or business of any kind" to any extent. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945 (2008).[4]

Here, the purported obligation not to build an HMD for any party other than Seidl is void because it would restrain Luckey from engaging in the lawful business of building HMDs. *See Kolani v. Gluska*, 64 Cal. App. 4th 402, 407 (1998) (affirming dismissal of contract claim, without leave to amend, because non-compete clause was invalid under § 16600); *Robert Half Int'l, Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1184–86 (S.D. Cal. 2014) (dismissing contract claims based on alleged violation of contractual provision restricting defendants' ability to practice their profession); *cf. Dowell*, 179 Cal. App. 4th at 579 (court can determine invalidity of facially void non-compete provision as a matter of law) (collecting cases).

Similarly, the purported requirement that Luckey "keep all details including drawings and part suppliers of the Head Mounted Display confidential" also runs afoul of Section 16600. The Contract expressly defines Confidential Information to exclude, *inter alia*, information that Luckey independently knew or received from third parties or that was publicly available, and states that his "obligations under this Agreement do not extend" to such information. (FAC Ex. A ¶ 2.) TRT, however, apparently seeks to hold Luckey liable under the exclusivity provision for disclosing unspecified "information" about the prototype HMD, irrespective of whether that information was provided by Seidl (or TRT), and even if the information is exempt from any "obligations under the Agreement" pursuant to Paragraph 2. That is, TRT seeks through the exclusivity provision to usurp Luckey's right to disclose or make use of his own knowledge and

---

[4] Courts uphold anticompetitive covenants like the exclusivity provision only in two narrow situations, neither of which is applicable here: (1) where a person sells the goodwill of a business; or (2) where a partner agrees not to compete in anticipation of the dissolution of his interest in a partnership or LLC. Cal. Bus. & Prof. Code §§ 16601–16602.5; *Edwards*, 44 Cal. 4th at 945–46.

Cooley LLP
Attorneys At Law
Palo Alto

14.

Defendants' Motion to Dismiss First
Amended Complaint
(Case No. 15-cv-02281 WHA)

1    information, and even information in the public domain.  If the Contract can be interpreted to

2    impose such a sweeping confidentiality obligation, it is void under Section 16600, because it

3    would effectively restrain Luckey from making HMDs rather than merely protecting Seidl's or

4    TRT's Confidential Information.  *See Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1430

5    (2003) (holding at pleading stage that under § 16600, defendant could not enforce contractual

6    covenant requiring employees not to use certain information except for defendant's benefit, where

7    that information was not defendant's trade secret or confidential information).

8         The absurdity of TRT's contract claim is best demonstrated by the relief it seeks in this

9    action.  For an alleged payment of $798 to buy parts, TRT appears to claim that Luckey signed

10   away all rights he has to his own inventions and efforts, including the $2 billion that Facebook

11   paid to acquire Oculus.  (*See* Prayer for Relief (seeking compensatory damages, disgorgement, a

12   constructive trust and an accounting).)  And TRT claims entitlement to this relief even though:

13   (1) Luckey received no royalties (or consideration of any kind) for his work under the Contract;

14   (2) TRT does not identify a single item of Confidential Information it claims to have provided to

15   Luckey that went into his development of the HMD prototype or the Rift[5]; and (3) TRT is not

16   even a party to the Contract at issue.  TRT's contract claim is a baseless money grab that finds no

17   support in the facts or the law, and the Court should dismiss it.

18   **B.    TRT Fails To State a Claim for Breach of the Implied Covenant of Good
              Faith and Fair Dealing (Count II)**

19

20        As a non-party to the Luckey/Seidl Contract, TRT can no more plead a claim for breach of

21   the implied covenant than it can plead a claim for breach of the Contract's express terms. (*See*

22   *supra*, §§ IV, V.A.1); *see also Castro v. JPMorgan Chase Bank, N.A.*, No. 14-cv-01539 NC,

23   2014 U.S. Dist. LEXIS 89862, at *8–9 (N.D. Cal. June 30, 2014) (dismissing implied covenant

24   claim as plaintiff could not show that it was a party to a valid contract); *Novelposter*, 2014 U.S.

25

26   ---
     [5] On September 8, 2015, TRT filed its "Identification of Confidential Information" on the public
     docket.  (Dkt. 47.)  Contrary to its title (and in contravention of the Court's Case Management
27   Order), the document fails to identify a single item of confidential information that TRT claims it
     (or Seidl) provided to Luckey.  The parties are in the process of meeting and conferring on this
28   issue, and Defendants anticipate elevating it to the Court's attention pursuant to the Court's
     discovery procedures if it cannot be resolved between the parties.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1   Dist. LEXIS 156268, at *20–21 (collecting cases).  For this reason alone, TRT's claim for breach

2   of the implied covenant of good faith and fair dealing should be dismissed.

3         TRT's implied covenant claim fails for another reason.  Put simply, the law does not

4   imply obligations identical to express ones.  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.

5   App. 3d 1371, 1394–95 (1990) (dismissing implied covenant claim as redundant and superfluous

6   where it merely alleged a breach of the contract's express terms); *Am. Marine Corp. v. Blue*

7   *Shield of Cal.*, No. C 11-00636 WHA, 2011 U.S. Dist. LEXIS 40452, at *7–10 (N.D. Cal. Apr.

8   13, 2011) (Alsup, J.) (same, citing *Careau*, 222 Cal. App. 3d at 1395).  Here, TRT's implied

9   covenant claim is simply a rehash of its failed breach of contract claim.  In essence, TRT alleges

10  that by breaching the express terms of the Seidl/Luckey Contract, Luckey also breached the

11  implied duty of good faith and fair dealing.  (FAC ¶¶ 37–38, 43.)  The implied covenant claim is

12  therefore superfluous and should be dismissed.

13      **C.**    **TRT Fails To State a Claim for Conversion (Count III)**

14        TRT also accuses both Defendants of conversion.  To state a claim for conversion, TRT

15  must allege that (1) it owned or had a right to possess a specific item of property; (2) Defendants

16  wrongfully dispossessed TRT of that property; and (3) TRT was damaged as a result.  *G.S.*

17  *Rasmussen & Assoc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  The FAC

18  fails to adequately plead any of these elements.

19        To adequately allege the first element of a conversion claim, TRT must plead: (1) an

20  "interest capable of precise definition"; (2) that is "capable of exclusive possession or control";

21  and (3) that it has "established a legitimate claim to exclusivity."  *Kremen v. Cohen*, 337 F.3d

22  1024, 1030 (9th Cir. 2003) (holding that a domain name constitutes convertible property in that it

23  is owned by a single registrant who has a legitimate claim to exclude others from using it) (citation

24  omitted).  Here, TRT alleges that Defendants converted, "at a minimum, [] at least one prototype

25  virtual reality Head Mounted Display (and associated components and materials) built for and in

26  conjunction with TRT."  (FAC ¶ 46.)[6]  But fatally, TRT does not plead a "legitimate claim to

27

28  [6] The FAC no longer expressly alleges, as the original complaint did, that Defendants converted
    TRT's "intellectual property" and "technology."  (*Cf.* Compl. ¶¶ 1, 34.)  However, to the extent

Cooley LLP
Attorneys At Law
Palo Alto

16.

**Defendants' Motion to Dismiss First
Amended Complaint
(Case No. 15-cv-02281 WHA)**

exclusivity" over the prototype HMD. *Kremen*, 337 F.3d at 1030. To the contrary, the only mechanism by which TRT claims rights to the prototype HMD is the "Exclusivity" provision, which is both inapplicable and void under Business and Professions Code section 16600. As a result, TRT has not plausibly alleged that TRT (or even Seidl) owned or had any right – much less an exclusive one – to possess the prototype HMD.

TRT also fails to allege that either Defendant wrongfully dispossessed TRT of the prototype HMD. TRT acknowledges that Luckey sent the prototype to Seidl, who "later returned [it] to Luckey for further improvement." (FAC ¶ 20.) The FAC does not allege, however, that Seidl (or TRT) ever demanded that Luckey return that particular prototype or that Luckey was obligated, or refused, to do so. Indeed, the Contract is silent on the question of who would own the physical prototype in the event that Seidl failed to pay royalties. Thus, TRT has failed to plead that Defendants wrongfully dispossessed TRT of any property to which it has a legitimate claim to exclusive ownership or that TRT suffered any resulting damages. Its conversion claim should be dismissed. *See White v. SSA*, No. 14-cv-05604-JST, 2015 U.S. Dist. LEXIS 82193, at *19 (N.D. Cal. June 24, 2015) (dismissing conversion claim for failure to plead sufficient facts to allow the court to reasonably infer that Defendants were involved in alleged conversion); *Arrieta v. County of Kern*, No. 1:14-cv-00400-LJO-JLT, 2014 U.S. Dist. LEXIS 84339, at *34 (E.D. Cal. June 18, 2014) (dismissing conversion claim because complaint lacked facts establishing that plaintiff had been dispossessed of its property).[7]

---

that TRT seeks to hold Defendants liable for allegedly converting not just the physical HMD prototype but also its design (*see, e.g.*, FAC ¶¶ 14, 22, 48), the claim is preempted by CUTSA. (*See* Section V.G, *infra*.)

[7] In addition to the foregoing deficiencies, TRT's conversion claim also appears to be untimely. A claim for conversion of tangible property runs from the date of the alleged conversion, even if the plaintiff is ignorant of it. Cal. Code Civ. Proc. § 338(c); *Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 561 (1956). Here, TRT alleges that Luckey sent the prototype HMD to Seidl in August 2011, that it was sent back to Luckey for improvements in the second half of 2011 and that Luckey never sent "that" prototype back to Seidl. (FAC ¶¶ 20–21.) Because the statute of limitations bars a claim for conversion arising before May 20, 2012 (three years prior to the filing of the complaint), the conversion claim appears to be time-barred.

Cooley LLP
Attorneys At Law
Palo Alto

17.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1

**D.     TRT Fails To State a Claim for Constructive Fraud (Count IV)**

2     TRT's constructive fraud claim is similarly deficient.  "To state a claim for constructive

3 fraud under California law, a party must allege: (1) a fiduciary or confidential relationship; (2) an

4 act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting

5 damage." *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 U.S. Dist. LEXIS

6 26371, at *6 (N.D. Cal. Feb. 28, 2014) (Alsup, J) (citation omitted).  A claim for constructive

7 fraud "triggers heightened pleading under FRCP 9(b)." *Meyer*, 2014 U.S. Dist. LEXIS 21368, at

8 *8; *see also Jobscience*, 2014 U.S. Dist. LEXIS 26371, at *6.  Because TRT fails to adequately

9 allege any of the elements of a constructive fraud claim, this claim, too, should be dismissed.

10    As an initial matter, TRT does not and cannot allege the existence of a confidential or

11 fiduciary relationship between TRT and Luckey.  TRT offers nothing more than the conclusory

12 assertion that "[b]ecause of their contractual and personal relationship as evidenced by the

13 parties' Agreement, TRT put its trust in Luckey."  (FAC ¶ 52.)  However, as discussed

14 extensively above, TRT and Luckey did not have a contractual relationship: the Seidl/Luckey

15 Contract was solely between Luckey and Seidl as individuals, and it never mentions TRT or Igra.

16 Indeed, there is nothing in the Complaint to plausibly suggest that Luckey even knew TRT or Igra

17 existed, let alone that they had the requisite confidential or fiduciary relationship.[8]  The Court

18 should therefore reject TRT's conclusory allegation that Luckey and TRT shared a confidential or

19 fiduciary relationship.  *See MobiApps, Inc. v. Quake Global, Inc.*, No. 06cv1745-LAB (JMA),

20 2007 U.S. Dist. LEXIS 34681, at *26 (S.D. Cal. May 9, 2007) (finding no confidential

21 relationship and granting motion to dismiss constructive fraud claim because allegations were

22 "wholly conclusory and [] lacking in any factual detail whatsoever").

23    TRT also fails to allege that Luckey breached any duty owed to TRT.  TRT's constructive

24 fraud claim is premised entirely on TRT's contention that, by virtue of the exclusivity provision

25 in the Seidl/Luckey Contract, Luckey owed TRT a duty to not compete.  (*See* FAC ¶¶ 53–54

26

27    ────────────────────

[8] The FAC alleges that Igra paid Luckey $798 via PayPal in April 2011 (*id.* ¶ 16), but there is no

28 allegation that the email address from which the payment originated contained Igra's name, much less referenced TRT.

Cooley LLP
Attorneys At Law
Palo Alto

18.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1   (Luckey "breached his duties to TRT, by misleading TRT . . . about his intent to perform his

2   duties . . . [i]n particular, [that] Luckey had no intention [to] refrain[] from aiding any other

3   person or entity in the design of [an HMD]").)   However, as discussed in Section V.A.2, above,

4   the "Exclusivity" provision was never triggered because Seidl never paid Luckey under that

5   provision, and it is, in any event, an illegal covenant against competition.   As TRT has failed to

6   plead a valid duty or breach, its constructive fraud claim should be dismissed.

7        Finally, TRT's allegations that Luckey breached his duties to TRT fail to satisfy the

8   heightened pleading requirements of Rule 9(b).   Rule 9(b) requires that TRT aver "the who, what,

9   when, where, and how of the misconduct charged."   *Meyer*, 2014 U.S. Dist. LEXIS 21368, at *7

10  (*quoting Vess*, 317 F.3d at 1106).   "[T]he reliance and damages elements of Plaintiffs' [fraud]

11  claims must [also] be pled with particularity."   *Wayne Merritt Motor Co. v. N.H. Ins. Co.*, No. 11-

12  cv-01762-LHK, 2011 U.S. Dist. LEXIS 122320, at *36 (N.D. Cal. Oct. 21, 2011).

13       The FAC merely identifies a series of events between April and June 2012 that allegedly

14  demonstrate that Luckey never intended to comply with the (unenforceable) exclusivity

15  provision.   (FAC ¶¶ 25, 54 (alleging that Luckey formed a company and began discussing the Rift

16  on the oculusvr.com website and MTSB3D message board)).)   TRT claims that, had it known of

17  Luckey's intent to breach the Contract, it would not have engaged him to build the prototype

18  HMD.   (*Id.* ¶ 56.)   At best, however, these events indicate that Luckey began making preparations

19  to offer his own virtual reality headset *eight to ten months after* he entered the Contract with Seidl

20  (at a time when he had delivered a prototype to Seidl but received no royalties or other

21  remuneration for his work).   The FAC does not provide any factual basis to conclude that Luckey

22  intended to breach the Contract *at the time he entered it*, much less that he did anything to

23  mislead TRT about his intentions.   *See, e.g., In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548–

24  49 (9th Cir. 1994) (explaining that the falsity of a prior statement cannot be inferred merely

25  because it "conflicts with the current state of facts" and that a "plaintiff must set forth, as part of

26  the circumstances constituting fraud, an explanation as to why the disputed statement was untrue

27  or misleading *when made*") (superseded by statute on other grounds).   Nor does the FAC set forth

28  any of the requisite details regarding Luckey's alleged fraud.   When, where or how did Luckey

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

19.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

1   mislead TRT?  Who at TRT was allegedly misled?  Did Luckey have any communications at all

2   with TRT?  What is Luckey supposed to have said or done that was misleading or that concealed

3   his true intentions?  Because TRT does not provide any of these critical details, it fails to satisfy

4   Rule 9(b), and its constructive fraud claim should be dismissed.[9]

5           **E.     TRT Fails to State a Claim for Violation of the UCL (Count V)**

6           To state a UCL claim, TRT must allege that Defendants have committed an "unlawful,"

7   "unfair," or "fraudulent" business act or practice.[10]  Cal. Bus. & Prof. Code § 17200.  TRT's sole

8   allegation in support of this claim is that Defendants violated the UCL by "building and

9   monetizing [the prototype HMD] and passing it off as their own original product."  (FAC ¶ 61.)

10  But TRT has no cognizable legal interest in the prototype HMD: the only alleged basis for TRT's

11  purported interest in anything Luckey created is the Seidl/Luckey Contract, to which TRT was

12  not a party and under which it has no rights.  (*See supra*, §§ IV, V.A.1.)

13          Even if TRT could show a legal interest in the prototype HMD (it cannot), it still could

14  not state a claim under any UCL prong.  To state a claim under the "unlawful" prong of Section

15  17200, TRT must allege that Defendants engaged in a business practice that is forbidden by law.

16  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151–52 (9th Cir. 2008).  Because each

17  of TRT's other claims fails, TRT has not alleged a violation of any predicate law.  *See, e.g.*,

18  *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1028 (N.D. Cal. 2012) ("Because [plaintiff's] other

19  claims fail, his UCL claim[] premised on 'unlawful' acts has no basis and must also fail.")

20          Since TRT is a putative competitor, to state a UCL "unfair" claim, it must allege that

21  Defendants engaged in "conduct that threatens an incipient violation of an antitrust law," violated

22  the "spirit or policy" of the antitrust laws, or "otherwise significantly threaten[ed] or harm[ed]

23  _____

24  [9] Indeed, given that Luckey's allegedly wrongful conduct involved the very public acts of
    discussing the Rift on the oculusvr.com website and MTBS3D message board and launching a
    Kickstarter campaign (FAC ¶¶ 25, 35, 54), any suggestion that Luckey tried to conceal his
25  conduct or true intentions from TRT finds no support in TRT's pleading.
    [10]  TRT's allegation that Defendants' conduct "constitutes . . . unfair, deceptive, untrue, or
26  misleading advertising, in violation of [§] 17200, *et seq.*" (FAC ¶ 61) does not state a claim for
    violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, because TRT
27  has not specifically pleaded such a claim.  *Cf. People ex rel. Lockyer v. Brar*, 134 Cal. App. 4th
    659, 666–67 (2005) (where complaint only sought relief as to "section 17200, *et seq.*," court held
28  that "*et seq.*" was not "elastic enough to stretch all the way to section 17500.")

competition." *Sybersound,* 517 F.3d at 1152 (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).)  TRT does not even attempt to "state, with reasonable particularity, the facts supporting the[se] statutory elements." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d at 1183, 1199–1200 (E.D. Cal. 2010) (dismissing UCL claim).

Finally, TRT does not seriously attempt to state a claim under the UCL's "fraudulent" prong, which requires it to plead with Rule 9(b) particularity that Defendants made specific misrepresentations that are likely to deceive members of the public.  *Sybersound*, 517 F.3d at 1152.  Absent the "who, what, when, and where" of the allegedly misleading statements, a claim under the UCL's "fraudulent" prong should be dismissed.  *Williams v. Wells Fargo Bank,* No. EDCV 13-2075-JUS (DTBx), 2014 U.S. Dist. LEXIS 17215, at *25 (C.D. Cal. Jan. 27, 2014).

**F.     TRT Fails to State a Claim for Common Law Unfair Competition (Count VI)**

To state a claim for common law unfair competition under California law, a plaintiff must allege either that the defendant "passed off" its goods as those of plaintiff, or sold products that were confusingly similar to plaintiff's in order to exploit plaintiff's marketplace reputation.  *See Oracle Corp. v. DrugLogic, Inc.*, No. C-11-00910-JCS, 2011 U.S. Dist. LEXIS 133642, at *37–38 (N.D. Cal. Nov. 16, 2011) (citing *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1263 (1992)).  Here, TRT alleges that Defendants committed unfair competition by passing off the prototype HMD "as their own original product."  (FAC ¶ 64.)  In other words, TRT accuses Defendants of selling the Rift without attributing it to TRT.  That is the opposite of a common law unfair competition claim, which requires that defendant falsely attribute its goods to plaintiff.  Thus, even if TRT could plausibly allege any rights in the prototype HMD or Rift (it cannot), its allegations would still fail to state a claim.  *See, e.g., Morning Star Packing Co. v. SK Foods, L.P.*, 754 F. Supp. 2d 1230, 1238 (E.D. Cal. 2010)  (dismissing common law unfair competition claim absent allegation that defendants attempted to pass of their goods as those of plaintiffs).

**G.     TRT's Conversion, Constructive Fraud and Unfair Competition Claims Are Superseded by CUTSA**

California adopted its version of the Uniform Trade Secrets Act to provide an exclusive civil cause of action for the theft and misappropriation of trade secrets.  *See* Cal. Civ. Code

§ 3426.1.  Under CUTSA, a plaintiff can recover damages or a reasonable royalty (if damages cannot be proven) for the misappropriation of its trade secret.  Cal. Civ. Code § 3426.3.  A "trade secret" is defined as information that (1) derives an independent value from not being generally known, and (2) is subject to reasonable efforts to maintain its secrecy.  Cal. Civ. Code § 3426.1. Misappropriation occurs where an alleged trade secret was acquired through improper means (including theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy) or was used without authorization.  *Id.*

CUTSA "'preempt[s] claims based on the same nucleus of facts as trade secret misappropriation.'"  *Sunpower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 U.S. Dist. LEXIS 176284, *9 (N.D. Cal. Dec. 11, 2012) (alteration in original) (*quoting K.C. Multimedia, Inc. v. Bank of Am. Tech & Ops, Inc.*, 171 Cal. App. 4th 939, 962 (2009)).[11]  A plaintiff may not avoid CUTSA preemption by omitting a CUTSA claim from its complaint and alleging the predicates of a CUTSA violation in support of a different tort theory.  Rather, "CUTSA provides the exclusive civil remedy for *conduct falling within its terms*, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'"  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (emphasis added).

"The preemption inquiry . . . focuses on whether the claims are more than a restatement of the same operative facts supporting trade secret misappropriation.  If there is no material distinction between the wrongdoing alleged in a CUTSA claim and that alleged in a different claim, the CUTSA claim preempts the other."  *Sunpower*, 2012 U.S. Dist. LEXIS 176284, at *9 (internal citations and quotations omitted).  Applying this nucleus-of-facts test, "a number of Courts . . . have held that CUTSA may supersede various claims including . . . claims for conversion . . . unfair competition, and intentional and negligent misrepresentation."  *Id.* at *10– 11.  In such cases, "CUTSA supersedes claims based on the misappropriation of *information*, regardless of whether such information ultimately satisfies the definition of a trade secret."  *Id.* at *24 (emphasis added).  "To permit otherwise would allow plaintiffs to avoid the preclusive effect

---

[11] The only claims *not* preempted by CUTSA are: (1) contract claims, (2) claims not based on trade secret misappropriation, and (3) criminal remedies.  Cal. Civ. Code § 3426.7(b).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)

of CUTSA (and thereby plead potentially more favorable common-law claims) by simply failing to allege one of the elements necessary for information to qualify as a trade secret." *Id.* at \*16; *see also Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, slip op. at 9 (N.D. Cal. Aug. 6, 2015) (dismissing fraud and UCL claims based on alleged conversion of confidential information on ground that permitting such claims to proceed "would allow [plaintiff] to opt for alternate pleading requirements with less burdensome standards of proof, entirely undermining CUTSA's preclusive effect").

### 1.    TRT's conversion claim is preempted by CUTSA

"To survive a motion to dismiss a conversion claim based on CUTSA preemption, a plaintiff . . . must demonstrate a property right outside of trade secrets law." *Lifeline Food Co. v. Gilman Cheese Corp.*, No. 5:15-cv-00034-PSG, 2015 U.S. Dist. LEXIS 64155, at \*11 (N.D. Cal. May 15, 2015) (internal quotations and citation omitted).  In other words, the thing allegedly converted must be something other than a trade secret or confidential information.  *See Silvaco*, 184 Cal. App. 4th at 238–39 (a plaintiff must allege "some *other basis in fact or law* on which to predicate the requisite property right.  The time to do that *is at the pleadings*.") (emphasis added). Contractual rights to trade secrets or other information, such as TRT's alleged rights under the Seidl/Luckey Contract to the design for the Prototype HMD, do not satisfy the requirement of a "property right" outside of trade secrets law.  *Lifeline Food*, 2015 U.S. Dist. LEXIS 64155, at \*5, \*9–13 (finding conversion claim based on breach of contract that gave plaintiff "complete and exclusive rights" to confidential formula for fat free cheese superseded by CUTSA).

In the original complaint, TRT's conversion allegations explicitly targeted Defendants' alleged use of TRT's purported trade secrets and confidential information.  (*See* Compl. ¶ 1, Dkt. 1 ("TRT brings this action for Defendants'   . . . conversion of TRT intellectual . . . property").) After Defendants moved to dismiss on CUTSA preemption grounds, TRT amended its pleading to remove any direct reference to the conversion of information.  However, the FAC leaves no doubt that the design underlying the prototype HMD, rather than the physical prototype, is what is truly at issue in this claim.  TRT does not ask for return of the prototype HMD that allegedly cost $798 to build.  Rather, TRT seeks by its conversion claim to procure exclusive rights to the

Cooley LLP
Attorneys At Law
Palo Alto

23.

Defendants' Motion to Dismiss First
Amended Complaint
(Case No. 15-cv-02281 WHA)

1   "design," and to recover damages from Defendants measured by their success in "monetiz[ing]"

2   that design.  (FAC ¶¶ 14, 48; *see also* Total Recall's Identification of Confidential Information ¶¶

3   1, 7, Dkt. 47 (identifying the "concept" behind the prototype HMD as belonging to TRT).)  As a

4   result, it is a quintessential trade secret claim and is therefore superseded by CUTSA.  *See*

5   *Lifeline Food*, 2015 U.S. Dist. LEXIS 64155, at *5.

6   **2.  TRT's constructive fraud claim is preempted by CUTSA**

7   As discussed above, TRT's constructive fraud claim fails, among other reasons, because

8   neither Defendant owed a duty to TRT.  Regardless, TRT's manufactured fraud claim, arising

9   from that non-existent duty, is preempted by CUTSA.  *See, e.g., Silvaco*, 184 Cal. App. 4th at 236

10   (finding that CUTSA superseded a claim for "intentional and negligent misrepresentation" based

11   on allegation that defendant "lied about continuing use" of confidential information).

12   In *Farhang v. Indian Institute of Technology*, the court examined allegations nearly

13   identical to those asserted by TRT in its original Complaint, and concluded that the plaintiffs'

14   fiduciary duty and fraud claims were preempted by CUTSA.  No. C-08-02658 RMW, 2010 U.S.

15   Dist. LEXIS 53975 (N.D. Cal. June 1, 2010).  The dispute in *Farhang* arose from an alleged joint

16   venture agreement and NDA between plaintiffs and defendants.  *Id*. at *18–25.  Plaintiffs alleged

17   "that defendants breached their fiduciary duties by: (1) using confidential business information

18   for their own benefit; [and] (2) thwarting the progress of the joint venture and deceiving plaintiffs

19   so that they could use plaintiffs' IP."  *Id*. at *35.  Plaintiffs also alleged a fraud claim based on

20   allegations that "defendants made false representations to induce plaintiffs to permit development

21   of plaintiffs' IP and then developed and marketed plaintiffs' IP for their own benefit."  *Id*. at *36.

22   The court found that plaintiffs' breach of fiduciary duty and fraud claims were based on the

23   "same nucleus of facts" as their trade secret claims, namely: the alleged breach of the NDA,

24   misuse of plaintiffs' confidential information, and failure to disclose the existence of a competing

25   entity.  Accordingly, the court dismissed both claims with prejudice.  *Id*. at *35, *37.

26   While TRT has attempted to recraft its constructive fraud claim to avoid CUTSA

27   preemption, the claim is still, at bottom, based on allegations that Luckey breached the Contract's

28   exclusivity provision by using and disclosing information that TRT claims to own.  (*See* FAC ¶¶

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

24.

**DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)**

1  54–55 (alleging that Luckey shared information about the prototype HMD and "design[ed] and

2  monetize[d]" the Rift in contravention of his contractual promises not to do so).)  Even if TRT

3  could establish ownership rights to the design of the prototype HMD, which it cannot, the "same

4  nucleus of facts" would be necessary to state a claim under CUTSA.  TRT "cannot escape

5  preemption merely because it includes 'something more'" by couching its claims as breaches of

6  duty and intentional omissions.  *Farhang*, 2010 U.S. Dist. LEXIS 53975, at *36 (*quoting K.C.

7  Multimedia*, 171 Cal. App. 4th at 957–58).  The constructive fraud claim should be dismissed.

8           **3.     TRT's unfair competition claims are preempted by CUTSA**

9           TRT's unfair competition claims plainly fall within the ambit of the CUTSA supersession

10  doctrine.  Each claim is based on the allegation that Defendants "buil[t] and monetize[ed] TRT's

11  Head Mounted Display and pass[ed] it off as their own original product."  (FAC ¶¶ 61, 64.)  Once

12  again, this claim is necessarily based on TRT's claim that it owned the rights to the prototype

13  HMD *design* under the Seidl/Luckey Contract.  It is therefore based on Defendants' use of

14  information that TRT claims to own and, as such, is preempted by CUTSA.  *K.C. Multimedia*,

15  171 Cal. App. 4th at 962–63 (affirming dismissal of statutory and common law unfair

16  competition claims as preempted by CUTSA); *Top Agent Network*, slip op. at 9 (dismissing UCL

17  claim based on allegations that Zillow improperly used TAN's confidential business metrics in

18  launching its own competing product).

19  **VI.    CONCLUSION**

20           For the foregoing reasons, Defendants respectfully request that the Court grant their

21  Motion to Dismiss the First Amended Complaint in its entirety, with prejudice.

22  Dated: September 21, 2015                    COOLEY LLP

23

24                                              By:    /s/ Michael G. Rhodes
                                                       Michael G. Rhodes
25
                                                Attorneys for Defendants
26                                              PALMER LUCKEY and OCULUS VR, LLC

27

28  120918092

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

25.

**DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(CASE NO. 15-CV-02281 WHA)**