QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert P. Feldman (Bar No. 69602)
  bobfeldman@quinnemanuel.com
  Robert W. Stone (Bar No. 163513)
  robertstone@quinnemanuel.com
  Brian Cannon (Bar No. 193071)
  briancannon@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

*Attorneys for Plaintiff Total Recall Technologies*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES, | CASE NO. 15-CV-02281-WHA |
| *Plaintiff*, | **TOTAL RECALL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| vs. | |
| PALMER LUCKEY and OCULUS VR, LLC, as successor-in-interest to OCULUS VR, Inc., | Date: October 29, 2015 Time: 8:00 a.m. Location: Courtroom 8, 19th Floor Judge: Hon. William H. Alsup |
| *Defendants*. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS ...........................................................................................2

LEGAL STANDARD ..................................................................................................3

ARGUMENT ...............................................................................................................4

I.  THE FAC SHOULD NOT BE DISMISSED UNDER RULE 12(B)(1) ..............................4

  A.  Plaintiff Has Standing To Sue As A Third-Party Beneficiary Of The Agreement ........................................................................................................5

  B.  In The Alternative, Plaintiff Has Standing To Sue As An Undisclosed Principal ........................................................................................................8

  C.  Plaintiff Has Article III Standing To Assert The Other Tort Claims ........................9

II.  THE CONTRACT CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6) ............10

  A.  The FAC Adequately Pled Breach Of The Agreement By Luckey ........................10

  B.  The Agreement's Exclusivity Provision Does Not Run Afoul Of Section 16600 ........................................................................................................11

  C.  The FAC Adequately Pled Damages Incurred By TRT ........................................13

III.  THE BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6) ........................14

IV.  THE CONVERSION CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6) ........15

  A.  Plaintiff Adequately Pled A Property Interest ........................................................16

  B.  Plaintiff Adequately Pled A Dispossession Of That Property Interest ...................16

V.  THE CONSTRUCTIVE FRAUD CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6) ........................................................................................................17

VI.  THE STATUTORY UCL CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6) ........................................................................................................19

  A.  Plaintiff Pled Unlawful Conduct ........................................................................20

  B.  Plaintiff Pled Unfair Conduct ............................................................................20

  C.  Plaintiff Pled Fraud ...........................................................................................21

VII.  THE COMMON LAW UNFAIR COMPETITION CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6) ........................................................................22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VIII. PLAINTIFF'S COMMON LAW AND UNFAIR COMPETITION CLAIMS ARE NOT PREEMPTED BY CUTSA................................................................................22

    A.    The Conversion Claim Is Not Preempted ..................................................23

    B.    The Constructive Fraud Claim Is Not Preempted .....................................24

    C.    The Unfair Competition Claims Are Not Preempted................................25

IX.    CONCLUSION ..................................................................................................25

TOTAL RECALL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

*AirDefense, Inc. v. AirTight Networks, Inc.*,
2006 WL 2092053 (N.D. Cal. Jul. 26, 2006) ...................................................23

5

*Ali v. Fasteners for Retail, Inc.*,
6       544 F. Supp. 2d 1064 (E.D. Cal. 2008) .......................................................25

7

*American Builder's Assn. v. Au-Yang*,
226 Cal. App. 3d 170 (1990) .........................................................................9

8

*Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Comm., Inc.*,
9       2011 WL 5025178 (S.D. Cal. Oct. 21, 2011) ............................................23

10

*Arrieta v. County of Kern*,
2014 WL 2801048 (E.D. Cal. June 19, 2014) ..........................................17

11

*Balsam v. Tucows Inc.*,
12       627 F.3d 1158 (9th Cir. 2010) .......................................................................5

13

*Barbara A. v. John G.*,
145 Cal. App. 3d 369 (1983) ........................................................................18

14

*Bartlett v. Pacific Nat. Bank*,
15       110 Cal. App. 2d 683 (1933) .......................................................................16

16

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) ..........................................................4

17

*Boucher v. Shaw*,
18       572 F.3d 1087 (9th Cir. 2009) .......................................................................4

19

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990) ................................................................14, 15

20

*Cel-Tech Commc'n v. Los Angeles Cellular Tel. Co.*,
21       20 Cal. 4th 163 (Cal. 1999) .........................................................................20

22

*Chartis Specialty Ins. Co. v. Tesoro Corp.*,
2015 WL 4154136 (W.D. Tex. July 10, 2015) .............................................7

23

*Cobb v. Ironwood Country Club*,
24       233 Cal. App. 4th 960 (2015) .......................................................................15

25

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
35 Cal. 3d 197 (Cal. 1983) ..........................................................................21

26

*Continental Airlines, Inc. v. Mundo Travel Corp.*,
27       412 F. Supp. 2d 1059 (E.D. Cal. 2006) ......................................................11

28

*Cousins v. Lockyer,*
  568 F.3d 1063 (9th Cir. 2009)..................................................................4

*Dallas & Lashmi, Inc. v. 7-Eleven, Inc.,*
  2015 WL 3631684 (C.D. Cal. June 10, 2015)..........................................15

*Davis v. Apperience Corp.,*
  2014 WL 5528232 (N.D. Cal. Oct. 31, 2014)..........................................15

*Dealertrack, Inc. v. Huber,*
  460 F. Supp. 2d 1177 (C.D. Cal. 2006)....................................................18

*Durell v. Sharp Healthcare,*
  183 Cal. App. 4th 1350 (2010)................................................................20

*E-Smart Techs., Inc. v. Drizin,*
  2009 U.S. Dist. LEXIS 272 (N.D. Cal. Jan. 5, 2009).............................24

*Eminence Capital, LLC v. Aspeon, Inc.,*
  316 F.3d 1048 (9th Cir. 2003)..................................................................4

*Furia v. Helm III,*
  111 Cal. App. 4th 945 (2003)..................................................................13

*G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., Inc.,*
  958 F.2d 896 (9th Cir. 1992)..................................................................16

*Gabriel Tech. Corp. v. Qualcomm Inc.,*
  2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) .....................................24, 25

*Garcia v. Truck Ins. Exchange,*
  36 Cal. 3d 426 (Cal. 1984)........................................................................6

*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.,*
  148 Cal. App. 4th 937 (2007)....................................................................8

*Gautier v. Gen. Tel. Co.,*
  234 Cal. App. 2d 302 (1965)....................................................................10

*Gifted Sch. v. Grahovac Const. Co.,*
  2009 WL 3864643 (Cal. App. 4 Dist. Nov. 19, 2009) ........................5, 7

*Gregory v. Albertson's, Inc.,*
  104 Cal. App. 4th 845 (2003)..................................................................20

*Illumination Mgmt. Solutions, Inc. v. Ruud,*
  2012 WL 4069315 (E.D. Wis. Sept. 14, 2012)........................................25

*In re Tobacco II Cases.*
  46 Cal. 4th 298 (Cal. 2009)....................................................................21

*Jobscience, Inc. v. CVPartners, Inc.,*
  2014 WL 852477 (N.D. Cal. Feb. 28, 2014)............................................19

*Kaisky v. Nike, Inc.*,
    27 Cal. 4th 939 (Cal. 2002) ..................................................................................20

*King v. Gerold*,
    109 Cal. App. 2d 316 (1952) ................................................................................12

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) .............................................................................16

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .........................................................13, 14

*Lujian v. Defenders of WildLife*,
    504 U.S. 555 (1992) ..............................................................................................13

*Martone v. Burgess*,
    2008 WL 3916022 (N.D. Cal. Aug. 25, 2008) ....................................................25

*Mary Pickford Co. v. Bayly Bros., Inc.*,
    12 Cal. 2d 501 (Cal. 1939) ..................................................................................17

*Milne Emps. Ass'n v. Sun Carriers*,
    960 F.2d 1401 (9th Cir. 1991) .............................................................................14

*Nat'l Council of La Raza v. Cegavske*,
    2015 WL 5155434 (9th Cir. Sept. 3, 2015) ...........................................................3

*Neverkovec v. Fredericks*,
    74 Cal. App. 4th 337 (1999) ..................................................................................6

*Novak v. U.S.*,
    795 F.3d 1012 (9th Cir. 2015) ...........................................................................3, 4

*Novelposter v. Javitch Canfield Grp.*,
    2014 WL 5687344 (N.D. Cal. Nov. 4, 2014) ....................................................9, 10

*Ojala v. Bohlin*,
    178 Cal. App. 2d 292 (1960) ................................................................................22

*Page v. Stanley*,
    2012 WL 5471107 (C.D. Cal. Oct. 19, 2012) .......................................................4

*Palm Springs-LaQuinta v. Kieberk*,
    46 Cal. App. 2d 234 (1941) ..................................................................................24

*People v. McKale*,
    25 Cal. 3d 626 (Cal. 1979) ..................................................................................21

*Primo v. Pacific Biosciences of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013) .................................................................4

*Puricle, Inc. v. Church & Dwight Co.*,
    568 F. Supp. 2d 1144 (C.D. Cal. 2008) ..........................................................12, 13

*SCO Grp., Inc. v. Novell, Inc.*,
    2007 WL 2327587 (D. Utah Aug. 10, 2007) ........................................................13

*Sackett v. Spindler*,
    248 Cal. App. 2d 220 (1967) ..............................................................................11

*Spinks v. Equity Residential Briarwood Apartments*,
    171 Cal. App. 4th 1004 (2009) .............................................................................7

*Spring Design, Inc. v. Barnesandnoble.com, LLC*,
    Case No. 09–05185-JW, Dkt. 103, slip op (N.D. Cal. Apr. 8, 2010)......................25

*Swinerton Builders v. Am. Home Assur. Co.*,
    2013 WL 1122022 (N.D. Cal. Mar. 15, 2013) .....................................................13

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ............................................................................20

*Titan Global LLC v. Organo Gold Int'l, Inc.*,
    2012 WL 6019285 (N.D. Cal. Dec. 2, 2012) ......................................................23

*Tom Trading, Inc. v. Better Blue, Inc.*,
    26 F. App'x 733 (9th Cir. 2002) ...........................................................................8

*Trovan, Ltd. v. Pfizer, Inc.*,
    2000 WL 709149 (C.D. Cal. May 24, 2000)........................................................22

*Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*,
    572 F.3d 771 (9th Cir. 2009)............................................................................5, 7

*U.S. Legal Support, Inc. v. Hofioni*,
    2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) ....................................................23

*Wallis v. Centennial Ins. Co.*,
    927 F. Supp. 2d 909 (E.D. Cal. 2013) ..................................................................8

*White v. SSA*,
    2015 U.S. Dist. LEXIS 82193 (N.D. Cal. June 23, 2015) ....................................17

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009)................................................................................4

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ............................................................................3, 5

*Yanchor v. Kagan*,
    22 Cal. App. 3d 544 (1971) .................................................................................9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Statutes</u>**

Cal. Civ. Code § 1559 ..........................................................................................................7

Cal. Civ. Code § 1573 ........................................................................................................17

Cal. Civ. Code § 3426.7 .....................................................................................................23

TOTAL RECALL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

# INTRODUCTION

2      Total Recall Technologies' ("TRT") First Amended Complaint ("FAC") (Dkt. 40)

3 describes in extensive detail how TRT contracted with Defendant Palmer Luckey ("Luckey") for

4 the purpose of building head mounted displays.  The FAC also details at great lengths how that

5 contract, the parties' "August 1, 2011 Nondisclosure, exclusivity, and payments agreement" (the

6 "Agreement"), was breached by Luckey in two primary respects:  (1) Luckey aided himself and

7 his company, Oculus, in the design of a Head Mounted Display for his own benefit during the

8 contract term, thereby depriving TRT of its exclusive rights to that design; and (2) Luckey failed

9 to keep all details confidential regarding the Head Mounted Display as contemplated by the

10 Agreement.  Furthermore, the FAC sets forth how Luckey, when confronted about his breach,

11 acknowledged his exclusivity and confidentiality obligations under the Agreement, yet incredibly

12 claimed that his alleged misdeeds occurred after the expiration of the Agreement despite

13 overwhelming evidence to the contrary.  As a result of this conduct, through the FAC, TRT also

14 brings causes of action for breach of the Agreement's covenant of good faith and fair dealing, as

15 well as both Defendants' acts of conversion, constructive fraud, and unfair competition.  The

16 FAC, however, like the original complaint, contains no trade secret cause of action.

17      Despite TRT's well-pleaded FAC, Defendants now seek to dismiss the FAC in its entirety.

18 In so doing, Defendants overreach and attempt to argue the ultimate merits of this dispute

19 prematurely – at the pleading stage – before any discovery has been conducted.  Each of

20 Defendants' arguments lacks merit.  Preliminarily, TRT has standing to sue on the Agreement

21 under Rule 12(b)(1), either as an intended beneficiary or as an undisclosed principal.

22 Furthermore, accepting the allegations of the FAC as true, as the Court must at the pleading stage,

23 the FAC alleges each and every count with more than sufficient detail to satisfy Rule 12(b)(6) and

24 Rule 9(b).  Throughout their Motion, Defendants' arguments rely upon – and purport to unilaterally

25 resolve – key issues of contractual formation, construction, intent, and agency.  Such arguments

26 on the merits are inappropriate at the motion to dismiss stage – these are *questions of fact* properly

27 addressed at summary judgment with the benefit of a complete record.  Accordingly, Defendants'

28 motion should be denied.

1

**STATEMENT OF FACTS**

2   TRT is a partnership between Thomas Seidl ("Seidl") and Ron Igra ("Igra").  (FAC ¶ 2).

3   Seidl and Igra formed TRT with the goal of developing immersive 3D technology and, in particular,

4   a head mounted display with certain key attributes.  (*Id.*, ¶¶ 9, 10).  These attributes included (i)

5   immersive stereoscopic 3D rendering; (ii) an ultra-wide field of view; (iii) head tracking with low

6   latency; and (iv) a price point attractive to the consumer mass market.  (*Id.*, ¶ 10).  By late 2010,

7   no commercially available head mounted display had all of these features.  (*Id.*, ¶ 11).  To exploit

8   this market gap, TRT sought to develop a prototype.  (*Id.*).

9   In December 2010, Seidl contacted Luckey in connection with building TRT's prototype.

10   Toward that end, Seidl and Luckey exchanged dozens of emails throughout 2010 and 2011.  (*Id.*, ¶

11   12).  Seidl explained to Luckey that the above four characteristics were crucial to the design.  (*Id.*).

12   Based on their communications, in April 2010, Luckey agreed to build a prototype to Seidl's

13   specifications with parts paid for by TRT.  (*Id.*, ¶ 14).  Seidl explained to Luckey that, with the

14   partnership's first payment, he expected exclusive rights to the design.  (*Id.*).  Luckey agreed,

15   stating "I am sure we can put together a contract of some sort to finalize it all."  (*Id.*, ¶ 15).  Igra

16   then transferred an initial payment via PayPal to Luckey to purchase parts.  (*Id.*, ¶ 16).

17   Thereafter, Seidl and Luckey negotiated the Agreement.  On June 16, 2011, Seidl

18   presented Luckey with the written Agreement which Luckey executed on August 1, 2011.  (*Id.*, ¶

19   18).  Under its terms, Luckey agreed to, *inter alia*, "keep all details including drawings and part

20   suppliers of the Head Mounted Display confidential" and not to "aid any other person or entity in

21   the design of a Head Mounted Display other than the disclosing party."  (*Id.*, ¶ 19).

22   Pursuant to the Agreement, Luckey shipped a first version of TRT's prototype to Seidl on

23   August 23, 2011.  (*Id.*, ¶ 20).  Thereafter, Luckey again took possession of the prototype to

24   perform additional improvements.  (*Id.*).  Throughout 2011 and into 2012, Seidl provided

25   feedback to Luckey regarding these improvements.  (*Id.*, ¶ 21).

26   Despite his contractual obligations, Luckey did not return the Head Mounted Display to

27   TRT or keep associated details confidential.  (*Id.*, ¶ 22).  Instead, Luckey set off to commercialize

28   the prototype for himself, calling it the Oculus Rift (the "Rift").  (*Id.*).  To that end, in April 2012,

1   Luckey registered the Web site oculusvr.com.  Thereafter, while announcing a Kickstarter

2   campaign with a June 1, 2012 target date, Luckey posted, among other things, that the Rift

3   provides "a wide field of view, highly immersive stereoscopic head mounted display at a price I

4   can afford."  (*Id.*, ¶¶ 23-25).

5          In May 2012, Luckey gave the Rift to John Carmack, a ZeniMax employee and noted

6   video game developer  (*Id.*, ¶ 26), and on or about May 24, 2012, Luckey signed an NDA with

7   ZeniMax to permit further discussions about the Rift.  (*Id.*, ¶ 29).  Carmack tweeted and posted on

8   message boards about the Rift, and during the June 5-7, 2012 Electronic Entertainment Expo,

9   Carmack used the Rift to showcase a specially configured version of the videogame Doom 3.  (*Id.*,

10  ¶ 30).  Further, on June 12, 2012, Luckey formed Oculus LLC to commercialize the Rift.  (*Id.*, ¶ 31).

11         At no time prior to July 1, 2012 did Luckey inform TRT that he had disclosed and exploited

12  the details of its Head Mounted Display.  (*Id.*, ¶ 33).  When confronted about his breach in

13  September 2012, Luckey acknowledged his obligations under the Agreement but denied that he was

14  in breach, claiming:  "I should not be in breach.  I kept all the details … of my HMD designs to

15  myself until mid-July, which is also when I filed my LLC.  The exclusivity only lasted until July 1st

16  …."  (*Id.*, ¶ 34).

17                                   **LEGAL STANDARD**

18         To satisfy the standing requirements of Article III, "[a] plaintiff must show that (1) he or

19  she has suffered a 'concrete and particularized' injury to a cognizable interest, (2) which is 'fairly

20  traceable to the challenged action of the defendant' and (3) which likely can be redressed by a

21  favorable decision."  *Nat'l Council of La Raza v. Cegavske*, 2015 WL 5155434, at *5 (9th Cir.

22  Sept. 3, 2015).  "In deciding whether a plaintiff has made this showing," the court "accept[s] as

23  true all material allegations of the complaint" and "construe[s] the complaint in favor of the

24  complaining party."  *Id.*  Thus, in reviewing a motion to dismiss for lack of jurisdiction, the Court

25  takes the allegations in the plaintiff's complaint as true.  *Wolfe v. Strankman*, 392 F.3d 358, 362

26  (9th Cir. 2004) (holding that federal courts accept the allegations in the complaint "to be true and

27  draw all reasonable inferences in [plaintiff's] favor" for a facial Rule 12(b)(1) motion).  The court

28  also "presume[s] that general allegations embrace those specific facts that are necessary to support

1   the claim." *Novak v. U.S.*, 795 F.3d 1012, 1017 (9th Cir. 2015).

2         On a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and

3   construed in the light most favorable to the non-moving party," *William O. Gilley Enters., Inc. v.*

4   *Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009), and all reasonable inferences must be drawn

5   in the plaintiff's favor, *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 926 (N.D. Cal. 2013).  A

6   defendant bringing a Rule 12(b)(6) motion bears the "burden of showing that no set of facts

7   consistent with Plaintiff's allegations would entitle Plaintiff to relief."  *Page v. Stanley*, 2012 WL

8   5471107, at *7 (C.D. Cal. Oct. 19, 2012).  Factual disputes are "not properly resolved on a motion

9   to dismiss."  *Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009).  Further, a complaint need

10  include only "enough facts to state a claim to relief that is plausible on its face," *Cousins v.*

11  *Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009), and need only "give the defendant fair notice of

12  a legally cognizable claim and the grounds on which it rests," *Primo v. Pacific Biosciences of*

13  *Cal., Inc.*, 940 F. Supp. 2d 1105, 1110 (N.D. Cal. 2013).  Finally, even if a complaint is deficient,

14  "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear … that

15  the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316

16  F.3d 1048, 1052 (9th Cir. 2003).

17                                    **ARGUMENT**

18  **I.      THE FAC SHOULD NOT BE DISMISSED UNDER RULE 12(B)(1)**

19        Luckey does not dispute that TRT pleaded the first and third requirements of Article III

20  standing – that TRT suffered an injury in fact and that said injury would be redressed by judgment

21  in its favor.  Nor could he.  The FAC alleges that Seidl "contacted Luckey and began an exchange

22  of information about TRT's project with a goal of building a head mounted display"; that Seidl

23  presented Luckey with the Agreement in furtherance of that project; and that "as a result of

24  Luckey's contractual breach" of the Agreement, "TRT has been injured in amount to be

25  determined."  (FAC ¶¶ 11, 18, 40).  Instead, Luckey argues that TRT cannot show an injury

26  arising out of that breach because it "is neither a party to, nor a third-party beneficiary of" the

27  Agreement.  (Mtn. at 9).  Luckey's argument, however, depends entirely on his self-serving

28

1   interpretation of the Agreement and the parties' intent, and utterly ignores the well-pled

2   allegations of the FAC.

3          As set forth below, the FAC states facts sufficient to substantiate TRT's standing under

4   two theories: (1) TRT is an intended third-party beneficiary of promises made in the Agreement;

5   and (2) Seidl was TRT's agent for purposes of negotiating the Agreement.  These allegations must

6   be accepted as true in resolving a motion to dismiss under Rule 12(b)(1).  *Wolfe*, 392 F.3d at 362.

7          **A.   <u>Plaintiff Has Standing To Sue As A Third-Party Beneficiary Of The Agreement</u>**

8          To recover as a third-party beneficiary, TRT must sufficiently demonstrate that a contract

9   exists between other parties, the contract was intended for the benefit of TRT, and the benefit was

10  intended rather than incidental.  *Trustees of Screen Actors Guild-Producers Pension & Health*

11  *Plans v. NYCA, Inc.*, 572 F.3d 771, 779 (9th Cir. 2009).  TRT has amply alleged these elements.

12         Consider, first, the text of the Agreement.  Under its terms, the contract benefited TRT.

13  Luckey contracted to, *inter alia*, "keep all details including drawings and part suppliers of the

14  Head Mounted Display confidential and shall not aid any other person or entity in the design of a

15  Head Mounted Display other than the disclosing party."  As stated, these details, drawings, and

16  part supplier lists were (and remain) the property of TRT.  (FAC ¶ 17) ("Luckey understood that

17  the information used by him concerning … the head mounted displays being built by Luckey for

18  TRT was to be kept confidential….").  The prototype design developed by Luckey also belongs to

19  TRT.  (FAC, ¶ 12) (describing "characteristics that were crucial to TRT's head mounted display

20  that Luckey was supposed to build" with "parts paid for by the Partnership.").  Thus, there can be

21  no dispute that, as alleged, the Agreement necessarily benefits TRT by ensuring that TRT would

22  not be deprived of its exclusive rights in the HMD design.

23         The question, therefore, is whether the parties ***intended*** to confer that benefit on TRT at the

24  time of negotiation.  However, TRT need not allege that Luckey had the specific intent to benefit

25  TRT; Luckey need only understand that Seidl had such intent.  *Gifted Sch. v. Grahovac Const.*

26  *Co.*, 2009 WL 3864643, at *13 (Cal. App. 4 Dist. Nov. 19, 2009) (finding that the "promisor ...

27  must have understood that the promisee ... had such intent.  No specific manifestation by the

28  promisor of an intent to benefit the third person is required.").  That determination is fact-intensive

1   and "involves 'construction of the parties' intent, gleaned from reading the contract as a whole in

2   light of the circumstances under which it was entered." *Balsam v. Tucows Inc.*, 627 F.3d 1158,

3   1161 (9th Cir. 2010).  Further, "evidence of the circumstances and negotiations of the parties in

4   making the contract is both relevant and admissible." *Garcia v. Truck Ins. Exchange*, 36 Cal.3d

5   426, 437 (Cal. 1984).  In most situations "the contracting parties should be allowed to testify as to

6   their actual intention …."  *Id.*  Thus, "[b]ecause the court must consider the circumstances of the

7   contracting parties' negotiations …, it will seldom be sufficient for the third party simply to rely

8   on a literal application of the terms of the [contract]."  *Neverkovec v. Fredericks*, 74 Cal. App. 4th

9   337, 349 (1999).

10      Here, there is no question that the FAC adequately pled Seidl's intent that the Agreement

11   would benefit TRT.  For instance, TRT pled that Seidl and Igra – the other half of TRT – "sought

12   to develop a prototype" and that "Seidl contacted Luckey" in that regard.  (FAC ¶ 11).  The FAC

13   also states that "Igra and Seidl agreed that the Partnership would have exclusive rights to that

14   prototype," as contemplated by the Agreement.  (*Id.*, ¶¶ 14, 18).   Indeed, Seidl and Igra even

15   "filed a patent application" to protect TRT's interests in key features of its HMD.  (*Id.*, ¶ 13).

16      Critically, the FAC alleges facts demonstrating that Luckey knew about Seidl's intent to

17   benefit his partnership through the Agreement.  Most obviously, the FAC states that "[a]t all

18   relevant times, Luckey understood that the information used by him concerning, among other

19   things, all details, drawings, and parts suppliers for the head mounted displays being built by

20   Luckey **for TRT** was to be kept confidential and that **TRT** expected the information to remain

21   confidential."  (FAC ¶ 17) (emphases added).  That should end the discussion.  But the FAC goes

22   further and alleges that Seidl discussed with Luckey "**TRT's project** with a goal of building a head

23   mounted display," and that "with **the Partnership's** initial payment, he expected exclusive rights

24   to the design." (*Id.*, ¶¶ 11, 14) (emphases added).  As alleged, Seidl also emailed Luckey to

25   confirm that "[w]ith the initial payment to you I would like exclusive rights to your design unless

26   **we** [the Partnership] decide not to use it.  I need to cover myself if **we** pay for development and

27   then end up paying for a competitor."  (*Id.*, ¶ 14) (emphases added).  Luckey agreed that same day,

28   stating that "Yes, we are on the same page here.  Once your patent hits pending, I am sure we can

put together a contract of some sort to finalize it all." (*Id.*, ¶ 15).

Following Luckey's email, the other half of Seidl's "we," Ron Igra, sent Luckey a payment for the development of the prototype via PayPal to Julie Luckey – Luckey's mother. (*Id.*, ¶ 16). Thereafter, Luckey executed the Agreement. As a result, the FAC pleads facts that, when taken as true, provide a plausible basis that Luckey knew about Seidl's partnership with Igra from the very beginning, and Seidl's desire to protect his partnership's interests in the HMD prototype. At the pleading stage, that is more than sufficient.

Luckey's motion is instead based on the false notion that a third-party beneficiary must be explicitly mentioned in the Agreement. (Mtn. at 10). That is not the law. "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. But the word "expressly" does not mean "on the face of the contract." *See Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1023 (2009) ("[T]he third person need not be named or identified individually to be an express beneficiary."). Rather, the term "expressly" simply means the negative of "incidentally." That is, "it is not enough that the third party would incidentally have benefited from performance...." *Trustees*, 572 F.3d at 779. Rather, the "promisor ... must have understood that the promisee" had "an intent to benefit the third person…." *Gifted*, 2009 WL 3864643, at *13. As described, the FAC alleges that Luckey knew that Seidl intended the Agreement to benefit his partnership.

At a minimum, the question of the parties' intent is a question of fact that cannot be resolved prior to discovery. *Spinks*, 171 Cal. App. 4th at 1025 ("Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract."). Indeed, because TRT's allegations are taken as true on a Rule 12(b)(1) motion, courts will only grant dismissal if "the issue is presented to the court on the basis of undisputed facts and uncontroverted evidence and only a question of the application of the law to those facts need be answered." *Id.*; *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 2015 WL 4154136, at *10 (W.D. Tex. July 10, 2015) (deeming dismissal improper unless "the issue can be answered by interpreting the contract as a whole and doing so in light of the uncontradicted evidence of the circumstances and negotiations of the parties"). That is not the case here, where the parties' intent is in dispute.

**B.   In The Alternative, Plaintiff Has Standing To Sue As An Undisclosed Principal**

Even if Luckey was completely unaware of the partnership (he was not), TRT would <u>still</u> have standing to enforce the Agreement.  That is because the FAC also alleges facts showing that Seidl acted as TRT's ***agent*** when he entered into the Agreement.  Under the doctrine of undisclosed principal, "[w]here an agent makes a contract on behalf of an undisclosed principal" – where the other party has no knowledge of the partnership – "the principal is a party to that contract."  *Wallis v. Centennial Ins. Co., Inc.*, 2013 WL 3803971, at *3 (E.D. Cal. Jul. 19, 2013); *see Tom Trading, Inc. v. Better Blue, Inc.*, 26 F. App'x 733, 735 (9th Cir. 2002) (A "contract made by an agent for an undisclosed principal is for most purposes the contract of the principal and it may sue ... thereon." ).

To establish status as an undisclosed principal, a plaintiff must allege that a principal-agent relationship exists – that an "agent or apparent agent holds the power to alter the relations between the principal and third persons."  *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964 (2007).  In other words, a plaintiff must set forth facts showing that the purported agent has actual authority to enter into the contract on the principal's behalf.  *See Wallis*, 927 F. Supp. 2d at 917.

Here, the FAC pleads ample facts to show that Seidl was the agent of TRT in connection with the Agreement.  The FAC alleges that "TRT is a partnership between Thomas Seidl and Ron Igra" (FAC ¶ 2), and that "Seidl contacted Luckey in connection with developing head mounted displays and began an exchange of information about TRT's project."  (*Id.*, ¶ 11).  The FAC also alleges that "Igra and Seidl agreed that the Partnership would have exclusive rights to that prototype," and that "Seidl, ***on behalf of TRT***, presented Luckey with a written 'Nondisclosure, exclusivity and payments agreement' [the Agreement]."  (*Id.*, ¶¶ 14, 18 (emphasis added)).  Accordingly, the FAC sets forth more than sufficient allegations to show that Seidl acted on behalf of TRT, and had the power to bind TRT, in connection with the Agreement.

The Agreement itself suggests that Seidl operated in his representative capacity.  The preamble states that the Agreement was "entered into by and between Thomas Seidl with its principal offices at Maui USA, ('Disclosing Party') and Palmer Luckey…."  (FAC, Ex. 1 at 1).  The term "its offices" suggests that Seidl is named in reference to a corporate entity – not as an

**TOTAL RECALL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

individual.  Thus, TRT has standing because Seidl was operating on TRT's behalf.

However, even if the agency question were a close call, it cannot be decided on a motion to dismiss.  "Whether ostensible authority exist[s] is a *question of fact* and may be implied from [the] circumstances."  *Yanchor v. Kagan*, 22 Cal. App. 3d 544, 550 (1971) (emphasis added).  This is particularly true in the case of an undisclosed principal.  *See American Builder's Assn. v. Au-Yang*, 226 Cal. App. 3d 170, 173 (1990) ("Whether the nonsignatory was an undisclosed principal … was a question of fact for the trial court in the first instance.").  Accordingly, Luckey's assertion that TRT is not a party to the Agreement should be rejected in light of the well-pled FAC.

## C.  Plaintiff Has Article III Standing To Assert The Other Tort Claims

Defendants also allege that the "same defect" requires dismissal of TRT's other "tort claims for conversion and constructive fraud, as well as the UCL and common law unfair competition claims."  (Mtn. at 11).  Defendants argue that, because these tort claims allegedly "rely on the Seidl/Luckey Contract," TRT's standing falls with its contract claim.  This is false.

While TRT's additional tort claims share some factual elements, they stand independently of the contract claim.[1]  For instance, the conversion claim goes well beyond the breach of contract claim and is premised on the theft of TRT's *tangible property*, including a prototype HMD, and "associated components and materials."  (FAC ¶ 46).  Likewise, both of the unfair competition claims are based on allegations that Defendants passed off the prototype HMD that Luckey built for TRT as their own.  (FAC ¶¶ 61, 64).  Whether or not Luckey breached the Agreement, Defendants' passing off constitutes an independent violation.

The cases cited by Defendants are inapposite and involve extreme cases in which a complaint *explicitly* premised tort injuries on an underlying contract.  For example, in *Novelposter v. Javitch Canfield Grp.*, 2014 WL 5687344 (N.D. Cal. Nov. 4, 2014), the Court noted that "claims for fraud and violations of the FAL and UCL do not require a contractual relationship between the plaintiff and the defendant."  *Id*. at *6.  However, in support of the fraud cause of action, the complaint explicitly alleged that defendant's "misrepresentations in deciding to enter

---

[1]  TRT's claims for breach of the implied covenant and constructive fraud do require standing to enforce the Agreement.  However, as described above, TRT has standing to assert that contract.

1    into a contract" injured plaintiff.  *Id*.  Thus, plaintiff's tort claims failed because the "only injuries"

2    alleged arose "directly from the alleged contract."  *Id*.  Here, the FAC does not rely on (or even

3    mention) the Agreement to support these claims – never mind as the *only* source of injury.  Those

4    injuries would be sustained regardless of any breach.  Accordingly, TRT has standing to assert its

5    conversion and unfair competition claims independent of the Agreement.

6    **II.       THE CONTRACT CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6)**

7            To state a claim for breach of contract, TRT must plead: (1) the existence of a contract with

8    Luckey to which it was a party; (2) TRT's performance or excuse for nonperformance; (3)

9    Luckey's breach; and (4) TRT's damages.  *Gautier v. Gen. Tel. Co.,* 234 Cal. App. 2d 302, 305

10   (1965).  Defendants argue that TRT failed to plead prongs (3) and (4), requiring breach and

11   damages respectively.   These arguments, however, ignore the allegations of the FAC.[2]

12           **A.    <u>The FAC Adequately Pled Breach Of The Agreement By Luckey</u>**

13           The Agreement's exclusivity provision states, in relevant part, that:

14   > [Luckey] shall keep all details including drawings and part suppliers of the Head
     > Mounted Display confidential and shall not aid any other person or entity in the design
15   > of a Head Mounted Display other than the disclosing party.  ***Unless within a twelve
     > month period from 1st July 2011 [Luckey] has not received a minimum payment in
16   > royalties of 10,000 US dollars by [Seidl].***  The exclusivity shall remain in place for a
     > period of 10 years providing a minimum of 10,000 US dollars is paid from [Seidl] to
17   > [Luckey] per annum.

18   (FAC, Ex. 1, ¶ 9 (emphasis added)).  TRT pled that Luckey breached this provision by, among

19   things, sharing confidential information provided by TRT, working with others instead of the

20   Partnership, exploiting Partnership information for his own gain, raising money for his own use

21   based upon Partnership work and material, and other acts of breach.  (FAC ¶ 38).  The FAC

22   further pled specific examples of Luckey's misconduct.  (*See id*. at ¶¶ 22-35).  Nevertheless,

23   Luckey now argues that it is *impossible* for TRT to plead breach.  Luckey contends that the

24   exclusivity provision was not effective because TRT allegedly never paid Luckey $10,000 by July

25   1, 2012.  (Mtn. at 13).  This argument fails for two reasons.

26           First, even if Luckey is correct – and TRT had to pay Luckey $10,000 by July 1, 2012 to

---

27   [2] Luckey also argues that the FAC cannot plead the first two prongs because TRT lacks standing.
28   (Mtn. at 12).  As described above, Luckey is incorrect.  *See* Sections I.A and I.B.

preserve his exclusivity obligations – TRT still pled breach.  That is because the FAC alleges that Luckey had already breached the Agreement *before* payment was due.  For instance, TRT pled that Luckey breached the Agreement by posting on the Internet about the Rift beginning in April 2012 and initiating a Kickstarter campaign to monetize the HMD for his own gain during that same timeframe.  (FAC ¶¶ 23-25).  In addition, the FAC pleads that Luckey gave the HMD to John Carmack in May 2012 (*id.*, ¶¶ 26-27) and formed Oculus to commercialize the HMD in June 2012.  (*Id.*, ¶ 31).  All of these violations occurred prior to July 1, 2012 – when TRT's payment was allegedly due.  Because Luckey breached the Agreement when the exclusivity provision was in effect, TRT was under no obligation to provide any further payments to Luckey after that breach.  *See*, *e.g.*, *Sackett v. Spindler*, 248 Cal. App. 2d 220, 440 (1967) (finding that a party's duty to consummate the contract was discharged by material breach).

Second, Defendants again attempt to rewrite an ambiguous contract provision with their own convenient interpretation.  The key sentence, stating that "unless within a twelve month period … [Luckey] has not received a minimum payment" stands alone as a fragment.  It does not explicitly limit the preceding sentence (the confidentiality obligations) or the following sentence (the future payment streams).  As a matter of law, the construction of such "ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim."  *Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1066 (E.D. Cal. 2006).  If anything, the limitation makes more sense applied to the latter sentence.  In that case, the first payment of $10,000 would symmetrically trigger future payments of the same amount.  As such, Luckey's argument is premised on a construction that is, at best, subject to a factual dispute and not appropriate for resolution at the pleading stage.

### B.   The Agreement's Exclusivity Provision Does Not Run Afoul Of Section 16600

Defendants also argue that TRT cannot plead breach because there is a strong public policy in favor of competition under California Business and Professions Code Section 16600.  Section 16600 voids a "contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind."  Defendants argue that the contract's exclusivity provision – Paragraph 9 – is void as a matter of law.  (Mtn. at 14).  Defendants overstate the applicability of Section 16600.

1    As alleged in the FAC, the exclusivity provision gives TRT exclusive rights to the designs

2    for the Head Mounted Displays that Luckey built for TRT.  The FAC pleads that:  "In April 2011,

3    Seidl requested that Luckey build a prototype to Seidl's specifications with parts paid for by the

4    Partnership…. Seidl explained to Luckey that with the Partnership's initial payment to Luckey, he

5    expected *exclusive rights to the design*" and "Luckey agreed."  (FAC ¶¶ 14, 15) (emphasis added).

6        The Agreement is consistent.  It states only that "[Luckey] shall keep all details including

7    drawings and part suppliers of *the Head Mounted Display* confidential and shall not aid any other

8    person or entity in the design of *a Head Mounted Display* other than the disclosing party."  (FAC,

9    Ex. 1 at ¶ 9 (emphases added)).  Critically, the term Head Mounted Display is a capitalized term,

10   indicating that it is a term-of-art specific to the Agreement.  Thus, as pled, the exclusivity

11   provision protects TRT's interest in the HMD that formed the subject of the Agreement; it is not in

12   violation of Section 16600.

13       A similar situation confronted the Court of Appeals in *King v. Gerold*, 109 Cal. App. 2d

14   316 (1952).  In that case, the respondent invented a particular kind of trailer, and the appellant was

15   granted a license to manufacture that specific trailer.  *Id*. at 318.  Once the license term ended, the

16   license provided that appellant must cease manufacturing the trailer.  The Court held Section

17   16600 inapplicable because the appellant was "not thereby prohibited from carrying on his lawful

18   business of manufacturing trailers but [wa]s barred merely from manufacturing and selling trailers

19   *of the particular design and style* invented by respondent...."  *Id*. (emphasis added).  This case is

20   no different.

21       Similarly, in *Puricle, Inc. v. Church & Dwight Co.*, 568 F. Supp. 2d 1144 (C.D. Cal.

22   2008), plaintiff granted defendant an exclusive license to distribute its product.  A first provision

23   barred plaintiff from selling "any goods which are copies, replicas or imitations of [NeverScrub]

24   Products…."  *Id*. at 1146.  In addition, a second clause barred plaintiff from selling "any products

25   which are directly or indirectly competitive with the Products…."  *Id*.  The court recognized that

26   the latter provision was likely void under Section 16600 as an improper restraint on trade.  By

27   contrast, the court held that plaintiff was likely to succeed on the merits of *the product-specific*

28   *restraint*.  *Id*. at 1148.  Here, as alleged, the Agreement merely bars Luckey from exploiting

1    TRT's product.  As in *Puricle*, that provision should be undisturbed by Section 16600.[3]

2        **C.   The FAC Adequately Pled Damages Incurred By TRT**

3        Luckey argues that TRT failed to articulate damages with sufficient detail.  (Mtn. at 12).

4    In so doing, Luckey ignores the general rule that, "[a]t the pleading stage, general factual

5    allegations of injury resulting from [the] defendants' conduct may suffice, for on a motion to

6    dismiss [the court] presume[s] that general allegations embrace those specific facts that are

7    necessary to support the claim."  *Lujian v. Defenders of WildLife*, 504 U.S. 555, 561 (1992).  Here,

8    the FAC alleges numerous injuries resulting from Luckey's breach.  For instance, TRT pled that

9    Luckey's breach prevented it from monetizing its Head Mounted Display, stating that Luckey "set

10   off to design and commercialize the Head Mounted Display for himself and Oculus rather than the

11   Partnership."  (FAC ¶ 22).  The FAC also alleged that Luckey was able to raise $2.4 million via a

12   Kickstarter campaign and nearly $100 million in venture financing based on the disclosure of

13   TRT's HMD design, all to the exclusion of TRT.  (*Id.* ¶ 35).  On that basis, the FAC alleges, "TRT

14   has been injured in an amount to be determined."  (*Id.*, ¶ 40).  That is all that is required.  *See Furia*

15   *v. Helm III*, 111 Cal. App. 4th 945, 957 (2003) (finding a complaint need only contain "[a] demand

16   for judgment for the relief to which the pleader claims to be entitled" and need not allege a

17   "specific dollar amount" unless "a default judgment is to be entered.").

18       The cases cited by Luckey are readily distinguishable.  Those cases involve complaints

19   alleging injury based on tenuous types of ***non-monetary harm***.  For instance, in *Low v. LinkedIn*

20   *Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012), plaintiff premised damages on

21   "embarrassment and humiliation" and disclosure of "personal information," which he described as

22   "valuable property."  *Id.* at 1028.  Likewise, in *Swinerton Builders v. Am. Home Assur. Co.,* 2013

23   WL 1122022, at *1 n.1 (N.D. Cal. Mar. 15, 2013), the complaint alleged damage to business

24   reputation, without explanation.  In these extreme cases, the courts found that plaintiffs failed to

25   _____

26   [3] Under Defendants' logic, Section 16600 would lead to perverse results.  An agreement that
     required a party to refrain from selling products that infringe on another's intellectual property
     would be void – merely because it barred the sale of infringing goods.  That is not the law.  *See*
27   *SCO Grp., Inc. v. Novell, Inc.*, 2007 WL 2327587, at *43 (D. Utah Aug. 10, 2007) ("[T]he
     restrictions are not void under Section 16600" because "the license merely restricts Novell's ability
28   to use SCO's property" and "does not preclude Novell from pursuing its business.").

1   plead "appreciable and actual damage." *Low*, 900 F. Supp. 2d at 1029.  By contrast, TRT does not

2   allege nebulous harm stemming from intangible assets; the FAC alleges monetary harm from

3   breach of a contractual obligation.  Luckey's arguments to the contrary – *e.g.*, that these damages

4   are disproportional to TRT's investment in the HMD – present questions of fact.  (Mtn. at 15).

5   **III.    THE BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR
           DEALING CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6)**

6          A claim for breach of the implied covenant is "based on the existence of an underlying

7   contractual relationship, and the essence of the covenant is that neither party to the contract will do

8   anything which would deprive the other of the benefits of the contract."  *Milne Emps. Ass'n v. Sun*

9   *Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991).  Here, the express terms of the Agreement required

10  that Luckey refrain from disclosing the details concerning TRT's HMD and using those details for

11  another's gain.  (FAC ¶ 19).  TRT alleges that Luckey breached the implied duty of good faith and

12  fair dealing by intentionally frustrating those two purposes of the Agreement.  (FAC ¶ 43).

13         Luckey argues that TRT's implied covenant claim fails because it is "simply a rehash of its

14  failed breach of contract claim" and is, therefore, "purely superfluous." (Mtn. at 16).[4]  That is

15  incorrect.  The breach of contract claim is, of course, ***based*** on breach of a specific contractual

16  obligation.  By contrast, in support of the implied covenant claim, the FAC alleges that Luckey

17  refused to discharge contractual responsibilities – not by ***honest mistake*** – but by ***deliberate act***.

18  Whether or not Luckey also breached the contract, his refusal to comply disappointed TRT's

19  reasonable expectations under the Agreement and deprived TRT of the benefits of the Agreement.

20  This is sufficient to plead breach of implied covenant under well-settled law.

21         This distinction was drawn in *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App.

22  3d 1371, 1394–95 (1990) – a case cited by Luckey.  There, the Court found that a claim for breach

23  of implied covenant is not duplicative of a contract claim when the complaint alleges that:

24         the conduct of the defendant, whether or not it also constitutes a breach of a consensual
           contract term, demonstrates a failure or refusal to discharge contractual responsibilities,
25         prompted not by an honest mistake, bad judgment or negligence but rather by a
           conscious and deliberate act, which unfairly frustrates the agreed common purposes

26

27  ────────────────────

28  [4] Luckey also argues that TRT cannot plead breach of the implied covenant because it is not a
    party to the Agreement.  (Mtn. at 15).  As discussed, this is not true.  Sections I.A and I.B, *supra*.

1

and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

2

3

*Id.* at 1395. This Court reiterated that distinction in *Davis v. Apperience Corp.*, 2014 WL 5528232

4

(N.D. Cal. Oct. 31, 2014), stating that "the allegations in a breach of implied covenant claim"

5

must "go beyond the statement of a mere contract breach." *Id.* at *6.

6

The FAC goes beyond the contract claim and alleges that Luckey frustrated the purpose of

7

the Agreement by falsely promising to "discharge [his] contractual" responsibilities. *Careau*, 222

8

Cal. App. 3d at 1395. This includes, for instance, "keep[ing] all details including drawings and

9

part suppliers of the Head Mounted Display confidential" and "refrain[ing] from aiding any other

10

person or entity in the design of a Head Mounted Display other than the Partnership." (FAC ¶ 43).

11

Indeed, TRT explicitly pled that "Luckey had no intention of" performing these obligations.

12

(FAC ¶ 54). Thus, whether Luckey breached the Agreement is a different issue than whether

13

Luckey falsely promised to discharge his obligations thereunder. See also *Dallas & Lashmi, Inc.*

14

*v. 7-Eleven, Inc.,* 2015 WL 3631684, at *6-9 (C.D. Cal. June 10, 2015) (rejecting motion to

15

dismiss where breach of implied covenant premised on false promises).

16

In fact, the FAC goes even further and alleges that Luckey frustrated the intent of the

17

Agreement in other ways. For instance, TRT alleged that Luckey "never returned" the "Head

18

Mounted Display … to the Partnership." (FAC ¶ 20). This conduct plainly frustrated the purpose

19

of the Agreement – to ensure that the HMD remained confidential before it hit the market – and

20

disappointed TRT's reasonable expectations. (*Id.*). Thus, Defendants are mistaken that TRT's

21

implied covenant claim is a carbon copy of its contract claim.[5]

22

**IV.    THE CONVERSION CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6)**

23

To state a claim for conversion, TRT must allege that (1) it owned or had a right to possess a

24

specific item of property; (2) Defendants wrongfully dispossessed TRT of that property; and (3)

25

[5]  The implied covenant claim should also not be dismissed at the pleading stage because it serves as an *alternative theory* to breach of contract. Should the Agreement be interpreted narrowly, the

26

implied covenant would "operate as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the

27

express covenants) frustrates the other party's rights to the benefits of the contract." *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 (2015).

28

TRT was damaged as a result. *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Defendants contend that TRT failed to sufficiently plead the first and second elements. Both arguments are unavailing and attempt to argue the merits of the claim.[6]

### A.   <u>Plaintiff Adequately Pled A Property Interest</u>

The first prong requires only that TRT plead that it owned a specific item of property. *See G.S. Rasmussen*, 958 F.2d at 906. The FAC satisfies this requirement, pleading that "Defendants knowingly converted to the Defendants' own use tangible property owned by TRT. The property converted consists, at a minimum, of at least one ***prototype virtual reality Head Mounted Display (and associated components and materials)*** built for and in conjunction with TRT." (FAC, ¶ 46 (emphasis added)). This allegation satisfies Rule 8 and should withstand scrutiny in a 12(b)(6) challenge.

Defendants' reliance on *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) is not persuasive. *Kremen* involved allegations concerning intangible property. There, the Court found that, while plaintiff "had an intangible right in his domain name," domain names "are intangibles not subject to conversion." *Id.* at 1029. Here, by contrast, the subject matter of the alleged conversion are tangible articles including a prototype HMD, components and materials.[7] Thus, *Kremen* is inapposite.

### B.   <u>Plaintiff Adequately Pled A Dispossession Of That Property Interest</u>

Defendants also argue that TRT failed to plead dispossession of its property interest – the HMD prototype. (Mtn. at 17). Defendants' sole objection is that the FAC did not plead a "demand for return" of the prototype. This argument is overly formalistic. TRT explicitly pled that "Luckey shipped a Head Mounted Display to Seidl pursuant to the Agreement," and that "the

---

[6] Defendants also contend (via a footnote) that TRT's conversion claim is somehow time-barred, stating that the statute of limitations began when TRT last sent the HMD to Luckey for improvement. This argument ignores that, in cases where the facts giving rise to the conversion have been fraudulently concealed, the statute of limitations begins to run on the date the ***plaintiff discovers the conversion*** – not when the conversion occurs. *See Bartlett v. Pacific Nat. Bank*, 110 Cal. App. 2d 683, 694 (1933). TRT alleged facts to support concealment. (FAC, ¶¶ 19- 22, 33).

[7] Defendants also suggest that TRT failed to plead a "legitimate claim to exclusivity on the prototype HMD" because the "exclusivity" provision was never triggered and is void. (Mtn. at 16-17 (citing *Kremen*, 337 F.3d at 1030)). Not so. *See* Sections II.A, B. *supra*.

1   Head Mounted Display was later returned to Luckey for further improvement." (FAC ¶ 20).

2   Subsequently, Luckey "passed off the Head Mounted Display as his own and set off to design and

3   commercialize the Head Mounted Display for himself and Oculus rather than the Partnership."

4   (*Id*. ¶¶ 22, 48). Finally, "the Head Mounted Display was never returned to the Partnership." (*Id*. ¶

5   20). That is more than sufficient to plead dispossession. TRT need not invoke any magic words

6   to do so.

7          Moreover, a "demand for return" is not an element for conversion, and Defendants cite no

8   authority to the contrary. For instance, *White v. SSA*, 2015 U.S. Dist. LEXIS 82193 (N.D. Cal.

9   June 23, 2015), cited by Defendants, supports TRT's position. There, the Court found that

10  plaintiff failed to plead dispossession because the complaint did "not state how Defendants took

11  possession, used, or converted Plaintiff's personal property," such as by alleging that Defendants

12  "sold or disclosed Plaintiffs' [property] to a third party." *Id.* at **18-19. The FAC, by contrast,

13  alleges all of these facts, *e.g.*, that Luckey took possession of the HMD to make improvements

14  and, instead, monetized it for his own gain. (FAC ¶ 48). Defendants cite no authority to support

15  their self-serving pleading standard.[8]

16  **V.    THE CONSTRUCTIVE FRAUD CLAIM SHOULD NOT BE DISMISSED UNDER
        12(B)(6)**

17

18         Constructive fraud consists of "any breach of duty which, without actual fraudulent intent,

19  gains an advantage for the person in fault … by misleading another [person] to his [or her] prejudice,"

20  and it also exists where conduct, though not actually fraudulent, ought to be treated as such because it

21  has all the actual consequences and all the legal effects of actual fraud. Cal. Civ. Code § 1573. It "is

22  presumed from the relation of the parties to a transaction, or the circumstances under which it takes

23  place." *Mary Pickford Co. v. Bayly Bros.*, *Inc.,* 12 Cal. 2d 501, 525 (Cal. 1939). To state a claim for

24  constructive fraud, a party must allege: (1) a fiduciary or confidential relationship; (2) an act,

25  omission, or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage.

---

26  [8] Contrary to Defendants' suggestion, *Arrieta v. County of Kern*, 2014 WL 2801048 (E.D. Cal.
    June 19, 2014) involved the *length* of dispossession – not a demand for return. There, the Court

27  found failure to plead dispossession because "an actionable deprivation of use must be for a time
    so substantial that it is possible to estimate the loss caused thereby" and it "cannot determine

28  whether Plaintiff's … cell phones … were returned after a negligible period of time." *Id.* at *12.

1   *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006).  A "confidential relationship

2   may be founded on a moral, social, domestic, or merely personal relationship as well as on a legal

3   relationship."  *Barbara A. v. John G.,* 145 Cal. App. 3d 369, 382 (1983).

4         Defendants contend that TRT has failed to state a claim for constructive fraud for lack of

5   allegations that show a fiduciary or contractual relationship, and by failing to plead facts and

6   circumstances that surrounded the misconduct with particularly, *e.g.*, "the who, what, when, where,

7   and how of the misconduct charged."  (Mtn. 18-19).  Defendants are mistaken.

8         TRT sets forth sufficient facts to establish a confidential relationship on the part of Luckey

9   and Oculus.  TRT alleges that Luckey entered into and then violated a confidential relationship

10  when he executed the Agreement, knowing that he would soon form an entity to compete with

11  TRT – all while continuing to access TRT's confidential information. (FAC ¶ 17) ("At all relevant

12  times, Luckey understood that the information used by him concerning, among other things, all

13  details, drawings, and parts suppliers for the head mounted displays being built by Luckey for

14  TRT was to be kept confidential and that TRT expected the information to remain confidential");

15  (*id*., ¶ 19).[9]  The FAC also describes the parties' interactions leading up to that Agreement, with

16  Seidl emailing Luckey to confirm the grant of "exclusive rights to your design unless we [TRT]

17  decide not to use it," and Luckey responding "Yes, we are on the same page here."  (*Id*., ¶¶ 14-15).

18        In response, Defendants now argue that TRT cannot show a confidential relationship

19  because "there is nothing in the Complaint to plausibly suggest that Luckey even knew TRT or

20  Igra existed, let alone that they had the requisite confidential or fiduciary relationship."  (Mtn. at

21  19).  This is simply not true.  As described above, the FAC alleges that Luckey knew about Seidl's

22  partnership with Igra (*see* Section I.A, *supra*), and that Ron Igra even "transferred via PayPal a

23  payment of $798.00 to Luckey," which Luckey used "to purchase parts for the TRT prototype."

24  (FAC ¶ 11, 14-16).  Thus, the FAC pled ample facts to support Luckey's knowledge of TRT.[10]

25

26  _____

[9]  Defendants also rehash their argument that "the Seidl/Luckey Contract was solely between
    Luckey and Seidl as individuals" to suggest that no relationship exists between TRT and Luckey.

27  As described above, that argument is meritless.  *See* Sections I.A and I.B, *supra*.

28  [10] Defendants also claim that TRT did not plead breach of that confidential relationship because

The FAC further alleges facts and circumstances surrounding Defendants' breach of that confidential relationship.  For instance, TRT described the omissions and failure to disclose material facts to TRT concerning the Defendants' formation of a competing business.  (FAC ¶¶ 22-33 (alleging, *e.g.*, that "Luckey formed Oculus" on June 12, 2012)).  TRT pled facts stating that it relied on Defendants to maintain the confidential relationship to its detriment and has been damaged by Defendants' breach.  (FAC ¶56 ("Had Luckey disclosed his intention to breach his duty, TRT would have acted differently.  It would not have placed its trust in Luckey and would have pursued its desire to develop head mounted display technology with someone else.")); (*id*., ¶ 53).  Thus, TRT has pleaded plausible allegations for each element of constructive fraud.

This Court's decision in *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) is instructive.  There, plaintiff alleged that "defendants should have disclosed to plaintiff that they had already formed an entity to compete with plaintiff," while at the same time collecting plaintiff's "confidential information."  *Id*. at *3.  The complaint alleged that "defendants shared plaintiff's confidential information with a competitor, in violation of a nondisclosure agreement between the parties," and "[h]ad defendants fully disclosed their intentions to breach the contract and form a competing entity," plaintiff allegedly would have behaved differently "by ending the agreement."  *Id*.  On that basis, this Court found that plaintiffs sufficiently pled constructive fraud under Rule 9(b).  *Id*.  This case is virtually identical.  TRT pled that Luckey entered into a confidentiality agreement and failed to disclose his intentions to breach its provisions and form a competing company – Oculus.  Had those intentions been disclosed, TRT pled that it would have acted differently by "developing head mounted display technology with someone else" – by "ending the agreement" or never consummating it in the first place.  (FAC ¶ 56).

## VI.   THE STATUTORY UCL CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6)

TRT has pled violations of California's UCL under each of the unlawful, unfair and fraudulent prongs.[11]  Each independent basis is addressed in turn below.

---

the Exclusivity provision of the Agreement was never triggered and is void under Section 16600. (Mtn. at 18-19).  As discussed above, that is incorrect.  *See* Sections II.A and II.B, *supra*.

[11]  Defendants argue that "TRT has no cognizable legal interest in the prototype HMD" because it

### A.   **Plaintiff Pled Unlawful Conduct**

Under the "'unlawful' variety of unfair competition," the UCL "permits violations of other laws to be treated as unfair competition that is independently. actionable." *Kaisky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (Cal. 2002).  Virtually any law, be it federal, state, or local, can serve as a predicate for an action under the UCL. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010).  A violation of court-made law can also be the basis of a claim under §17200. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008).

TRT alleges Defendants have committed unlawful competition by, *inter alia*, "building and monetizing TRT's Head Mounted Display and passing it off as their own original product."  (FAC ¶ 61).  As alleged in the FAC, that conduct stems from Defendants' breach of contract and implied covenant, conversion, and/or constructive fraud.  Any of these may serve as the predicate "unlawful" act.  Thus, Defendants' argument that TRT's claim of an unlawful business act or practice under Section 17200 does not identify a statutory predicate must fail.

### B.   **Plaintiff Pled Unfair Conduct**

Notably, with respect to the unfair prong, the California Supreme Court has recognized that not only antitrust violations but any action that "significantly threatens or harms competition" could be unfair. *Cel-Tech Commc'n v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (Cal. 1999).  The "significantly threatens" language is flexible; recent cases have also clarified that a practice not proscribed by statute or court-made law is nevertheless "unfair" if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Gregory v. Albertson's, Inc.,* 104 Cal. App. 4th 845, 853-54 (2003).

TRT's claim under Section 17200 is predicated on breach of duty to keep TRT's HMD design confidential and to not monetize it for his own gain.  The acts described in the FAC are immoral, unethical, oppressive, and unscrupulous.  They also violate the spirit of antitrust laws, threaten competition, and violate the fundamental rules of honesty and fair dealing, by relying on

---

was not a party to the Agreement.  (Mtn. 20).  Even if TRT's UCL claim rested on its contract allegations (which they do not), Defendants' argument would fail for the reasons described in Sections I.A and I.B, *supra*.  But, as described above, *none* of TRT's UCL allegations depend on its contract claim. *See* Section I.C, *supra*.

1   the disloyal actions of a contractor that formed a competing entity based on its relationship with

2   TRT.   Defendants have unfairly profited at its competitor TRT's expense.

3       Defendants also ignore settled law that dismissal of an alleged violation of the UCL under

4   the "unfairness" prong at the pleadings stage is disfavored.  *See e.g.*, *People v. McKale,* 25 Cal. 3d

5   626, 635 (Cal. 1979) ("What constitutes 'unfair competition' ... under any given set of

6   circumstances is a question of fact.").  Defendants' argument is, therefore, premature.

7       **C.   Plaintiff Pled Fraud**

8       In *In re Tobacco II Cases*, the California Supreme Court confirmed that the fraudulent

9   business prong of the UCL provides a tool for consumer protection that is distinct from and

10  supplemental to traditional claims of common law fraud:  "The fraudulent business practice prong

11  of the UCL has been understood to be distinct from common law fraud."  46 Cal. 4th 298, 312

12  (Cal. 2009).  In *Tobacco II*, the court reiterated that, "[t]o state a claim under either the UCL or the

13  false advertising law, based on false advertising or promotional practices, it is necessary only to

14  show that '***members of the public are likely to be deceived***.'"  *Id*., 46 Cal. 4th at 311 (emphasis

15  added).  Thus, there is no need to plead any specific "misleading statements," as Defendants suggest.

16      TRT satisfied the legal standard.  The FAC explicitly alleges that "Defendants' acts,

17  including building and monetizing TRT's Head Mounted Display and passing it off as their own

18  original product" injured TRT.  (FAC, ¶ 61; *see also id*., ¶22 ("Luckey passed off the Head

19  Mounted Display as his own and set off to design and commercialize the Head Mounted Display

20  for himself and Oculus rather than the Partnership.")).  That is all that is required.  Additional

21  common law elements of fraud need not be pleaded.  *See Comm. on Children's Television, Inc. v.*

22  *Gen. Foods Corp.*, 35 Cal. 3d 197, 211-12 (Cal. 1983).

23      Regardless, even if more particularity were required, the FAC alleges specific

24  misrepresentations that Luckey made to the public.  For instance, the FAC states that Luckey

25  "called the Partnership's Head Mounted Display the Oculus Rift" (FAC ¶ 22), blogged that he

26  "hope[d] to bring [the RIFT] to market through Oculus" (FAC ¶ 24), and started a Kickstarter

27  campaign to commercialize the RIFT.  (FAC ¶ 25).  These misrepresentations, among others, were

28  likely to deceive members of the public as to ownership of the HMD.

**VII.    THE COMMON LAW UNFAIR COMPETITION CLAIM SHOULD NOT BE DISMISSED UNDER 12(B)(6)**

Defendants argue that TRT failed to plead common law unfair competition because that claim requires that Defendants pass off their product as Plaintiff's – rather than putting Defendants' own name on the product.  (Mtn. at 21).  But such palming off is ***not*** a prerequisite to unfair competition when the parties are competitors.  *See Trovan, Ltd. v. Pfizer, Inc.*, 2000 WL 709149, at *6 (C.D. Cal. May 24, 2000) ("[E]vidence of palming off" is not required "in the context of competing businesses, *i.e.*, one party was obviously gaining from his use of the other party's 'work.'").  That is the case here.  (Mtn. at 20 (describing the parties as "putative competitors")).

The facts of *Ojala v. Bohlin,* 178 Cal. App. 2d 292 (1960) are illustrative.  There, plaintiff conceived and developed the design of the "Hollywood Fast Draw Holster."  *Id*. at 296.  After conceiving of the design, plaintiff entered into an agreement with defendant for the manufacture of the design.  *See id.*  As part of their agreement, defendant promised not to compete with plaintiff.  Thereafter, however, defendant started advertising and selling a holster named "the lightning draw," which was identical to plaintiff's original design and which was advertised in the same publication as plaintiff's product was advertised.  *See id.*  The court found that defendant was indeed a competitor of plaintiff, but that defendant did not attempt to "palm off" plaintiff's goods, because defendant put his ***own name*** on the infringing holster.  Nonetheless, even lacking the element of palming off, the court held that plaintiff was entitled to monetary damages because "[t]he scope of unfair competition may not be limited to a particular type of deception" and that "[t]he legal concept of unfair competition has evolved as a broad and flexible doctrine with a capacity for further growth to meet changing conditions, and there is no complete list of the activities which constitute unfair competition."  *Id*. at 301.  Similarly, the FAC alleges that Luckey was tasked with building a product for TRT, promised not to use that product to disadvantage TRT, and instead sold the product under his own name.  This is sufficient to satisfy Rule 8.

**VIII.    PLAINTIFF'S COMMON LAW AND UNFAIR COMPETITION CLAIMS ARE NOT PREEMPTED BY CUTSA**

Defendants assert, in essence, that the California Uniform Trade Secrets Act ("CUTSA") preempts every other state law claim that in any way involves confidential information.

1   Defendants' view of CUTSA as a black hole that swallows all other long-established state law

2   claims is not the law in California or anywhere else.

3       First, Defendants' preemption arguments are premature.  Whether CUTSA preempts state-

4   law causes of action is a factual inquiry, appropriately addressed after discovery.  *See U.S. Legal*

5   *Support, Inc. v. Hofioni*, 2013 WL 6844756, at *11 (E.D. Cal. Dec. 20, 2013) ("Resolving this

6   question requires analysis of the facts: namely, what the confidential or proprietary information is,

7   how it was converted, and the property interest alleged to have been harmed as a result of that

8   conversion.  All of these questions can be addressed at summary judgment and/or trial.");  *Amron*

9   *Int'l Diving Supply, Inc. v. Hydrolinx Diving Comm., Inc.*, 2011 WL 5025178, at *10 (S.D. Cal.

10  Oct. 21, 2011) ("Defendants' motion to dismiss based on preemption cannot be addressed until it

11  is determined whether the allegedly misappropriated information constitutes a trade secret.").

12      Second, Defendants are substantively wrong.  CUTSA includes a preemption provision

13  that displaces common law and statutory theories of recovery to the extent that they are predicated

14  on the same facts upon which one could assert a claim for misappropriation of trade secrets.  *See*

15  Cal. Civ. Code § 3426.7.  But "claims arising out of facts similar to, but distinct from, those

16  underlying a claim for misappropriation of trade secret are not preempted."  *AirDefense, Inc. v.*

17  *AirTight Networks, Inc.*, 2006 WL 2092053, at *3 (N.D. Cal. Jul. 26, 2006).  By contrast, this is

18  not a trade secret case and the FAC does not set forth a trade secret cause of action.  None of the

19  identified state-law claims is predicated on the theft of trade secrets, but rather on additional

20  wrongful conduct, including thefts of non-trade-secret property and wrongs "based upon alleged

21  facts beyond trade secret misappropriation."  *Titan Global LLC v. Organo Gold Int'l, Inc.*, 2012

22  WL 6019285, at *10 (N.D. Cal. Dec. 2, 2012).

23      **A.   The Conversion Claim Is Not Preempted**

24      Defendants effectively rewrite the FAC, suggesting that "the design underlying the

25  prototype HMD, rather than the physical prototype, is what is truly at issue in this claim."  (Mtn.

26  at 23).  This is inconsistent with TRT's pleading.  In support of TRT's conversion claim, the FAC

27  alleges that Defendants stole substantial ***tangible property***, including "at least one prototype

28  virtual reality Head Mounted Display (and associated components and materials)."  (FAC ¶ 46).

As alleged, Luckey took possession of that property to perform improvements and has refused (to this date) to return it.  (*Id*. ¶ 20).  TRT's conversion claim is based on Defendants' wrongful possession of physical materials that belong to TRT.  It does not purport to (and, in fact, does not) seek to protect any information that constitutes a trade secret.

Even if TRT's tangible property did include trade secret information, this does ***not*** mean that the claim is preempted by CUTSA.  *See  E-Smart Techs., Inc. v. Drizin*, 2009 U.S. Dist. LEXIS 272, at *20 (N.D. Cal. Jan. 5, 2009) (holding that CUTSA does not preempt conversion claim to the extent based on conversion of tangible items belonging to plaintiff regardless of whether information contained therein is a trade secret).  In that case, CUTSA would still not preempt a conversion claim directed to the tangible property identified in the FAC.  *See Palm Springs-LaQuinta v. Kieberk*, 46 Cal. App. 2d 234, 239 (1941) (upholding a conversion claim based on an employee's removal of tangible index cards containing business information of the employer).  By Defendants' reasoning, TRT has no remedy even for intentional theft unless the stolen material rose to the level of a trade secret.  Acceptance of that overbroad theory is unsupported by the text of the statute and would frustrate CUTSA's goal of achieving uniformity in trade secret misappropriation law.

## B.   The Constructive Fraud Claim Is Not Preempted

CUTSA also does not preempt TRT's constructive fraud claim.  The claim is based on Defendants' ***material misrepresentations*** regarding the Agreement – not any trade secret. (FAC ¶ 54).  In the Agreement, Defendants promised to refrain from aiding any other person or entity in the design of an HMD other than the partnership.  (*Id*.).  TRT has also alleged that Luckey never had any intention to perform these promises, and that Defendants failed to disclose their development of a competing HMD.  (*Id*. ¶¶ 54-55).  Defendants' fraud with respect to the Agreement is actionable independent of any trade secret claim that Defendants may invent.

For example, in *Gabriel Tech. Corp. v. Qualcomm Inc*., a licensee allegedly misappropriated confidential information related to the licensed technologies.  2009 WL 3326631, at *1-2 (S.D. Cal. Sept. 3, 2009).  The court held that the plaintiff's fraud claim was not preempted by CUTSA and that it was based on allegations that the defendants "intentionally and knowingly

1   misrepresented their intent to perform in accordance with … [the] license agreement." *Id*. at *13.

2   The court focused on the defendants' "misrepresentations regarding intent to perform in the future

3   according to agreed upon contractual terms." *Id*.  Similarly, TRT has alleged that Defendants

4   fraudulently exploited the Agreement to gain access to TRT's confidential information for their

5   own gain.  (FAC ¶¶ 55-56).  Precisely this type of fraud claim has been held to be maintainable –

6   even alongside a misappropriation claim.  *See, e.g.*, *Gabriel*, 2009 WL 3326631, at *13;

7   *Illumination Mgmt. Solutions, Inc. v. Ruud*, 2012 WL 4069315, at *7 (E.D. Wis. Sept. 14, 2012)

8   (finding no preemption where fraud claim was based on Defendants' "misrepresentations

9   regarding their intent to perform their duties under the Marketing Agreement.").

10   **C.   The Unfair Competition Claims Are Not Preempted**

11          TRT's unfair competition claims are not preempted by CUTSA because they too involve

12   thefts of non-trade secret information.  *See Martone v. Burgess*, 2008 WL 3916022, at *3 (N.D.

13   Cal. Aug. 25, 2008) (unfair competition law claim "not preempted to the extent it [was] based on

14   misappropriation of property that [was] not a trade secret").  Here, the claims involve conduct

15   unrelated to trade secret theft, including the passing off of TRT's HMD as Defendants' original

16   product.  (FAC ¶ 61).  The UCL claim, in particular, is premised upon other unlawful, unfair and

17   fraudulent acts, including conversion and constructive fraud, each of which has distinct elements.

18   There is no preemption where the claim is "based on a much broader spectrum of misconduct than

19   simply misappropriating trade secrets." *Ali v. Fasteners for Retail, Inc*., 544 F. Supp. 2d 1064, 1070

20   (E.D. Cal. 2008); *see also Spring Design, Inc. v. Barnesandnoble.com, LLC*, Case No. 09–05185-

21   JW, Dkt. 103, slip op., at *4 (N.D. Cal. Apr. 8, 2010) (finding that a UCL claim based on "false

22   statements and misleading statements" is "distinct both in time and substance" from trade secret).

23   **IX.   CONCLUSION**

24          For the foregoing reasons, TRT respectfully requests that the Court deny Defendants'

25   motion in its entirety.  Alternatively, if the Court is inclined to grant the motion, TRT respectfully

26   requests that the Court do so without prejudice and grant TRT leave to amend its FAC.

27

28

1 | DATED:  October 12, 2015

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By _____ */s/ Robert W. Stone* _____
 Robert W. Stone

Attorneys for Plaintiff TOTAL RECALL
TECHNOLOGIES

TOTAL RECALL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT