1   COOLEY LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   BETHANY C. LOBO (248109) (blobo@cooley.com)
    NATHANIEL R. COOPER (262098) (ncooper@cooley.com)
3   101 California Street, 5th Floor
    San Francisco, CA 94111-5800
4   Telephone:    (415) 693-2000
    Facsimile:    (415) 693-2222
5
    COOLEY LLP
6   MARK F. LAMBERT (197410) (mlambert@cooley.com)
    ANGELA L. DUNNING (212047) (adunning@cooley.com)
7   3175 Hanover Street
    Palo Alto, CA 94304-1130
8   Telephone:    (650) 843-5000
    Facsimile:    (650) 849-7400
9

10  Attorneys for Defendants
    PALMER LUCKEY and OCULUS VR, LLC
11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15

16
    TOTAL RECALL TECHNOLOGIES,            Case No.  3:15-cv-02281 (WHA)
17
                Plaintiff,                **DEFENDANTS' REPLY MEMORANDUM IN**
18                                        **SUPPORT OF MOTION TO DISMISS FIRST**
           v.                             **AMENDED COMPLAINT**
19
    PALMER LUCKEY and OCULUS VR, LLC      Date:       To Be Determined
20  as successor-in-interest to OCULUS VR, Time:       8:00 a.m.
    INC.,                                 Location:   Courtroom 8, 19th Floor
21                                        Judge:      Hon. William H. Alsup
                Defendants.               Trial Date: September 12, 2016
22
                                          Complaint Filed:  May 20, 2015
23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 1

    A.    The FAC Should Be Dismissed for Lack of Standing ........................................... 1

        1.    TRT is not a third-party beneficiary of the Contract ................................. 2

        2.    TRT lacks standing to sue on the Contract as an undisclosed principal ..................................................................................................... 4

        3.    TRT lacks standing to assert its related tort claims ................................... 6

    B.    TRT's Claim for Breach of Contract (Count I) Should Be Dismissed .................. 6

        1.    The exclusivity provision was never triggered ......................................... 7

        2.    The exclusivity provision is void under Section 16600 ............................ 8

    C.    TRT's Implied Covenant Claim (Count II) Should Be Dismissed ....................... 9

    D.    TRT's Claim for Conversion (Count III) Should Be Dismissed ........................ 10

    E.    TRT's Claim for Constructive Fraud (Count IV) Should Be Dismissed ............. 11

    F.    TRT's UCL Claim (Count V) Should Be Dismissed ......................................... 12

    G.    TRT's Common Law Unfair Competition Claim (Count VI) Should Be Dismissed ........................................................................................................ 13

    H.    TRT's Tort Claims Are Superseded by CUTSA................................................ 13

        1.    TRT's conversion claim is superseded by CUTSA ................................. 14

        2.    TRT's constructive fraud claim is superseded by CUTSA ...................... 14

        3.    TRT's unfair competition claims are superseded by CUTSA .................. 15

III.    CONCLUSION .......................................................................................................... 15

Cooley LLP
Attorneys At Law
Palo Alto

i.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balsam v. Tucows Inc.*,
  627 F.3d 1158 (9th Cir. 2010)..................................................................................................2

*Bank of the W. v. Sup. Ct.*,
  2 Cal. 4th 1254 (1992) ...........................................................................................................13

*Berryman v. Merit Prop. Mgmt. Inc.*,
  152 Cal. App. 4th 1544 (2007) ..............................................................................................12

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990)..................................................................................................9

*Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.*,
  20 Cal. 4th 163 (1999) ...........................................................................................................12

*Chartis Specialty Ins. Co. v. Tesoro Corp.*,
  No. 5:11-CV-927-DAE, 2015 WL 4154136 (W.D. Tex. July 10, 2015) ..................................2

*Cobb v. Ironwood Country Club*,
  233 Cal. App. 4th 960 (2015) ................................................................................................10

*Dallas & Lashmi Inc. v. 7-Eleven, Inc.*,
  No. CV 15-02044 SJO, 2015 WL 3631684 (C.D. Cal. June 10, 2015) ..................................10

*Davis v. Apperience Corp.*,
  No. C-14-00766 WHA, 2014 WL 5528232 (N.D. Cal. Oct. 31, 2014) ..................................10

*Dowell v. Biosense Webster, Inc.*,
  179 Cal. App. 4th 564 (2009) ..................................................................................................9

*E-Smart Techs., Inc. v. Drizin*,
  No. C 06-05528 MHP, 2009 U.S. Dist. LEXIS 272 (N.D. Cal. Jan. 5, 2009).......................14

*Farhang v. Indian Inst. of Tech.*,
  No. C-08-02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ..................................15

*Fisher v. Hampton*,
  44 Cal. App. 3d 741 (1975)......................................................................................................9

*Forgeron Inc. v. Hansen*,
  149 Cal. App. 2d 352 (1957)....................................................................................................8

*Gabriel Technologies Corp. v. Qualcomm Inc.*,
  No. 08cv1992–MMA(POR), 2009 WL 3326631 (S.D. Cal. Sept. 3, 2009).....................14, 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

**DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Gifted Sch. v. Grahovac Constr. Co.*,
No. D051905, 2009 WL 3864643 (Cal. Ct. App. 2009)..........................................................3

*Girafa.com, Inc. v. Alexa Internet, Inc.*,
No. C-08-02745 RMW, 2008 WL 4500858 (N.D. Cal. Oct. 6, 2008)....................................12

*Gregory v. Albertson's, Inc.*,
104 Cal. App. 4th 845 (2002) ................................................................................................12

*James v. Litton Loan Servicing, LP*,
No. C 10-05407 CRB, 2011 WL 724969 (N.D. Cal. Feb. 22, 2011)......................................12

*JobScience, Inc. v. CV Partners, Inc.*,
No. C. 13-04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ....................................11

*Karo v. San Diego Symphony Orch. Ass'n.*,
762 F.2d 819 (9th Cir. 1985) ............................................................................................2, 3

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003)..........................................................................................8, 10

*Lifeline Food Co. v. Gilman Cheese Corp.*,
No. 5:15-cv-00034-PSG, 2015 U.S. Dist. LEXIS 64155 (N.D. Cal. May 15,
2015) ....................................................................................................................................14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................................................................1

*MedioStream, Inc. v. Microsoft Corp.*,
869 F. Supp. 2d 1095 (N.D. Cal. 2012) ..........................................................................13, 14

*Morris v. BMW of N. Am., LLC*,
No. C 07-02827 WHA, 2007 WL 3342612 (N.D. Cal. Nov. 7, 2007) ....................................11

*Novelposter v. Javitch Canfield Grp.*,
No. 13-cv-05186-WHO, 2014 U.S. Dist. LEXIS 156268 (N.D. Cal. Nov. 4,
2014) ..................................................................................................................................1, 6

*Ojala v. Bohlin*,
178 Cal. App. 2d 292 (1960)..................................................................................................13

*Palm Springs-LaQuinta Dev. Co. v. Kieberk Co.*,
46 Cal. App. 2d 234 (1941)....................................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Pearson Educ., Inc. v. Alahmad*,
No. 2:12-cv-2936-KJM-CKD, 2013 U.S. Dist. LEXIS 53991 (E.D. Cal. Apr.
16, 2013) ................................................................................................................5

*People v. McKale*,
25 Cal. 3d 626 (1979) ..........................................................................................12

*Puricle, Inc. v. Church & Dwight Co.*,
568 F. Supp. 2d 1144 (C.D. Cal. 2008) .................................................................8

*Schmier v. Justices of the Cal. Sup. Ct.*,
No. C 09-2740 WHA, 2009 WL 2246205 (N.D. Cal. July 27, 2009) ........................3

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ..........................................................................4, 5

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (2010) ...............................................................................14

*Spinks v. Equity Residential Briarwood Apts.*,
171 Cal. App. 4th 1004 (2009) ..........................................................................2, 4

*SunPower Corp. v. SolarCity Corp.*,
No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ...........13, 14

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ..............................................................................13

*Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*,
No. C 07-01519 WHA, 2007 WL 1795695 (N.D. Cal. June 20, 2007) ...................7

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .........................................................................................12

*Top Agent Network, Inc. v. Zillow, Inc.*,
No. 14-cv-04769-RS, 2015 slip op. (N.D. Cal. Aug. 6, 2015) ...............................14

*Trovan, Ltd. v. Pfizer, Inc.*,
No. CV-098-00094 LGB MCX, 2000 WL 709149 (C.D. Cal. May 24, 2000) .........13

*Trs. of the Screen Actors Guild v. NYCA, Inc.*,
572 F.3d 771 (9th Cir. 2009) ...........................................................................2, 3

*Walton v. Davis*,
22 Cal. App. 456 (1913) ........................................................................................5

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ................................................................................................3, 4

**Statutes**

Cal. Civil Code § 1559 ...............................................................................................................2

Cal. Bus. & Prof. Code
    § 16600 ................................................................................................................................1, 8, 9
    §§ 17200 *et seq.* ..................................................................................... *passim*

**Other Authorities**

130 A.L.R. 664 (2015) ................................................................................................................5

Federal Rule of Civil Procedure
    9(b) ................................................................................................................................11, 12, 13
    12(b)(1) ..........................................................................................................................................1
    12(b)(6) ..........................................................................................................................................1

Restatement (Second) of Contracts § 224 ................................................................................7

1 Witkin, Summary of Cal. Law (10th), Contracts § 202 .........................................................7

Cooley LLP
Attorneys At Law
Palo Alto

v.

Defendants' Reply Memo in Support of
Motion to Dismiss FAC
(Case No. 3:15-cv-02281 WHA)

I.    **INTRODUCTION**

Total Recall Technologies' ("TRT") First Amended Complaint ("FAC") attempts to conflate Tom Seidl, the sole and exclusive party to the August 1, 2011 "Nondisclosure, exclusivity, and payments agreement" (the "Seidl/Luckey Contract" or "Contract"), with TRT, a total stranger to the Contract.  As a non-party, TRT lacks Article III standing to enforce the Contract or to bring tort claims arising from it.  Undeterred, TRT now advances contradictory arguments: that it is an intended third-party beneficiary that Luckey knew about, *or precisely the opposite*, an undisclosed principal of Seidl, and therefore a party.  Neither argument saves TRT from the standing defect.  The entire FAC should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

Each of TRT's claims should also be dismissed under Rule 12(b)(6).  TRT's breach of contract claim untenably seeks to enforce the Contract's exclusivity provision, which was never triggered and is void as a matter of law under California Business and Professions Code Section 16600.  And since that unenforceable, invalid provision provides the sole source of Defendants' alleged duties to TRT, TRT's other claims (for conversion, constructive fraud, and unfair competition) fail as well.  For these and the many other reasons addressed in Defendants' opening brief and below, the FAC should be dismissed in its entirety with prejudice.

II.   **ARGUMENT**

    A.    **The FAC Should Be Dismissed for Lack of Standing**

TRT has the burden to show that it has Article III standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Because each of TRT's claims originates with the Seidl/Luckey Contract, to which TRT admittedly is not a party (Opp. at 4–10 (Dkt. 57)), TRT attempts to argue that it has standing under the Contract as either a known and intended third-party beneficiary, or as an actual party by virtue of an undisclosed principal/agent relationship with Seidl.  (*Id.* at 5–9.) TRT's allegations do not support its claimed beneficiary status, and also contradict its newly contrived "undisclosed principal" theory.  TRT lacks standing, and the entire FAC should be dismissed for lack of jurisdiction.  *See Novelposter v. Javitch Canfield Grp.*, No. 13-cv-05186-WHO, 2014 U.S. Dist. LEXIS 156268, at *18–20 (N.D. Cal. Nov. 4, 2014) (dismissing contract,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

1    tort and UCL claims for lack of standing as claimant was not a party or third-party beneficiary).

2                    **1.      TRT is not a third-party beneficiary of the Contract**

3             A third party may assert rights under a contract only if (1) it is named in the contract or, if

4    not expressly named, is a member of a class "referred to and identified in" the contract; *and* (2)

5    the contract's terms show the contracting parties' express intent to benefit it.  *Karo v. San Diego*

6    *Symphony Orch. Ass'n.*, 762 F.2d 819, 821–22 (9th Cir. 1985) (collecting California cases); Cal.

7    Civil Code § 1559.  TRT bears the burden to show that it is a third-party beneficiary.  *Trs. of the*

8    *Screen Actors Guild v. NYCA, Inc.*, 572 F.3d 771, 779 (9th Cir. 2009).  It cannot do so.

9             First, TRT is not expressly named in the Contract.  Nor does the Contract identify or make

10   any reference to a class of non-parties intended to benefit thereunder, as TRT does not dispute.

11   (Ex. A.)[1]  Instead, TRT focuses entirely on Seidl's alleged intent to benefit TRT and Luckey's

12   supposed knowledge of that fact (Opp. at 5–7), both of which are irrelevant because the Contract

13   does not refer to any third-party beneficiary.  TRT has not and cannot satisfy the first element to

14   establish its alleged third-party beneficiary status.  The inquiry should end there.

15            Second, TRT also fails to show that the Contract manifests Seidl's and Luckey's express

16   intent to benefit TRT.  *Karo*, 762 F.2d at 821–22.  Although TRT contends that the parties' intent

17   is a question of fact that cannot be resolved at the pleading stage, the case law cited by TRT

18   makes clear that intent is a "question of ordinary contract interpretation" that should "be inferred,

19   if possible, solely from the language of the written contract."  *Spinks v. Equity Residential*

20   *Briarwood Apts.*, 171 Cal. App. 4th 1004, 1023 (2009).[2]  Thus, where the contract's language

21   shows that the parties did not intend to benefit a purported third-party beneficiary plaintiff, courts

22   routinely dismiss all claims.  *See, e.g.*, *Karo*, 762 F.2d at 822; *NYCA*, 572 F.3d at 779; *Balsam v.*

23   *Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010); *cf. Chartis*, 2015 WL 4154136, at *12 (third

24

25   [1]  All exhibit and paragraph references are to the FAC unless otherwise stated.
     [2]  TRT cites *Chartis Specialty Ins. Co. v. Tesoro Corp.*, No. 5:11-CV-927-DAE, 2015 WL
26   4154136 (W.D. Tex. July 10, 2015), which holds that courts look outside the four corners of an
     ambiguous contract to determine whether the parties intended to benefit a third party.  *Id.* at *10.
27   But *Chartis* explicitly recognizes that "[t]here is no evidence of ambiguity . . . giving rise to a
     third-party beneficiary claim" where, as here, the named parties are "clear and defined" and the
28   would-be third-party beneficiary "is not mentioned in the contract."  *Id.* at *11.

Cooley LLP
Attorneys At Law
Palo Alto

2.

**Defendants' Reply Memo in Support of
Motion to Dismiss FAC
(Case No. 3:15-cv-02281 WHA)**

party not beneficiary under contract "terms as written").

Here, the Contract's language does not show that it was Seidl's intent and Luckey's understanding that the Contract would benefit TRT.  In fact, it demonstrates the exact opposite. The Contract explicitly states that it was "entered into by and between Thomas Seidl . . . and Palmer Luckey"—not Seidl on behalf of, or for the benefit of, any other party.  (Ex. A.)  TRT incorrectly contends that the Contract was intended to benefit TRT because Luckey contracted, *inter alia*, not to "aid any other person or entity in the design of a Head Mounted Display other than the disclosing party."  (Opp. at 5 (citing Ex. A ¶ 9).)  But the Contract defines Seidl alone as the "disclosing party."  (Ex. A, Preamble.)  Because any obligation Luckey had was to Seidl alone, and Luckey was purportedly prohibited from assisting "any other person or entity," the Contract actually would prohibit Luckey from assisting TRT—another entity.  Such exclusive language does not demonstrate any intent to benefit TRT.[3]

TRT nevertheless argues that it is sufficient that the FAC *alleges* that Seidl intended to benefit TRT and that Luckey knew it.  (Opp. at 5.)  But TRT misunderstands the standard, which is whether *the Contract* (not the FAC) manifests Seidl's *and* Luckey's *mutual* intent to benefit TRT; it does not.  *See, e.g.*, *NYCA*, 572 F.3d at 779 ("The contracting *parties* must have intended to confer a benefit on the third party.") (emphasis added); *Karo*, 762 F.2d at 822 (no third-party beneficiary status where "nothing in the agreement" demonstrated such intent).[4]

Fatally, TRT cannot even show *Seidl's* alleged intent to benefit TRT, let alone Luckey's. TRT points to plans and agreements Seidl and Ron Igra purportedly hatched amongst themselves

---

[3] TRT's assertions that (1) Luckey's "details, drawings, and part supplier lists" "were (and remain) the property of TRT"; and (2) the "prototype design developed by Luckey also belongs to TRT" (Opp. at 5)—are untenable legal conclusions that must be rejected because they are not factually supported by the Contract.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (on facial standing challenge, a court should reject conclusory contentions contradicted by documents cited in complaint).

[4] TRT's only support for arguing that Seidl's unilateral intent suffices is an unpublished, uncitable case that TRT misconstrues.  (Opp. at 5, 7 (citing *Gifted Sch. v. Grahovac Constr. Co.*, No. D051905, 2009 WL 3864643, at *13 (Cal. Ct. App. 2009)).)  Under Civil L.R. 3-4(e), TRT's citation to *Gifted* is improper, and the Court should disregard the case and related argument.  *Cf. Schmier v. Justices of the Cal. Sup. Ct.*, No. C 09-2740 WHA, 2009 WL 2246205, at *4–5 (N.D. Cal. July 27, 2009) (Alsup, J.).  In any event, even the *Gifted* court considered *both* contracting parties' intent, holding that plaintiff was not a third-party beneficiary because *the contract* did not manifest both "*parties'* intent" to benefit plaintiff.  2009 WL 3864643, at *15.

CooLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

prior to the Contract, arguing that they show Seidl's intent to benefit TRT. (Opp. at 6.) But allegations that draw unsupported inferences from matters separate from the Contract cannot substitute for contractual language evidencing the parties' intent. *See Spinks*, 171 Cal. App. 4th at 1023. Further, the pre-contract email TRT cites shows that Seidl was actually seeking exclusive rights for himself: "With the initial payment to you *I* would like exclusive rights to your design unless we decide not to use it." (Opp. at 6 (emphasis added); FAC ¶ 14.) In any event, these allegations are irrelevant given the Contract's integration clause, which provides that the Contract "supersedes all prior . . . agreements, representations and understandings." (Ex. A ¶ 7.)

Finally, the FAC does not allege that Luckey knew of Seidl's alleged intent to benefit TRT. TRT instead argues that its *allegation* that "Luckey understood that . . . all details, drawings, and part suppliers for the [HMD] being built by Luckey for TRT was to be kept confidential" is sufficient. (Opp. at 6) (citation omitted.) But the Contract states that Luckey's work was for Seidl's "sole and exclusive benefit," squarely contradicting TRT's allegation. *See Warren*, 328 F.3d at 1139 (court should reject allegations contradicted by contract language). Further, the assertion that Igra sent a $798 PayPal payment to Luckey's mother in April 2011 (Opp. at 7 (citing FAC ¶ 16)) is, again, irrelevant because it is outside *the contract*, and in no way demonstrates that Luckey knew of Seidl's alleged intent, especially since there is no allegation that Luckey knew the payment had come from TRT. TRT's assertion that Luckey must have known that Seidl intended to benefit TRT (a non-party) in entering the Contract, because four months earlier, Igra (a second non-party) sent a PayPal payment to Luckey's mother (a third non-party) does not appear in the FAC as such, and is implausible on its face. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (a court cannot consider "'new' allegations" raised in an opposition in evaluating a motion to dismiss).

### 2. TRT lacks standing to sue on the Contract as an undisclosed principal

Recognizing the fatal flaws in its third-party beneficiary theory, TRT offers an alternative argument that is unsupported by the Contract language and directly in conflict with its third-party beneficiary argument. TRT claims that it was actually an undisclosed party because Seidl allegedly entered the Contract as an agent for TRT without telling Luckey. (Opp. at 8.) TRT's

1   last-ditch effort to save its claims from dismissal is logically inconsistent and legally deficient.

2       Even if there was a factual basis for TRT's alternative theory (there is not), a principal

3   cannot "maintain a suit against the third party if by its express terms, or otherwise, the contract

4   was made with the agent exclusively."  130 A.L.R. 664 (2015); *Walton v. Davis*, 22 Cal. App.

5   456, 459–60 (1913) (reversing grant of relief to plaintiff, a non-contracting party and alleged

6   undisclosed principal, as the third party contracted exclusively with the putative agent for, *inter*

7   *alia*, the putative agent's personal knowledge).  Such is the case here.

8       The Contract, entitled "Nondisclosure, *exclusivity* and payments agreement," provides that

9   it is "entered into by and between Thomas Seidl . . . and Palmer Luckey."  (Ex. A (emphasis

10   added).)  The exclusivity provision states that Luckey "shall not aid *any other person or entity* in

11   the design of a Head Mounted Display other than [Seidl]."  (*Id.* ¶ 9 (emphasis added).)  Under the

12   express terms of the Contract, no other person (Igra) or entity (TRT) was to benefit from

13   Luckey's performance; all but Seidl are expressly excluded.  *See Walton*, 22 Cal. App. at 459–60.

14       The Contract also expressly mandates that Luckey use Seidl's "Confidential Information"

15   for Seidl's "sole and exclusive benefit."  (Ex. A at ¶ 3.)  TRT's contention that it is an

16   undisclosed principal would turn this provision on its head, *mandating* that the only person or

17   entity Luckey could work to benefit is TRT, not Seidl individually.  TRT's contrived agency

18   theory cannot trump the parties' express categorical exclusion of all other "persons" (such as

19   Igra) and "entities" (such as TRT).

20       Finally, TRT's theory also fails because the FAC does not allege that TRT is an

21   undisclosed principal.  Nor does it allege, as it must, facts showing how TRT, as the supposed

22   undisclosed principal, was "directing the transaction."  *See Pearson Educ., Inc. v. Alahmad*, No.

23   2:12-cv-2936-KJM-CKD, 2013 U.S. Dist. LEXIS 53991, at *15–16 (E.D. Cal. Apr. 16, 2013)

24   (granting dismissal as complaint neither alleged undisclosed principal theory nor supporting

25   facts).  TRT's failure to plead the "undisclosed principal" theory in its FAC is particularly telling

26   because the FAC was filed after Defendants' original motion to dismiss, which advanced a

27   standing argument.  *See Schneider*, 151 F.3d 1194 at 1197 n.1 (new "allegations" presented in

28   opposition brief are irrelevant to motion to dismiss).  TRT's contract claims should be dismissed.

Cooley LLP
Attorneys At Law
Palo Alto

5.

**Defendants' Reply Memo in Support of
Motion to Dismiss FAC
(Case No. 3:15-cv-02281 WHA)**

### 3.    TRT lacks standing to assert its related tort claims

TRT correctly concedes that a lack of Article III standing to enforce the Contract is fatal to its implied covenant and constructive fraud claims.  (Opp. at 9 n.1.)  However, TRT contends that it may pursue its conversion and unfair competition claims—even if it lacks standing under the Contract—because those claims do not depend on the Contract, but on TRT's alleged ownership of the prototype HMD Luckey built for Seidl.  (Opp. at 9 (citing FAC ¶¶ 46, 61, 64).)  But TRT's only basis to assert ownership of the prototype HMD is the Contract's exclusivity provision.  Because TRT has no rights under the Contract, it has no claim to ownership of the prototype and thus lacks standing to assert that it was wrongly converted or exploited.  *See, e.g.*, *Novelposter*, 2014 U.S. Dist. LEXIS 156268, at *21–22 (non-party lacked standing to assert tort or UCL claims based on injuries allegedly arising from breach of contract).[5]

### B.    TRT's Claim for Breach of Contract (Count I) Should Be Dismissed

Because TRT is not a party to the Contract it seeks to enforce, it cannot establish the most basic element of a contract claim—the existence of a contract between TRT and Luckey.  (*See* Op. Br. at 12 (Dkt. 48).)  TRT also fails to satisfy the second element—its performance under the contract.  (*Id.*)  The FAC alleges that "TRT performed all conditions, covenants, and promises required to be performed on its part" (¶ 39), but that allegation is meaningless because the Contract imposed no performance requirements on TRT.

Without addressing these deficiencies (each of which is independently fatal to TRT's claim), TRT's Opposition focuses on the third and fourth elements—Luckey's alleged breach of the Contract's exclusivity provision and TRT's purported damages.  The FAC does not adequately plead facts sufficient to satisfy either element.

The exclusivity provision provides in relevant part:

> [Luckey] shall keep all details including drawings and part suppliers of the Head Mounted Display confidential and shall not aid any other person or entity in the design of a Head Mounted Display other than the disclosing party [Seidl]. [sic]

---

[5] Contrary to TRT's assertion (Opp. at 9–10 (citing ¶¶ 45–50, 60–66)), the issue under *Novelposter* is not whether a plaintiff explicitly references the contract as the basis for its tort claims, but whether (as here) its claimed injuries arise from a contract to which it is not a party. 2014 U.S. Dist. LEXIS 156268, at *21.

Cooley LLP
Attorneys At Law
Palo Alto

6.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

1

2

3

> Unless within a twelve month period from 1st july 2011 [Luckey] has not received a minimum payment in royalties[6] of 10,000 US dollars by [Seidl]. The exclusivity shall remain in place for a period of 10 years providing a minimum of 10,000 US dollars is paid from [Seidl] to [Luckey] per annum.

4

(Ex. A ¶ 9 (grammatical errors in original).)   In other words, Luckey was allegedly precluded

5

from disclosing details about his work for Seidl (subject to ¶ 2 of the Contract) or from helping

6

anyone but Seidl design an HMD if—and only if—he received payment of at least $10,000

7

during the time period between July 1, 2011 and July 1, 2012.  (*Id.*)  TRT concedes Luckey never

8

received any such payment at any time, but argues that Luckey was bound by the exclusivity

9

provision and is liable for breaching it because he disclosed details about the Oculus Rift and

10

demonstrated it to third parties before July 1, 2012.  (Opp. at 10–11.)  TRT is wrong.

11

### 1.      The exclusivity provision was never triggered

12

Under the plain language, Luckey was not bound by the exclusivity provision *unless* Seidl

13

made a royalty payment of $10,000 by no later than July 1, 2012.  The payment was a contingent

14

event upon which the exclusivity right was conditioned.  *See Textainer Equip. Mgmt. (U.S.) Ltd.*

15

*v. TRS Inc.*, No. C 07-01519 WHA, 2007 WL 1795695, at *2 (N.D. Cal. June 20, 2007) (Alsup,

16

J.) ("Performance under a contract becomes due when all necessary conditions, and the passage

17

of any required time, have occurred so that a failure of performance will be a breach.") (quoting

18

Restatement (Second) of Contracts § 224(b)).  Because Luckey never received any royalties, the

19

exclusivity provision never came into effect and Luckey cannot have breached it.[7]

20

TRT argues that the exclusivity provision was effective, irrespective of payment.  The

21

plain language of the Contract states otherwise.  Moreover, any claim that Luckey remained

22

bound indefinitely by the exclusivity provision—even though Luckey received *nothing* from

23

Seidl (much less TRT)—would be unenforceable for lack of consideration.  *See* 1 Witkin,

24

Summary 10th (2005) Contracts, § 202, p. 236 ("The fact that a promise is made with the purpose

25

26

[6] Royalties were to be calculated as 2.5 percent of Seidl's net profits from the sale of the HMD Luckey built for Seidl.  (Ex. A ¶ 10.)

27

[7] Moreover,  TRT does not allege that it or Seidl could or would have paid the $10,000 by July 1, 2012 but for the alleged breach; there is no allegation that Seidl (or TRT) could have

28

manufactured and sold the product for a profit by that date (or ever).

Cooley LLP
Attorneys At Law
Palo Alto

7.

Defendants' Reply Memo in Support of
Motion to Dismiss FAC
(Case No. 3:15-cv-02281 WHA)

1   or hope of profit will not sustain it if in fact nothing of value is received."); *Forgeron Inc. v.*

2   *Hansen*, 149 Cal. App. 2d 352, 360 (1957) ("an agreement to be enforceable must be supported

3   by good and valuable consideration"); *Kremen v. Cohen*, 337 F.3d 1024, 1028 (9th Cir. 2003)

4   (dismissing claim because plaintiff who did not provide consideration had no contract).

5       TRT's final argument is that its contract claim cannot be dismissed because the terms of

6   the Contract are ambiguous.  Not so.  There is only one reading that makes grammatical, legally

7   enforceable sense: the phrase "[u]nless within a twelve month period from 1st july 2011 [Luckey]

8   has not received a minimum payment in royalties of 10,000 US dollars by [Seidl]" modifies the

9   prior sentence, not the latter.  (Ex. A ¶ 9.)  Under TRT's interpretation, the last sentence would

10  read as "unless Luckey hasn't been paid any royalties, the exclusivity will continue for another 10

11  years, if Luckey is paid royalties each year."  Such a reading is absurd on its face.

### 2.        The exclusivity provision is void under Section 16600

13      TRT concedes that a contract barring a party from selling "any products which are directly

14  or indirectly competitive" is void.  (Opp. at 12 (citing *Puricle, Inc. v. Church & Dwight Co.*, 568

15  F. Supp. 2d 1144, 1146–48 (C.D. Cal. 2008)); *see* Cal. Bus. & Prof. Code § 16600 ("every

16  contract by which anyone is restrained from engaging in a lawful profession, trade, or business of

17  any kind is to that extent void").  This concession is fatal, as the Contract's exclusivity provision

18  purports to do just that.  It prohibits Luckey from "aid[ing] any other person or entity in the

19  design of a Head Mounted Display other than the disclosing party [Seidl]."  (Ex. A ¶ 9.)  Indeed,

20  TRT contends that Luckey was restrained from this lawful trade without any payment or other

21  consideration under its interpretation of the Contract's exclusivity provision.  (Opp. at 11.)

22      TRT tries to avoid the obvious Section 16600 problem by arguing that because "Head

23  Mounted Display" is a capitalized term, it is a "term-of-art" specific to the Contact and, as such,

24  does not prevent Luckey from building HMDs for others so long as they are not copies or replicas

25  of the HMD he built for Seidl.  (Opp. at 12.)  This argument fails.  Although TRT claims that

26  "Head Mounted Display" is a term of art that refers specifically to the HMD Luckey built for

27  Seidl, it is nowhere defined in the Contract.  The term also appears in the Contract uncapitalized.

28  (Ex. A ¶ 10.)  Moreover, the provision states that Luckey must keep confidential details relating

Cooley LLP
Attorneys At Law
Palo Alto

8.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

to "*the* Head Mounted Display," but then says he may not "aid any other person or entity in the design of *a* Head Mounted Display."  (Ex. A ¶ 9 (emphasis added).)  Rather than referring to a "product-specific restraint," as TRT alleges (Opp. at 12), the use of the indefinite article purports to make the prohibition much broader.  Finally, the prohibition against "design[ing]" an HMD purportedly would prevent Luckey not just from making or selling the HMD he built for Seidl, but from improving his prior designs or creating new ones.  On its face, the exclusivity provision impermissibly bars Luckey from designing competing products regardless of whether any "Confidential Information" is involved, and according to TRT, even if he was not paid.  As such, it is void under Section 16600.  *See Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 579 (2009) (facial invalidity of non-compete can be determined as matter of law).[8]

## C.  TRT's Implied Covenant Claim (Count II) Should Be Dismissed

The absence of a "valid" contractual relationship between Luckey and TRT is fatal to TRT's implied covenant claim.  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1391–92 (1990) (claim for breach of implied covenant "depends upon the existence of a valid and existing contractual relationship").  But even if TRT could show a "valid" contractual relationship, its implied covenant claim would still fail because it relies on the very same allegations as the breach of contract claim.  *Id.* at 1394–96 ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same . . . relief . . . they may be disregarded as superfluous . . . .").  TRT's breach of contract claim is premised on two alleged acts by Luckey during the purported "exclusivity" period: (1) disclosing information about the Rift, and (2) aiding others and himself in monetizing the Rift.  (¶ 38; Opp. at 15.)  TRT simply restyles these allegations in support of its implied covenant claim.

TRT argues that its implied covenant claim "goes beyond the contract claim" insofar as the FAC alleges that Luckey "frustrated the purpose of the Agreement by falsely promising" to

---

[8] TRT's contract claim also fails for lack of provable damages.  TRT does not allege (because it cannot) that it has ever sold any product.  Under California law, TRT's damages are entirely speculative and not recoverable.  *See, e.g.*, *Fisher v. Hampton*, 44 Cal. App. 3d 741, 748 (1975) ("loss of anticipated profits from a new business is too speculative and conjectural to permit recovery of damages for their alleged loss" and may only be overcome "if the evidence shows with reasonable certainty *both* their *occurrence* and the *extent* thereof").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

1   refrain from disclosing information about and monetizing the prototype he built for Seidl.  (Opp.

2   at 15; FAC ¶ 43.)  But this is nothing more than a claim that Luckey failed to keep these alleged

3   promises and therefore breached the contract.  As such, TRT's implied covenant claim is

4   redundant of its breach of contract claim and should be dismissed.[9]  *See Davis v. Apperience*

5   *Corp.*, No. C-14-00766 WHA, 2014 WL 5528232, at *6 (N.D. Cal. Oct. 31, 2014) (Alsup, J.)

6   (dismissing implied covenant claim based on same facts as contract claim).[10]

7   **D.     TRT's Claim for Conversion (Count III) Should Be Dismissed**

8          TRT appears to argue that it needs only to identify the tangible piece of property allegedly

9   converted to satisfy the first element of its conversion claim.  (*See* Opp. at 16.)  Not so.  As stated

10   in *Kremen*, 337 F.3d at 1030, to satisfy the first prong, TRT must allege facts establishing that it

11   had an exclusive *right to possess or own* the property in question.  *Id.* (requiring "a legitimate

12   claim to exclusivity").[11]  Here, the only basis that TRT identifies to claim ownership is the

13   Seidl/Luckey Contract, but that Contract affords TRT no rights of any kind, much less an

14   exclusive right to own the HMD.  (*See* Section II.A, *supra*.)

15          TRT also cites to allegations from the FAC in an attempt to satisfy the second element—

16   wrongful dispossession of the HMD.  (Opp. at 17 (citing ¶ 20 (the HMD "was never returned to

17   the Partnership")).)  However, the FAC concedes that the HMD was lawfully in Luckey's

18   possession insofar as Seidl voluntarily "returned [it] to Luckey for further improvement." (¶ 20.)

19   Moreover, the FAC is intentionally (and fatally) silent on the critical question whether Luckey, in

20   fact, returned an improved HMD to Seidl.  Thus, TRT fails to plead wrongful dispossession.

21

22

---

[9] *Dallas & Lashmi Inc. v. 7-Eleven, Inc.*, No. CV 15-02044 SJO, 2015 WL 3631684 (C.D. Cal.
23   June 10, 2015), is of no help to TRT. There, plaintiffs provided specific factual support for their
allegations of false promises that went beyond the elements of their breach of contract claim. *See*
24   *id.* at *5–6 (plaintiff cited defendant's provision of a specific fraudulent financial spreadsheet and
the dates and locations of the alleged fraudulent acts).  TRT fails to make any similar allegations.
25   [10] TRT's argument that it can assert an implied covenant claim in the alternative finds no support
in *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 (2015).  In *Cobb*, the defendant
26   unilaterally changed an arbitration provision in the contract, an act not prohibited by the terms of
the contract but that unreasonably interfered with plaintiff's reasonable expectations.  *Id.*  In
27   contrast, TRT cites identical alleged acts in support of its contract and implied covenant claims.
[11] TRT badly mischaracterizes *Kremen*, which held that Plaintiff established exclusive ownership
28   of a domain name and, thus, that it *was* property capable of conversion. *Id.* at 1030, 1036.

Cooley LLP
Attorneys At Law
Palo Alto

10.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

E.      **TRT's Claim for Constructive Fraud (Count IV) Should Be Dismissed**

To state a claim for constructive fraud, TRT must allege particularized facts establishing that Luckey had a fiduciary or confidential relationship with TRT.  As the Contract evidences no such relationship, TRT points to allegations in the FAC that "Luckey understood" that "TRT expected" Luckey to keep his work under the Contract "confidential." (Opp. at 18 (citing FAC ¶ 17).)  This conclusory allegation is insufficient under Rule 9(b) as there are no particularized facts to support it.  TRT does not allege *how* Luckey learned of TRT's expectations, what they were based on, *who* conveyed them to Luckey and *when*, or *what* they said that should have led Luckey to this understanding.  *See Morris v. BMW of N. Am., LLC*, No. C 07-02827 WHA, 2007 WL 3342612, at *5 (N.D. Cal. Nov. 7, 2007) (Alsup, J.) ("[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged") (citation omitted).

To sidestep this fatal defect, TRT distorts its own pleading.  According to TRT, the FAC alleges that Seidl confirmed that TRT would have exclusive rights to Luckey's design.  (Opp. at 18 (citing ¶ 14).)  But the cited paragraph does not reference TRT at all.  Instead, it alleges that Seidl emailed Luckey on April 8, 2011, stating: "*I would like exclusive rights to your design unless we decide not to use it.*"  (*Id.*)  By using the first person pronoun, Seidl attempted to reserve rights only for himself, individually.  And, of course, the integrated Contract is solely between Luckey and Seidl and excludes TRT.[12]

TRT also fails to allege with particularity that Luckey breached any duty.  TRT claims that Luckey harmed TRT by discussing the Oculus Rift publicly and with third parties for his own gain and that TRT would never have contracted with Luckey had he disclosed his intent to breach the Contract.  (Opp. at 19.)  However, the fact that Luckey began publicly discussing his plans to develop and offer the Rift in April 2012 does not support an inference that he failed to perform or lacked the intent to do so at the time he entered the Contract (8 months earlier).[13]

---

[12] The claim against Oculus VR is also defective because the FAC does not allege a single Contract-term contact between Seidl or TRT and Luckey after Oculus VR was formed.

[13] *JobScience* is distinguishable.  There, plaintiff alleged facts establishing that defendants tricked it into renewing an agreement *at the same time* that they were forming a competing entity. *JobScience, Inc. v. CV Partners, Inc.*, No. C. 13-04519 WHA, 2014 WL 852477, at *3 (N.D. Cal. Feb. 28, 2014) (Alsup, J.).  By contrast here, the FAC is devoid of particularized facts

Cooley LLP
Attorneys At Law
Palo Alto

11.

**Defendants' Reply Memo in Support of
Motion to Dismiss FAC
(Case No. 3:15-cv-02281 WHA)**

1

### F.   TRT's UCL Claim (Count V) Should Be Dismissed

2

TRT's claim under the "unlawful" prong of California Business and Professions Code

3

section 17200 et seq. ("UCL") remains deficient because each of its purported predicate claims is

4

fatally flawed and, therefore, cannot serve as the basis of a Section 17200 "unlawful" claim.  *See*

5

*Berryman v. Merit Prop. Mgmt. Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) ("a violation of

6

another law is a predicate for stating a cause of action under the UCL's unlawful prong").

7

TRT also fails to state a claim under the UCL's "unfair" prong.  TRT asserts, without

8

basis, that Defendants' conduct "violate[d] the spirit of antitrust law[]" and "threaten[ed]

9

competition" (Opp. at 20), but the crux of TRT's complaint is that Defendants launched an

10

allegedly competing business for their own benefit.  As the court in *Cel-Tech Commc'ns, Inc. v.*

11

*L.A. Cell. Tel. Co.* made clear, "injury to a competitor is not equivalent to injury to competition."

12

20 Cal. 4th 163, 186 (1999).[14]  The Rift served to invigorate competition in the HMD market, not

13

harm it, a vital distinction that TRT ignores.[15]

14

Finally, TRT fails to adequately plead a violation of the UCL's "fraudulent" prong.  A

15

claim of "fraud" under the UCL requires that plaintiff allege particularized facts showing that it

16

was damaged by defendant's deceptive business practices, which were likely to mislead the

17

public.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  But TRT does not allege that it was

18

damaged by some deceptive business practice.  Rather, TRT claims that it was damaged by

19

Luckey's alleged breach of the Contract.  Luckey is not alleged to have made a single statement

20

_____

21

establishing that anything Luckey said or did was misleading at the time.  *See James v. Litton Loan Servicing, LP*, No. C 10-05407 CRB, 2011 WL 724969, at *2 (N.D. Cal. Feb. 22, 2011)

22

("To comply with Rule 9(b), a plaintiff must plead 'with particularity' the time and place of the fraud, the statements made and by whom made, [and] an explanation of why or how such statements were false or misleading *when made*.") (emphasis added).

23

[14] Plaintiff's misplaced reliance on *Gregory v. Albertson's, Inc.,* 104 Cal. App. 4th 845, 853–54

24

(2002), is misleading.  *Gregory* involved a consumer plaintiff, not an alleged competitor, as here. Under *Cel-Tech*, a different "unfair" analysis applies when a UCL plaintiff is a consumer.  20 Cal. 4th at 187 n.12 (limiting holding to UCL actions by a competitor alleging unfair conduct).

25

[15] TRT overreaches when it cites *People v. McKale*, 25 Cal. 3d 626, 635 (1979) to claim that it is

26

"settled law" that "dismissal of an alleged violation of the UCL under the 'unfairness' prong at the pleadings stage is disfavored."  (Opp. at 21.)  Courts regularly dismiss "unfair" UCL claims

27

against a competitor when a plaintiff fails to tether its claim to a violation of antitrust law.  *See, e.g., Girafa.com, Inc. v. Alexa Internet, Inc.*, No. C-08-02745 RMW, 2008 WL 4500858, at *3

28

(N.D. Cal. Oct. 6, 2008) (granting motion to dismiss UCL claim for "unfair" business practice where plaintiff did not sufficiently allege "an incipient violation of the antitrust law").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

that misled the public about the Rift in any way.  As such, TRT fails to allege a violation of the "fraudulent" prong of the UCL under the heightened pleading standards of Rule 9(b).

### G.   TRT's Common Law Unfair Competition Claim (Count VI) Should Be Dismissed

The California Supreme Court and the Ninth Circuit have held in unambiguous terms that a common law unfair competition claim under California law requires allegations that a defendant "palmed" or "passed off" its product as that of the plaintiff—the polar opposite of what TRT alleges here.  *Bank of the W. v. Sup. Ct.*, 2 Cal. 4th 1254, 1263 (1992) ("common law tort of unfair competition is . . . synonymous with the act of 'passing off' one's goods as those of another . . ."); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) (affirming dismissal under *Bank of the West* on ground that passing off was not alleged).

Because TRT is unable to plead the necessary facts, it argues—contrary to this binding precedent—that passing off is not actually required in cases between "competing businesses." (Opp. at 22.)  But the only authority TRT cites for this proposition is *Ojala v. Bohlin*, 178 Cal. App. 2d 292 (1960), a case that predates the California Supreme Court's *Bank of the West* decision by more than 30 years, and *Trovan, Ltd. v. Pfizer, Inc.,* No. CV-098-00094 LGB MCX, 2000 WL 709149, at *6 (C.D. Cal. May 24, 2000), an unpublished case from a different district that predates the Ninth Circuit's *Sybersound* decision.  Neither case is good law.[16]

### H.   TRT's Tort Claims Are Superseded by CUTSA

TRT's argument that Defendants' supersession arguments are premature is flatly wrong. Courts routinely dismiss claims superseded by CUTSA at the motion to dismiss stage.  *See, e.g.*, *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012) (dismissing conversion and UCL claims as superseded by CUTSA); *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *14 (N.D. Cal. Dec. 11, 2012) ("whether [] claims are superseded by CUTSA can and should be determined on a motion to dismiss").

---

[16] In *Trovan*, the court vacated a jury award of punitive damages to plaintiff absent allegations of palming off as the parties did not sell the same products and, thus, were not competitors.  *Trovan*, 2000 WL 709149 at *6–7.  Likewise, TRT does not and cannot allege that it sells a product that competes with the Rift.  Thus, *Trovan* would not help TRT even were it sound authority.

Cooley LLP
Attorneys At Law
Palo Alto

13.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

CUTSA supersedes "claims based on the same nucleus of facts as trade secret misappropriation." *SunPower Corp.*, 2012 WL 6160472, at *3; *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 232 (2010) (citation omitted).   This includes claims based on misappropriation of information that might not qualify as a trade secret.  *See SunPower Corp.*, 2012 WL 6160472, at *2–4.   TRT's strategic choice not to assert a CUTSA claim does not preclude CUTSA supersession.  *See Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 slip op. at 9 (N.D. Cal. Aug. 6, 2015) (dismissing fraud and UCL claims based on conversion of confidential information; to proceed would "entirely undermin[e] CUTSA's preclusive effect" by allowing plaintiff to assert claims that would avoid CUTSA).

### 1. TRT's conversion claim is superseded by CUTSA

TRT argues disingenuously that its conversion claim is based *solely* upon the alleged conversion of the *physical* prototype HMD, and that it is not seeking "to protect any information that constitutes a trade secret."  (Opp. at 24.)[17]  It is clear from the FAC and the relief TRT seeks that it is not merely interested in the prototype that cost approximately $798 to build, but in the information and design elements upon which it claims the Rift is based.  (¶ 22.)  And that information is only protectable under the Contract if it constitutes a trade secret.  (Ex. A ¶ 4 (providing that confidentiality obligations will survive only so long as the information at issue "qualifies as a trade secret")); *see MedioStream*, 869 F. Supp. 2d at 1116 (CUTSA superseded alleged conversion of discs and papers containing confidential information); *Lifeline Food Co. v. Gilman Cheese Corp.*, No. 5:15-cv-00034-PSG, 2015 U.S. Dist. LEXIS 64155, at *11 (N.D. Cal. May 15, 2015) (CUTSA supersedes alleged conversion of recipes for fat-free cheese).

### 2. TRT's constructive fraud claim is superseded by CUTSA

Relying on *Gabriel Technologies Corp. v. Qualcomm Inc.*, No. 08cv1992–MMA(POR),

---

[17] TRT mischaracterizes the holding in *E-Smart Techs., Inc. v. Drizin*, No. C 06-05528 MHP, 2009 U.S. Dist. LEXIS 272, at *20 (N.D. Cal. Jan. 5, 2009).  The court found not that conversion of "tangible items" can be the subject of conversion "regardless of whether information contained therein is a trade secret" (Opp. at 24), but rather that conversion claims are superseded to the extent they are based on alleged misappropriation.  *E-Smart Techs.,* 2009 U.S. Dist. LEXIS 272, at *20.  Similarly, TRT's reliance on *Palm Springs-LaQuinta Dev. Co. v. Kieberk Co.*, 46 Cal. App. 2d 234, 239 (1941) is misplaced as this case pre-dates CUTSA by over 40 years and is thus irrelevant.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)

2009 WL 3326631, *1–2 (S.D. Cal. Sept. 3, 2009), TRT alleges that its constructive fraud claim is not superseded because it is based not just on alleged misuse of "TRT's confidential information for [Defendants'] own gain," but also on Luckey's alleged false promises to perform under the Contract.  (Opp. at 24–25.)  However, the FAC alleges that Luckey breached his promises under the Contract by allegedly disclosing and misusing TRT's alleged confidential information, a claim that can only be brought under CUTSA.  Stripped of those allegations, the constructive fraud claim "fail[s] to retain sufficient independent facts to survive" supersession. *Gabriel*, 2009 WL 3326631, at *12; *see also Farhang v. Indian Inst. of Tech.*, No. C-08-02658 RMW, 2010 WL 2228936, at *12 (N.D. Cal. June 1, 2010) (dismissing fraud claim based on alleged false representations designed to induce plaintiffs to grant defendants access to plaintiffs' alleged confidential information).

### 3. TRT's unfair competition claims are superseded by CUTSA

TRT argues that its unfair competition claims are not superseded insofar as they "involve thefts of non-trade secret information."  (Opp. at 25.)  However, CUTSA supersedes "all claims based upon the unauthorized use of information, even if the information does not meet the statutory definition of a trade secret."  *Gabriel*, 2009 WL 3326631, at *11.  And because the unfair competition claims cannot survive without the allegations that Defendants misused TRT's alleged confidential information, they are superseded by CUTSA as well.  *Id.*

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss the First Amended Complaint in its entirety, with prejudice.

Dated: October 19, 2015

COOLEY LLP

By:  ___/s/ Michael G. Rhodes_____
Michael G. Rhodes

Attorneys for Defendants
PALMER LUCKEY and OCULUS VR, LLC

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

DEFENDANTS' REPLY MEMO IN SUPPORT OF
MOTION TO DISMISS FAC
(CASE NO. 3:15-CV-02281 WHA)