IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>PALMER LUCKEY and OCULUS VR, LLC, as successor-in-interest to Oculus VR, Inc.,<br><br>Defendants. | No. C 15-02281 WHA<br><br>**COURT-ORDERED INTERROGATORIES** |

In order to cut through the numerous discovery disputes in this case and to come to grips with the main issues in this case, both sides shall fully answer the following court-ordered interrogatories.

1. By **MONDAY, MARCH 14 AT NOON**, plaintiff shall identify and describe in detail each writing in which Thomas Seidl or Total Recall advised Palmer Luckey that information being provided constituted "Confidential Information," or if the "Confidential Information" was in written form, was stamped or labeled with a "Confidential" marking or similar warning. This listing shall be organized to track the eleven items set forth in "Total Recall's Identification of Confidential Information" dated September 8, 2015. In other words, Total Recall's answer to this question shall set forth separately each of the eleven items and list under each item each such writing called for above.

2. By **FRIDAY, MARCH 18 AT NOON**, with regard to each and every writing described in response to Question 1, defendants shall specify whether any exclusion in Paragraph 2

of the Agreement became applicable and if so, the specific details of how it became applicable.

3. The Agreement is replete with statements concerning what Luckey cannot do, but there appears to be no affirmative statement concerning what Luckey was obliged to do for Seidl or Total Recall by way of product design. By **FRIDAY, MARCH 18 AT NOON**, both sides shall please state their contentions in this regard and the specific basis therefor.

4. Paragraph 4 of the Agreement states: "The nondisclosure provisions of this Agreement shall survive the termination of this Agreement and Receiving Party's duty to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a trade secret . . . ." By **FRIDAY, MARCH 18 AT NOON**, both sides shall please state when they contend the agreement terminated and the specific basis therefor. Further, on the assumption that the Agreement terminated on or before July 1, 2012, due to Luckey's failure to receive ten thousand dollars in royalties, state which of the eleven items in Total Recall's Identification of Confidential Information qualified as a "trade secret" as of July 1, 2012. In addition, explain how anything in this case could have qualified as a trade secret inasmuch as Total Recall has disavowed any reliance on trade secrets in its pleadings.

5. Based on the circumstances now known to the Court, one plausible reading of Paragraphs 9 and 10 of the Agreement is that Luckey was obliged to maintain exclusivity until July 1, 2012, but became released from exclusivity for the period after July 1, 2012, if Luckey didn't receive at least ten thousand dollars in royalties by then. Nothing in the Agreement required Luckey to cease his own independent research and development. Nothing in the Agreement required Luckey to disclose in advance an intent to aid a third party in the event Total Recall neglected to pay the ten thousand dollars in royalties. If, however, Luckey actually aided a third party before July 1, 2012, Luckey needed the specific consent of Total Recall, which, in turn, implied a duty to disclose such to Total Recall in advance. Luckey was nevertheless free to line up prospective arrangements to help other potential third parties in the design of virtual-

reality devices so long as the actual help came after July 1, 2012, and so long as Luckey maintained his efforts on Total Recall's behalf until July 1, 2012, and so long as he honored his confidentiality obligations.  Finally, Luckey's duty to keep confidential information in confidence was not dependent on any ten thousand dollar payment; that is, the ten thousand dollar condition applied only to the exclusivity provision.  If any party disagrees with this reading of the Agreement, then state each way in which you disagree and the specific basis in the agreement and evidence for your disagreement and please do so by **FRIDAY, MARCH 18 AT NOON**.  Also, state your specific alternative construction and basis therefor.

6. By **FRIDAY, MARCH 18 AT NOON**, both sides shall please state their contentions with regard to whether the ten thousand dollar payment could have been satisfied by a cash payment (even if no sales had occurred) or if the ten thousand dollar payment needed to be paid out of "royalties" (meaning actual sales).

**IT IS SO ORDERED.**

Dated:   March 9, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3