IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>    Plaintiff,<br><br>  v.<br><br>PALMER LUCKEY and OCULUS VR,<br>LLC, as successor-in-interest to Oculus<br>VR, Inc.,<br><br>    Defendants.<br>                                                 / | No. C 15-02281 WHA<br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>PLAINTIFF'S MOTION FOR<br>LEAVE TO FILE A SECOND<br>AMENDED COMPLAINT** |

**INTRODUCTION**

In this action for breach of a confidentiality agreement involving head-mounted virtual-reality displays, plaintiff seeks leave to amend two claims that had been dismissed in a prior order. For the reasons stated below, plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

The facts of this case have been detailed in a prior order (Dkt. No. 82). Briefly, plaintiff Total Recall Technologies is a general partnership of Thomas Seidl and Ron Igra formed with the goal of developing a head-mounted 3D display. In December 2010, after forming Total Recall, Seidl contacted defendant Palmer Luckey about developing head-mounted displays, and in April 2011 he requested that Luckey build a prototype according to his specifications. Seidl emailed Luckey to confirm the details of their proposed arrangement, and they both agreed that

Seidl would have exclusive rights to Luckey's design. Following that discussion, Igra transferred money to Luckey to pay for the purchase of parts for the prototype (First Amd. Compl. ¶¶ 10–14).

In August 2011, Seidl and Luckey entered into a written "Nondisclosure, exclusivity and payments agreement" (*id.*, Exh. A). The agreement included certain ambiguities that left open the question of whether Seidl entered the contract as an agent of Total Recall or for its benefit. The agreement also included the following nondisclosure and exclusivity provision (*id.* ¶ 9) (errors in original):

> The Receiving party [Luckey] shall keep all details including drawings and part suppliers of the Head Mounted Display confidential and shall not aid any other person or entity in the design of a Head Mounted Display other than the disclosing party. Unless within a twelve month period from 1st July 2011 the receiving party has not received a minimum payment in royalties of 10,000 US dollars by the disclosing party [Seidl]. The exclusivity shall remain in place for a period of 10 years providing a minimum of 10,000 US dollars is paid from the disclosing party per annum.

The capitalized term "Head Mounted Display" was nowhere defined in the agreement, although it appeared both capitalized and un-capitalized in the agreement. That month, Luckey shipped a prototype to Seidl, which he returned to Luckey with feedback for further improvements (First Amd. Compl. ¶ 20).

Between April and June 2012, without informing anyone at Total Recall, Luckey began working with video game developer John Carmack and the company Carmack worked for, Zenimax Media Inc., to commercialize a design for a head-mounted display, which he called the "Rift," and ultimately formed Oculus LLC in furtherance of that goal. Oculus LLC later incorporated as Oculus VR, Inc., then re-registered as defendant Oculus VR, LLC, after being acquired by non-party Facebook Inc.

Total Recall commenced this action in May 2015. A prior order dismissed several of Total Recall's claims and denied its motion for leave to file an amended complaint in order to assert a claim for actual fraud. That order allowed Total Recall to seek leave to amend its

2

conversion, constructive fraud, and Unfair Competition Law claims. Total Recall now seeks leave to amend only its constructive fraud and UCL claims, which it asserts against both Luckey and Oculus. This order follows full briefing and oral argument.

**ANALYSIS**

Total Recall seeks to amend its constructive fraud claim and its claim under the UCL. This order addresses each claim in turn.

**1.    CONSTRUCTIVE FRAUD.**

Under California law, to state a claim for constructive fraud, a party must allege: (i) a fiduciary or confidential relationship, (ii) an act, omission, or concealment involving a breach of that duty, (iii) reliance, and (iv) resulting damage. *Assilzadeh v. California Federal Bank*, 82 Cal. App. 4th 399, 414 (2000). A claim for constructive fraud must be pled with particularity, namely, by alleging the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Each element is addressed in turn.

**A.    Confidential Relationship.**

"The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Brown v. Wells Fargo Bank, NA*, 168 Cal. App. 4th 938, 960 (2008). Defendants argue that Rule 9(b) requires Total Recall to allege precisely what confidential information was exchanged pursuant to Luckey's alleged confidential relationship with Seidl and Total Recall, but the specific information exchanged is irrelevant to establishing that a confidential relationship existed. Here, Seidl contacted Luckey based on the latter's superior knowledge of head-mounted displays and entered into a confidentiality agreement with him, and the preferatory language in that agreement explicitly stated, "[t]he parties agree to enter into a confidential relationship with respect to the disclosure of certain proprietary and confidential information."

3

1  Total Recall has alleged with particularity the details regarding the establishment of the
2 relationship between Seidl and Luckey. That is sufficient to plausibly establish a confidential
3 relationship at this stage. Indeed, the undersigned has previously held that mere assent to an
4 exclusivity agreement is sufficient to establish a confidential relationship at the pleading stage.
5 *Jobscience, Inc. v. CVPartners, Inc.*, No. 13-04519, 2014 WL 852477, at *3 (N.D. Cal. Feb. 28,
6 2014).

### B. Act, Omission, or Concealment.

Defendants also contend that Total Recall has failed to allege that Luckey committed an act, omission, or concealment regarding a breach of his duty. Total Recall has set forth, in great detail, the facts that Luckey omitted to tell Total Recall regarding his work developing the Rift with a competitor including registering the domain name oculusvr.com, writing about his intent to commercialize a head-mounted display on that site and another message board, providing a head-mounted display to John Carmack, (a video game developer) preparing to present his prototype publicly, and forming Oculus, LLC, all of which occurred before July 1, 2012 (Second Amd. Compl. ¶¶ 23–31). Contrary to defendants, Total Recall's new pleadings provide a crystal clear statement of the alleged misconduct that gives rise to its constructive fraud claim.

Defendants also argue that Total Recall's proposed constructive fraud claim is superseded by the California Uniform Trade Secrets Act. Not so. "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010), as modified (May 27, 2010), disapproved on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011) (addressing the *Silvaco* decision's treatment of standing under the UCL); Cal. Civ. Code § 3426.74. Total Recall's constructive fraud claim does not rely on Luckey's misappropriation of *any* information, confidential, trade secret, or otherwise. Rather, it relies on his alleged omissions regarding his breach of the *exclusivity* provisions of the agreement. Those omissions are "independent and based on facts

4

distinct from the facts" that would support any misappropriation claim. *Angelica Textile Services, Inc. v. Park*, 220 Cal. App. 4th 495, 498 (2013).

Indeed, *Angelica* held that CUTSA did not supercede the plaintiff's claims arising from a breach of a noncompetition agreement and a duty of loyalty, inasmuch as the alleged breach did not depend on the misappropriation of information. In reaching that conclusion, *Angelica* examined *Silvaco*, which itself held that CUTSA did *not* supercede claims that the defendant assisted a third party in the violation of an injunction against the transfer of certain software, even though the information in the software was, itself, the subject of the trade secret claims therein. In both cases, the claims did not depend on the misappropriation, but rather the violation of some duty that existed whether or not the underlying information was protected.

So too here. Total Recall's constructive fraud claim relies on Luckey's alleged breach of duties relating to his exclusivity obligations, which existed independent of the protected status of any information disclosed or developed pursuant to his relationship with Seidl and Total Recall. Accordingly, the constructive fraud claim, as pled, is not superseded by CUTSA. Thus, Luckey's omissions regarding his breach of that exclusivity can form the basis of Total Recall's constructive fraud claim.

### C.     Reliance and Resulting Damages.

In the previous iteration of its constructive fraud claim, Total Recall alleged that "[h]ad Luckey disclosed his intention to breach his duty," it "would not have placed its trust in Luckey and would have pursued its desire to develop head mounted display technology with someone else" (First Amd. Compl. ¶ 56). That claim was dismissed because Total Recall had failed to plead facts with particularity showing that Luckey harbored an intent to breach the agreement at the time he entered the agreement. The order stated that Total Recall could seek leave to amend in order to allege "facts demonstrating Luckey harbored an intent to breach the agreement at the time it was made" (Dkt. No. 82 at 14). Total Recall has not alleged any such facts. Instead, it alleges that had it known the true facts, "[i]t would have paid Luckey under the Agreement

5

thereby securing exclusive rights to the Head Mounted Display known as the Oculus Rift" (Second Amd. Compl. ¶ 47).

Defendants argue that Total Recall has violated the terms of the order allowing it to seek leave to amend its constructive fraud claim by shifting its theory of reliance from constructive fraud in the inducement of the agreement with Luckey to constructive fraud inducing Total Recall to allow the exclusivity period to lapse. Total Recall responds that it never intended its constructive fraud claim to allege fraud in the inducement, and its proposed amendments simply clarify the theory it had intended all along — that Luckey should have disclosed his conduct relating to Oculus pursuant to his ongoing duties of confidentiality and exclusivity to Seidl and Total Recall, which Total Recall alleges arose from the agreement.

Total Recall's arguments in attempting to rescue the previous iteration of its constructive fraud claim, however, suggest otherwise. In opposition to defendants' motion to dismiss, Total Recall argued that it had "pled that it would have acted differently by 'developing head mounted display technology with someone else' – by 'ending the agreement' or *never consummating it in the first place*" (Dkt. No. 57 at 19) (emphasis added). Although Total Recall's briefs on the prior motion to dismiss referred to the possibility of "ending the agreement," that language did not appear in its complaint. Rather, Total Recall incorporated that language in order to draw a parallel to the decision in *Jobscience* (which held that the allegation that the plaintiff would have ended an agreement was sufficient to plead reliance). Total Recall also then failed to dispute defendants' characterization of its claim as relating to Luckey's intent to breach at the time he entered the agreement. Instead, Total Recall argued that fraudulent intent was not an element of constructive fraud (Dkt. No. 72 at 10). Thus, contrary to Total Recall, the proposed amended constructive fraud claim alleges a new theory of reliance. Nevertheless, in the interest of fairness and full adjudication of all claims, this order considers the merits of Total Recall's new allegations in support of its constructive fraud claim.

The exclusivity provision in the agreement between Luckey and Seidl read:

6

> The Receiving party [Luckey] shall keep all details including drawings and part suppliers of the Head Mounted Display confidential and shall not aid any other person or entity in the design of a Head Mounted Display other than the disclosing party. Unless within a twelve month period from 1st July 2011 the receiving party has not received a minimum payment in royalties of 10,000 US dollars by the disclosing party [Seidl]. The exclusivity shall remain in place for a period of 10 years providing a minimum of 10,000 US dollars is paid from the disclosing party per annum.

Total Recall contends that it relied on Luckey's omissions to its detriment when it declined to pay Luckey ten thousand dollars in order to extend the period of his exclusivity obligations. By forgoing that opportunity, Total Recall alleges that it missed the opportunity to realize the commercial benefits of Luckey's work, including the funds he raised on Kickstarter and the eventual acquisition of his company and his design by Facebook.

Defendants respond that it is absurd to read the exclusivity provision to allow Total Recall to effectively hold Luckey hostage by continuing to pay him ten thousand dollars annually. Nevertheless, given the errors and ambiguities in the exclusivity provision it remains a plausible interpretation of the agreement that Total Recall could have extended Luckey's obligation not to aid any other person in the development of a "Head Mounted Display" (as stated, the capitalized term is nowhere defined in the agreement).

A plausible reading based on the circumstances now before the Court is that Luckey was duty bound to maintain exclusivity until July 1, 2012 (so long as by July 1, 2012, he received the ten thousand dollars), and thereafter for so long as Luckey received ten thousand dollars per twelve-month period up to a maximum of ten years. Nothing in the agreement, however, required Luckey to cease its own independent research and development. Nothing in the agreement required Luckey to disclose a present intent to aid a third party in the future in the event that Total Recall neglected to pay the ten thousand dollars. If, however, Luckey wanted to actually aid a third party *before* July 1, 2012, Luckey needed the consent of Total Recall, which implied a duty to disclose such intention to Total Recall. This is not a definitive

7

construction but only a statement of a plausible construction.  (The above does not reach the question whether the ten thousand dollars had to derive from sales to qualify as "royalties.")

At this stage, Total Recall has adequately pled reliance and resulting damages. Accordingly, Total Recall's constructive fraud claim would not be futile, and Total Recall may amend its complaint to include this claim.

### 2. UNFAIR COMPETITION LAW.

Section 17200 of the California Business and Professional Code provides a remedy for "any unlawful, unfair or fraudulent business act or practice."  Total Recall seeks leave to assert a claim under the unlawful and unfair prongs.  Each prong is addressed in turn.

#### A. Unlawful Prong.

A claim under the unlawful prong of the UCL can be based on "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994).  As stated, Total Recall has adequately alleged a claim for constructive fraud, which can form the basis of a claim under the unlawful prong.  Defendants contend that Total Recall's claim under the unlawful prong would be futile by restating the same arguments addressed above.  The arguments remain unpersuasive.  Accordingly, Total Recall's motion for leave to amend its complaint to assert a claim under the unlawful prong of the UCL is **GRANTED**.

#### B. Unfair Prong.

"Unfair acts among competitors means 'conduct that threatens an incipient violation of an antitrust law, or violates the spirit or policy of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2009) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)).  Total Recall's claim is that Luckey and Oculus acted dishonestly by designing and monetizing a competing head-mounted display while Luckey still had obligations to Total Recall.  Nothing about Total Recall's theory constitutes a harm to *competition*, which is distinct

8

from a harm to a *competitor*. *See Cel-Tech*, 20 Cal. 4th at 186. If anything, Luckey's conduct *helped* competition by bringing a new competitor into the market. Accordingly, Total Recall's motion for leave to amend its complaint to assert a claim under the unfair prong of the UCL is **DENIED**.

## CONCLUSION

For the reasons stated above, Total Recall's motion for leave to amend its complaint is **GRANTED IN PART AND DENIED IN PART**. Total Recall may amend its complaint to include its constructive fraud claim and its claim under the unlawful prong of the Unfair Competition Law but not its claim under the unfair prong. Total Recall shall file an amended complaint consistent with this order by **MARCH 22, AT NOON**.

No further Rule 12 motion shall be made, since defendants have already effectively addressed Rule 12 issues on this motion. The answer is due in **FOURTEEN CALENDAR DAYS**.

**IT IS SO ORDERED.**

Dated: March 18, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9