COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
BENJAMIN H. KLEINE (257225) (bkleine@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

COOLEY LLP
MARK F. LAMBERT (197410) (mlambert@cooley.com)
ANGELA L. DUNNING (212047) (adunning@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendants
PALMER LUCKEY and OCULUS VR, LLC

DURIE TANGRI LLP
RAGESH K. TANGRI (159477) (rtangri@durietangri.com)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666
Facsimile: (415) 236-6300

Attorneys for Defendant
PALMER LUCKEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>PALMER LUCKEY and OCULUS VR, LLC, as successor-in-interest to OCULUS VR, INC.,<br><br>Defendants. | Case No. 15-cv-02281 (WHA)<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>The Hon. William H. Alsup<br>Trial Date: September 12, 2016 |

Defendants Palmer Luckey and Oculus VR, LLC ("Oculus") (collectively, "Defendants") respond below to Plaintiff Total Recall Technologies' ("TRT") Second Amended Complaint (the "Complaint"). Each paragraph herein responds to the corresponding numbered paragraph of the Complaint. Unless otherwise indicated, Defendants deny each and every allegation of the Complaint.

## NATURE OF THE ACTION

**1.** The allegations of the first sentence of Paragraph 1 assert legal conclusions to which no response is required. To the extent a response is required, Defendants are without sufficient knowledge or information to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 1 and therefore deny them. Defendants deny the allegations in the second sentence of Paragraph 1.

## PARTIES

**2.** Defendants admit that Plaintiff TRT purports to be a partnership by and between individuals Ron Igra ("Igra") and Thomas Seidl ("Seidl"). Except as expressly admitted herein, Defendants are without sufficient knowledge or information to form a belief as to the truth of each and every allegation contained in Paragraph 2 and therefore deny them.

**3.** Defendants are without sufficient knowledge or information to form a belief as to the truth of each and every allegation contained in Paragraph 3 and therefore deny them.

**4.** Defendants admit that Oculus is a Delaware limited liability corporation with its principal place of business in Menlo Park, California. Defendants admit that Oculus is the corporate successor to Oculus VR, Inc. and Oculus LLC, a California limited liability company.

**5.** Defendants admit that Palmer Luckey is a founder of Oculus. Defendants deny that Luckey resides in Palo Alto, California. Whether Palmer Luckey may validly be served at his place of employment is a legal conclusion to which no response is required. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 5 and therefore deny them.

## JURISDICTION AND VENUE

**6.** The allegations of Paragraph 6 assert legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff has alleged that jurisdiction is proper in this judicial district. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 6.

**7.** The allegations of Paragraph 7 assert legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff has alleged that venue is proper in this judicial district. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 7.

## INTRADISTRICT ASSIGNMENT

**8.** The allegations of Paragraph 8 assert legal conclusions to which no response is required.

## BACKGROUND

**9.** Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 9, and therefore deny the allegations in Paragraph 9.

**10.** Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 10, and therefore deny the allegations in Paragraph 10.

**11.** Defendants are without information or knowledge sufficient to form a belief as to the allegations in the first and second sentences of Paragraph 11, and therefore deny them. Defendants deny the allegations in the third sentence of Paragraph 11, except admit that Seidl contacted Luckey in December 2010 regarding a head mounted display.

**12.** Defendants deny the allegations in Paragraph 12, except admit that Seidl and Luckey exchanged dozens of emails during 2010 and 2011, which emails speak for themselves.

**13.** Defendants admit that the face of U.S. Patent No. 9,007,430 lists an application date of May 27, 2011 and a title of "System and method for creating a navigable, three-dimensional virtual reality environment having ultra-wide field of view."

**14.** Defendants deny the allegations in the first sentence of Paragraph 14. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations

in the second sentence of Paragraph 14, and therefore deny them.  Defendants deny the allegations in the third and fourth sentences of Paragraph 14, except admit that Luckey received an April 8, 2011 email from Seidl which stated, among other things: "Just so we are on the same page.  With the initial payment to you I would like exclusive rights to your design unless we decide not to use it.  I need to cover myself if we pay for development and then und up paying for a competitor."

**15.**   Defendants deny the allegations in Paragraph 15, except admit that on April 8, 2011 Luckey sent an email to Seidl which stated: "Yes, we are on the same page here.  Once your patent hits pending, I am sure we can put together a contact of some sort to finalize it all."

**16.**   Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 16, and therefore deny them, except admit that Luckey received approximately $775 via PayPal sent on April 11, 2011.  Defendants deny the allegations in the second sentence of Paragraph 16, except admit that Luckey used the money he received to purchase parts for the two head mounted display prototypes he provided to Seidl in August 2011 and May 2012, respectively.  Defendants deny the allegations in the third sentence of Paragraph 16.

**17.**   Defendants deny the allegations in Paragraph 17.

**18.**   Defendants deny the allegations in the first sentence of Paragraph 18, except admit that on June 16, 2011, Seidl sent Luckey a document entitled  "Nondisclosure, exclusivity and payments agreement" (the "Agreement").  Defendants admit the allegations in the second sentence of Paragraph 18.  Defendants deny the allegations in the third sentence of Paragraph 18.  Defendants admit the allegations in the fourth sentence of Paragraph 18.

**19.**   Defendants deny the allegations in the first sentence of Paragraph 19.  Defendants deny the allegations in the second sentence of Paragraph 19, except admit that Paragraph 9 of the Agreement reads as follows:

> Exclusivity.  The Receiving party shall keep all details including drawings and part suppliers of the Head Mounted Display confidential and shall not aid any other person or entity in the design of a Head Mounted Display other than the disclosing party. Unless within a twelve month period from 1st july 2011 the

> receiving party has not received a minimum payment in royalties of 10,000 US dollars by the disclosing party. The exclusivity shall remain in place for a period of 10 years providing a minimum of 10,000 US dollar is paid from the disclosing party to the receiving party per annum.

The third sentence of Paragraph 19 asserts a legal conclusion for which no response is required. To the extent that a response is required, Defendants admit that Plaintiff has alleged that Paragraph 9 of the Agreement was an obligation additional to the confidentiality obligations pursuant to the Agreement. Except as expressly admitted, Defendants deny the allegations in the third sentence of Paragraph 19.

**20.** Defendants deny the allegations in the first sentence of Paragraph 20, except admit that on or about August 23, 2011, Luckey shipped a head mounted display prototype (hereinafter, the "August 2011 HMD") to Seidl. Defendants deny the allegations in the second sentence of Paragraph 20, except admit that the August 2011 HMD was later returned to Luckey. Defendants deny the third sentence of paragraph 20, except admit that Luckey did not return the complete August 2011 HMD to Seidl. Rather, Defendants aver that in May 2012, Luckey sent to Seidl a second head mounted display prototype (hereinafter, the "May 2012 HMD") of a fundamentally different design from the August 2011 HMD and that incorporated components from the August 2011 HMD. Defendants further aver that Seidl told Luckey in or around late September and early October 2011 that he did not want a head mounted display with the design features of the August 2011 HMD, and in February of 2012 reiterated to Luckey that such a head mounted display was of "no use" to Seidl.

**21.** Defendants deny the allegations in Paragraph 21.

**22.** Defendants deny the allegations in Paragraph 22.

**23.** Defendants admit the allegations in Paragraph 23.

**24.** Defendants deny the allegations in Paragraph 24, except admit Luckey posted on April 14, 2012 on oculusvr.com, among other things, that:

> The "RIFT" page contains information on the first piece of hardware I hope to bring to market through Oculus, the RIFT. In a nutshell: A wide field of view, highly immersive stereoscopic head mounted display at a price I can afford. After a quick glance at my bank account, I am sure that if I can afford it, you can too!

($500 is the target price).

**25.** Defendants deny the allegations in Paragraph 25, except admit that on or about April 15, 2012, Luckey posted on the public online forum Meant To Be Seen in 3D ("MTBS3D"), among other things:

> I am making great progress on my HMD kit! All of the hardest stuff (Optics, display panels, and interface hardware) is done, right now I am working on how it actually fits together, and figuring out the best way to make a head mount. It is going to be out of laser cut sheets of plastic that slide together and fasten with nuts and bolts. The display module is going to be detachable from the optics module, so you will be able to modify, replace, or upgrade your lenses in the future!

> The goal is to start a Kickstarter project on June 1st that will end on July 1st, shipping afterwards as soon as possible. I won't make a penny of profit off this project, the goal is to pay for the costs of parts, manufacturing, shipping, and credit card/Kickstarter fees with about $10 left over for a celebratory pizza and beer.

**26.** Defendants deny the allegations in Paragraph 26, except admit that John Carmack was a ZeniMax employee and videogame developer who learned of Luckey's work on head mounted displays through the Internet in or around the Spring of 2011. Defendants deny the allegations in the second sentence of Paragraph 26, except Defendants admit that Luckey loaned a head mounted display called "Rift" to John Carmack in or around May 2012 (hereinafter, the "E3 Rift Prototype").

**27.** Defendants admit that Carmack posted on the MTBS3D public message board on or about May 17, 2012, and that his post included the portions quoted in Paragraph 27, among other language. Except as expressly admitted, Defendants deny the allegations in Paragraph 27.

**28.** Defendants admit the allegations in Paragraph 28.

**29.** Defendants deny the allegations in Paragraph 29, except admit that Luckey entered into a Non-Disclosure Agreement with id Software LLC and ZeniMax Media Inc., effective May 24, 2012.

**30.** Answering Paragraph 30, Defendants admit that Carmack used the E3 Rift Prototype to showcase a specially configured version of ZeniMax's videogame Doom 3 BFG Edition at the Electronic Entertainment Expo ("E3") held in Los Angeles, California on or about June 5–7, 2012. Except as expressly admitted, Defendants deny the allegations in the first

sentence of Paragraph 30.  Defendants admit the allegations in the second sentence of Paragraph 30.

**31.**   Defendants admit the allegations in Paragraph 31.

**32.**   Defendants admit that Brendan Iribe, Nate Mitchell, and Michael Antonov had discussions regarding working with Luckey to develop head mounted display technology by late June 2012, but had not formally agreed to form a company at that time.  Except as expressly admitted herein, Defendants deny the allegations in Paragraph 32.

**33.**   Answering Paragraph 33, Defendants admit that Luckey had discussions with Carmack, id Software LLC (a subsidiary of ZeniMax), Iribe, Mitchell and Antonov regarding head mounted display technology unrelated to the August 2011 HMD and/or the May 2012 HMD prior to July 1, 2012, and that he did not inform Seidl or TRT about those conversations (although Carmack's demonstration of the E3 Rift Prototype was well-known in the VR community prior to July 1, 2012).  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 33.

**34.**   Defendants deny the allegations in the first sentence of Paragraph 34, except admit that on September 7, 2012, Seidl wrote to Luckey stating, "looks like you were in breach a little." Defendants deny the allegations in the second sentence of Paragraph 34, except admit that Luckey wrote Seidl an email on or about September 7, 2012, stating, among other things:

> I should not be in breach of contract. I kept all the details (schematics, parts lists, etc.) of my HMD designs to myself until mid-July, which is also when I filed my LLC. The exclusivity only lasted until July 1st, I was free to design something for myself after that exclusivity ended. The new Rift desing uses a different panel, a different tracker, differcnt optics; Basically [sic], everything about it is new, and very separate from your dual panel HMD or any prototypes you have tried in the past. I used all of your money to build your prototype, and even used some of my own to buy extra parts for it later (like peripheral panels and tiled optics), there was no investment on your part beyond that deliverable. I assure you that it is not your prototype all over the web.

**35.**   Defendants deny the allegations in the first sentence of Paragraph 35, except admit that the Rift Kickstarter campaign raised approximately $2.4 million.  Defendants deny the allegations in the second sentence of Paragraph 35, except admit that Oculus raised

approximately $89 million in financing subsequent to the Kickstarter campaign. Defendants admit that Facebook announced in March 2014 that it would acquire Oculus for approximately $2 billion. Except as expressly admitted, Defendants deny the allegations in Paragraph 35.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**(Breach of Contract)**

**(As Against Luckey)**

**36.** Defendants incorporate by reference their responses to Paragraphs 1–35 as though fully set out herein.

**37.** Defendants deny the allegations in Paragraph 37, except admit that Paragraph 9 of the Agreement reads as follows:

> Exclusivity. The Receiving party shall keep all details including drawings and part suppliers of the Head Mounted Display confidential and shall not aid any other person or entity in the design of a Head Mounted Display other than the disclosing party. Unless within a twelve month period from 1st july 2011 the receiving party has not received a minimum payment in royalties of 10,000 US dollars by the disclosing party. The exclusivity shall remain in place for a period of 10 years providing a minimum of 10,000 US dollar is paid from the disclosing party to the receiving party per annum.

Except as expressly admitted, Defendants deny the allegations in Paragraph 37.

**38.** Defendants deny the allegations in Paragraph 38.

**39.** Defendants deny the allegations in Paragraph 39.

**40.** Defendants deny the allegations in Paragraph 40.

**41.** Defendants deny the allegations in Paragraph 41.

### SECOND CAUSE OF ACTION

**(Constructive Fraud)**

**(As Against All Defendants)**

**42.** Defendants incorporate by reference their responses to Paragraphs 1–41 as though fully set out herein.

**43.** Defendants deny the allegations in Paragraph 43.

**44.** Defendants deny the allegations in Paragraph 44.

1 **45.** Answering Paragraph 45, Defendants admit that Luckey created the oculusvr.com website in April 2012, that Luckey entered into an NDA with ZeniMax stating an effective date in May 2012, that Carmack displayed the E3 Rift Prototype at E3 in June 2012, and that Luckey formed an entity called Oculus LLC in June 2012. Except as expressly admitted, Defendants deny the allegations in Paragraph 45.

**46.** Defendants deny the allegations in Paragraph 46.

**47.** Defendants deny the allegations in Paragraph 47.

**48.** Defendants deny the allegations in Paragraph 48.

**49.** Defendants deny the allegations in Paragraph 49.

**50.** Defendants deny the allegations in Paragraph 50.

**THIRD CAUSE OF ACTION**

**(Unfair Competition in Violation of California Business & Professions Code Section 17200, *et seq.*)**

**(As Against All Defendants)**

**51.** Defendants incorporate by reference their responses to Paragraphs 1–50 as though fully set out herein.

**52.** Defendants deny the allegations in Paragraph 52.

**53.** Defendants deny the allegations in Paragraph 53.

**54.** Defendants deny the allegations in Paragraph 54.

**55.** Defendants deny the allegations in Paragraph 55.

**PRAYER FOR RELIEF**

Defendants deny that Plaintiff is entitled to any of the relief it seeks in its prayer for relief.

**AFFIRMATIVE DEFENSES**

Defendants assert the following separate defenses to Plaintiff's Complaint, without assuming the burden of proof on such defenses that would otherwise fall on Plaintiff.

## AFFIRMATIVE DEFENSE NO. 1

## (LACHES)

**1.** The Complaint and each of the claims asserted therein are barred by the doctrine of laches.

## AFFIRMATIVE DEFENSE NO. 2

## (UNCLEAN HANDS)

**2.** The Complaint and each of the claims asserted therein are barred by the doctrine of unclean hands.

## AFFIRMATIVE DEFENSE NO. 3

## (CONSENT OR AUTHORIZATION)

**3.** The Complaint and each of claims asserted therein are barred because Plaintiff expressly or impliedly approved, authorized, ratified, or consented to the complained acts or conduct, and are therefore precluded from recovery.

## AFFIRMATIVE DEFENSE NO. 4

## (FRAUD IN THE INDUCEMENT)

**4.** Defendants dispute that Seidl entered the Agreement on behalf of Plaintiff TRT. However, if Plaintiff's assertion that TRT was a party to the Agreement is found to be valid, the Complaint and each of the claims asserted therein would be barred on the ground that TRT induced Luckey to enter the Agreement through fraud, based on the following: TRT represented to Luckey in the Spring of 2011 that Seidl was the director of a large company that had been trading and making media products for 10 years and earning $0.6 million in revenues per year. TRT alleges that Seidl was its representative in making those representations to Luckey. TRT further represented (again through Seidl) that it had multiple directors, large clients, and numerous investors lined up who were willing and able to make investments. TRT did not tell Luckey that TRT was, in fact, a two-man partnership with less than $20,000 in capital and no historical sales or business operations. TRT made these material misrepresentations with knowledge of their falsity and with the intent to induce Luckey to enter into the Agreement. In reliance on these misrepresentations, and without the benefit of the omitted information, Luckey

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

**DEFS.'S ANSWER TO SAC**
**(CASE NO. 15-CV-02281 WHA)**

1  signed the Agreement.  Had Luckey known TRT's representations were false, or been aware of
2  the omissions, he would not have entered into the Agreement.

### AFFIRMATIVE DEFENSE NO. 5

### (MISTAKE)

5. Defendants dispute TRT's interpretation of the exclusivity provision of the Agreement as alleged in the Complaint.  However, if Plaintiff's interpretation is found to be correct in whole or in part with regard to the meaning and/or intent of the exclusivity provision, the Complaint and each of the claims asserted therein would be barred on the ground that Luckey was mistaken about the obligations that the exclusivity provision imposed on Luckey.  Luckey did not understand the Agreement to preclude him from designing head mounted displays for himself or others that were different from the head mounted display(s) he built for Seidl.  Seidl knew Luckey was mistaken about the meaning and intent of the Agreement's exclusivity provision and used that mistake to take advantage of Luckey.  Luckey's mistake was not caused by his excessive carelessness, and Luckey would not have entered into the contract if he had known about the mistake.

6. Defendants also dispute that Seidl entered the Agreement on behalf of Plaintiff TRT.  However, if Plaintiff's assertion that TRT was a party to the Agreement is found to be valid, the Complaint and each of the claims asserted therein would be barred on the ground that Luckey entered the Agreement based on a mistake about the party with whom he was contracting. Based on representations by Seidl, alleged by Plaintiff to be its representative, Luckey mistakenly understood Seidl to be the director of a large company that had been trading and making media products for 10 years and earning $0.6 million in revenues per year.  Luckey further understood that Seidl's company had multiple directors, large clients, and numerous investors lined up who were willing and able to make investments.  Luckey did not know that the party with whom he allegedly contracted, TRT, was in fact a two-man partnership with less than $20,000 in capital and no historical sales or business operations.  TRT knew that Luckey was mistaken about these facts and used Luckey's mistaken understanding to take advantage of Luckey.  Luckey's mistakes were not caused by his own carelessness, and Luckey would not have entered into the contract if

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

DEFS.'S ANSWER TO SAC
(CASE NO. 15-CV-02281 WHA)

he had known about the mistakes.

## AFFIRMATIVE DEFENSE NO. 6
### (LACK OF CONSIDERATION)

**7.** The Complaint and claims asserted therein are barred because Plaintiff provided no consideration for the contract at issue.

## AFFIRMATIVE DEFENSE NO. 7
### (CALIFORNIA CIVIL CODE § 3426.7)

**8.** To the extent that Plaintiff's second and third causes of action for constructive fraud and violation of California Business and Professions Code section 17200 et seq. are based on allegations that Defendants misappropriated Plaintiff's confidential or other information, they are preempted, superseded and/or precluded by California Civil Code section 3426.7. As causes of action that are preempted, superseded and/or precluded by California Civil Code section 3426.7, these claims constitute a claim of misappropriation made in bad faith pursuant to California Civil Code section 3426.4, entitling Defendants to their reasonable attorneys' fees and costs thereunder.

## AFFIRMATIVE DEFENSE NO. 8
### (LACK OF PRIVITY)

**9.** Plaintiff TRT is not in privity of contract with Defendants.

## AFFIRMATIVE DEFENSE NO. 9
### (FAILURE TO MITIGATE)

**10.** Plaintiff failed to take reasonable steps to protect itself from the damage or injury alleged in the Complaint and failed to mitigate any such alleged damage or injury.

## AFFIRMATIVE DEFENSE NO. 10
### (LACK OF STANDING)

**11.** The Complaint and claims asserted there are barred because Plaintiff lacks standing, either as a third-party beneficiary or undisclosed principal, to assert such claims. Further, the TRT Partnership Agreement requires the agreement of both partners as to all actions of the Partnership, including the filing and advancement of this lawsuit, and Seidl has not agreed

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

DEFS.'S ANSWER TO SAC
(CASE NO. 15-CV-02281 WHA)

to TRT's filing or advancement of this lawsuit.

## AFFIRMATIVE DEFENSE NO. 11
### (ESTOPPEL)

**12.** The Complaint and the claims asserted therein are barred by the doctrine of estoppel.

## AFFIRMATIVE DEFENSE NO. 12
### (WAIVER)

**13.** The Complaint and the claims asserted therein are barred by the doctrine of waiver.

## AFFIRMATIVE DEFENSE NO. 13
### (JUSTIFICATION)

**14.** The Complaint and the claims asserted therein are barred because to the extent Defendants engaged in any of the alleged acts, omissions, or conduct, they did so with justification.

## AFFIRMATIVE DEFENSE NO. 14
### (RESERVED)

**15.** Defendants hereby reserve their rights to seek leave to amend this Answer to set forth additional defenses based on its ongoing investigation and discovery into the matters alleged in the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray for relief and judgment as follows:

1. That the Court deny Plaintiff's prayer for relief in its entirety, dismiss the Complaint with prejudice, and enter judgment in Defendants' favor and against Plaintiff;

2. That the Court award Defendants their costs and expenses that they incur in this action and attorneys' fees as permitted by law, including without limitation California Civil Code Section 3426.4; and

3. That the Court award Defendants such other and further relief that it deems appropriate.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

DEFS.'S ANSWER TO SAC
(CASE NO. 15-CV-02281 WHA)

Dated: April 4, 2016

COOLEY LLP

By: */s/ Mark F. Lambert*
    Mark F. Lambert (Bar No. 197410)

Attorneys for Defendants
PALMER LUCKEY and OCULUS VR, LLC

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

**DEFS.'S ANSWER TO SAC**
**(CASE NO. 15-CV-02281 WHA)**

**DEMAND FOR JURY TRIAL**

Defendants Palmer Luckey and Oculus VR, LLC hereby demand a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 4, 2016            COOLEY LLP

By: */s/ Mark F. Lambert*
      Mark F. Lambert (Bar No. 197410)

Attorneys for Defendants
PALMER LUCKEY and OCULUS VR, LLC

125861104

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

**DEFS.'S ANSWER TO SAC**
**(CASE NO. 15-CV-02281 WHA)**