COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
BENJAMIN H. KLEINE (257225) (bkleine@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

COOLEY LLP
MARK F. LAMBERT (197410) (mlambert@cooley.com)
ANGELA L. DUNNING (212047) (adunning@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:     (650) 843-5000
Facsimile:      (650) 849-7400

Attorneys for Defendants
PALMER LUCKEY and OCULUS VR, LLC

DURIE TANGRI LLP
RAGESH K. TANGRI (159477) (rtangri@durietangri.com)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:     (415) 362-6666
Facsimile:      (415) 236-6300

Attorneys for Defendant
PALMER LUCKEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PALMER LUCKEY & OCULUS VR, LLC, as successor-in-interest to OCULUS VR, INC.,<br><br>　　　　　Defendants. | Case No.  15-cv-02281 (WHA)<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**PUBLIC REDACTED VERSION**<br><br>Date:　　　June 2, 2016<br>Time:　　　8:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge:　　　Hon. William H. Alsup<br>Trial Date: September 12, 2016<br><br>Complaint Filed: May 20, 2015 |

**Table of Contents**

**Page**

I. INTRODUCTION ..........................................................................................................1
II. STATEMENT OF FACTS ............................................................................................2
   A. TRT's Partnership Agreement Requires That Partnership Decisions Be Unanimous ..........................................................................................................2
   B. Igra Filed This Suit in the Name of TRT Without Seidl's Consent and Despite Seidl's Express Veto ..........................................................................................4
III. SUMMARY JUDGMENT STANDARD......................................................................9
IV. THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE IGRA LACKED AUTHORITY TO BRING THIS ACTION AND TRT LACKS LEGAL CAPACITY TO MAINTAIN IT ABSENT SEIDL'S CONSENT ...................................9
   A. Absent Unanimous Consent of the Partnership, Igra Does Not Have the Authority to Cause TRT to Sue and TRT Lacks Capacity To Sue ........................11
   B. Under RUPA, Igra Lacks Authority to Bring Suit on Behalf of TRT Without Seidl's Consent ..................................................................................................12
V. CONCLUSION............................................................................................................14

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Land Servs., Inc.*,
 194 P.3d 429 (Colo. App. 2008) .......................................................................................... 9, 13, 14

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) .......................................................................................................................... 9

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) .......................................................................................................................... 9

*Coast v. Hunt Oil Co.*,
 195 F.2d 870 (5th Cir. 1952) ........................................................................................................ 13

*De Saracho v. Custom Food Mach., Inc.*,
 206 F.3d 874 (9th Cir. 2000) .......................................................................................................... 9

*Gonzales-McCaulley Inv. Grp., Inc. v. U.S. Dep't of Veterans Affairs*,
 No. CV 13-06877, 2014 WL 2937939 (C.D. Cal. June 30, 2014) ............................................ 13

*Hauer v. Bankers Trust New York Corp.*,
 65 F.R.D. 1 (E.D. Wis. 1981) .................................................................................................. 11, 14

*Lane v. Krein*,
 297 S.C. 133 (S.C. Ct. App. 1988) ......................................................................................... 12, 14

*Museum Boutique Intercontinental, Ltd. v. Picasso*,
 886 F. Supp. 1155 (S.D.N.Y. 1995) ............................................................................................ 10

*In re Raffin*,
 284 F. App'x 405 (9th Cir. 2008) .................................................................................................. 9

*Rappaport v. Gelfand*,
 197 Cal. App. 4th 1213 (2011) .................................................................................................... 11

**Statutes**

Cal. Corp. Code
 § 16100 ............................................................................................................................................ 10
 § 16103 ............................................................................................................................................ 10
 § 16106 ............................................................................................................................................ 11
 § 16401(j) .................................................................................................................................. 12, 13

**TABLE OF AUTHORITIES**
**(continued)**

Page

Haw. Rev. Stat.
　§ 425-103 ...................................................................................................................10
　§ 425-120(j) ...........................................................................................................12, 13
　§ 425 *et seq* .............................................................................................................10

**Other Authorities**

ABA Business and Commercial Litigation in Federal Courts 3d, 9 Bus. & Com. Litig.
　Fed. Cts. § 100:39 (3d ed.) ......................................................................................10

Black's Law Dictionary (5th Ed. 1979) ..........................................................................10

1 Christine Hurt, D. Gordon Smith, Alan R. Bromberg, & Larry E. Ribstein,
　*Bromberg and Ribstein on Partnership* § 5.01(d), at 5-8 (2nd ed. 2015) ...............10, 13

Fed. R. Civ. P.
　9................................................................................................................................10
　9(a) ............................................................................................................................10
　17..............................................................................................................................10
　17(b)(3) .....................................................................................................................10
　56(c) ...........................................................................................................................9

Revised Uniform Partnership Act................................................................................ *passim*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 2, 2016 at 8:00 a.m., or as soon thereafter as this motion may be heard in Courtroom 8, 19th Floor, of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, defendants Palmer Luckey ("Luckey") and Oculus VR, LLC ("Oculus," together with Luckey, "Defendants") will and hereby do move, pursuant to Federal Rule of Civil Procedure 56, Civil Local Rules 7 and 56, paragraph 7 of the Court's Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup for summary judgment of all claims filed by plaintiff Total Recall Technologies ("Plaintiff" or "TRT").

This motion is also made pursuant to the Court's March 15, 2016 Order Denying Defendants' Request for a Stay (Dkt. 112), in which the Court granted Defendants permission to bring a motion for summary judgment "directed to Total Recall's authority to maintain this lawsuit" within two weeks after the depositions of Tom Seidl and Ron Igra. Those depositions were held on April 5, 2016 and April 8, 2016, respectively.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities, and Declaration of Mark F. Lambert ("Lambert Declaration"); the pleadings and papers on file in this matter; and such other matters as may be presented to the Court at the hearing.

**STATEMENT OF RELIEF SOUGHT**

Defendants seek summary judgment on two independent grounds: (1) Ron Igra lacks authority to cause TRT to bring this lawsuit without the consent of Tom Seidl, who has not consented to the filing or maintenance of this action; and (2) TRT lacks legal capacity to sue.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The agreement entered into by the two partners who established TRT—Ron Igra and Tom Seidl—explicitly provides that ███████ However, Seidl, the only TRT partner to ever interact with Palmer Luckey about the subject matter of this case, has never consented to this action. The record establishes that Seidl has

repeatedly and consistently objected to this lawsuit and still objects to it as baseless and not in the partnership's best interest.  Indeed, Seidl's refusal to consent to or cooperate in this case is at the heart of the two lawsuits Igra has filed against Seidl in Hawaii.  One of those lawsuits is still pending, in which Igra accuses Seidl of breaching his fiduciary duties to Igra by not cooperating with this lawsuit against Defendants, in part because "Seidl [has] asserted his right to 'veto' any legal action by the Partnership to pursue claims against Luckey."  And days after Seidl learned of Igra's filing of this lawsuit, Seidl wrote to Luckey, telling him that the lawsuit "[w]as without my knowledge or permis[s]ion" and that "[w]hat [Igra] has done seems to be illegal to me" since "I have not signed anything or let him take action against you."

Under the plain terms of the TRT partnership agreement, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Moreover, Igra's authority would be lacking even absent the partnership agreement as the Revised Uniform Partnership Act ("RUPA") enacted in both California (where this action is based) and Hawaii (where TRT claims to be based) also requires the consent of both partners.  Summary judgment should be granted in favor of Defendants on all claims.[1]

## II. STATEMENT OF FACTS

### A. TRT's Partnership Agreement Requires That Partnership Decisions Be Unanimous

TRT is a general partnership between two individuals, Igra and Seidl.  (SAC ¶¶ 2, 9.)  Their partnership is governed by a written "Partnership Agreement," ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. A[2] (Partnership Agreement (TR00001903–13); Ex. B (Igra Apr. 8, 2016 Dep.) at 58:22–59:1 (testifying that TR00001903–08 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); Ex. C (Seidl Apr. 5, 2016 Dep.) at 73:15–74:11 (same).)  The Partnership Agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] For these reasons, while Defendants will respond to the Court's Order to Show Cause (Dkt. 132) why the case should not be stayed, Defendants respectfully submit that judgment can and should be entered against Plaintiff based on the evidence and arguments presented herein.

[2] All references to Exhibits herein are to Exhibits attached to the Lambert Declaration unless otherwise specified.

1  ▮▮▮
2  ▮▮▮ (Ex. A, Preamble & ¶ 5.)  A number of those
3  terms and conditions are relevant to this motion.
4      First, the Partnership Agreement states ▮▮▮
5  ▮▮▮ (Ex. A ¶ 1.)  At deposition, both
6  partners testified that ▮▮▮ (Ex. B at
7  15:23-25, 60:5-25, 126:15-20; Ex. C at 19:5-7, 75:1-9; *see also* SAC ¶¶ 2–3.)
8      Second, the Partnership Agreement provides that ▮▮▮
9  ▮▮▮ (Ex. A ¶ 2.)  The Partnership Agreement further provides that ▮▮▮
10 ▮▮▮ (*Id.*
11 ▮▮▮
12 ▮▮▮ (emphasis added.))
13     Third, and most critical to this motion, ▮▮▮
14 ▮▮▮
15 ▮▮▮
16 ▮▮▮
17 ▮▮▮[3] (*Id.* ¶ 19 (emphasis added).)  At
18 deposition, Igra testified that ▮▮▮
19 ▮▮▮ (Ex. B at 67:12-
20 17.)
21     Finally, the Partnership Agreement contains ▮▮▮
22 ▮▮▮
23 ▮▮▮
24 (Ex. A ¶ 16 (emphasis added).)
25
26
27 [3] Paragraph 20 of the Partnership Agreement specifies ▮▮▮
28 ▮▮▮ (Ex. A ¶ 20.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

### B. Igra Filed This Suit in the Name of TRT Without Seidl's Consent and Despite Seidl's Express Veto

Igra filed this lawsuit in the name of the TRT partnership on May 20, 2015. The SAC alleges that Seidl entered into a written "Nondisclosure, exclusivity and payments agreement" (the "Seidl/Luckey Agreement") with Luckey on or about August 1, 2011. (SAC ¶ 18; *see also* Ex. D (Seidl/Luckey Agreement).) Although neither Igra nor TRT is mentioned anywhere in the Seidl/Luckey Agreement (*see* Ex. D), the SAC alleges that Seidl entered the Seidl/Luckey Agreement "on behalf of TRT." (SAC ¶ 18.) The SAC further alleges that, pursuant to that agreement, Luckey built and sent to Seidl in August 2011 a prototype virtual reality head mounted display (the "Seidl HMD"). (*Id.* at ¶ 20.) TRT claims that Luckey thereafter breached paragraph 9 of the Seidl/Luckey Agreement and that Luckey and Oculus committed constructive fraud and unfair competition when, without informing Seidl or TRT, Luckey disclosed unspecified details concerning the Seidl HMD to third parties and undertook efforts "to design and commercialize the [Seidl HMD] for himself and Oculus rather than the Partnership." (SAC ¶ 22.) TRT seeks compensatory damages, disgorgement, injunctive relief and punitive damages, among other relief. (SAC, Prayer for Relief ¶¶ A–H.)

Igra conceded at deposition that ███████████████████████████████████ ███████████████████████████ (*See* Ex. B at 98:5-16.) Igra further conceded that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ (*See id.* at 50:17-23). Nevertheless, Igra made the decision to file this lawsuit on behalf of TRT unilaterally—without Seidl's agreement and over Seidl's objection. Indeed, the communications and interactions between the parties, as well as the recent deposition testimony, demonstrate that ███████████████████████████████████████████████████████████████ ████████

In December 2013, Oculus announced that it has raised $75 million in Series B funding. That same month, Seidl sent a copy of the Seidl/Luckey Agreement to Igra and told him in no uncertain terms: ███████████████████████████████████████

1 ███████████████████████████████ (Ex. E at TR00001060 (emphasis in original).)[4] In

2 February 2014, Seidl repeated his explicit instruction to Igra not to sue Luckey: "as I told you don[']t

3 sue palmer." (Ex. F at SEI - 016038.) Seidl took this position even though Igra was threatening to

4 sue Seidl if he refused to consent to litigation. (*Id.* (Igra: "I've hired a litigation lawyer

5 [REDACTION.][5] Please send me copies of the emails or skype conversations you had with

6 [Luckey] concerning the HMD. I'm going to give you until 5 pm tomorrow to respond to me and if I

7 don't get your cooperation, I will take legal action against you as well."))

8       On March 25, 2014, Facebook announced that it had agreed to acquire Oculus. (*See* SAC

9 ¶ 35.) Three days later, on March 28, 2014, Igra again asked Seidl to consent to the lawsuit: "If you

10 cooperate you can be a part of it and we can both get rich. If not I will go after him myself. . . ." (Ex.

11 F at SEI - 016041–42.) Seidl, once again, refused: "my views on taking palmer to court are the same

12 as before that it makes bad financial sense for you and me." (*Id.*)

13       True to his threat, Igra hired litigation counsel on behalf of TRT without Seidl's knowledge

14 or approval. On April 4, 2014, Igra's counsel at Quinn Emanuel, Robert Stone, advised Igra ████

15 ████████████████████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████████████████████

19 ███████████████████████████████████████████████████████████████████ (Ex. G at

20 TR00008456.)

21       On April 11, 2014, Igra sued Seidl in Hawaii state court. The complaint alleged that the TRT

22 partnership, through Seidl, had contracted with Luckey to develop a prototype for the partnership,

---

[4] There is no evidence that Igra had ever seen the Seidl/Luckey Agreement previously.

[5] TRT's production in this case is riddled with improper redactions to the communications between Seidl and Igra ostensibly based on privilege, even though: (1) the parties were clearly adverse with respect to the subject matter of the redactions; (2) Igra had no expectation of confidentiality in these communications; and (3) Igra voluntarily shared the advice he had received from TRT's counsel with a third party, Micky Hevrony, whom the Court has already held was outside the privilege, resulting in subject matter waiver. (Dkt. 125.) Defendants have moved to compel production of these redacted and withheld communications (Dkts. 121, 131), and have specifically reserved the right to reopen the Seidl and Igra depositions on this basis. (Ex. B at 346:2-12; Ex. C at 298:15-17.)

that Igra had requested that Seidl turn over his communications with Luckey so that Igra could ascertain if the partnership had claims against Luckey, and that Seidl had refused to provide the requested documents and information in breach of the Partnership Agreement and Seidl's fiduciary duties to TRT. (Ex. H (Apr. 11, 2014 Hawaii Compl.) ¶¶ 6–12, 16, 19.) Igra dismissed the first Hawaii lawsuit against Seidl without prejudice on May 5, 2014, after Seidl provided Igra with the communications between Seidl and Luckey relating to the Seidl/Luckey Agreement. (Dkt. 81 at 2:7-15.)

On July 13, 2014, after Seidl had provided the records of his communications with Luckey, Igra wrote to Seidl:

[REDACTED]

(Ex. I at TR00008658–59 (emphasis added).) Seidl [REDACTED]

(Ex. I at TR00008657 (emphasis added).) The only TRT partner with direct knowledge of the facts and circumstances underlying the claims at issue stated that [REDACTED]

On August 4, 2014, Seidl and Igra continued to discuss [REDACTED]

[REDACTED]

(Ex. J at TR00008651 (emphasis added).)

On December 5, 2014, Igra filed a second Hawaii lawsuit against Seidl, which is still pending. (Ex. K (Dec. 5, 2014 Hawaii Compl.).) The complaint asserts three causes of action against Seidl: breach of fiduciary duty; breach of the Partnership Agreement; and wrongful appropriation of partnership opportunity. (Id. ¶¶ 42–58.) In support of these claims, Igra alleges:

- "SEIDL asserted his right to 'veto' any legal action by the Partnership to pursue claims against Luckey." (Id. ¶ 31 (emphasis added).);
- "IGRA has asked SEIDL to cooperate in pursuing the Partnership's claims against Luckey . . . ." (Id. ¶ 36); and
- "SEIDL has and continues to refuse to authorize IGRA, or any other person or entity, to pursue to the Partnership's legal claims." (Id. ¶ 37 (emphasis added).)

Accordingly, Igra has explicitly acknowledged in court filings that Seidl has not consented to any lawsuit by TRT against Defendants.[6] In response, Seidl has generally denied Igra's allegations and denied that Igra is entitled to any relief. (Ex. O (Seidl's Answer to Hawaii Compl.).)

On May 22, 2015, just two days after Igra and his counsel filed this lawsuit on behalf of TRT, Seidl communicated with Luckey by Skype, stating that he had not authorized this action. He stated: "just seen what Igra filed. Was without my knowledge or permision [sic] . . . . What he [Igra] has

---

[6] Trial was originally scheduled to begin in the Hawaii Action on May 16, 2016. However, on February 23, 2016, Igra filed a "Stipulation To Continue Status Conference, Hearing on Plaintiff's Motion To Compel Discovery, and Trial," which was entered by the Hawaii Court on February 23, 2016. (Ex. L.) The stipulated order postponed the trial date in the Hawaii Action to December 5, 2016, three months after trial is set to begin in this action.

done seems to be illegal to me. I have not signed anything or let him take action against you." (Ex. M at LUCKEY0113302; *see also* Ex. C at 25:2-11 (testifying that ▇▇▇ ▇▇▇).)

Just this month, Seidl reiterated under oath at his deposition on April 5, 2016 that ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ (Ex. C at 22:20-24.) Seidl also testified that ▇▇▇ ▇▇▇ (Ex. C at 21:8-10.) There is no evidence that Seidl ever agreed that TRT should retain Quinn Emanuel, ▇▇▇ ▇▇▇ And Seidl reiterated that ▇▇▇ ▇▇▇

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1  (Ex. C at 28:22–30:25; *see also id.* at 87:25–88:4

2

3

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotations and citation omitted). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322–23; Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact, and that judgment as a matter of law should be granted in its favor. Fed. R. Civ. P. 56(c). Once the moving party has met its initial burden, the nonmoving party must then "go beyond the pleadings" and designate "specific facts showing that there is a genuine [material] issue for trial." *Celotex*, 477 U.S. at 324 (emphasis added). A dispute is genuine only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### IV. THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE IGRA LACKED AUTHORITY TO BRING THIS ACTION AND TRT LACKS LEGAL CAPACITY TO MAINTAIN IT ABSENT SEIDL'S CONSENT

Because Seidl has not consented to this lawsuit, it must be dismissed for two independent, albeit related, reasons. *First*, Igra lacks the authority to bring this lawsuit on behalf of TRT. The Ninth Circuit recognizes an "authority to sue" defense, where the party asserting claims on behalf of the plaintiff lacks authority to pursue the lawsuit. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000) (noting lack of authority is basis for dismissal when raised in answer or summary judgment); *see also Adams v. Land Servs., Inc.*, 194 P.3d 429, 431 (Colo. App. 2008) (same). A "motion for summary judgment may be an appropriate vehicle for asserting lack of authority by specific denial pursuant to [Federal] Rule [of Civil Procedure] 9." *In re Raffin*, 284 F. App'x 405, 406 (9th Cir. 2008).[7] Because Seidl has not consented to this lawsuit

---

[7] Under Federal Rule of Civil Procedure 9, a lack of authority or lack of capacity defense should be

1　　████████████████ and as would be required under RUPA ████████████

2　　████████████████ (*see infra*), Igra lacks authority to bring this lawsuit.

3　　　　　*Second*, because TRT's partners have not unanimously consented to this lawsuit, it lacks

4　capacity to bring or maintain it. A named party must have legal capacity to pursue a lawsuit. Fed. R.

5　Civ. P. 9(a) & 17. While courts and parties often conflate the concepts of "capacity" and

6　"authority,"[8] the two concepts are distinct: while "authority" is the permission or right to exercise

7　power on behalf of such an entity, "capacity" is the ability of a particular individual or entity to file a

8　lawsuit or to be sued. *Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F. Supp. 1155, 1159

9　(S.D.N.Y. 1995) (citing *capacity* and *authority*, Black's Law Dictionary (5th ed. 1979).)

10　　　　California and Hawaii (along with 35 other states), have adopted RUPA.[9] Cal. Corp. Code

11　§ 16100 *et seq*; Haw. Rev. Stat. § 425 *et seq*.[10] RUPA "gives supremacy to the partnership

12　agreement in almost all situations" and is "largely a series of 'default rules' that govern the relations

13　among partners in situations they have not addressed in a partnership agreement." RUPA, Prefatory

14　Note at 1. Indeed, under the RUPA statutes in both Hawaii and California, "relations among the

15　partners and between the partners and the partnership are governed by the partnership agreement."

16　Haw. Rev. Stat. § 425-103; Cal. Corp. Code § 16103. To the extent the partnership agreement does

17　not cover a certain aspect of the relationship, RUPA serves as a gap-filler and provides default rules

---

raised by specific denial. Fed. R. Civ. P. 9. Here, Defendants explicitly raise these issues in their Amended Answer to the Second Amended Complaint, filed on April 19, 2016.

[8] *See, e.g.*, 1 Christine Hurt, D. Gordon Smith, Alan R. Bromberg, & Larry E. Ribstein, *Bromberg and Ribstein on Partnership* § 5.01(d), at 5-8 (2d ed. 2015) ("Questions of authority to sue for the partnership are raised by the third parties (defendants) e.g., by motion to dismiss or for summary judgment for failure to state a claim, for lack of standing, capacity, authority, joinder, jurisdiction or real party in interest."); *see generally* ABA Business and Commercial Litigation in Federal Courts 3d, 9 Bus. & Com. Litig. Fed. Cts. § 100:39 (3d ed.) (discussing capacity pursuant to Fed. R. Civ. P. 17 under the heading "Authority to sue to enforce partnership claims").

[9] TRT in this lawsuit (*see* Dkt. 81) and Igra in the Hawaii lawsuit (*see* Ex. H ¶¶ 14-15) have both taken the position that Hawaii law governs the interpretation of the Partnership Agreement or their partnership duties. Under Federal Rule of Civil Procedure 17, a partnership's capacity to sue is determined by the state in which the action is pending. Fed. R. Civ. P. 17(b)(3). As discussed herein, both California and Hawaii have adopted RUPA.

[10] The National Conference of Commissioners on Uniform State Laws drafted RUPA to provide clarity and consistency across jurisdictions for laws governing general partnerships.

for the partnership. *Id.* ("To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership."); *Rappaport v. Gelfand*, 197 Cal. App. 4th 1213, 1225 (2011) ("the UPA allows partners to deviate from its default provisions by negotiating such deviations in a contractual partnership agreement"); *Hauer v. Bankers Trust New York Corp.,* 65 F.R.D. 1, 4 (E.D. Wis. 1981) (looking first to partnership agreement to determine partner's capacity to sue); *see also* RUPA, Prefatory Note. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the default rules of RUPA, Igra is without authority to cause TRT to bring this lawsuit and TRT lacks legal capacity to sue.[11]

### A. Absent Unanimous Consent of the Partnership, Igra Does Not Have the Authority to Cause TRT to Sue and TRT Lacks Capacity To Sue

Paragraph 19 of the Partnership Agreement is controlling and supersedes any potential application of RUPA as a gap-filler. Nominally referred to as ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A ¶ 19.) In other words, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ex. B at 67:12-17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C at 87:25–88:4 ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[11] RUPA, through the California Corporations Code, directs courts to apply "the law of the jurisdiction in which a partnership has its chief executive office" to questions regarding the "relations among the partners and between the partners and the partnership." Cal. Corp. Code § 16106. Here, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. B at 15:23-25, 60:5-25; 126:15-20; Ex. C at 19:5-7, 75:1-9; *see also* SAC ¶¶ 2–3.) Accordingly, Hawaii law governs. Moreover, as Hawaii is just one of the many states, along with California, that has adopted RUPA, the Court may also look to California and other RUPA jurisdictions for guidance regarding its interpretation and application.

1    Since at least December 2013, the undisputed record shows that Seidl—the only TRT partner
2    who actually dealt with Luckey during the relevant time—has ███████████████
3    ██████████████████████████████████████████████████████████  Through late
4    winter and early spring 2014, Seidl repeatedly told Igra he did not want to pursue a lawsuit against
5    Luckey. (Ex. F at SEI 016038 ("as I told you don[']t sue palmer"); Ex. F at SEI 016041–42.) Even
6    after Igra sued Seidl in Hawaii for the first time in April 2014, Seidl maintained his position that █
7    ████████████████████████████████████████████████  (Ex. I at TR00008657
8    ████████████████████████████████████████████████████████████
9    ██████████████████████████████████████)  In his second Hawaii
10   complaint, Igra affirmatively alleges that "Seidl asserted his right to 'veto' any legal action by the
11   Partnership to pursue claims against Luckey" and "Seidl has and continues to refuse to authorize
12   Igra, or any other person or entity, to pursue to the Partnership's legal claims." (Ex. K ¶¶ 31, 37.)
13   Even after threatened and actual legal action, Seidl refused to consent to this lawsuit. Seidl's own
14   deposition testimony in this action demonstrates that ████████████████████████
15   ████████████████████████ (Ex. C at 28:22–30:25.) Accordingly, there is no
16   question that Igra was and is without authority under the Partnership Agreement to pursue this
17   lawsuit on TRT's behalf. Dismissal is therefore required. *See Lane v. Krein,* 297 S.C. 133, 134-135
18   (S.C. Ct. App. 1988) (affirming dismissal of action where general partner lacked authority under
19   partnership agreement to cause partnership to sue).

20   **B.     Under RUPA, Igra Lacks Authority to Bring Suit on Behalf of TRT Without Seidl's Consent**
21

22   Even in the absence of Paragraph 19 of the Partnership Agreement, which clearly controls
23   here, RUPA's default rules would compel the same conclusions: that this lawsuit is not authorized
24   and that TRT lacks capacity to sue. Under RUPA, a "difference arising as to a matter in the ordinary
25   course of business of a partnership may be decided by a <u>majority</u> of the partners. An act outside the
26   ordinary course of business of a partnership and an amendment to the partnership agreement may be
27   undertaken only with the <u>consent of all of the partners</u>." Haw. Rev. Stat. § 425-120(j) (emphasis
28   added); Cal. Corp. Code § 16401(j) (emphasis added).

Under RUPA, this lawsuit is unauthorized and improper because a "majority" of the partners has not consented. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A ¶ 5.) As such, one partner acting alone, without the consent of the other, cannot possibly have consent of a majority (i.e., 50.1 percent) of the partnership. *See, e.g.*, Bromberg, supra § 4.02(c), at 4-27 ("The question of who can act for the partnership in imposing a restriction on authority is particularly acute in two-member partnerships, because neither the acting nor the consenting partner constitutes a majority."); *Gonzales-McCaulley Inv. Grp., Inc. v. U.S. Dep't of Veterans Affairs*, No. CV 13-06877, 2014 WL 2937939, at *1 (C.D. Cal. June 30, 2014) ("a board with only two directors would require both members to constitute a majority . . ."). Accordingly, even if filing this lawsuit could be considered within the ordinary course of business for TRT, the consent of both Seidl and Igra was required.[12]

Although courts in Hawaii have not had occasion to consider whether to dismiss a partnership claim asserted in contravention of RUPA or the terms of a partnership agreement, other RUPA jurisdictions have considered and dismissed such claims for lack of authority and capacity. Stated simply, "a partner cannot maintain suit to enforce a partnership claim if a majority of the partners do not agree to do so." *Adams*, 194 P.3d at 431 (citing *Coast v. Hunt Oil Co.*, 195 F.2d 870, 871 (5th Cir. 1952)).

In *Adams*, minority partners owning 47 percent of the interests brought action against a real estate broker, alleging breach of fiduciary duty and fraud, among other claims, in connection with the sale of real estate. 194 P.3d at 430. The court held that a minority of partners in a general partnership could not bring a lawsuit on behalf of the partnership without the consent and authorization of a majority of the partners. *Id* at 431. The court concluded that "we are aware of no

---

[12] Defendants dispute that litigation is in the "ordinary course" of activities for TRT, which requires majority support instead of the unanimous support that is required for activities outside the ordinary course. *See* Haw. Rev. Stat. § 425-120(j); Cal. Corp. Code § 16401(j). The Partnership Agreement defines the purpose of TRT as being ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A ¶ 2.) Moreover, there is no evidence that TRT has ever been involved in litigation before, and Seidl explicitly withheld his agreement to this Action. However, it makes no difference here whether litigation is in the ordinary course since the consent of both partners in a two-partner partnership is required to constitute majority support.

theory that would allow plaintiffs, minority partners acting without the authorization of the partnership or of the majority partners, to seek redress on behalf of [the partnership] for injuries allegedly resulting from [the partnership's] transactions with defendants." *Id.* at 433. Accordingly, the appellate court affirmed dismissal of the action on summary judgment.

A similar result was reached in *Hauer*. There, a minority partner of a real estate development partnership asserted claims on behalf of the partnership against the partnership's lender for breach of contract and fraud. The court found that plaintiff could not maintain the lawsuit where a majority of managing partners elected not to pursue litigation. The court concluded that plaintiff lacked capacity to sue and granted summary judgment for defendant. *Hauer*, 65 F.R.D. at 4.

In *Lane*, a general partner sued the partnership's customer for conversion. 297 S.C. at 134–135. Defendants moved for judgment on the pleadings on the grounds that plaintiff lacked capacity to sue. The court dismissed the suit because it was filed without the consent of the other three general partners, where the partnership agreement provided that each partner had an equal right in the management of the partnership. *Id.* at 134. The court found that, regardless of whether the partnership was joined as a plaintiff, the lawsuit was improper because the plaintiff lacked authority to sue. *Id.* at 135 ("The problem is not resolved by joining the partnership as a party because the majority of the partners have not authorized the suit.")

Here, Defendants dispute that TRT has any rights under the Seidl/Luckey Agreement entered into between Luckey and Seidl. Luckey was never informed of TRT's existence and he believed that he was contracting with Seidl alone, in a project that would benefit from the resources of an established company that Seidl eventually identified as Pan-Pro, not TRT. (Ex. N at LUCKEY0144450.) But even under the most generous interpretation of TRT's allegations and the provisions of RUPA, this suit was authorized by only one partner, Igra over the veto of its only other partner. Accordingly, the case should be dismissed.

**V.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment for Defendants as Igra lacks authority to sue on behalf of TRT and TRT lacks capacity to maintain this lawsuit.

Dated: April 22, 2016         COOLEY LLP


By:  */s/ Mark F. Lambert*
         Mark F. Lambert

Attorneys for Defendants
OCULUS VR, LLC and PALMER LUCKEY