COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
BENJAMIN H. KLEINE (257225) (bkleine@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

COOLEY LLP
MARK F. LAMBERT (197410) (mlambert@cooley.com)
ANGELA L. DUNNING (212047) (adunning@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

Attorneys for Defendants
PALMER LUCKEY and OCULUS VR, LLC

DURIE TANGRI LLP
RAGESH K. TANGRI (159477) (rtangri@durietangri.com)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:     (415) 362-6666
Facsimile:     (415) 236-6300

Attorneys for Defendant
PALMER LUCKEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES, <br><br> Plaintiff, <br><br> v. <br><br> PALMER LUCKEY & OCULUS VR, LLC, as successor-in-interest to OCULUS VR, INC., <br><br> Defendants. | Case No.  15-cv-02281 (WHA) <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> **PUBLIC REDACTED VERSION** <br><br> Date:      June 2, 2016 <br> Time:      2:00 p.m. <br> Courtroom: 8, 19th Floor <br> Judge:     Hon. William H. Alsup <br> Trial Date: September 12, 2016 <br><br> Complaint Filed:  May 20, 2015 |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

# Table of Contents

**Page**

I.      INTRODUCTION .................................................................................................................. 1

II.     SUMMARY JUDGMENT SHOULD BE GRANTED IN DEFENDANTS' FAVOR........... 2

    A.   Defendants Can Properly Challenge TRT's Authority to Sue..................................... 2

    B.   TRT Lacks the Authority and Capacity to Sue Because Seidl Has Not Authorized This Lawsuit........................................................................................... 5

        1.   TRT Lacks Capacity to Sue Without Seidl's Approval.................................. 5

        2.   Seidl Did Not Authorize this Lawsuit When Filed and Continues to Withhold His Authorization.................................................................. 6

        3.   Igra and Seidl's January/February 2015 Discussions About a Hypothetical Lawsuit Against Luckey Do Not Evidence Seidl's Authorization of the Instant Lawsuit. ............................................................ 8

        4.   Seidl, the Only TRT Partner Who Interacted with Palmer Luckey, Communicated His Disagreement with this Lawsuit and the Reasons for that Disagreement to Igra Before Igra Filed Suit. .................................... 11

        5.   There Are No Disputed Issues of Material Fact, and This Court Should Decide this Motion Without Deference to the Hawaii Action...................... 12

III.    CONCLUSION.................................................................................................................... 13

Cooley LLP
Attorneys At Law
Palo Alto

i.

**Defendants' Reply in Support of Motion for**
**Summary Judgment**
**Case No. 15-cv-02281 (WHA)**

# Table of Authorities

**Cases**                                                                   **Page(s)**

*In re Brown*,
   342 F.3d 620 (6th Cir. 2003) ...........................................................................................4

*De Saracho v. Custom Food Mach., Inc.*,
   206 F.3d 874 (9th Cir. 2000) .........................................................................................3, 4

*Deirmenjian v. Deutsche Bank, A.G.*,
   No. CV 06-00774 MMM, 2006 WL 4749756 (C.D. Cal. Sept. 25, 2006) .....................3

*Delbon Radiology v. Turlock Diagnostic Ctr.*,
   839 F. Supp. 1388 (E.D. Cal. 1993)................................................................................4

*Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia St. LLC*,
   No. 15-CV-02286-JCS, 2015 WL 4932640 (N.D. Cal. Aug. 18, 2015).........................3

*Fed. Deposit Ins. Corp. v. Main Hurdman*,
   655 F. Supp. 259 (E.D. Cal. 1987)................................................................................10

*Founding Members of the Newport Beach Cty. Club v. Newport Beach Cty. Club, Inc.*,
   109 Cal. App. 4th 944 (2003) .......................................................................................10

*Gibbs v. Hernandez*,
   No. EDCV 13-382-CAS (KK), 2014 U.S. Dist. LEXIS 180121 (C.D. Cal. Nov. 21, 2014) ....................................................................................................................8

*Hauer v Bankers Trust New York Corp.*,
   65 F.R.D. 1 (E.D. Wis. 1974) .........................................................................................6

*Jacques Krijn En Zoon v. Schrijver*,
   151 F. Supp. 955 (S.D.N.Y. 1957)..................................................................................3

*Lane v. Krein*,
   297 S.C. 133 (1988)........................................................................................................6

*Orr v. Bank of Am., NT & SA*,
   285 F.3d 764 (9th Cir. 2002) ..........................................................................................9

*In re Raffin*,
   284 Fed. App'x. 405 (9th Cir. 2008) ...........................................................................3, 4

*Shenandoah Assocs. Ltd. P'ship v. Tirana*,
   182 F. Supp. 2d 14 (D.D.C. 2001)..................................................................................3

Cooley LLP
Attorneys At Law
Palo Alto

ii.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Authorities**

**Statutes**                                                                                                                          **Page(s)**

California Corporations Code
   § 16103.................................................................................................................................6

Hawaii Revised Statutes
   § 425-103 ..............................................................................................................6

**Other Authorities**

Federal Rules of Evidence
   402.......................................................................................................................10
   801(c) ....................................................................................................................9

Federal Rules of Civil Procedure
   9(a)....................................................................................................................3, 10
   8(c) .....................................................................................................................10

Cooley LLP
Attorneys At Law
Palo Alto

iii.

Defendants' Reply in Support of Motion for
Summary Judgment
Case No. 15-cv-02281 (WHA)

I. **INTRODUCTION**

TRT fails to come forward with any evidence that Thomas Seidl—the only TRT partner who interacted with Palmer Luckey—authorized this lawsuit when it was filed in May 2015 or that he agrees with its prosecution today. Defendants submitted sworn testimony from Seidl showing that Ron Igra "didn't have [his] agreement" at the time the lawsuit was filed and that "that's still true today." Indeed, just days after Igra filed this lawsuit, Seidl wrote to Luckey telling him that the filing of the lawsuit "[w]as without my knowledge or permis[s]ion," that it "seems to be illegal," and that "I have not signed anything or let him take action against you." That same day, Seidl wrote his friend Terrance Staton, telling him the same thing—that "Ron the idiot went and fil[]ed against Palmer," but "I [had] nothing to do with it."

In contrast to this uncontroverted evidence showing that TRT lacked Seidl's authorization at the time the lawsuit was filed, TRT proffers hearsay supposedly showing that Seidl agreed, *in January/February 2015*, to the filing of a hypothetical lawsuit against Luckey if certain conditions were met. Yet, TRT's Opposition omits key communications (1) ███████████████████████████████████████████████████████████████. Moreover, even if admissible, Igra's hearsay characterization would be irrelevant to the only issue germane to this summary judgment motion—whether Seidl authorized or agreed with the lawsuit when it was filed *in May 2015*. He obviously did not, as he is completely absent from this litigation. Indeed, TRT was unable to obtain even a simple declaration from Seidl indicating that he did, in fact, agree with the filing of this lawsuit or that he agrees with it today. And, it is *because* of Seidl's lack of agreement with this lawsuit that Igra filed and continues to pursue the still-pending Hawaii action against Seidl—a fact that TRT all but ignores in its Opposition.

While TRT also points to Seidl's answer in the second Hawaii action as evidence that Seidl denied that he had asserted a veto to the filing of this lawsuit, Seidl's blanket denial of numerous paragraphs of Igra's complaint is not only inadmissible hearsay, it also occurred four months before this lawsuit was filed and is thus irrelevant to this motion. In any event, Seidl's unsworn answer contradicts his unequivocal sworn deposition testimony and cannot create a disputed issue of fact.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

1    In fact, TRT's Opposition underscores the *disagreement* among Seidl and Igra, entitling

2    Defendants to judgment.  The centerpiece of TRT's Opposition is a heavily redacted email exchange

3    between Seidl and Igra concerning whether and under what conditions to pursue a claim against

4    Defendants. (*See* Ex. 1.)[1]  While TRT has heavily redacted, or entirely withheld, this and numerous

5    other communications between Seidl and Igra in which Igra and his lawyers at Quinn Emanuel try—

6    and fail—to convince Seidl to authorize this lawsuit, the record shows that Seidl withheld

7    authorization for the lawsuit because he did not believe it to be factually or legally supported.  The

8    improper redactions[2] do not change the absence of agreement that permeates the record and that was

9    indisputably confirmed by Seidl's deposition testimony in this matter.

10    Defendants' evidence is clear and uncontradicted: Seidl has not authorized this lawsuit.

11    TRT's failure to proffer any contrary evidence is fatal to its authority to bring or maintain this

12    lawsuit.  Defendants' motion should be granted.

13    **II.    SUMMARY JUDGMENT SHOULD BE GRANTED IN DEFENDANTS' FAVOR**

14    **A.    Defendants Can Properly Challenge TRT's Authority to Sue.**

15    TRT's argument that it is procedurally improper for Defendants to raise TRT's lack of

16    authority to sue is contradicted by Ninth Circuit law.  Instead, as long as a defendant makes a

17    "specific negative averment" in its answer or a motion for summary judgment as required by Federal

18    Rule of Civil Procedure 9(a), the defendant can challenge the capacity of a partnership or other

19    entity to sue.  Defendants have done exactly that at every stage of this proceeding, including in their

---

[1] Unless otherwise noted, all references to numerical exhibits (e.g., "Ex. 1") are to the exhibits filed with the Igra and Stiernberg Declarations filed with TRT's Opposition (Dkt. Nos. 153-1, 153-7), and all references to alphabetical exhibits (e.g., "Ex. A") are to the exhibits filed with the Lambert Declaration (Dkt. 136) or—for Exhibits P through W—the Supplemental Lambert Declaration filed with this Reply.

[2] Defendants continue to be prejudiced by TRT's improper withholding of non-privileged communications.  Not only were Defendants unable to depose Seidl about the documents the Court has already ordered produced (*see* Dkt. 125), which were produced for the first time the day *after* his deposition, hundreds of additional withheld and redacted communications between Seidl and Igra (including Exhibit 1 to TRT's Opposition) remain subject to the pending discovery dispute before Magistrate Judge Kim.  (*See* Dkt. 131; 134; 155; 156.)  As such, should Magistrate Judge Kim order any such documents produced, Defendants respectfully request the opportunity to submit supplemental briefing to the Court on these documents.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

answer and in the instant motion for summary judgment.  In *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000), the court considered whether a defendant had properly raised plaintiff's authority to sue pursuant to a partnership agreement.[3]  It found that defendants had not properly raised the issue, but only because defendants had waived the issue by not making the specific negative averment required by Rule 9(a) either in an answer or in a motion for summary judgment.  *Id.* at 878-79.  The Ninth Circuit did not hold that defendants could <u>not</u> raise plaintiff's lack of authority to sue; to the contrary, it explicitly contemplated that defendants *could* have raised the issue if it had not been waived by their failure to follow Rule 9(a).  *Id.*

Similarly, in *Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia St. LLC*, No. 15-CV-02286-JCS, 2015 WL 4932640, at *5 (N.D. Cal. Aug. 18, 2015), the court found that defendant's challenge to a corporation plaintiff's capacity to sue was procedurally proper under Rule 9(a) and could be dismissed under Rule 12(b)(6).  Likewise, in *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM (CWx), 2006 WL 4749756 (C.D. Cal. Sept. 25, 2006), the court allowed defendant to contest a plaintiff partnership's capacity to sue.  *Id.* at *30 ("The complaint alleges that the plaintiff was and still is a limited partnership. . . .  If defendant wishes to controvert plaintiff's legal existence and capacity to sue under the Dutch law, he may do so in his answer as provided by Rule 9(a) of the Federal Rules of Civil Procedure.") (citation omitted).  And in *Jacques Krijn En Zoon v. Schrijver*, 151 F. Supp. 955, 956 (S.D.N.Y. 1957), the court agreed that pursuant to Rule 9(a), defendant could challenge a limited partnership plaintiff's capacity to sue.  *Id.* at 957; *see also In re Raffin*, 284 Fed. App'x. 405, 406-07 (9th Cir. 2008) (defendant properly raised trustee's lack of authority to sue to recover assets of a trust and district court properly ruled that trustee had no authority to sue); *Shenandoah Assocs. Ltd. P'ship v. Tirana*, 182 F. Supp. 2d 14, 17 (D.D.C. 2001) (considering the defendant's assertion that "plaintiffs, as limited partnerships, are precluded from

---

[3] While the Ninth Circuit notes that the partnership agreement shows that defendant Fred Avalli's approval was necessary for ECG to bring suit, 206 F.3d at 879, the court does not detail what the partnership agreement is.  The appellate record makes it clear that the partnership agreement was between the plaintiffs, including ECG, and several other entities.  (*See* Appellants' Opening Br. at 17, *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 847 (9th Cir. 2000) (No. 98-15003), 1999 WL 33651516.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

bringing their claims because they do not have the capacity to sue in their own name pursuant to Federal Rule of Civil Procedure Rule 17(b)" and finding that the partnerships can sue in their own names); *In re Brown*, 342 F.3d 620, 627 (6th Cir. 2003) (analyzing defendant's argument that plaintiff general partnership was not properly authorized to assert its breach of contract claim and finding that plaintiff had capacity to sue under Michigan law).

TRT's reliance on *Delbon Radiology v. Turlock Diagnostic Center*, 839 F. Supp. 1388 (E.D. Cal. 1993), is thus misplaced.  To the extent *Delbon* was ever good law,[4] it has been implicitly abrogated by *De Saracho* and *In re Raffin*.  But even if *Delbon* were good law, Defendants would still be able to challenge TRT's authority to bring this lawsuit.  Both *Delbon* and *Bromberg & Ribstein on Partnership* (on which *Delbon* relies) base their conclusions on the argument that where there is no danger of multiple lawsuits with inconsistent results, a defendant is not prejudiced by being unable to raise plaintiff's lack of authority.  839 F. Supp. at 1392.  But here, where Igra is actively suing Seidl in the Hawaii action for breach of contract and seeking Seidl's "specific performance" of authorizing this lawsuit, there is a risk of inconsistent results: if TRT prevails in this lawsuit, but the Hawaii court later denies Igra's claims for breach of contract and specific performance, Defendants will be prejudiced by having had to defend a lawsuit and having judgment against them where the Hawaii court has found the lawsuit was filed without Seidl's necessary authorization.[5]

TRT's argument that Defendants are not in contractual privity with Igra and thus lack standing to "assert Seidl's rights under that agreement" (Opp. 10:17-20) is inapposite.  Defendants

---

[4] *Delbon*'s sole authority for holding that a defendant does not have standing to challenge a plaintiff's authorization to sue is the *exhortative* musings of the authors of *Bromberg & Ribstein on Partnership*.  *Delbon*, 839 F. Supp. at 1392.  But *Bromberg & Ribstein* is contradicted by the numerous decisions that allow defendants to raise a partnership's authority to sue.

[5] Igra has nobody to blame but himself for failing to obtain or compel agreement from Seidl prior to filing this suit against Defendants in May 2015.  Faced with Seidl's disagreement in 2013 and 2014, Igra first sued Seidl in Hawaii in April 2014.  (Ex. H.)  Instead of maintaining that action and pursuing a remedy against Seidl, he dismissed the action, further extending the state of disagreement.  In his second suit, Igra has done nothing to expedite proceedings, and he is now stuck with his inability to secure Seidl's endorsement of this baseless lawsuit.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

1   are not trying to assert Seidl's rights under the agreement.  TRT's authorities on contractual privity

2   (Opp. 10-12) do not address and have no bearing on Defendants' right to challenge Plaintiff's

3   capacity or authority under Rule 9(a).

4         In this case, where Plaintiff is a two-person partnership and where the Partnership Agreement

5   explicitly puts the burden on both partners to agree before the partnership can take any action,

6   forbidding Defendants from challenging the partnership's authority to sue would allow a single

7   person, Igra, to abuse the partnership form by bringing a suit on his own behalf that he could not

8   otherwise advance.  The abuse is especially acute here, where the person masquerading under the

9   partnership's name (1) had no dealings with the Defendants targeted by the complaint other than to

10  sue them and (2) is simultaneously suing his other partner—who had *all* the relevant dealings with

11  Luckey—to obtain authorization for this lawsuit.  Such a result would turn Rule 11 on its head.  TRT

12  cannot meet its Rule 11 obligations without the concurrence and support of Seidl.

13  **B.    TRT Lacks the Authority and Capacity to Sue Because Seidl Has Not**
14  **Authorized this Lawsuit.**

15        In an attempt to create a dispute of material fact where there is none, TRT simply misdirects

16  the Court's attention, arguing that Seidl agreed to a lawsuit in January-February 2015 (if certain

17  conditions were met).   But not only were Seidl's conditions precedent not met, a purported

18  agreement in January-February 2015 is irrelevant to whether Seidl authorized this lawsuit when it

19  was filed in *May 2015*, or whether he agrees with its prosecution today.  The factual record from

20  May 2015 to the present—indeed, the very fact of the <u>ongoing</u> litigation in Hawaii against Seidl for

21  withholding his consent—compels the conclusion that Seidl has not authorized this lawsuit.

22  **1.    TRT Lacks Capacity to Sue Without Seidl's Approval.**

23        TRT concedes that the plain language of the TRT Partnership Agreement—not the Revised

24  Uniform Partnership Agreement ("RUPA")—controls the decision of whether TRT has the capacity

25  to sue.[6]  (Opp. 17:10-11.)  Under Paragraph 19 of that agreement, "for <u>any decision</u> regarding the

---

[6] TRT calls the RUPA discussion a "hypothetical analysis" since the TRT Partnership Agreement
controls.  (Opp. 17:12.)  But Defendants provided an analysis under RUPA in their moving brief
only because ***TRT had twice raised RUPA as providing the legal support for TRT's capacity to sue***

Cooley LLP
Attorneys At Law
San Francisco

5.

Defendants' Reply In Support of Motion for
Summary Judgment
Case No. 15-cv-02281 (WHA)

1  company Ron Igra and Thomas Seidl have to agree on any action with the exception of an event laid

2  out in point 20 [the mandatory buy out provision]."  (Ex. A ¶ 19 (emphasis added).)  Notably, TRT

3  does not proffer an alternative interpretation for Paragraph 19.  Indeed, it cannot.  At his deposition,

4  Ron Igra himself agreed that Paragraph 19 means ███████████████████████████

5  ████████████████████  (Ex. B at 67:12-17 (emphasis added).)

6       TRT's attempt to distinguish Defendants' authority (Opp. 18-20) is unavailing as to the only

7  question germane to this motion: whether TRT lacks capacity to sue because Seidl has not

8  authorized this lawsuit, as required by Paragraph 19 of TRT's Partnership Agreement.[7]  *Hauer v*

9  *Bankers Trust New York Corp.,* 65 F.R.D. 1, 4 (E.D. Wis. 1974), and *Lane v. Krein,* 297 S.C. 133,

10  134-35 (1988), simply establish that courts look first to the partnership agreement to determine

11  capacity and authority to sue.  *See also* Haw. Rev. Stat. § 425-103; Cal. Corp. Code § 16103.  Here,

12  the Partnership Agreement is clear and unequivocal, and the Court need not look any further in

13  deciding this motion.

14         **2.**     **Seidl Did Not Authorize this Lawsuit When Filed and Continues to Withhold His Authorization.**

16       In his sworn deposition testimony, Seidl declared that Igra "didn't have [his] agreement" to

17  file the lawsuit and that "that's still true today."  (Ex. 6 at 28:22-30:25.)  Indeed, only days after Igra

18  filed this lawsuit in May 2015, Seidl wrote to Luckey telling him that the filing of the lawsuit "[w]as

19  without my knowledge or permis[s]ion," that it "seems to be illegal," and that "I have not signed

20  anything or let him take action against you."  (Ex. M at LUCKEY0113302; *see also* Ex. C at 25:2-11

21  ███████████████████████████████████████████████████████████  That

23  (apparently in an attempt to circumvent the plain language of the TRT Partnership Agreement that
requires Seidl's agreement).  (*See* Dkt. 81 at 3-4; Dkt. 108 at 4.)  TRT now apparently concedes that
its prior attempts to use RUPA to support its arguments were meritless.

25  [7] Plaintiff's passing reference to Rule 17(b) and California Code of Civil Procedure § 369.5 and
arguments regarding capacity (Opp. 12:26-13:1), are red-herrings and side-step the critical inquiry
on this motion.  Defendants do not allege that TRT is *per se* forbidden to sue or be sued because it is
a partnership; rather, Defendants argue that Plaintiff's lack of capacity results from its failure to
obtain Seidl's authorization to file this lawsuit, as required by Paragraph 19 of TRT's Partnership
Agreement.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

1   same day, Seidl wrote his friend Terrance Staton, telling him the same thing—"Ron the idiot went

2   and fil[]ed against Palmer," but "I [had] nothing to do with it." (Ex. P at SEI-000330.) And Seidl's

3   continued refusal to authorize this action was further manifested by TRT's failure to procure from

4   him "an executed ratification of the complaint and all actions taken by counsel herein (as if approved

5   from the outset)" in response to the Court's April 21, 2016 Order. (*See* Dkt. 147 at 2:11-14 ("TRT

6   has actively sought but thus far has been unable to obtain a declaration from Mr. Seidl to provide to

7   this Court . . . [and] acknowledges that it cannot satisfy the Court's request for a declaration from

8   Mr. Seidl.").)

9          The continuing existence of the Hawaii litigation confirms that even Igra understands that

10   (contrary to Igra/TRT's arguments in this action) Seidl has not authorized, and continues to

11   vehemently oppose, this lawsuit.  Throughout 2014, Seidl consistently refused to cooperate with Igra

12   in bringing a lawsuit against Defendants, repeatedly questioning the merits of such action. (*See* Mot.

13   5-7:10.)  As a result of Seidl's repeated refusal to authorize legal action against Defendants, Igra

14   filed the second, still pending, Hawaii lawsuit against Seidl in December 2014—five months before

15   Igra elected on his own to file this lawsuit. (Ex. K (Dec. 5, 2014 Hawaii Compl.).)  In the complaint,

16   Igra alleges that "SEIDL asserted his right to 'veto' any legal action by the Partnership to pursue

17   claims against Luckey."[8] (*Id.* ¶ 31.)  He further alleges "SEIDL has and continues to refuse to

18   authorize IGRA, or any other person or entity, to pursue to the Partnership's legal claims." (*Id.* ¶ 37.)

19          Quite simply, if Seidl affirmatively authorized this lawsuit in January 2015, as TRT argues is

20   the case (Opp. 13:25-14:4), Igra would have dismissed the Hawaii action as moot shortly after

21   receiving Seidl's answer in January 2015.  Yet Igra continues to pursue the Hawaii action in its

22   entirety indicating that no such agreement between Igra and Seidl ever materialized.

23          TRT argues that in answering the complaint in the second Hawaii litigation, Seidl denied that

24   he had asserted a "veto" to filing suit against Defendants.  But Seidl's hearsay denials occurred four

25   months before this lawsuit was filed and are thus irrelevant to whether Seidl authorized the lawsuit

26

27   [8] This allegation by Igra flatly contradicts Igra/TRT's argument herein that "the record is devoid of any evidence that Seidl ever communicated the supposed 'veto' to Igra." (Opp. 16:8-9.)

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

1    when it was filed.  Moreover, they were blanket denials to multiple paragraphs of the complaint.

2    (Ex. O ¶¶ 20, 25; Ex. K ¶¶ 29-32, 37-41.)  And Seidl's unsworn blanket denials cannot create a

3    disputed issue of fact since they contradict Seidl's sworn deposition testimony in this lawsuit.  *See*

4    *Gibbs v. Hernandez,* No. EDCV 13-382-CAS (KK), 2014 U.S. Dist. LEXIS 180121, at *19 n.6

5    (C.D. Cal. Nov. 21, 2014) ("If a sworn statement that contradicts prior deposition testimony cannot

6    create an issue of fact at summary judgment, then, *a fortiori*, Plaintiff's unsworn statements in either

7    the Complaint or Opposition cannot create an issue of fact either.").

8           Thus, the record is uncontroverted: Seidl did not authorize this lawsuit when it was filed and

9    remains opposed to it today.

10                  **3.     Igra and Seidl's January/February 2015 Discussions About a
                            Hypothetical Lawsuit Against Luckey Do Not Evidence Seidl's**
11                          **Authorization of the Instant Lawsuit.**

12          TRT's evidence concerning Seidl's supposed early-2015 agreement to consider suing

13   Defendants if certain conditions were met is not relevant to the ultimate question of whether Seidl

14   approved of this litigation when it was filed (at least four months later).  But even if it were, *there is*

15   *no evidence that the agreed-upon conditions necessary for Seidl's approval were ever met* and

16   whatever conditional agreement existed in January 2015 ███████████████████████████████████.

17          As an initial matter, TRT mischaracterizes the conditions necessary for Seidl's approval,

18   arguing that "[s]pecifically, and unambiguously, Igra and Seidl agreed that if Luckey failed to

19   respond positively within two weeks of their contacting him, Total Recall would file suit."  (Opp.

20   13:27-14:2.) ██████████████████████████████████████████████████████████████████████████

21   █████████████████████████████████████████████████████████████████████████████████████████

22   ████████████  (Ex. Q at TR00008047 ████████████████████████████████████████████████████

23   █████████████████████████████████████████████████████████████████████████████████████████

24   █████████████████████████████████████████████████████████████████████████████████████████

25   █████████████████████████████████████████████████████████████████████████████████████████

26   █████████████████████████████████████████████████████████████████████████████████████████

27   ███████████████████████████████████████  (Ex. R at TR00002284 (emphasis added).)  ████████

28   █████████████████████████████████████████████████████████████████  The whys and

1    wherefores of this give and take are not material in light of the unambiguous sworn testimony by

2    Seidl that he did not and does not agree with TRT's action in filing and maintaining this lawsuit.

3        But further, TRT's own documents show that any ███████████████████

4    ███████████████████████████████████████████████████

5    ███████████████████████████████████████████████████

6    ███████████████████████████████████████████████ (Ex. S at

7    TR00002330.) ████████████████████████████████████████

8    ███████████████████████████████████████████████ (Ex. S at

9    TR00002329.)

10       ███████████████████████████████████████████████

11   ███████████████████████████████████████████████████

12   ███████████████ (Ex. T at TR00007970.) █████████████████

13   ███████████████████████████████████████████████████

14   ███████████████████████████████████████████████████

15   ███████████████ (Ex. U at TR00003736 (emphasis added).)

16       Not surprisingly, TRT does not mention these communications, which refute its claim that

17   Seidl's purported conditional agreement in January 2015 gave Igra authority to file this lawsuit.

18   Indeed, the document forming the centerpiece of TRT's Opposition—Exhibit 1—is hearsay.[9]

19   _____

20   [9] All of TRT's support for Seidl's supposed agreement in January 2015 is inadmissible hearsay and,
     pursuant to Civil Local Rule 7-3(c), Defendants hereby object to such evidence. *See Orr v. Bank of*

21   *Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible
     evidence in ruling on a motion for summary judgment."). *First*, at page 7, lines 5-8 of its

22   Opposition, TRT relies on *Igra's testimony* of what *Seidl said* to him during a January 17, 2015
     discussion. TRT uses Igra's characterization of Seidl's out-of-court statements for the truth of those

23   statements, and they are thus inadmissible hearsay. *See* Fed. R. Evid. 801(c). *Second*, TRT relies

24   extensively on quotations from Exhibit 1 to the Igra Declaration, consisting of a (heavily redacted)
     email discussion between Igra and Seidl. (*See, e.g.*, Opp. 7:14-22, 7:25-28; 8:1-3; 8:3-4.) The

25   statements in these emails by both TRT partners, but especially those by Seidl, are inadmissible
     hearsay because they are used for the truth of the matter asserted. *Third*, TRT uses Seidl's denial of

26   particular allegations in his answer in the second Hawaii action for the truth of the matter—*i.e.*, that

27   Seidl had not exercised a veto. Seidl's denials are thus inadmissible hearsay.

28   In addition, Defendants object to Igra's testimony cited at page 3, lines 20-21 of the Opposition

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

1     Further, it is littered with improper "privilege" redactions, in continuation of TRT's ploy to hide

2     evidence harmful to its case and to spin a one-sided fiction of Igra's and Seidl's communications.

3     Notably, TRT quotes language that appears *immediately adjacent to* and *before and after* the

4     redacted portions of the document.  TRT's cherry-picked emails from January-February 2015 also

5     exclude *later* communications ██████████████████████████████████████████

6     ████████████████████████████████████████.

7          TRT's Opposition fails to recognize that it carries the burden of proving its authority and

8     capacity to sue—i.e., that Seidl agreed with the filing of this lawsuit.  While Rule 9(a) requires

9     Defendants to challenge TRT's capacity or authority to sue by specific denial, unlike affirmative

10    defenses under Rule 8(c), TRT still bears the burden of proof to establish capacity and authority to

11    sue.  *See Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262–63 (E.D. Cal. 1987)

12    (finding that "the sixth so-called 'affirmative defense,' because it deals with the capacity to sue,

13    raises issues controlled by Fed. R. Civ. P. 9(a)" and "[s]ince plaintiff to prevail must demonstrate

14    that it has a right to recover for the injury it alleges was suffered because of defendant's conduct, it

15    has the burden of proof on the issue.").  Because TRT offers no evidence that Seidl authorized this

16    lawsuit when it was filed, TRT fails to meet its burden of proof to show a dispute of material fact.

17         Rather, TRT attempts to turn the requirement that it show Seidl's affirmative agreement with

18    the filing of this lawsuit on its head when it complains that Defendants have not proved the existence

19    of a Seidl "veto," or that Seidl failed to communicate the "veto" to Igra.  (*See* Opp. 16:8-9.)  The

20    TRT Partnership Agreement's use of the word "vito" (sic) does not mean that TRT is free to act in

21    the absence of Seidl's (communicated) disagreement.  To the contrary, as Paragraph 19 of the

22    Partnership Agreement explicitly states, it "means that for any decision regarding the company Ron

23    Igra and Thomas Seidl have to agree on any action with the exception of an event laid out in point 20

24

25    concerning what he told Seidl as inadmissible evidence of Igra's undisclosed subjective intent

26    concerning the Seidl-Luckey agreement.  *See Founding Members of the Newport Beach Cty. Club v.*

       *Newport Beach Cty. Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) ("The parties' undisclosed intent

27    or understanding is irrelevant to contract interpretation."); Fed. R. Evid. 402 ("Irrelevant evidence is

       not admissible.").

28

Cooley LLP
Attorneys At Law
San Francisco

10.

Defendants' Reply in Support of Motion for
Summary Judgment
Case No. 15-cv-02281 (WHA)

1   [the mandatory buy out provision]."  (Ex. A ¶ 19.)  TRT's argument thus does not raise a disputed

2   issue of material fact that would undercut Seidl's sworn testimony that he did not agree.  Instead, its

3   purported "evidence" is in truth, simply evidence of disagreement.

4          **4.     Seidl, the Only TRT Partner Who Interacted with Palmer Luckey,
              Communicated His Disagreement with this Lawsuit and the Reasons for
5             that Disagreement to Igra *Before* Igra Filed Suit.**

6          TRT's discussion of Seidl's supposed agreement that this lawsuit has merit (*see, e.g.*, Opp. 2-

7   5) is irrelevant to this motion, and it is also wrong.    While TRT's improper withholding of

8   communications between Igra and Seidl on this very issue (*see* Dkt. 156 at 2:15-19) likely hides the

9   full scope of Seidl's disagreement with this lawsuit, based on the evidence that has been produced to

10  date,

22  (Ex. J at TR00008651 (emphasis added).)

24  _____

25  [10] Seidl has never authorized TRT's retention of Quinn Emanuel.  In fact, Igra's complaint in the
    second Hawaii action specifically seeks "an order of specific performance compelling SEIDL to

26  authorize legal action to protect the Partnership assets, *specifically allowing IGRA to hire the law
    firm of his choice* to pursue the Partnership's claims against Luckey and the others involved in the

27  wrongful appropriation and use of Partnership technology."   (Ex. K at Prayer for Relief ¶ B

28  (emphasis added).)

11.

1  ████████████████████████████████████████████████ (Ex. I at TR00008657.)

2  Because Seidl is a TRT partner (indeed the only TRT partner who interacted with Luckey), such

3  statements constitute admissions that bind TRT and conclusively rebut TRT's claim that Seidl never

4  communicated his "veto" to Igra.  (*See* Opp. 16:8-9.)

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  █████████████████████████████████ (Ex. V at TR00000919.) ████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10 ████████████████████████████████████ (*Id.* (emphasis added).)   Several

11 months later, when Seidl contacted Luckey following the 2012 Kickstarter campaign, Seidl's

12 concerns focused largely on obtaining financial assistance from Luckey, not pursing legal action.

13 (Ex. W at LUCKEY0139215 ("I don't want to cause a fuss, but I could really do with some money

14 to fund the last stages of the camera development."); *id.* at LUCKEY0139213 ("[h]owever, my main

15 worry on seeing the piece was that you were rolling in money now just as I am running out fast.").)

## 5. There Are No Disputed Issues of Material Fact, and This Court Should Decide this Motion Without Deference to the Hawaii Action.

As discussed above, there are no disputed issues of material fact as to the absence of TRT's authority to sue.  There is no reason for this Court to defer to the Hawaii court on these issues (*contra* Opp. 20-21), as (1) clear legal authority allows Defendants to challenge TRT's authority and capacity to sue in this action and (2) Igra has twice argued that this action should not be stayed pending the Hawaii action.  And while TRT speculates that there is a conflict of interest between Seidl and TRT with respect to authorization to sue Defendants (Opp. 20:24-21:24), that argument is devoid of evidentiary support and should be disregarded by this Court.

It was TRT's burden to put forward evidence of a dispute of material fact supporting its authority to sue, and it has failed to do so.  Given that failure, there is no reason to further stay this action pending resolution of the Hawaii action and summary judgment should be entered.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)

1

## III.   CONCLUSION

2      Igra lacks Seidl's agreement to sue as required by Paragraph 19 of the TRT Partnership

3   Agreement.  He thus lacks authority to bring this lawsuit on behalf of TRT and TRT lacks capacity

4   to maintain this lawsuit.  TRT has failed to meet its burden of proof to show a dispute of material

5   fact concerning TRT's capacity to bring this lawsuit.  As such, Defendants respectfully request that

6   the Court grant summary judgment.

7

Dated: May 13, 2016                    COOLEY LLP

8

9

10                                      By:   _/s/ Mark F. Lambert_____
                                              Mark F. Lambert

11
                                        Attorneys for Defendants
12                                      OCULUS VR, LLC and PALMER LUCKEY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
CASE NO. 15-CV-02281 (WHA)