QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert P. Feldman (Bar No. 69602)
  bobfeldman@quinnemanuel.com
  Robert W. Stone (Bar No. 163513)
  robertstone@quinnemanuel.com
  Brian Cannon (Bar No. 193071)
  briancannon@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

*Attorneys for Plaintiff Total Recall Technologies*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>*Plaintiff*,<br><br>vs.<br><br>PALMER LUCKEY and OCULUS VR, LLC,<br>as successor-in-interest to OCULUS VR, Inc.,<br><br>*Defendants*. | Case No. 15-cv-02281-WHA<br><br>**MOTION FOR RELIEF FROM THE COURT'S JUNE 16, 2016 ORDER GRANTING MOTION FOR SUMMARY JUDGMENT SUBJECT TO STATED CONDITIONS (DKT. NO. 179)**<br><br><br>Date: March 2, 2017<br>Time: 8:00 a.m.<br>Location: Courtroom 8, 19th Floor<br>Judge: Hon. William H. Alsup |

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................1

STATEMENT OF RELIEF SOUGHT ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

INTRODUCTION .......................................................................................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT ..............................................................................................................................7

I.  THIS CASE SHOULD NOT BE DISMISSED BECAUSE TOTAL RECALL HAS
    SATISFIED THE TERMS OF THE JUNE 16 ORDER ...................................................7

    A.  Total Recall Speaks With One Authoritative Voice ................................................7

    B.  The Settlement Agreement Exceeds The Conditions For Full Authority
        Envisioned By The Court And Satisfies The Court's Concerns About Who
        Has Responsibility For The Case ............................................................................9

    C.  The Settlement Agreement Meets The Terms Of The Court's Order—
        Including Ratification ...........................................................................................11

        1.  Only One Partner Remains, And He Has Authorized, Ratified And
            Consented To The Ongoing Prosecution Of This Case ...............................11

        2.  The Court's Concerns About Seidl's Ratification Are Unfounded
            And To The Extent Required, Seidl Has Already Ratified The
            California Lawsuit As A Matter Of Agency Law .........................................12

II. DEFENDANTS OBJECTIONS TO THE SETTLEMENT AGREEMENT AND
    LIFTING THE STAY HAVE NO MERIT .......................................................................13

    A.  IP Quitclaim Assignment Attached To Settlement Does Not Deprive Total
        Recall Of Any Authority To Proceed In This California Contract Action .............14

    B.  Defendants Cannot Rely On The Statute Of Limitations .......................................14

        1.  Defendants Have Waived A Statute Of Limitations Defense ......................15

    C.  Even If Not Waived, No Statute Of Limitations Defense Applies. .........................16

CONCLUSION .........................................................................................................................17

## TABLE OF AUTHORITIES

**Page**

### Cases

*Am. Alternative Energy Partners II v. Windridge, Inc.*,
 42 Cal. App. 4th 551 (1996)..................................................................................16

*Ample Bright Dev., Ltd. v. Comis Int'l*,
 913 F. Supp. 2d 925 (C.D. Cal. 2012)....................................................................12

*Bailey v. State*,
 57 Haw. 144, 552 P.2d 365 (1976) ........................................................................13

*Breslin v. City & Cty. of San Francisco*,
 146 Cal. App. 4th 1064 (2007)...............................................................................16

*Cane City Builders, Inc. v. City Bank of Honolulu*,
 50 Haw. 472, 443 P.2d 145 (1968) ........................................................................10

*Delbon Radiology v. Turlock Diagnostic Center*,
 839 F. Supp. 1388 (E.D. Cal. 1993).......................................................................10

*Faulkner v. Brooks*,
 125 Cal. App. 137 (Cal. Ct. App. 1932).................................................................13

*Hager v. Gibson*,
 108 F.3d 35 (4th Cir. 1997).....................................................................................13

*Hawaii Hous. Auth. v. Uyehara*,
 77 Haw. 144 (1994).................................................................................................12

*Marks v. Marks*,
 51 Haw. 548, 465 P.2d 996 (1970) ........................................................................13

*Martin v. Van Bergen*,
 209 Cal. App. 4th 584 (2012)..................................................................................15

*Mysel v. Gross*,
 70 Cal. App. 3d Supp. 10 (App. Dep't Super Ct. 1977).........................................15

*NORCAL Mutual Ins. Co. v. Newton*,
 84 Cal. App. 4th 64, 100 Cal. Rptr. 2d 683 (2001) ...............................................12

*Rakestraw v. Rodrigues*,
 8 Cal. 3d 67 (19722 ................................................................................................12

*Reading Int'l v. Malulani Grp., Ltd.*,
 16 F. Supp. 3d 1185 (D. Haw. 2014) ......................................................................14

*Schaeffer v. Gregory Vill. Partners, L.P.*,
 105 F. Supp. 3d 951 (N.D. Cal. 2015) ...................................................................15

*V & P Trading Co., Inc. v. United Charter, LLC*,
   212 Cal. App. 4th (2012) ........................................................................................16

*Welco Constr., Inc. v. Modulux*, Inc.,
   47 Cal. App. 3d 69 (1975) ....................................................................................16

## **Statutes and Rules**

Cal. Civ. Code § 2310 ..........................................................................................12, 13

Cal. Civ. Proc. Code § 350 ..........................................................................................16

Cal. Civ. Proc. Code § 369.5 .......................................................................................16

Haw. R. Civ. P. 13 ......................................................................................................13

Haw. Rev. Stat. § 425-139 .............................................................................................9

Haw. Rev. Stat. § 425-140 .............................................................................................9

06533-00001/8822089.3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 2, 2017 at 8:00 a.m., or as soon thereafter as this motion may be heard in Courtroom 8, 19th Floor, of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Total Recall Technologies ("Total Recall") will, and hereby does, move for an order granting it relief from the Court's June 16, 2016 Order Granting Motion for Summary Judgment Subject to Stated Conditions, and an immediate lift of the stay entered on May 3, 2016.  This motion is based on this notice, the supporting memorandum of points and authorities, the accompanying declarations of Thomas Seidl, Ron Igra, and Charles M. Stiernberg, the attached exhibits, the record in this case, and on such other oral and documentary evidence as may be presented at the hearing on this motion.

## STATEMENT OF RELIEF SOUGHT

Plaintiff Total Recall seeks relief from the Court's June 16, 2016 Order Granting Motion for Summary Judgment Subject to Stated Conditions, and an immediate lift of the stay entered on May 3, 2016.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

As the Court required, Total Recall speaks with "one authoritative voice" and should be allowed to pursue its claims against Palmer Luckey and Oculus—Luckey took Total Recall's product, renamed it the Rift, breached the contract and went on to make hundreds of millions of dollars.  Before virtual reality and head mounted displays were in the public consciousness, Total Recall had the vision to bring them to market and developed the technology.  It ought to have its day in court.

As this Court well knows, the partners that made up Total Recall—Thomas Seidl and Ron Igra—knew their contract with Luckey had been breached but disagreed about how to approach such (now) important and influential players in the virtual reality and gaming industry.  The Court

was concerned that the partners' internal dispute would undermine the Court's and third parties' ability to know who could bind Total Recall and who would be responsible should Total Recall lose the case.  That issue has been definitively resolved:  the partners have divided up the assets with Total Recall retaining all interest in the lawsuit and Seidl receiving the ongoing business, and Seidl has withdrawn from the partnership, unambiguously renouncing any control over the partnership's affairs and this lawsuit. Each partner retains a passive interest in the assets the other controls but no right to control those assets.  In many ways, this resolution exceeds the conditions set forth by the Court because now there is no possibility of disagreement going forward:  there is only one partner remaining with respect to control of this lawsuit.

The remaining partner—Igra—has therefore confirmed the authority, ratified the actions of the partnership in bringing the lawsuit, and consented to the ongoing prosecution of this case by Quinn Emanuel.  The Court has now raised concerns about Seidl's ratification of the lawsuit.  First, he cannot ratify because he is no longer a partner.  Second, any responsibility he may have for the lawsuit such as costs and fees is remedied by Ron Igra agreeing to indemnify him for such liability.  Third, to the extent any ratification from Seidl was required, as a matter of California agency law, Seidl's inaction when he had notice of the California lawsuit and stood to gain from it constitutes ratification.

Defendants have raised objections to the resolution outlined above.  These objections fall into the same pattern of delay that has characterized Defendants' approach throughout this case.  From delaying discovery to serial motions to dismiss, Defendants seek to avoid the merits of Luckey's contract breach and fraud at all costs.  For instance, in their response to the original Order to Show Cause, Defendants raised statute of limitations as a defense and seek yet another special, single issue summary judgment process, deviating from the customary rule that all summary judgment motions should be brought together.  Dkt No. 185 at 3, n.1.  There is no basis for Defendants' objection, let alone for their request that yet another special summary judgment motion be permitted. This is the first time the statute of limitations has ever been raised—it was not pled in the Answer nor raised in any interrogatory response.  It is therefore waived.

1   Defendants sat on this purported defense for the entirety of this lawsuit, and now at the last

2   moment attempt to argue that statutes intended to encourage prompt filings should work to their

3   own benefit.  Furthermore, the defense is not applicable.  Defendants' cases concern the California

4   Franchise Tax Board exercising its statutory power to suspend a corporation for failure to pay

5   taxes.  The suspended corporation becomes a nonentity that cannot enjoy the privileges of being a

6   corporation and therefore any filing it purports to do does not toll the statute.  These cases are a far

7   cry from the case before the Court.  Finally, Seidl's ratification by inaction under California

8   agency law ratified this case long before any statute of limitations may have run.

9                                        **BACKGROUND**

10

11          In 2010, inventors and entrepreneurs Ron Igra ("Igra") and Thomas Seidl ("Seidl") started

12   a business to develop 3D immersive technology—a technology that was not then in the public

13   consciousness.  Dkt. No. 179 ("June 16 Order") at 1.  In many ways, they were ahead of their

14   time.  On March 28, 2011, in furtherance of their business, Seidl and Igra entered into a written

15   agreement (Dkt. No. 175-1) to form Total Recall Technologies ("Total Recall")—a general

16   partnership headquartered in Hawaii.  June 16 Order at 1.

17          As part of their work, Igra and Seidl jointly invented and were granted, U.S. Patent No.

18   9,007,430, titled "System and Method for Creating a Navigable, Three-Dimensional Virtual

19   Reality Environment Having Ultra-Wide Field of View."  Dkt. No. 118 (Second Amended

20   Complaint) ("SAC"), ¶ 13.  In order to pursue their business and seek investors, the partners

21   sought to develop a prototype head mounted display.  In connection with that effort, Seidl posted a

22   request on a "forum" for someone to build a head mounted display.  Dkt. No. 178-16 (Apr. 14,

23   2016 Deposition of Palmer Luckey) ("Luckey Dep.") at 88:8-18; Dkt. No. 178-12 (Ex. 107 to

24   Luckey Dep.) at LUCKEY0280823.  Palmer Luckey volunteered.  *Id.*  In April, 2011, Igra sent

25   Luckey money so that he could purchase parts and begin work.  SAC, ¶ 16.

26          On August 1, 2011, Luckey executed a "Nondisclosure, exclusivity and payments

27   agreement" with Total Recall (the "August 2011 Agreement").  SAC, ¶¶ 18-19; Dkt. No. 175-4.

28   The August 2011 Agreement required, among other things, that Luckey "keep all details including

1    drawings and part suppliers of the Head Mounted Display confidential and shall not aid any other

2    person or entity in the design of a Head Mounted Display other than the disclosing party."  *Id.*

3    Luckey breached the August 2011 Agreement within its first year:  in particular, Luckey formed a

4    company he named Oculus to commercialize Total Recall's head mounted display prototype and

5    began raising money within the exclusivity period, all without disclosing his efforts to Total

6    Recall.  SAC, ¶ 22.

7         On September 7, 2012, upon learning about a part of Luckey's activities (that Oculus' Rift

8    Kickstarter campaign had raised approximately $2.4 million (Dkt. No. 129, ¶ 35)), Seidl

9    confronted Luckey about his breach.  Dkt. No. 178-14 (Ex. 139 to Luckey Dep.) at

10   LUCKEY0140131.  In response, Luckey did not deny his efforts to commercialize the Rift.  *Id.*

11   Instead, he claimed that the activities all occurred after July 1, 2012, when Luckey contended his

12   exclusivity obligations lapsed.  *Id.*  Luckey's denials, however, are demonstrably false.

13        As a result of the success of the Rift, Oculus received massive private funding.  That

14   success also led to interest by potential acquirers, and in 2014, Oculus was purchased by Facebook

15   for more than $2 billion.  SAC, ¶ 35.  That acquisition helped propel Palmer Luckey to the cover

16   of Time Magazine and a position of power and importance within the virtual reality and gaming

17   community.  Total Recall, by contrast, was left entirely uncompensated.

18        As the Court is well aware, Igra and Seidl differed in their approach to the timing of

19   litigation against Luckey and Oculus—now powerful players in the industry and backed by

20   Facebook.  As a result, Igra filed suit against Seidl in the Second Circuit Court of the State of

21   Hawaii on December 5, 2014, No. 14-1-0699(2) (the "Hawaii Action").  June 16 Order at 4; Dkt.

22   No. 175-11.  Igra alleged in paragraph 31 of his complaint that "SEIDL asserted his right to 'veto'

23   any legal action by the Partnership to pursue claims against Luckey" and alleged in paragraph 37

24   of his complaint that "SEIDL has and continues to refuse to authorize IGRA, or any other person

25   or entity, to pursue the Partnership's legal claims."  Dkt. No. 175-11, ¶¶ 35, 37.  Tellingly, Seidl's

26   Answer denied that he asserted a veto and denied that he refused to authorize a lawsuit.  Dkt. No.

27   175-15, ¶¶ 20, 25.

28

Despite their differences, however, Seidl avowed that he would ultimately support a lawsuit against Luckey.  For example, Seidl expressed the partners' shared concern that Total Recall have "enough time before statute of limitations" in which to approach Luckey and Oculus, writing to Igra, "[i]f we getting [sic] nothing from Palmer prior to the end date to file.  I will file.  I cant [sic] believe you think I am that stupid."  June 16 Order at 5.  To that end, Seidl contacted Luckey on February 24, 2015, by sending a letter (and copying Igra), stating:  "I and my company have and continue to reserve all rights that I and it have concerning claims arising from the breach of your agreement with me dated [August 1, 2011]."  *Id.* at 6; Dkt. No. 178-3 at TR00000997.

Total Recall filed suit against Luckey and Oculus on May 20, 2015 (the "California Lawsuit").  Dkt. No. 1.  Seidl had knowledge of the California Lawsuit no later than May 22, 2015—two days after it was filed.  June 16 Order at 7; Dkt. No. 175-13 at LUCKEY0113302.  Despite this knowledge, Seidl never sought to enjoin the California Lawsuit or otherwise intervene in the instant action.  (Supp. Igra Decl., ¶¶ 4-5).  Nor did Seidl ever file counterclaims or seek other relief from the Hawaii state courts.  *Id.*

On June 16, 2016 (Dkt. No. 179), the Court granted Defendants' Motion for Summary Judgment, finding that Total Recall lacked authority to maintain its action against Defendants.  Rather than dismissing the action, however, the Court stayed the case and ordered that:

> [T]he stay previously entered will remain in effect (i) until such time as Ron Igra and Thomas Seidl, the partners of Total Recall Technologies, file a sworn declarations herein affirmatively and without qualification stating that both authorize and agree to the maintenance of this civil action in the name of Total Recall Technologies against Palmer Luckey and Oculus VR, LLC, that both ratify all actions taken herein so far on behalf of Total Recall Technologies, and that both consent to continued prosecution of the case by the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, *or* (ii) until such time as a final order arrives from the Hawaii courts to the same legal effect.

June 16 Order at 14-15.

In reaching its conclusion, the Court voiced a number of concerns.  In particular, the Court stated that "the partnership must have one authoritative voice."  *Id.* at 14.  These concerns echoed those in the Court's previous April 21 Order to Show Cause, which similarly stated:

> If Total Recall's case is a winner, then we can likely expect Seidl to ratify our lawsuit and join in.  Conversely, if the instant lawsuit turns out to be a loser, then

1       Seidl can avoid costs, Rule 11 sanctions, and any other sanctions that may be
imposed on the losing party by saying he never agreed to this action.

2   (Dkt. No. 132 at 2).  The Court reiterated this concern at the June 1 summary judgment hearing,

3   stating "that somebody over there is just waiting to see how this case comes out, and then they will

4   join in and collect heir paycheck.  If it wins.  If it doesn't, then they are immunized [from

5   sanctions and costs]."  (June 1 Hear Tr. at 4:20-24).

6       On October 14, 2016, Igra and Seidl settled the Hawaii Action during a settlement

7   conference before Judge Rhonda Loo.  (Igra Decl., ¶ 3).  The terms of the settlement were reduced

8   to writing in a Settlement Agreement dated November 28, 2016.  (Ex. A).[1]  By its terms, the

9   Settlement Agreement "supersedes and replaces the terms of settlement placed on the record on

10  October 14, 2016."  (Ex. A at TR0010010).

11      The Settlement Agreement effectively splits the assets of the partnership in two:  Igra,

12  through Total Recall, now unquestionably controls the California Lawsuit, and Seidl receives the

13  remaining business assets, including Total Recall's patent.  Each also retains a passive minority

14  interest in any monetization by the other.  The essential terms of the Settlement Agreement are as

15  follows:

16      (1)    Seidl withdraws from the Total Recall partnership pursuant to

17  Haw. Rev. Stat. § 425-130, effective October 14, 2016.  (Ex. A at TR00010003;
Ex. A at TR00010030).

18      (2)    All rights or other interests that relate to the California Lawsuit

19  remain the property of Total Recall, and Igra, through Total Recall, retains control
thereof.  (Ex. A at TR00010003, 007).  Seidl has no right to control any aspect of

20  the California Lawsuit, has no right to veto the California Lawsuit, and has no
individual claims related to the California Lawsuit.  (Id.).

21      (3)    Seidl receives thirty (30) percent of any net monetary award,

22  monetary settlement, or other recovery resulting from the California Lawsuit, if
any.  (Id.).

23      (4)    Total Recall and Igra assign to Seidl all other patents, patent

24  applications, copyrights, trademarks, and other intellectual property rights ("IP
Rights") relating to Total Recall's three-dimensional, 360-degree camera

25  business.  (Id. at TR00010025-026, TR00009999-10001, TR00010023-24).

26

27     [1]  Unless otherwise noted, all cited alphabetical exhibits (e.g., "Ex. A") are attached to the
January 26, 2017 Supplemental Declaration of Ron Igra ("Igra Supp. Decl.") or the Declaration of

28  Charles M. Stiernberg ("Stiernberg Decl."), filed concurrently herewith.

(5)     Igra receives a graduated payment based on the net profit Seidl derives from the camera business, if any.  (*Id.* at TR00010005).

(6)     Igra agrees to indemnify Seidl for any fees, costs, monetary penalty, or other liability arising out of the California Lawsuit, and Seidl agrees to indemnify Igra for any fees, costs, or other liability associated with the camera business.  (*Id.* at TR00010006).

Seidl and Igra have also each signed sworn declarations reflecting the terms of the Settlement Agreement.  For his part, Seidl declared:

Effective October 14, 2016, I withdrew as a partner of Total Recall Technologies ("TRT").  Following my withdrawal as a partner of TRT, it is my understanding that any and all rights or other interests that relate to the lawsuit entitled *Total Recall Technologies v. Palmer Luckey, et al.,* Case No. 15-cv-02281 (N.D. Cal) (the "California Lawsuit") remain the property of TRT, and that I have no right to control any aspect of the California Lawsuit and no right to veto the California Lawsuit.  I further understand that Ron Igra intends to continue to pursue the California Lawsuit through TRT and that I have no individual claims related to the California Lawsuit and no right to seek judicial supervision or control over the California Lawsuit.

Dkt. No. 182-1 ("Seidl Decl.") at TR00010028.

Igra declared:

I, as the sole remaining partner of Total Recall, authorize and agree to the maintenance of the California [Lawsuit] against Palmer Luckey and Oculus VR, LLC.

I further ratify all actions taken herein so far on behalf of Total Recall and consent to the continued prosecution of this civil action by the law firm of Quinn Emanuel Urquhart & Sullivan, LLP.

Dkt. No. 182-2 ("Igra Decl."), ¶¶ 7-8.

## **ARGUMENT**

**I.     THIS CASE SHOULD NOT BE DISMISSED BECAUSE TOTAL RECALL HAS SATISFIED THE TERMS OF THE JUNE 16 ORDER**

**A.     Total Recall Speaks With One Authoritative Voice**

Total Recall has satisfied—and in many ways, exceeded—the terms set forth in the Court's June 16 Order:  the plaintiff in this case now indisputably speaks with one authoritative voice—the Court and any third parties know and can rely upon who acts for and binds Total Recall.

In its June 16 Order, the Court recognized that there was no decision from the Ninth Circuit or from any California appellate court that directly addressed the issue before the Court, i.e., a defendant's standing to challenge authority based on a disagreement between two partners in

1    a partnership.  *Id.* at 11.  Nonetheless, the Court expressed concern that disagreement between the

2    partners of Total Recall would undermine the "legitimate need" for courts and parties to determine

3    if a suit has been authorized "as well [as] who has authority to settle a case."  *Id.*  ("Those outside

4    the partnership have a legitimate need to be able to know who can act for and bind a

5    partnership.").  Ultimately, the Court required the partnership to speak with "one authoritative

6    voice."  *Id.* at 14.  Because these issues were being litigated in parallel in Hawaii, the Court

7    decided to "maintain the stay [of this action] and give counsel an opportunity to cure the

8    authorization problem."  *Id.*

9         The concerns raised by the Court in its June 16 Order have been cured.  Seidl and Igra

10   have settled the Hawaii action and submitted declarations establishing that Total Recall speaks

11   with one authoritative voice.  As previously explained, Seidl has withdrawn from the partnership,

12   and he has no control over the instant lawsuit.  He has agreed and declared that this litigation is

13   Total Recall's property, and he has neither an individual claim in the case nor any right to control

14   it.  Under the terms of the Settlement Agreement, the California Lawsuit concerns Total Recall's

15   claims, among other things, that Palmer Luckey and Oculus breached the August 1, 2011

16   agreement.  The Settlement Agreement expressly provides that the California Lawsuit shall remain

17   Total Recall property, and "all rights or other interests that relate to the California Lawsuit shall

18   remain the property of TRT [Total Recall], and Seidl shall have no right to control any aspect of

19   the California Lawsuit, and Seidl shall have no right to veto the California Lawsuit."  (Ex. A at

20   TR00010003).

21        Seidl's November 28, 2016 Declaration, previously submitted to the Court (Dkt. No. 182-

22   1), confirms these facts.  Seidl declared that he has withdrawn from the Total Recall partnership.

23   He declared that under the terms of the parties' Settlement Agreement, all rights that relate to this

24   lawsuit remain the property of Total Recall.  He declared that he has no right to control any aspect

25   of the California Lawsuit, and he has no veto power.  Seidl further declared his understanding that

26   Total Recall will continue to pursue the lawsuit against Palmer Luckey and Oculus VR, LLC.  *Id.*

27

28

Seidl does retain a passive interest in the outcome of the case:  under the terms of the Settlement Agreement, if Total Recall obtains a monetary award, Seidl is to be paid 30% of the recovery after payments of attorneys fees and litigation costs.  (Ex. A at TR00010004).  Under the Settlement Agreement, Seidl obtains full ownership of the United States patent for which he and Ron Igra are named inventors and the ongoing business and related IP—with Igra retaining a passive share in any profits of the business.  (*Id.* at TR00010008).  Essentially, it is a divorce between the two partners, dividing the partnership assets with Igra retaining sole control over the California Lawsuit and Seidl receiving the remaining assets of the business, while each also retain a residual share in the profits or recoveries of the other.  This result was intended to allow Total Recall to continue its case against Luckey, an individual who brazenly breached his contract with Total Recall and tried to cover his tracks as he went on to make hundreds of millions of dollars.

**B.**   **The Settlement Agreement Exceeds The Conditions For Full Authority Envisioned By The Court And Satisfies The Court's Concerns About Who Has Responsibility For The Case**

Total Recall, through its last surviving partner Ron Igra, has full control of the California Lawsuit and there is no question that he can bind the partnership.  Not only is that question settled, but there is no chance of further disagreement between the partners because Seidl has withdrawn from Total Recall.

As set forth in the Igra Declaration (Dkt. No. 182-2), Igra, as part of the winding up of Total Recall's partnership business, has the authority to control and pursue the California Lawsuit.  Hawaii partnership law explicitly allows the last surviving partner to continue the partnership in order to wind up the business.  *See* Haw. Rev. Stat. §§ 425-140(a); 425-139 ("[A] partnership continues after dissolution only for the purpose of winding up its business.").  And under Hawaii partnership law, Igra may direct the prosecution of this lawsuit.  *See id.* § 425-140(c) ("A person winding up a partnership's business may . . . prosecute and defend actions and proceedings . . . [and] settle disputes by mediation or arbitration . . . .").  Seidl—the withdrawn partner—has renounced all control over this winding up process, i.e., prosecution of the lawsuit.

1    Furthermore, Igra, as the sole remaining partner of Total Recall, authorizes and agrees to

2 the maintenance of the California Lawsuit against Palmer Luckey and Oculus VR, LLC, and he

3 has ratified all actions taken in the California Lawsuit on behalf of Total Recall and consents to

4 the continued prosecution of this civil action by the law firm of Quinn Emanuel Urquhart &

5 Sullivan, LLP.  (Igra Decl., ¶¶ 7-8).  This is permitted under Hawaii law.  *Cf*. *Cane City Builders,*

6 *Inc. v. City Bank of Honolulu,* 50 Haw. 472, 475–76, 443 P.2d 145, 148–49 (1968) (director of a

7 corporation that was involuntarily dissolved some eight months before could nonetheless file a

8 breach of contract action on behalf of the corporation).

9    Thus, Total Recall has exceeded the requirements of the June 16 Order insofar as Total

10 Recall can now and forever more only speak with "one authoritative voice."  Dkt. No. 179 at 14.

11    This is a better outcome than that envisioned by the terms of Court's June 16 Order.  There

12 is no risk, for example, that "one partner could unilaterally cause a partnership to sue on a claim"

13 while "another partner could unilaterally cause a partnership to release and settle the same claim."

14 *Id.* at 11.  Nor is there any question as to "who has authority to settle [the] case."  *Id.* at 12.  Seidl

15 could not, for example, renege on a promise to "consent to continued prosecution of the case" (*Id.*

16 at 14-15), because he no longer has the power to do so.  Rather, Seidl has signed a sworn

17 declaration that "any and all rights or other interest that relate to the California Lawsuit remain the

18 property of [Total Recall]," and that he has "no right to control any aspect of the California

19 Lawsuit and no right to veto the California Lawsuit."  (Seidl Decl. at TR00010028).  Thus, the

20 instant case is now even closer to the fact pattern in *Delbon Radiology v. Turlock Diagnostic*

21 *Center*, 839 F. Supp. 1388 (E.D. Cal. 1993), which this Court previously distinguished, in part, on

22 the grounds that Seidl had "not released claims against our Defendants."  Dkt. No. 179 at 13.

23    Not only is authority conclusively settled, but Total Recall has also addressed the Court's

24 previously expressed concerns regarding "costs, Rule 11 sanctions, and any other sanctions that

25 may be imposed on the losing party."  Dkt. No. 132 at 2.  There is no risk, for example, that Seidl

26 will "hid[e] behind his veto" (June 1 Hear. Tr. at 16:2), because the Settlement Agreement

27

28

requires that Igra "defend and indemnify Seidl for any fees, costs, monetary penalty, or other liability arising out of the California Lawsuit." (Ex. A at TR00010006; *see also* Igra Decl., ¶ 6).

### C.   The Settlement Agreement Meets The Terms Of The Court's Order— Including Ratification

#### 1.   Only One Partner Remains, And He Has Authorized, Ratified And Consented To The Ongoing Prosecution Of This Case

At the hearing on January 12, 2017, this Court asked why Thomas Seidl did not ratify this action. January 12 Hear. Tr. at 5:4-9. As a threshold matter, he cannot ratify any actions because he is no longer a partner: he has withdrawn from the partnership, has no individual claims related to the California Lawsuit, and he has no right to veto or control the action. Seidl is not an individual plaintiff, and it is the partnership (from which he withdrew) that brings the claims.

As the remaining partner, Igra remains in control of Total Recall as part of its winding up, the partnership can only ever speak with one voice, and that voice has "affirmatively and without qualification stat[ed] that [it] authorize[s] and agree[s] to the maintenance of this civil action in the name of Total Recall Technologies against Palmer Luckey and Oculus VR, LLC." (June 16 Order at 14; Igra Decl., ¶ 7). Moreover, to the extent any previous "action taken herein so far on behalf of Total Recall Technologies" has not already been authorized by the partnership—and Total Recall contends that they have been—they are now so ratified by Igra on behalf of Total Recall. (Igra Decl., ¶ 8). Further, Total Recall, through Igra, "consent[s] to [the] continued prosecution of the case by the law firm of Quinn Emanuel Urquhart & Sullivan, LLP." (Dkt. No. 179 at 14-15; Igra Decl., ¶ 8).

In its June 16 Order, the Court required "concurrence" between the two partners because the Court interpreted Paragraph 19 of the partnership agreement to require that the authoritative voice must be conditioned on agreement between the partners. Dkt. 179 at 14. Now that Seidl has withdrawn, the single remaining partner of Total Recall is imbued with all the powers of the partnership and there is no need for concurrence between the partners as the case proceeds.

1

2

**2.    The Court's Concerns About Seidl's Ratification Are Unfounded And To The Extent Required, Seidl Has Already Ratified The California Lawsuit As A Matter Of Agency Law**

3

To the extent that the Court remains concerned about ratification by Seidl, such ratification

4

occurred as a matter of law long before the Hawaii Action was settled.  Quite apart from the

5

question of "agreement" that was addressed in the Court's summary judgment Order, the concept

6

of "ratification" is derived from California agency law where a principal may after-the-fact ratify

7

the actions of an agent taken on behalf of the principal.  Ratification, however, does not have to be

8

an affirmative act:  instead, inaction in the face of notice constitutes ratification under California

9

law.

10

Under California agency law, "[a] ratification can be made only in the manner that would

11

have been necessary to confer an original authority for the act ratified, or where an oral

12

authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof."

13

Cal. Civ. Code § 2310.  A principal may be held to ratify the acts of an agent "when the principal

14

knows the agent holds himself or herself out as clothed with certain authority and remains silent."

15

*Ample Bright Dev., Ltd. v. Comis Int'l*, 913 F. Supp. 2d 925, 934, n. 52 (C.D. Cal. 2012) (quoting

16

*NORCAL Mutual Ins. Co. v. Newton,* 84 Cal.App.4th 64, 78, 100 Cal.Rptr.2d 683 (2001)).  The

17

effect of ratification is that the authority given to the purported agent relates back to the time when

18

he performed the act.  *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972).[2]

19

Seidl knew that Igra directed the filing of the California Lawsuit against Defendants.  June

20

16 Order at 7 (detailing Seidl's communications with Palmer Luckey in May 2015).  At no time,

21

however, did Seidl intervene in the California Lawsuit or seek to stop it.  (Igra. Supp. Decl., ¶ 4).

22

Furthermore, in the Hawaii Action filed by Igra, Seidl denied that he had asserted a veto and

23

denied that he had not authorized the California Lawsuit.  Dkt. No. 175-15, ¶¶ 20, 25.  Moreover,

24

he never filed counterclaims seeking to halt the California Lawsuit nor did he pursue any motion

25

26

27

28

2    Hawaii state law is consistent with that of California on this point.  For example, the Hawaii Supreme Court cited Section 94 of Restatement (second) of Agency ("An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it") to hold that a party's failure to object to the terms of a settlement agreement for three years was a ratification of his attorney's ostensibly unauthorized act.  *Hawaii Hous. Auth. v. Uyehara*, 77 Haw. 144, 151 (1994).

practice in an effort to halt the California Lawsuit.  (Igra Supp. Decl., ¶¶ 4-5).[3]  Seidl—as this

Court repeatedly noted—retained the benefits of this litigation filed in the name of the partnership

with full notice and knowledge of all material facts.  Such inaction constitutes ratification.  Several

decisions are instructive.

In *Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997), the court held that one of the only two

shareholders in a closely held corporation ratified the other shareholder's unauthorized filing of a

bankruptcy petition on behalf of the corporation by retaining the potential benefits of the

proceedings while taking no steps to withdraw the corporation from the proceedings for nearly

two years.  108 F.3d at 40.

In *Faulkner v. Brooks*, 125 Cal. App. 137 (Cal. Ct. App. 1932), the defendant's attorney

stipulated that judgment would be entered against the defendant, and in exchange the defendant

would be able to keep possession of the plaintiff's property for two months.  *Id.* at 139.  Two days

before the two month period expired, the defendant appealed the entry of judgment against him,

arguing that he had not given the attorney authority to stipulate to the judgment. *Id.* at 140.  The

Court of Appeal upheld the trial court's finding that after the judgment had been entered the

defendant had ratified his attorney's action by acquiring notice of the judgment and thereafter

keeping possession of the property. *Id.*

Here, Seidl took no affirmative action to stop Igra or Total Recall even though he was fully

aware of the California Lawsuit.  Accordingly, because Seidl retained potential benefits from the

filing of the California Lawsuit yet did nothing to stop it, Seidl ratified the California Lawsuit

under Cal. Civ. Code § 2310.

## II.   DEFENDANTS OBJECTIONS TO THE SETTLEMENT AGREEMENT AND LIFTING THE STAY HAVE NO MERIT

Defendants' actions in this long-pending case—from discovery delays (Dkt. No. 61) to

repeated motions to dismiss—demonstrate a desire to avoid the merits at all costs and to delay trial

---

[3]  Such a counterclaim would have been compulsory under Hawaii law.  *See* Haw. R. Civ. P.
13; *Bailey v. State*, 57 Haw. 144, 148, 552 P.2d 365, 369 (1976); *Marks v. Marks*, 51 Haw. 548,
562, 465 P.2d 996, 1004 (1970) (denying leave to amend to add compulsory counterclaim due to
inexcusable delay).

1   for as long as possible. By taking Total Recall's prototype and commercializing it for their own

2   benefit while Luckey was under contract with Total Recall, Defendants have obtained an

3   undeserved windfall.  Defendants' present complaints about the Settlement Agreement once again

4   exhibit their effort to avoid any reckoning for Luckey's breach of contract and fraud.

**A.      IP Quitclaim Assignment Attached To Settlement Does Not Deprive Total Recall Of Any Authority To Proceed In This California Contract Action**

In their Response to Order to Show Cause, Defendants argue that Total Recall's and Igra's

"Quitclaim Assignment of IP Rights" to Seidl somehow deprives Total Recall of the authority to

continue prosecuting the California Lawsuit.  (Dkt. No. 185 at 6-7).  Not so.  The IP Quitclaim

Assignment (together with the Copyright Assignment and Patent Assignment) are exhibits to the

Settlement Agreement in order to effectuate the transfer of Total Recall's camera business and

patent to Seidl.  (Ex. A).  The Settlement Agreement states unambiguously that "any and all rights

or other interests that relate to the California Lawsuit shall remain the property of [Total Recall],"

and that "Seidl shall have no right to control any aspect of the California Lawsuit."  (Ex. A at

TR00010003).  The California Lawsuit and all related interests therefore stayed with Total Recall,

while the ongoing camera business went to Seidl.  The quitclaim legal documents simply ensure

that Seidl has all the rights to pursue the business.

Were Defendants' interpretation of the Settlement Agreement correct, it would convey to

Seidl contractual rights that are the subject of the California Lawsuit while simultaneously

depriving him of the right to enforce them.  Not only does this contradict the express terms of the

Settlement Agreement, it would also yield an absurd result not permitted by law.  *See Reading*

*Int'l v. Malulani Grp., Ltd.*, 16 F. Supp. 3d 1185, 1196 (D. Haw. 2014) (rejecting a proposed

construction of a term in a settlement agreement that would lead to absurd results and finding

instead that the term must be construed in the context of the settlement as a whole).

**B.      Defendants Cannot Rely On The Statute Of Limitations**

In their January 5, 2017 response to the Court's previous Order to Show Cause (Dkt. No.

180), Defendants raised **for the first time in this litigation** a statute of limitations defense to

Total Recall's remaining claims.  (Dkt. No. 185 at 3, n.1). The Defendants request another special summary judgment process to address this defense which has been waived and has no merit.

### 1.     Defendants Have Waived A Statute Of Limitations Defense

At the eleventh hour, after the close of fact discovery and after several rounds of motions, Defendants now, for the first time, argue that Total Recall's claims are time-barred.  However, "[t]he failure to properly plead the statute of limitations waives the defense."  *Martin v. Van Bergen*, 209 Cal. App. 4th 84, 91 (2012) (citing *Mysel v. Gross*, 70 Cal. App. 3d Supp. 10, 13 (App. Dep't Super Ct. 1977)).

Defendants have **never** pled that the statute of limitations applies.  Neither their April 14, 2016 Answer (Dkt. No. 127) nor their April 19, 2016 Amended Answer (Dkt. No. 129) contains any affirmative defense referring to the statue of limitations.  Similarly, Defendants' responses to Total Recall's contention interrogatories seeking the basis for any denial of the allegations in Total Recall's Complaint contain no reference to the statute of limitations.  (Ex. B, C).

Defendants have briefed challenges to Total Recall's claims no less than **seven** times to date.  *See* Dkt. Nos. 29 (Motion to Dismiss), 48 (Motion to Dismiss), 70 (Opposition to Motion to Amend), 79 (Request for Stay), 86 (Opposition to Motion to Amend), 110 (Request for Stay), 135 (Motion for Summary Judgment).  Finally, while Defendants may now contend that Total Recall's lack of authority and capacity provide the basis for a statute of limitations defense (Dkt. No. 185 at 3), Defendants did not brief this argument in their motion for summary judgment (Dkt. Nos. 135, 158).  This is significant because Defendants expressly requested leave "to file an early summary judgment motion directed to [Total Recall's] authority to maintain this suit."  (Dkt. No. 110 at 7). As this Court has already warned Defendants at least once before, they "have sat on [their] rights" and should have raised this defense "a long time ago."  (March 9, 2016 Hear.Tr. at 5:12, 6:20-24). It is now waived. *Schaeffer v. Gregory Vill. Partners, L.P.*, 105 F. Supp. 3d 951, 962 (N.D. Cal. 2015) (citing *Mysel v. Gross*, 70 Cal. App. 3d Supp. 10 (Cal. App. Dep't Super. Ct. 1977)).

**C.    Even If Not Waived, No Statute Of Limitations Defense Applies.**

Even if the defense is not waived, the cases cited in Defendants' January 5, 2017 filing (Dkt. No. 185) in which the statute was not tolled concern a wholly different circumstance:  the California Franchise Tax Board using its statutory authority to suspend a corporation for failing to pay its taxes, rendering it a legal non-entity.  *See V & P Trading Co., Inc. v. United Charter, LLC*, 212 Cal. App. 4th (2012); *Welco Constr., Inc. v. Modulux*, Inc., 47 Cal. App. 3d 69 (1975).  In those particular cases, because the corporations were not legally recognized entities, their purported filing of lawsuits did not toll the statutes of limitation.  And, as one of the cases Defendants cite reflects, the statute of limitations in the tax cases is not tolled by the filing of a complaint because the tax "statutes prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern in order that some pressure will be brought to bear to force the payment of taxes"—a policy which is not applicable here at all. *See Am. Alternative Energy Partners II v. Windridge, Inc.*, 42 Cal. App. 4th 551 (1996) (statute tolled by filing of complaint even though purported limited partnership had not filed its partnership certificate and was therefore defectively formed).

The Franchise Tax Board line of caselaw is a far cry from the case before this Court.  Total Recall is a partnership, a legal entity with the right to enter contracts and file lawsuits.   Here, there can be no question that Total Recall has capacity to sue.  It is hornbook law that a partnership may sue or be sued in the name of the partnership.  Cal. Civ. Proc. Code § 369.5.   And this Court has recognized that the default rule is that one partner can typically act on behalf of the partnership. Dkt. No. 179 at 10.  Thus, when Igra caused the Complaint to be filed on behalf of Total Recall the statute of limitations was tolled.  *See* Cal. Civ. Proc. Code § 350 (The statute of limitations stops running when "[a]n action is commenced."); *Breslin v. City & Cty. of San Francisco*, 146 Cal. App. 4th 1064, n. 18 (2007) ("An action is commenced for statute of limitations purposes when a complaint is filed.").[4]

---

[4] Finally, Seidl's ratification through inaction occurred well before any statute of limitations period could conceivably have run.  As described above, where a principal has notice of a lawsuit, if the principal does nothing and stands to gain from the lawsuit, that inaction is deemed ratification of the agent's action.  *See supra* Section 1.C.2.

1    Accordingly, the statute of limitations is not a defense in this case and certainly does not

2 warrant a separate special summary judgment proceeding.

3                                    **<u>CONCLUSION</u>**

4    For the foregoing reasons, Total Recall respectfully requests that the Court lift the current

5 stay such that the instant action may proceed promptly to trial.

6

7 DATED:  January 26, 2017              QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
8

9

10                                     By_____*/s/ Robert W. Stone*_____
                                          Robert W. Stone
11
                                       Attorneys for Plaintiff TOTAL RECALL
12                                     TECHNOLOGIES

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                              -17              Case No. 15-cv-02281-WHA
                              TOTAL RECALL'S MOTION FOR RELIEF FROM JUNE 16, ORDER (DKT. NO. 179)