COOLEY LLP
MARK LAMBERT (197410) (mlambert@cooley.com)
ANGELA DUNNING (212047) (adunning@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:      (650) 843-5000
Facsimile:      (650) 849-7400

COOLEY LLP
MICHAEL RHODES (116127) (rhodesmg@cooley.com)
BENJAMIN KLEINE (257225) (bkleine@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:      (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendants
OCULUS VR, LLC and PALMER LUCKEY

DURIE TANGRI LLP
RAGESH TANGRI (159477) (rtangri@durietangri.com)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:      (415) 362-6666
Facsimile:      (415) 236-6300

Attorneys for Defendant
PALMER LUCKEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>PALMER LUCKEY & OCULUS VR, LLC,<br>as successor-in-interest to OCULUS VR,<br>INC.,<br><br>Defendants. | Case No.  15-cv-02281 (WHA)<br><br>**DEFENDANTS' OPPOSITION TO TRT'S MOTION FOR RELIEF FROM JUNE 16, 2016 ORDER GRANTING MOTION FOR SUMMARY JUDGMENT SUBJECT TO STATED CONDITIONS**<br><br>Date:         March 8, 2017<br>Time:         8:00 a.m.<br>Courtroom:  8, 19th Floor<br>Judge:        Hon. William H. Alsup<br>Trial Date:   Not Yet Set<br><br>Complaint Filed:  May 20, 2015 |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY.................................. 2

      A.   Igra Filed This Suit Over Seidl's Express Objection ................................. 2

      B.   Seidl Has Steadfastly Refused To Ratify This Action Since It Was Filed ............ 4

      C.   Defendants Move for Summary Judgment, and the Court Stays the Case
           Citing Concerns About Seidl's Refusal To Ratify the Action ................................ 5

      D.   The Court Grants Summary Judgment To Defendants ......................................... 7

      E.   Igra and Seidl Settle the Hawaii Action and Seidl Withdraws from TRT
           Without Ratifying This Action.................................................................................. 8

      F.   The Court Issues a Third Order To Show Cause .................................................. 11

III.  THE COURT SHOULD DISMISS THIS LAWSUIT ONCE AND FOR ALL ............. 12

      A.   TRT Failed To Comply With the Court's Order.................................................... 12

           1.   TRT failed to provide a sworn declaration from Seidl authorizing or
                ratifying this action or consenting to Quinn's representation ................... 12

           2.   Ratification cannot be inferred from Seidl's pre-settlement conduct ....... 13

      B.   Allowing This Case To Proceed on the Basis of the Hawaii Settlement
           Would Severely Prejudice Defendants.................................................................. 16

           1.   The Settlement Agreement confirms all of the Court's suspicions
                about what Seidl and Igra have been up to ................................................ 16

           2.   The Settlement Agreement subverts the fair administration of
                justice ........................................................................................................ 19

      C.   TRT's Claims Are Time-Barred .......................................................................... 22

IV.   CONCLUSION...................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado Cmty. Hosp. v. Super. Ct.*,
   173 Cal. App. 3d 476 (1985)..................................................................................17

*American Alternative Energy Partners II v. Windridge, Inc.*,
   42 Cal. App. 4th 551 (1996) ...................................................................................25

*Ctr. for Self-Improvement & Cmty. Dev. v. Lennar Corp.*,
   173 Cal. App. 4th 1543 (2009) ...............................................................................24

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987)...................................................................................23

*Delbon Radiology v. Turlock Diagnostic Center*,
   839 F. Supp. 1388 (E.D. Cal. 1993).........................................................................18

*Faulkner v. Brooks*,
   125 Cal. App. 137 (1932).........................................................................................16

*Gates v. Bank of Am. Nat. Trust & Sav. Ass'n*,
   120 Cal. App. 2d 571 (1953)..............................................................................15, 16

*Hager v. Gibson*,
   108 F.3d 35 (4th Cir. 1997)......................................................................................16

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   Nos. 09md2087, 09cv1088, 2014 WL 815394 (S.D. Cal. Mar. 3, 2014) .................17

*Lexington Ins. Co. v. Sentry Select Ins. Co.*,
   No. 1:08-cv-1539, 2009 WL 3226713 (E.D. Cal. Oct. 5, 2009)...............................23

*McKeague Davis, Adm'x v. Freitas*,
   40 Haw. 108 (1953) .................................................................................................17

*Miernicki v. Duluth Curling Club*,
   699 N.W.2d 787 (Minn. Ct. App. 2005) ..................................................................25

*Patel v. 7-Eleven, Inc.*,
   No. 14-00519, 2015 WL 9701133 (C.D. Cal. Apr. 14, 2015) ..................................21

*Playboy Enters., Inc. v. Dumas*,
   960 F. Supp. 710 (S.D.N.Y. 1997), aff'd, 159 F.3d 1347 (2d Cir. 1998)................14

*Rakestraw v. Rodrigues*,
   8 Cal. 3d 67 (1972) .................................................................................................14

**Table of Contents**
(continued)

Page

*Smith v. Superior Court*,
41 Cal. App. 4th 1014 (1996) ................................................................................. 20

*Smith v. United States*,
No. C 06-06103 WHA, 2007 WL 2554142 (N.D. Cal. Sept. 4, 2007) .............................. 23, 24

*State of N.Y. v. Solvent Chem. Co., Inc.*,
166 F.R.D. 284 (W.D.N.Y. 1996) ............................................................................ 21

*Synergetics, Inc. v. Hurst*,
No. 4:04CV318, 2007 WL 2422871 (E.D. Mo. Aug. 21 2007) ..................................... 20

*Ty Inc. v. Softbelly's, Inc.*,
353 F.3d 528 (7th Cir. 2003) .......................................................................... 19, 22

*V & P Trading Co., Inc. v. United Charter, LLC*,
212 Cal. App. 4th 126 (2012) ........................................................................ 22, 24

*Welco Constr., Inc. v. Modulux, Inc.*,
47 Cal. App. 3d 69 (1975) ................................................................................ 22

*Williamson v. Superior Court*,
21 Cal. 3d 829 (1978) ...................................................................................... 19

*Wyndham Vacation Fairfield Resorts, Inc. v. Architects Haw. Ltd., Grp. Pac. (Haw.), Inc.*,
703 F. Supp. 2d 1051 (D. Haw. 2010) .................................................................... 14

**Statutes**

Cal. Penal Code § 137(a) ............................................................................... 19

Haw. Rev. Stat. § 710-1070 ............................................................................. 19

U.S. Code § 1512(b)(1) ................................................................................... 19

**Other Authorities**

Cal. Civ. R. 11-4(a) ........................................................................................ 20

Cal. R. Prof. Conduct 5-310 ............................................................................. 21

Fed. R. Civ. P. 45(c) ....................................................................................... 19

MODEL RULES PROF'L CONDUCT r. 3.4(a) (AM. BAR ASS'N 2016) ............................... 20

## I.   INTRODUCTION

On June 16, 2016, the Court granted summary judgment to Defendants on the ground that Ron Igra "lacked authority to cause TRT to commence or continue this litigation" (Dkt. 179 ("Order") at 10:18), and that TRT therefore lacked capacity to file and maintain it (*id.* at 10:19-23; 11:3-6; 14:12-19). At that time, the dispute between Igra and TRT's other partner, Tom Seidl, over Seidl's refusal to consent to this suit was also the subject of an earlier-filed Hawaii action that had been scheduled for trial in December 2016. Accordingly, the Court stayed the effect of its Order to afford TRT an opportunity to cure the authority and capacity defect in one of two ways. First, TRT could come forward with sworn declarations from both Seidl and Igra "affirmatively and without qualification stating that both authorize and agree to the maintenance of this civil action . . . , that both ratify all actions taken herein so far . . . , and that both consent to continued prosecution of the case by Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn")." (*Id.*) Alternatively, TRT could present a final order from the Hawaii court to the same legal effect. (*Id.*) TRT has failed to do either of those things, and the case should now be dismissed.

TRT concedes in its Motion for Relief From the Court's June 16, 2016 Order (Dkt. 204 ("Motion")) that it has not complied and cannot comply with the Order. TRT has not complied because, as the Court previously observed, Seidl has never provided the required sworn ratification. (Dkt. 196 at 5:4-9 ("There is no ratification by Seidl. . . . I said you had to have ratification. You don't. He didn't stand behind a thing.").)[1] TRT cannot comply because Seidl withdrew from the TRT partnership as of October 14, 2016. (Mot. at 11:7-8 (Seidl "cannot ratify any actions because he is no longer a partner: he has withdrawn from the partnership").) As a result, this suit remains, as it always has been, unauthorized.

Unable or unwilling to comply with the Court's requirements, Igra and TRT instead attempted to devise a workaround that, in reality, does not change anything. On November 28, 2016, Igra entered into a Settlement Agreement with Seidl (effective as of October 14, 2016), that purports to give Igra (via TRT) sole control over this suit. However, the suit remains unauthorized

---

[1] Unless otherwise stated, all emphasis is added and all internal citations and punctuation are omitted.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

1   because the Settlement Agreement does not ratify anything that TRT has done in this action to

2   date. The Settlement Agreement also gives Seidl a gambler's stake in the outcome (he takes thirty

3   percent of anything Igra might win), while affording him broad contractual indemnity from Igra

4   for any sanctions or costs in this matter. And, in exchange for a cut of any future profits, Igra has

5   assigned to Seidl all of TRT's IP and assets (including the right to sue for past violations of the

6   Seidl/Luckey Agreement at issue in this case), thereby subjecting Defendants to the risk of

7   multiple lawsuits on the identical claims. Thus, the Settlement Agreement is merely the latest

8   "machination" to allow Seidl and Igra to have it "both ways." (Dkt. 173 at 4:21, 8:20-25.)

9       Just as troubling, the Settlement Agreement is calculated to deprive Defendants of a fair

10  trial. It precludes Seidl from communicating or cooperating with Defendants, while requiring him

11  to cooperate with TRT. Because Seidl resides in Hawaii, these provisions ensure that Igra alone

12  can access the only percipient witness from TRT. The Settlement Agreement also dictates what

13  Seidl can and cannot say at trial should TRT decide to invoke its right to "cooperation" there.

14  Numerous courts have found that agreements like this violate fundamental principles of justice

15  and public policy. TRT cannot be permitted to proceed with this case on such a footing.

16      Finally, dismissal is appropriate because TRT's claims are untimely. Lawsuits filed

17  without authority or capacity do not toll the statute of limitations. Moreover, even assuming for

18  the sake of argument that the Settlement Agreement constituted ratification (a conclusion

19  Defendants vehemently dispute), TRT's capacity defect was cured too late. The statute of

20  limitations ran on the last of TRT's claims no later than September 7, 2016, but the Settlement

21  Agreement and Seidl's declaration were not executed until November 28, 2016. Having pursued

22  this action for nearly two years without timely securing the authority to do so, TRT's claims

23  should now be dismissed.

24  **II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

25      **A.    Igra Filed This Suit Over Seidl's Express Objection**

26      Igra filed this lawsuit in the name of the TRT partnership on May 20, 2015. (Dkt. 1.) The

27  SAC alleges that Seidl entered into a written "Nondisclosure, exclusivity and payments

28  agreement" (the "Seidl/Luckey Agreement" or "Agreement") with Luckey on or about August 1,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

2011. (Dkt. 118 ("SAC") ¶ 18.) Although Igra and TRT are nowhere mentioned in the Agreement, the SAC alleges that Seidl entered it "on behalf of TRT." (*Id.*) The SAC further alleges that, pursuant to the Agreement, Luckey built and sent to Seidl in August 2011 a prototype virtual reality head mounted display (the "Seidl HMD"). (*Id.* ¶ 20.) TRT claims that Luckey thereafter breached the Agreement and that Luckey and Oculus committed constructive fraud and unfair competition when, without informing Seidl or TRT, Luckey disclosed unspecified details concerning the Seidl HMD to third parties and undertook efforts "to design and commercialize the [Seidl HMD] for himself and Oculus rather than the Partnership." (*Id.* ¶ 22.)[2]

Although the TRT Partnership Agreement expressly required the agreement of both Seidl and Igra prior to filing a lawsuit (Order at 10:12-18), Igra and Quinn filed this action in TRT's name without Seidl's consent and against his will (*id.* at 7:14–9:23). In fact, Seidl repeatedly voiced his opposition to the suit, citing both business considerations and his belief that any claims TRT might assert would be baseless:

- In December 2013, after Oculus announced it had raised substantial venture financing, Seidl told Igra: "DO NOT CONTACT [Luckey] OR START ANY LEGAL ACTION WITHOUT TALKING TO ME FIRST." (*Id.* at 3:4-5 (capitals in original).)

- In March 2014, after Facebook announced it had agreed to acquire Oculus, Seidl rejected Igra's "get rich" scheme, stating: "my views on taking [P]almer to court are the same as before that it makes bad financial sense for you and me." (*Id.* at 3:17-21.)

- In July 2014, when Igra demanded that Seidl "withdraw [his] veto" to a lawsuit so that the two could "get rich from a damage settlement," Seidl again refused, questioning what basis Igra might have to bring suit: "<u>My thoughts on the vito [sic] have not changed</u>. . . . <u>You said Palmer breached the contract, where was that?  You said Palmer stole our ideas, which ideas were those?</u>" (*Id.* at 4:1-12.)

- In August 2014, Seidl again rejected Igra's proposed lawsuit as baseless and imprudent: "You carry on . . . threatening Palmer you will burn the one advantage we

[2] The crux of TRT's case is that Luckey and Oculus allegedly stole the design for the Seidl HMD and sold it as the Oculus Rift. (*See* SAC ¶ 22; Mot. at 1, 4, 14.) That allegation is false. Neither the single-panel Seidl HMD nor the multi-panel prototype Luckey subsequently built using parts from the first one (sent to Seidl in May 2012) bear any resemblance to the product Luckey and Oculus later designed and sold as the Rift. In any event, in February 2012, Seidl flatly rejected the design of the Seidl HMD that TRT now claims as its own, stating: a "single panel HMD is no use to me." (Dkt. 177-7 at TR00000919.) Thus, this case is not only unauthorized; it is also based on a false premise (as Seidl has repeatedly acknowledged).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

have . . . , that he feels he owes us on a moral level.  <u>Because he does not owe us on a legal level.</u>  Don't go messing things up. (*Id.* at 4:15-17.)

- In December 2014, Igra sued Seidl in Hawaii,[3] asserting claims for breach of fiduciary duty, breach of the TRT Partnership Agreement, and wrongful appropriation of partnership opportunity based on allegations that Seidl had vetoed legal action by TRT against Luckey and that Seidl "<u>has and continues to refuse to authorize IGRA, or any other person or entity, to pursue to the Partnership's legal claims.</u>" (*Id.* at 17-26; Dkt. 175-11 ¶¶ 31, 37, 42–58.)[4]

- In February 2015, in Seidl's last word to Igra about this lawsuit before it was filed, Seidl made very clear that he did not consent: "Again.  <u>Do not take any legal action against [P]almer.</u>" (Order at 9:17-19.)

In sum, as the Court has already determined, it is "undisputed [] that this lawsuit was filed without the mutual authorization required" by the TRT Partnership Agreement.  (*Id.* at 9:24-25.)

## B.     Seidl Has Steadfastly Refused To Ratify This Action Since It Was Filed

After Igra unilaterally filed this action on TRT's behalf, Seidl maintained his opposition, refusing to participate in the suit or ratify any of the actions taken by Igra or Quinn. For instance, on May 22, 2015, just two days after Igra and his counsel filed suit, Seidl informed Luckey that the action was filed without his consent: "just seen what Igra filed.  Was without my knowledge or permision [sic] . . . .  <u>What he [Igra] has done seems to be illegal to me.</u> I have not signed anything or let him take action against you." (*Id.* at 7:15-18.) Thereafter, at his deposition in April 2016, Seidl testified that he had never agreed that TRT could file a complaint against Luckey and Oculus, that he continued to believe the lawsuit was illegal under the TRT Partnership Agreement, and that he does not consider Quinn to be his counsel. (*Id.* at 7:18-20; *see also* Dkt. 175-3 at 21:8-10, 22:20-24, 25:2-11, 28:22–30:25, 87:25–88:4.) And just this past fall, only days prior to his withdrawal from the partnership, Seidl reiterated his opposition to this lawsuit in a settlement conference statement he filed in the Hawaii action on October 7, 2016. (Declaration of Mark Lambert in Support of Defendants' Opposition ("Lambert Decl.") ¶ 2 & Ex. A at 4.) Among other

---

[3] Igra previously sued Seidl in Hawaii in April 2014, but dismissed the case when Seidl turned over documents relating to his Agreement with Luckey. (*Id.* at 3:22-25.)

[4] Although trial in Hawaii was originally scheduled to occur in May 2016, Igra and Seidl stipulated to postpone the trial until December 2016—after the trial in this action which was then scheduled for September 2016. (Order at 4:23-26.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

things, the statement: (a) set forth Seidl's "concerns about the likelihood of success of a case against Mr. Luckey"; (b) charged that Igra retained Quinn to file this lawsuit in May 2015 "without Mr. Seidl's authorization"; and (c) reaffirmed Seidl's position that he "had reasonable business reasons for not agreeing to file suit against Mr. Luckey." (*Id.*)

## C.    Defendants Move for Summary Judgment, and the Court Stays the Case Citing Concerns About Seidl's Refusal To Ratify the Action

On March 15, 2016, the Court issued an order granting Defendants permission to file a summary judgment motion directed to TRT's lack of authority to maintain this suit, and required that such motion be filed within two weeks after Igra's April 8, 2016 deposition. (Dkt. 112.)

On April 21, 2016, the day before the summary judgment motion was due, the Court issued an Order To Show Cause re Stay ("First OSC"), citing "concerns that Total Recall lacks standing to assert any claims in this case" in light of Seidl's refusal to agree to pursue this action. (Dkt. 132 at 1.) More specifically, the Court found it "unacceptable" that Seidl might retain the ability to share in a potential recovery, while refusing to participate in the suit and seeking to insulate himself from a potential costs or sanctions award:

> It seems clear to the Court that Seidl has not approved our pending litigation and is waiting to see how it plays out. If Total Recall's case is a winner, then we can likely expect Seidl to ratify our lawsuit and join in. Conversely, if the instant lawsuit turns out to be a loser, then Seidl can avoid costs, Rule 11 sanctions, and any other sanctions that may be imposed on the losing party by saying he never agreed to this action.

(*Id.* at 2:3-7.) Thus, the Court ordered the parties to show cause why the case should not be stayed "until such time as Seidl files herein <u>an executed ratification of the complaint and all actions taken by counsel herein (as if approved from the outset)</u> and <u>acknowledges his potential liability for sanctions and costs</u> awarded in this lawsuit as a general partner of [TRT]." (*Id.* at 2:14-17.)

On April 22, 2016, Defendants filed their motion for summary judgment. (Dkts. 174, 175.) The motion sought dismissal of this action on the ground that TRT lacked authority to file or maintain it insofar as the TRT Partnership Agreement required the unanimous consent of its partners to file a lawsuit, and Seidl had never consented. (Dkt. 174 at 1:25–2:11.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

On April 27, 2016, TRT filed a response to the First OSC, conceding that it had "actively sought but thus far [] been unable to obtain a declaration from Mr. Seidl to provide to this Court." (Dkt. 147 at 2:11-14.) Accordingly, on May 3, 2016, the Court entered an order staying the case except for the pending summary judgment motion and related discovery disputes. (Dkt. 149.)

TRT opposed Defendants' summary judgment motion on May 6, 2016. (Dkt. 153.) TRT conceded that "the [TRT] Partnership Agreement controls" (*id.* at 17:10-11), but contended that Seidl had, in fact, agreed to this lawsuit, as required by the Partnership Agreement. (*Id.* at 6–9, 13–17.) TRT argued that Seidl's agreement could be inferred from denials in his answer to Igra's second Hawaii complaint, and from the fact that Seidl never filed any counterclaims in Hawaii or otherwise sought to enjoin this lawsuit. (*Id.* at 6:24-26, 9:9-10, 15:5-21.) TRT also argued Defendants lacked standing to challenge TRT's authority under the Partnership Agreement. (*Id.* at 10–12). Finally, TRT urged this Court not to rule on the authority question at all, asserting: to the extent there is any "dispute over whether or not [TRT] has the authority to sue, th[is] case should be stayed until such factual issues are decided in the Hawai'i state court." (*Id.* at 13:16-18.) That is, after pushing out the Hawaii trial to December 2016 so as to avoid an adverse ruling in Hawaii in advance of trial here, Igra reversed his position in a gambit to avoid a ruling on TRT's lack of authority by asserting that the issue should instead be resolved in Hawaii. (*Id.*)

On June 1, 2016, the Court held oral argument on the summary judgment motion, reiterating its concerns about the gamesmanship being perpetrated by TRT's partners:

> I [ ] am highly suspicious of the -- the underlying machinations going on in the Hawai'i lawsuit . . . somebody over there is just waiting to see how this case comes out, and then they will join in and collect their paycheck. If it wins. If it doesn't, then they are immunized . . . I feel like I got sold a bill of goods on the May trial date in Hawai'i after -- soon as that got close, then [Igra and Seidl] conveniently moved it to December. By stipulation.

(Dkt. 173 at 4:20–5:3.) Indeed, as the Court explained: "[Seidl has] got it both ways . . . He is going to say if the case wins, he goes to the pay window. If it doesn't win, then he says: I have never approved this case; I always said no to this case." (*Id.* at 8:20-25; *see also id.* at 15:8-16 (if TRT loses, Seidl could simply say, "[s]crew you, I never agreed to this lawsuit," and "then the Defendants would have no remedy")).)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

**D.    The Court Grants Summary Judgment To Defendants**

On June 16, 2016, the Court issued its Order granting summary judgment for Defendants. The Court began by detailing the facts of the "running dispute . . . between Seidl and Igra over whether to sue Luckey," finding that "Igra wanted to sue. Seidl did not." (Order at 2:22–7:12.) The Court rejected TRT's assertion that Seidl had eventually agreed to the suit, concluding based on the "undisputed facts" that Seidl had never withdrawn his objection. (*Id.* at 9:22-25 ("Seidl maintains his objection today."); *see also id.* at 8:15-16 ("The evidence is clear: Seidl did not agree to commence this action and maintains his objection under oath.").) The Court also rejected TRT's standing argument, holding: "[c]ourts and parties being sued have a legitimate need to determine if a suit has been properly authorized by a plaintiff entity, and inquiry into such authority (or not) is proper." (*Id.* at 12:15-16.) The Court found it "untenable" that both partners could have the power to act unilaterally for TRT at cross purposes, and noted that TRT must speak with "one authoritative voice." (*Id.* at 14:3-5.) Accordingly, the Court granted summary judgment for Defendants, concluding that "a partner may not unilaterally maintain an action in the name of the partnership where the defense demonstrates (and timely asserts), as here, that the partnership agreement deprives him of authority to do so." (*Id.* at 13:20-22.)

Rather than dismiss the case immediately, the Court ordered that the stay entered in May would continue through December 2016 to allow the Hawaii trial to conclude and to afford TRT a period in which it could seek to cure the authorization defect. (*Id.* at 14:19-21.) The Court then described with specificity the showing TRT would need to make to lift the stay and avoid dismissal:

> [T]he stay . . . will remain in effect (i) until such time as [] Igra and [] Seidl. . . file [] sworn declarations herein affirmatively and without qualification stating that both authorize and agree to the maintenance of this civil action in the name of [TRT] against Palmer Luckey and Oculus VR, LLC, that both ratify all actions taken herein so far on behalf of [TRT], and that both consent to continued prosecution of the case by [Quinn], *or* (ii) until such time as a final order arrives from the Hawaii courts to the same legal effect.

(*Id.* at 14:21–15:2.)

Cooley LLP
Attorneys At Law
Palo Alto

7.

Defendants' Opposition to TRT's Motion
for Relief from June 16, 2016 Order
(Case No. 15-cv-02281 WHA)

**E.    Igra and Seidl Settle the Hawaii Action and Seidl Withdraws from TRT Without Ratifying This Action**

The Hawaii litigation never proceeded to trial. As discussed above, on October 7, 2016, Seidl filed his settlement conference statement, reiterating his opposition to this suit and his reasons for opposing it. (Lambert Decl., Ex. A.) Indeed, he stated his intention to assert counterclaims and additional defenses against Igra. (*Id.* at 4–5.) Thereafter, Igra and Seidl attended a settlement conference in the Hawaii court on October 14, 2016, at which they purportedly reached a settlement in principle. (*See* Mot. at 5:6-7.) The terms of the settlement were apparently reduced to writing on November 28, 2016 (*id.* at 5:7-8), and a stipulated dismissal was filed on December 6, 2016. (Lambert Decl. ¶ 5 & Ex. B.)

Upon learning of the stipulated dismissal, the Court issued a new Order To Show Cause on December 20, 2016. (Dkt. 180 ("Second OSC").)  The Court noted that the effect of its June 16 Order was to be stayed only "until Ron Igra and Thomas Seidl together ratified the actions of [TRT] or until the court in Hawaii issued an order to the same effect." (*Id.*) Thus, the Court ordered the parties to submit sworn declarations why the case should not be dismissed for the reasons stated in the June 16 Order. (*Id.*)

Defense counsel made repeated efforts to obtain basic information about the Igra/Seidl settlement beginning in November 2016, only to be confronted with delay and obfuscation. (Lambert Decl. ¶¶ 3–16.) Counsel for TRT repeatedly represented that they could not provide the documents without consent from Seidl's Hawaii counsel, who, in turn, represented that he could not discuss the settlement or turn over the documents without the consent of TRT. (*Id.*) It was not until January 4, 2017 that TRT produced the first of the settlement documents, and Defendants did not receive a copy of the actual Settlement Agreement until January 5, 2017—the same day Defendants' response to the Second OSC was due. (*Id.* ¶¶ 14–16.)

The settlement documents consist of: (1) a Confidential Settlement and Release Agreement between Igra and Seidl, purportedly effective as of October 14, 2016 ("Settlement Agreement") (Dkt. 204-2 at 2-22) and various exhibits thereto, including (2) a "Quitclaim Assignment of IP Rights" (*id.* at 30–31); (3) a "Quitclaim Assignment of Copyright" (*id.* at 27–

29); (4) a "Patent Assignment" (*id.* at 24–26); and (5) Seidl's "Withdrawal from Partnership" (*id.* at 23). In addition, Igra and Seidl both executed declarations. Igra signed his on January 5, 2017 ("Igra Declaration") (Dkt. 203-2), and Seidl signed his (captioned in Hawaii) on November 28, 2016 ("Seidl Declaration") (Dkt. 203-1).

**Seidl Declaration**: The Seidl Declaration does not authorize this action or ratify anything that TRT or Quinn have filed, or served in discovery, or otherwise done in the case to date. Seidl executed the Declaration on November 28, 2016—more than six weeks *after* his withdrawal from the TRT partnership. (*Id.*) Moreover, unlike the Igra Declaration (which states plainly that Igra "authorize[s] and agree[s] to the maintenance of the California Action," "ratif[ies] all actions taken herein so far on behalf of Total Recall," and "consent[]s to the continued prosecution of this civil action by [Quinn]" (Dkt. 203-2 ¶¶ 7, 8), the Seidl Declaration contains no ratification language and takes no position on TRT and Quinn's authority to maintain this action.  Instead, the Seidl Declaration merely states an "understanding" that whatever rights TRT had before Seidl withdrew (if any) "remain" with TRT, and that <u>going forward</u> he has no right to control or veto this action now that he has withdrawn as a partner:

> Effective October 14, 2016, I withdrew as a partner of [TRT]. Following my withdrawal . . . , it is my understanding that any and all rights or other interests that relate to the [California Lawsuit] remain the property of TRT, and that I have no right to control any aspect of the California Lawsuit and no right to veto [it]. I further understand that Ron Igra intends to continue to pursue the California Lawsuit through TRT and that I have no individual claims related to the California Lawsuit and no right to seek judicial supervision or control over [it].

(Dkt. 203-1.) The Declaration thus confirms that Seidl abandoned the TRT partnership without authorizing or ratifying this lawsuit (or any actions by TRT or Quinn), leaving Igra as sole owner of the same unauthorized lawsuit he has maintained since unlawfully initiating it in 2015.

**Quitclaim Assignment of IP Rights**: This document assigns to Seidl all of TRT's "IP Rights," including "invention rights, patents, . . . licenses, trade secrets and all other intellectual property rights of Assignors [defined as TRT] that were created, used, discovered, conceived, reduced to practice or entered into for or in connection with [TRT]," together with "<u>all rights to sue for past misappropriation, infringement or violation</u>" and "<u>all rights under all contracts</u> and licenses <u>relating to the IP Rights</u>." (Dkt. 204-2 at 30-31.) In other words, Seidl now owns all

Cooley LLP
Attorneys At Law
Palo Alto

9.

Defendants' Opposition to TRT's Motion
for Relief from June 16, 2016 Order
(Case No. 15-cv-02281 WHA)

1   rights under any contract relating to IP allegedly developed by or for TRT (such as the

2   Seidl/Luckey Agreement), as well as the right to sue for past violations thereof. (*Id.*) Thus, while

3   Seidl acknowledges in his Declaration that he no longer has any right to participate in or veto this

4   action, the Quitclaim Assignment of IP Rights purports expressly to afford him the right to bring

5   his own, separate action against Defendants. Together with the Copyright and Patent Assignments,

6   the Quitclaim Assignment of IP Rights has the effect of stripping TRT of all of its assets and

7   transferring them to a third party beyond the Court's sanction power. (*See, e.g.*, Dkt. 173 at

8   10:25–11:7 (TRT's only assets were a patent and patent application that now belong to Seidl).)

9       **Settlement Agreement**: Just as the Court observed, Seidl and Igra remain positioned to

10  have it "both ways." Igra obtains control over this suit even though the Settlement Agreement

11  contains no authorization or ratification by Seidl. (*See* Dkt. 204-2 at 4 ¶ II.B.2.) [5] Conversely,

12  Seidl withdraws from the partnership but still receives a payday if TRT wins: "If TRT obtains a

13  monetary award, a monetary settlement or other recovery as a result of the California Lawsuit,

14  TRT and Igra agree that Seidl shall be paid thirty (30) percent of the monetary award, monetary

15  settlement or other recovery remaining after payment of attorney's fees and litigation costs." (*Id.*

16  ¶ II.B.3.) And, there is no downside to Seidl if TRT loses as he remains a non-party outside the

17  Court's jurisdiction and "Igra [has] agree[d] to defend and indemnify [him] for any fees, costs,

18  monetary penalty, or other liability arising out of the California Lawsuit." (*Id.* at 6 ¶ II.H.1.)

19      In addition to compromising Seidl's integrity as a witness by giving him a stake in TRT's

20  claims, the Settlement Agreement also transforms Seidl into a captive witness for TRT. In

21  exchange for indemnification, TRT's assets, and a cut of any litigation proceeds, Seidl must

22  "reasonably cooperate with counsel for TRT with respect to the California Lawsuit" (*id.* at 4

23  ¶ II.B.2.c), but is prohibited from communicating or cooperating with Defendants:

24          Unless subpoenaed, Seidl will not communicate with or otherwise cooperate with
            counsel for Luckey or Oculus with respect to the California Lawsuit, and will
25          promptly notify counsel for TRT if he is contacted by counsel for Luckey or
            Oculus regarding the California Lawsuit.
26

27  ────────────────

28  [5] Igra also retains a cut of any profits Seidl might earn from TRT's assets and IP. (*See id.* at 4 ¶
    II.C.2.)

Cooley LLP
Attorneys At Law
Palo Alto

10.

Defendants' Opposition to TRT's Motion
for Relief from June 16, 2016 Order
(Case No. 15-cv-02281 WHA)

1   (*Id.* at 3 ¶ II.B.2.d.) As Seidl resides in Hawaii and cannot be subpoenaed to testify at trial, this

2   provision effectively ensures that TRT alone can access the only percipient witness from TRT.

3        Finally, the Settlement Agreement provides that Seidl's trial "testimony will generally be

4   consistent with his testimony in his deposition taken in connection with the California Lawsuit."

5   (*Id.* ¶ II.B.2.b.) Fundamentally, the Settlement Agreement limits what Seidl can testify to if TRT

6   calls him as a trial witness, and contractually binds Seidl not to deviate from his deposition

7   testimony, even if that testimony was or has since become untrue. (*Id.*)

8        **F.**    **The Court Issues a Third Order To Show Cause**

9        On January 5, 2017, the parties submitted a joint status statement (Dkt. 187) and their

10  respective responses to the Second OSC (Dkts. 182 and 185). In support of its response, TRT

11  submitted only the Seidl and Igra Declarations; it did not provide the Settlement Agreement or

12  exhibits thereto. Indeed, TRT's response omitted any mention of Seidl's financial stake in the

13  outcome of this case, or the fact that Seidl now owns all of TRT's assets, including the right to

14  sue on TRT's contracts. (*See* Dkt. 182.) To the contrary, TRT represented that the settlement

15  vests TRT alone with "<u>all</u> rights and interests" in this lawsuit (*id.* at 1:17), which is not true.[6]

16       The Court held a status conference and hearing on the Second OSC on January 12, 2017.

17  During argument, the Court rejected TRT's assertion that the Igra and Seidl Declarations satisfy

18  the conditions articulated in the June 16 Order, stating: "They don't. There is no ratification, for

19  example. <u>There is no ratification by Seidl</u>. . . . I said you had to have ratification. You don't. <u>He</u>

20  <u>didn't stand behind a thing</u>." (Dkt. 196 at 5:4-9.) However, rather than dismissing the case

21  pursuant to the Second OSC, the Court indicated that it would like to make a final decision with

22  the benefit of full briefing and "a sworn record." (*Id.* at 6:3-6.)[7] Later that same day, the Court

23  

---

[6] The Settlement Agreement explicitly grants Seidl continuing "rights" and interest in this lawsuit: "Seidl agrees that, <u>with the exception of the rights set forth in Paragraph II.B.3. of this Agreement [entitling him to 30 percent of the net proceeds]</u>, he has no individual claims related to the California Lawsuit . . . ." (Dkt. 204-2 at 3 ¶ II.B.1.) The Seidl Declaration, by contrast, carefully omits any reference to Seidl's financial interest in this suit: "I further understand that Ron Igra intends to continue to pursue the California Lawsuit through TRT and that I have no individual claims related to the California Lawsuit . . . ." (Dkt. 203-1.)

[7] As Igra is a party opponent and Seidl is contractually barred from communicating with Defendants, no witness with percipient knowledge of the settlement is available to Defendants.

Cooley LLP
Attorneys At Law
Palo Alto

11.

**Defendants' Opposition to TRT's Motion
for Relief from June 16, 2016 Order
(Case No. 15-cv-02281 WHA)**

issued a further Order To Show Cause ("Third OSC") why this case should not be dismissed for failure to comply with the terms of the June 16 Order. (Dkt. 192.)

For the reasons below, Defendants respectfully submit that dismissal is now appropriate.

## III.   THE COURT SHOULD DISMISS THIS LAWSUIT ONCE AND FOR ALL

### A.   TRT Failed To Comply With the Court's Order

#### 1.   TRT failed to provide a sworn declaration from Seidl authorizing or ratifying this action or consenting to Quinn's representation

The Court could not have been clearer in describing what TRT needed to do to resolve its authority defect and thereby avoid dismissal. Absent an order from the Hawaii court, the Order required that both Igra and Seidl "affirmatively and without qualification" do three things under penalty of perjury: (1) "authorize" this suit on a going-forward basis; (2) "ratify all actions taken herein so far [by TRT and Quinn]"; and (3) "consent to [Quinn's] continued prosecution of the case . . . ." (Order at 14:22–15:2; *see also* First OSC at 2:14-16 (instructing TRT to submit "an executed ratification of the complaint and all actions taken by counsel herein (as if approved from the outset)").) The Seidl Declaration does none of these things.

As an initial (and dispositive) matter, the Seidl Declaration says nothing about authorizing or ratifying this action or consenting to Quinn's representation of TRT. Tellingly, the words "authorize," "ratify," and "consent" are nowhere to be found in the document. (Dkt. 203-1.) To the contrary, the Seidl Declaration, like Section II.B.1 of the Settlement Agreement, demonstrates that Seidl takes <u>no</u> responsibility for this unauthorized lawsuit and wants nothing to do with it (unless, of course, TRT prevails and he becomes entitled to a cut of the proceeds). The Court summed it up perfectly at the January 12, 2017 hearing: "<u>There is no ratification by Seidl</u>. . . . <u>He didn't stand behind a thing</u>." (Dkt. 196 at 5:4-9.)

In contrast, the Igra Declaration states unambiguously that Igra "authorize[s] and agree[s] to the maintenance of the California Action," "ratif[ies] all actions taken herein so far on behalf of [TRT]," and "consent[]s to the continued prosecution of this civil action by [Quinn]." (Dkt. 203-2 ¶¶ 7, 8.) TRT and its counsel thus clearly understood what the Order required, but failed to obtain the requisite declaration from Seidl (just as they failed to do in response to the Court's First OSC).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

Equally fatal, the Seidl Declaration begins by acknowledging that Seidl withdrew as a partner of TRT effective October 14, 2016. (Dkt. 203-1.) That is, as of the time he executed his Declaration on November 28, 2016, Seidl was no longer a partner in TRT and had no ability to authorize, ratify, or consent to anything on TRT's behalf. There is no dispute on this point. In fact, TRT's Motion explicitly concedes that Seidl has *never* ratified any aspect of this lawsuit:

> At the hearing on January 12, 2017, this Court asked why Thomas Seidl did not ratify this action. . . . As a threshold matter, he cannot ratify any actions because he is no longer a partner: he has withdrawn from the partnership . . . .

(Mot. at 11:6-8; *see also id.* at 2:12-13 (Seidl "cannot ratify because he is no longer a partner.") Accordingly, it is now readily apparent that TRT has not complied—and cannot comply—with the ratification requirement in the Court's Order.  Dismissal is appropriate on this basis alone.

Undeterred, TRT offers "alternative facts," claiming it has "satisfied—and in many ways, exceeded"—the Court's requirements because TRT has only one partner as a result of the settlement, and therefore speaks with "one authoritative voice." (*See, e.g., id.* at 7:22-24.) TRT fundamentally misunderstands (or intentionally misstates) the issue. The question is not whether a single partner has control over TRT and this action going forward, but whether the case ever was one that Igra and TRT were authorized to pursue. As TRT lacked the requisite consent of both of its partners at the time this suit was filed and Seidl never ratified it as required by the Order, the lawsuit remains unauthorized and TRT has no authority to advance it. Thus, Igra may now be the sole voice of TRT, but that voice remains, as ever, unauthorized with respect to this lawsuit.

### 2. Ratification cannot be inferred from Seidl's pre-settlement conduct

Unable to satisfy the Court's requirement that Seidl expressly ratify this action in a sworn declaration, TRT changes course and argues that ratification should instead be inferred from Seidl's pre-settlement conduct. (*See, e.g.*, Mot. at 12 ("To the extent [] the Court remains concerned about ratification by Seidl, such ratification occurred as a matter of law long before the Hawaii Action was settled.").) More specifically, TRT rehashes its arguments in opposition to summary judgment, contending that ratification can be inferred from Seidl's answer in the Hawaii action, and from the fact that he failed to take affirmative steps to stop this action, such as seeking to intervene or filing counterclaims or a motion in Hawaii. (Mot. at 12-13.) Notably, this

Cooley LLP
Attorneys At Law
Palo Alto

13.

Defendants' Opposition to TRT's Motion
for Relief from June 16, 2016 Order
(Case No. 15-cv-02281 WHA)

argument directly conflicts with TRT's concession—just one page earlier in its brief—that Seidl "did not ratify this action. . . . [and] cannot ratify any actions because he is no longer a partner." (Mot. at 11 (emphasis added).) Moreover, in making this argument, TRT badly misconstrues the law, while improperly seeking to re-litigate issues this Court has already decided.

First, the Order conclusively determined that Seidl did not consent to this action. (*See* Order at 14:14-16 ("Seidl did *not* agree to Igra's launching this lawsuit.").) Moreover, in finding that summary judgment should be entered for Defendants based on TRT's lack of authority, the Court considered and rejected any notion that Seidl had subsequently ratified or affirmed the suit between its filing in May 2015 and entry of the Order on June 16, 2016. (*See id.* at 8:15-16 ("The evidence is clear: Seidl did not agree to commence this action and maintains his objection under oath."), 9:22-23 ("Seidl maintains his objection today.").) Indeed, in arguing that Seidl had agreed to this suit, TRT's opposition to Defendants' summary judgment motion pointed to precisely the same conduct that TRT now claims allows an inference of ratification. (*See* Dkt. 153 at 15:18-20 (asserting that the Court should find Seidl agreed to this suit because he "has filed no counterclaims against Igra in the second Hawai'i Action, has not sought to enjoin Total Recall's lawsuit, and has not sought to intervene in the instant litigation."); *see also id.* at 6:24-26, 9:9-10.) Having already lost this argument, TRT's attempt to advance it again should be rejected—again.

Second, Seidl's conduct as a TRT partner was entirely inconsistent with ratification. "Ratification is the voluntary election by a person to adopt . . . as his own an act which was purportedly done on his behalf by another person . . . ." *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972). Ratification "requires that the purported principal intended to adopt or consent to the unauthorized action." *Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 722 (S.D.N.Y. 1997), aff'd, 159 F.3d 1347 (2d Cir. 1998) (applying California agency law); *see also Wyndham Vacation Fairfield Resorts, Inc. v. Architects Haw. Ltd., Grp. Pac. (Haw.), Inc*., 703 F. Supp. 2d 1051, 1061 (D. Haw. 2010) (Ratification requires "intent by the principal to ratify the act."). Moreover, to infer ratification from conduct, the conduct must be "inconsistent with any reasonable intention on his part, other than that he intended approving and adopting" the act of the agent. *Rakestraw*, 8 Cal. 3d at 73. "Ratification inferred from conduct is not a fact to be

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

1   assumed but is a matter of defense, and the burden of proof rests upon the one who alleges it."

2   *Gates v. Bank of Am. Nat. Trust & Sav. Ass'n*, 120 Cal. App. 2d 571, 576 (1953).

3   　　　In *Gates*, for example, the court held that the plaintiff had not ratified unauthorized drafts

4   on his account where the evidence showed he objected to the withdrawals and demanded that the

5   bank repay him. 120 Cal. App. 2d at 575. The court rejected the bank's argument that ratification

6   could nevertheless be inferred from the fact that the plaintiff subsequently took out a loan from

7   the bank to restore his account to its previous balance and thereafter repaid the loan. *Id.* "[F]ar

8   from lending itself to the single, inexorable interpretation that he intended thereby to sanction the

9   bank's action," his conduct in taking out and repaying the loan was fully consistent with his

10  objecting to the unauthorized withdrawals. *Id.* at 576. Similarly, in *Cook v. Surety Life Ins.*, a

11  Hawaii court found no ratification of a settlement agreement where the plaintiff had been

12  unaware of the settlement when her attorney negotiated it, had never conferred authority on the

13  attorney to settle, and communicated her "refusal to settle . . . within a reasonable time" after

14  learning about the agreement. 79 Haw. 403, 411 (Ct. App. 1995), as amended (Aug. 30, 1995).

15  And, in *Abraham v. S. E. Onorato Garages*, the Hawaii Supreme Court rejected the argument that

16  a garage owner's failure to fire an employee until nearly three months after he improperly took a

17  car from the garage and got in an accident amounted to ratification of the employee's conduct. 50

18  Haw. 628, 635 (1968). The Court reasoned: a principal "cannot be held liable on the ground of

19  ratification unless there is clear evidence of the approval of the wrongful conduct." *Id*.

20  　　　By contrast, in *Heck v. Heck*, the court found ratification of a partner's withdrawal of

21  funds where the other partner knew about the withdrawal, but failed to "object[] to th[e]

22  withdrawal in one form or the other." 63 Cal. App. 2d 470, 474 (1944). It was "his <u>failure to</u>

23  <u>object</u>" that was "construed into his consent." *Id.* (*See also* Mot. at 12:13-14 (noting that

24  ratification may be found "when the principal knows [of the agent's unauthorized act] . . . and

25  <u>remains silent</u>") (citation omitted).)

26  　　　Here, of course, Seidl did not remain silent upon learning of Igra's intent to file this

27  action. Rather, he consistently and vocally objected, both before and after it was filed. He

28  repeatedly told Igra not to sue and affirmatively exercised his veto under the Partnership

Cooley LLP
Attorneys At Law
Palo Alto

15.

Defendants' Opposition to TRT's Motion
for Relief from June 16, 2016 Order
(Case No. 15-cv-02281 WHA)

Agreement. When Igra persisted, Seidl did not relent. Instead, he forced Igra to sue him in Hawaii (not once but twice), maintaining his objection to this action throughout the entire pendency of the Hawaii case, repudiating the action under oath at his deposition in April 2016, refusing TRT's requests for a ratifying declaration after his deposition, and reiterating just days before the Hawaii case settled that he had never authorized TRT to file suit and had good reasons for refusing to do so. (*See* Lambert Decl., Ex. A at 4.) Thus, "[f]ar from lending itself to the single, inexorable interpretation that he intended [] to sanction [this] action," *Gates*, 120 Cal. App. 2d at 576, Seidl's conduct prior to entering the settlement demonstrates only that he staunchly objected to it.[8]

### B.   Allowing This Case To Proceed on the Basis of the Hawaii Settlement Would Severely Prejudice Defendants

#### 1.   The Settlement Agreement confirms all of the Court's suspicions about what Seidl and Igra have been up to

As TRT and its counsel are well aware, the Court has been concerned for some time that Igra and Seidl have been, together or separately, intentionally gaming the system:

> I [ ] am highly suspicious of the -- the underlying machinations going on in the Hawai'i lawsuit . . . somebody over there is just waiting to see how this case comes out, and then they will join in and collect their paycheck. If it wins. If it doesn't, then they are immunized . . . I feel like I got sold a bill of goods on the May trial date in Hawai'i after -- soon as that got close, then [Igra and Seidl] conveniently moved it to December. By stipulation.

(Dkt. 173 at 4:20-5:3; *see also* First OSC at 2:3-7 (Seidl is "waiting to see how [this case] plays out. If Total Recall's case is a winner, then we can likely expect Seidl to ratify our lawsuit and join in. Conversely, if the instant lawsuit turns out to be a loser, then Seidl can avoid costs, Rule 11 sanctions, and any other sanctions that may be imposed on the losing party by saying he never

---

[8] TRT cites two cases for the proposition that ratification should be inferred, but both are easily distinguished. In *Hager v. Gibson*, 108 F.3d 35 (4th Cir. 1997), one of two shareholders in a closely held corporation filed a bankruptcy petition for the corporation without the other's consent. The court found ratification because the other shareholder "raised no objection" to the filing for more than a year after learning about it, all the while accepting the benefit of the automatic stay that protected his equity interest from creditor claims. *Id.* at 37. Similarly, in *Faulkner v. Brooks*, 125 Cal. App. 137, 140 (1932), the court found that defendant had ratified a settlement negotiated by his lawyer where the settlement afforded him the right to occupy plaintiff's land for two months, and he did so for nearly the full two months before objecting that the settlement had been unauthorized.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

agreed to this action.).) Indeed, equity does not permit a party to enjoy the benefits of an act or transaction without also assuming its burdens:

> [W]here the principal knows he would not be entitled to the benefits unless he affirmed the transaction, it would be unfair to allow him both to have his cake and eat it too; that is, allow him both to accept the benefits and also repudiate the transaction."

*Alvarado Cmty. Hosp. v. Super. Ct.*, 173 Cal. App. 3d 476, 481 (1985); *see also McKeague Davis, Adm'x v. Freitas*, 40 Haw. 108, 116 (1953) (One "may not ordinarily take the benefits and reject the burdens, but must either accept them or reject them as a whole.") (citation omitted).

Yet that inequitable result is exactly what Igra and Seidl set out to achieve when they negotiated their "confidential" settlement. Under the express terms of the Settlement Agreement, Seidl will indeed collect his paycheck if TRT wins: "If TRT obtains a monetary award, a monetary settlement or other recovery as a result of the California Lawsuit, TRT and Igra agree that Seidl shall be paid thirty (30) percent . . . ." (Dkt. 204-2 at 4 ¶ II.B.3.) However, he assumes no corresponding burdens of the suit because he does not have to participate as a plaintiff and he is both fully indemnified by Igra (*id.* at 6 ¶ II.H), and insulated from the Court's sanction power by virtue of his withdrawal from the TRT partnership.[9] In exchange, Igra gets control of this (unauthorized) lawsuit, a personal stake in revenue from TRT's IP, and a captive, beholden witness for TRT, who is precluded from even communicating with the defense. (*Id.* at 4 ¶ II.B.2.d.) Indeed, Igra elected to forgo trial on his claims in Hawaii—and any chance of obtaining an order or judgment there that might have satisfied this Court's Order. Instead, he opted for a settlement with Seidl that would secure him an unfair advantage in any trial against Defendants but fails to satisfy the Court's Order. That strategy should be a losing one.

Seidl's failure to ratify leaves a cloud over the entire record in this case, including TRT's operative pleading, its factual contentions in all interrogatory responses and pretrial filings, and its expert reports. None of this was authorized, let alone ratified and embraced, by Seidl—the only TRT partner who dealt with Luckey on the subject matter in dispute.

---

[9] *See In re Hydroxycut Mktg. & Sales Practices Litig.*, Nos. 09md2087, 09cv1088, 2014 WL 815394, at *3 (S.D. Cal. Mar. 3, 2014) (courts lack jurisdiction to sanction individuals who are "not a party to the case (or the alter ego of a party), nor an attorney in it . . .").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

17.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

In addition, the Court's "one authoritative voice" requirement arose out of concern that "one partner could cause a partnership to sue while another partner could cause it to settle and release the very same claim." (Order at 12:17-19.) Such a result would be "untenable" because "[c]ourts and parties have a legitimate need to know [] who has authority to [bring and] settle a case." (*Id.* at 14:3-7.) TRT claims the settlement cures this concern, but it only serves to exacerbate it. Unlike the dissenting partner in *Delbon Radiology v. Turlock Diagnostic Center*, 839 F. Supp. 1388, 1392 (E.D. Cal. 1993), Seidl still "has not been named as a party herein and he has not released claims against [D]efendants." (Order at 13:23-24.) Moreover, rather than clarifying who has authority to assert claims based on the Agreement, the settlement purports to explicitly split such claims between TRT and Seidl. (*Cf.* Dkt. 204-2 at 3 ¶ II.B.1 (noting that Igra intends to continue pursuing this action) *with id.* at 30 (assigning to Seidl all rights under TRT's IP contracts, including the right to sue for any past breach thereof).[10] Accordingly, the Settlement Agreement places Defendants in the position of potentially facing multiple suits on identical claims—precisely the "untenable" result this Court's Order sought to avoid. (Order at 13:8-9.)[11]

Finally, the Court also expressed concern that Seidl's absence from the case would deprive Defendants of a "remedy" in the event that sanctions or costs were awarded. (Dkt. 173 at 15:8-16.) The Settlement Agreement seeks to do just that. As part of the settlement, Seidl withdrew from the partnership and TRT assigned away all of its "tangible and intangible assets" to Seidl (subject to Igra's right to a share of the proceeds if they are ever licensed or sold). (Dkt. 204-2 at 6 ¶¶ II.C, II.E.) Thus, whatever assets TRT previously had to satisfy a costs or sanctions award are now out of reach of Defendants and the Court.

[10] Notably, the SAC alleges that Luckey breached the Agreement's exclusivity provision by making the Rift and that TRT is entitled to a "constructive trust." (SAC, at Prayer for Relief ¶ C.) TRT thus claims rights to the Rift and associated IP—rights the settlement purports to assign to Seidl. Defendants obviously dispute that TRT or Seidl possess any such rights, but the fact that (i) TRT is seeking a constructive trust over purported rights it has assigned away and (ii) Seidl may later attempt to sue on those same rights, only underscores how the settlement exacerbates, rather than cures, the risk of multiple suits and the overall authority defect.

[11] Contrary to TRT's assertion, interpreting the Quitclaim Assignment of IP Rights in accordance with its plain language does not yield "an absurd result." (Mot. at 14:20.) Seidl has disclaimed elsewhere in the Settlement Agreement any right to control or participate in this action, but he has not released his own claims against Defendants or disclaimed the right to file a separate lawsuit.

Cooley LLP
Attorneys At Law
Palo Alto

18.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

1

## 2.      The Settlement Agreement subverts the fair administration of justice

2      The Settlement Agreement raises additional, serious concerns beyond those identified by

3  the Court. Indeed, it implicates rules against suppression of evidence and witness tampering, and

4  appears calculated to deprive Defendants of a fair trial.

5      <u>First</u>, the Settlement Agreement expressly prohibits Seidl from communicating with

6  Defendants: "Unless subpoenaed, Seidl will not communicate with or otherwise cooperate with

7  counsel for Luckey or Oculus with respect to the California Lawsuit." (*Id.* at 4 ¶ II.B.2.d.) It also

8  mandates that Seidl "promptly notify" Quinn if Defendants attempt to contact him. (*Id.*) At the

9  same time, the Settlement Agreement <u>requires</u> Seidl to "cooperate with TRT with respect to the

10  California Lawsuit." (*Id.* ¶ II.B.2.c.) The intended effect is to deprive Defendants of access to the

11  <u>only</u> percipient TRT witness in this case and ensure that Seidl will not testify at trial unless TRT

12  decides to invoke its right to "cooperation."[12] Courts routinely find that agreements like this

13  violate fundamental principles of equity and justice.

14      For instance, in *Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528 (7th Cir. 2003) (Posner, J.), the

15  plaintiff telephoned a witness that defendant intended to call at trial and, following the call, the

16  witness declined to appear. The court held that if plaintiff's phone call dissuaded the witness from

17  testifying, it would constitute "serious misconduct" and possible witness tampering, "requiring a

18  commensurately severe sanction, quite possibly dismissal of [plaintiff's] suit." *Id.* at 537.[13]

19      *Williamson v. Superior Court*, 21 Cal. 3d 829, 832 (1978), is in accord. There, the

20  California Supreme Court found an agreement by one co-defendant to withdraw an expert witness

21  (and thereby avoid production of his expert report) in exchange for indemnification from the

22  other co-defendant was void as against public policy, and refused to place its "imprimatur upon

23  planned stratagems of purchased suppression of evidence." *Id.* at 838.

24

---

[12] Seidl is beyond the Court's trial subpoena power. *See* Fed. R. Civ. P. 45(c).

25
[13] *See also* 18 U.S. Code § 1512(b)(1) (felony to "corruptly persuade[]"another person with intent

26  to "influence, delay or prevent" that person's testimony); Cal. Penal Code § 137(a) (misdemeanor
to "knowingly induce[] another person to give false testimony or withhold true testimony not

27  privileged by law . . . ."); Haw. Rev. Stat. § 710-1070 ("A person commits the offense of bribing
a witness if he [directly or indirectly] confers . . . any benefit upon a witness . . . with intent to (a)

28  [i]nfluence the testimony of that person.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO                                            19.

**DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)**

*Smith v. Superior Court*, 41 Cal. App. 4th 1014 (1996), involved a settlement agreement and related Michigan injunction that precluded a former General Motors employee from "testifying without the prior written consent of GM, either at deposition or trial, . . . and from consulting with attorneys . . . in any litigation already filed or to be filed in the future, involving GM." 41 Cal. App. 4th 1014 (1996). The court found that the settlement and injunction were so fundamentally improper as to fall within the public policy exception to the full faith and credit clause:

> [A]greements to suppress evidence have long been held void as against public policy, both in California and in most common law jurisdictions. . . . The Legislature expressed its disapproval of such noxious agreements in the strongest way possible—by making it a felony to attempt by means of a bribe to dissuade a person from testifying in a judicial proceeding or to accept such a bribe. Penal Code section 138 . . . is an offense against public justice. . . .
>
> G.M. has not only prevented Elwell from speaking on his own behalf, but no one else may find out what he knows, effectively blockading a litigant's search for the truth and for redress. . . .

*Id.* at 1025–26. Accordingly, the court issued a writ, concluding enforcement of the injunction would "undermine the fundamental integrity of this state's judicial system." *Id.* at 1026; *see also Synergetics, Inc. v. Hurst*, No. 4:04CV318, 2007 WL 2422871, at *1, 9-10 (E.D. Mo. Aug. 21 2007) (settlement agreement whereby plaintiff induced a witness not to testify in exchange for dismissing claims against him constituted impermissible witness tampering).[14]

The Settlement Agreement between Igra and Seidl is similarly improper. As in *Smith*, it precludes Seidl from consulting with or cooperating with the defense. As such, it obstructs Defendants' access to the only TRT witness with knowledge of the facts in dispute and prevents them from bringing him to testify at trial. In fact, because Seidl cannot cooperate with Defendants but <u>must</u> cooperate with TRT, the Settlement Agreement vests TRT with sole discretion as to whether Seidl will testify live at trial. In exchange, the Settlement Agreement gives Seidl TRT's tangible and intangible assets (Dkt. 204-2 at 6 ¶ II.E), indemnification from liability or sanctions

---

[14] *See also* MODEL RULES PROF'L CONDUCT r. 3.4(a) (AM. BAR ASS'N 2016) (A lawyer shall not "unlawfully obstruct another party's access to evidence . . . ."); N.D. Cal. Civ. R. 11-4(a) (requiring all attorneys to "[p]ractice with the honesty, care, and decorum required for the fair and efficient administration of justice").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

1 arising out this lawsuit (*id.* ¶ II.H.1), and a cut of any litigation payday (*id.* at 4 ¶ II.B.3).

2 Accordingly, the Settlement Agreement has the purpose and effect of buying Seidl's silence.

3 <u>Second</u>, and relatedly, the Settlement Agreement pays Seidl for the <u>content</u> of his

4 testimony. In exchange for TRT's assets, indemnification, and litigation proceeds, Seidl agreed

5 that any trial testimony he may give "will generally be consistent with his testimony in his

6 deposition taken in connection with the California Lawsuit," regardless of its truth. (*Id.* ¶

7 II.B.2.b.) This is improper. Indeed, the "<u>payment of a sum of money to a witness to 'tell the truth'</u>

8 <u>is as clearly subversive of the proper administration of justice as to pay him to testify to what is</u>

9 <u>not true.</u>" *Patel v. 7-Eleven, Inc.*, No. 14-00519, 2015 WL 9701133, at *5 (C.D. Cal. Apr. 14,

10 2015) (quoting *State of N.Y. v. Solvent Chem. Co., Inc*., 166 F.R.D. 284, 289 (W.D.N.Y. 1996)).

11 The facts of *Solvent* are particularly germane. There, two defendants "purchased" a key

12 witness's cooperation "by orchestrating the settlement" of claims against him in a separate action,

13 by indemnifying him in that case, and by agreeing not to sue him in their own action. 166 F.R.D.

14 at 289. The court found that "[t]hose actions were the equivalent of making cash payments to [the

15 witness] as a means of making him 'sympathetic' and securing his testimony," and that such

16 conduct "threatened to undermine the integrity of the adversary process." *Id.*

17 Likewise, in *In re Robinson*, the court held that both "the payment of a sum of money to a

18 witness to testify in a particular way" and "the payment of money to a witness to make him

19 'sympathetic' with the party expecting to call him . . . are [] payments which are absolutely

20 indefensible and which are really included in the general definition of subornation of perjury."

21 136 N.Y.S. 548, 556 (N.Y. App. Div. 1912); *cf.* Cal. R. Prof. Conduct 5-310 ("A member shall

22 not: (B) Directly or indirectly . . . acquiesce in the payment of compensation to a witness

23 contingent upon the content of the witness's testimony.")

24 Here, the Settlement Agreement not only purchases Seidl's cooperation and affords TRT

25 the sole right to present his live testimony at trial; it also expressly dictates what Seidl can and

26 cannot say there. These dual restraints on access to Seidl and the substance of his testimony

27 combine to violate fundamental principles of justice. Accordingly, allowing the case to proceed

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

21.

**DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)**

1   on the basis of the Settlement Agreement would severely prejudice Defendants and reward Igra

2   (and TRT) for conduct that that has been squarely condemned as improper.[15]

3       **C.    TRT's Claims Are Time-Barred**

4           Under California law, the statute of limitations continues to run during the period in which

5   an entity lacks capacity to sue. *See, e.g.*, *V & P Trading Co., Inc. v. United Charter, LLC*, 212

6   Cal. App. 4th 126, 132 (2012) (quoting *Welco Constr., Inc. v. Modulux, Inc.*, 47 Cal. App. 3d 69,

7   73-74 (1975) (the "filing of a complaint at a time when the corporation's powers, rights, and

8   privileges have been suspended does not operate to toll the running of the statute of limitations")).

9   "[I]f the statute runs prior to revival, the action is time barred." *Id.* (citation omitted). TRT

10  concedes that Igra and Seidl "learned of Palmer Luckey's breach of the [A]greement no later than

11  September 7, 2012." (Dkt. 202-13 at 12-13 (Resp. to Interrogatory No. 15 (emphasis added)); *see*

12  *also* Dkt. 153 at 4:11-13.) Accordingly, the applicable statutes of limitations—three years on

13  TRT's constructive fraud claim and four years on its breach of contract and Section 17200

14  claims—began to run no later than September 7, 2012.

15          If the Court concludes, as Defendants contend, that TRT has failed to resolve its authority

16  defect, there will be no need to litigate the statute of limitations defense. That is because the case

17  will be dismissed on the ground that TRT lacked authority to file this suit and it was, therefore,

18  void *ab initio*. If, however, the Court concludes that: (1) Seidl has ratified this action (by virtue of

19  the Settlement Agreement or otherwise); and (2) ratification took place *after* the statute of

20  limitations expired, then TRT's claims would be subject to dismissal on that basis. Defendants

21  will not know whether a statute of limitations defense is viable until the Court decides these

22  critical issues in ruling on the pending Motion.

23          Although the statute of limitations defense is not yet before the Court, TRT argues that

24  Defendants should be precluded from asserting it because they have waived the defense, and

25  because it does not apply.  Both arguments are wrong.

26  _____

[15] To be clear, Defendants are not asking the Court to invalidate the Settlement Agreement.
27  Rather, Defendants contend that it fails to resolve the authority defect, and that dismissal is even
    more essential to the fair administration of justice now that Igra and Seidl have entered their
28  improper arrangement. *See Ty Inc.*, 353 F.3d at 537.

Cooley LLP
Attorneys At Law
Palo Alto

22.

Defendants' Opposition to TRT's Motion
for Relief from June 16, 2016 Order
(Case No. 15-cv-02281 WHA)

First, TRT claims that the statute of limitations defense has been waived because it should have been pleaded in Defendants' April 19, 2016 Amended Answer (Dkt. 129) or their October 2015 and April 2016 interrogatory responses. (Mot. at 15.) However, Defendants had no basis under Rule 11 to assert such defenses in or before April 2016 for the reasons discussed above. *See* Fed. R. Civ. P. 11, Advisory Cmt. Notes (parties must not "present defenses without any factual basis or justification"). Again, the defense only obtains if the Court finds Seidl ratified the unauthorized filing of this suit after the relevant limitations period expired, and Defendants refute that ratification ever occurred. Thus, there is no basis to conclude that Defendants have delayed in raising the statute of limitations as a defense, much less that the defense has been waived.[16]

If the Court rules that TRT may proceed with this case notwithstanding its failure to meet the conditions of the June 16 Order, Defendants will promptly seek leave both to amend the Court's scheduling order and to file a second amended answer that includes a statute-of-limitations defense. As TRT well knows (it has now twice amended its Complaint), leave to amend or supplement a pleading is to be liberally granted. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (Rule 15's "policy of favoring amendments to pleadings should be applied with 'extreme liberality'"); *Lexington Ins. Co. v. Sentry Select Ins. Co.*, No. 1:08-cv-1539, 2009 WL 3226713, at *4 (E.D. Cal. Oct. 5, 2009) ("The purpose of Rule 15(d) is to promote judicial economy . . . by allowing the addition of claims which arise after the initial pleadings are filed."); *Smith v. United States*, No. C 06-06103 WHA, 2007 WL 2554142, at *2 (N.D. Cal. Sept. 4, 2007) (Alsup, J.) (Rule 16 standard to permit amendment after expiration of

---

[16] TRT and its partners are the only parties who have engaged in prejudicial delay in this case. Igra filed this suit without Seidl's consent, knowing it would give rise to the risk of inconsistent judgments in this and the Hawaii court. He failed to advance the Hawaii action and then stipulated with Seidl to postpone the Hawaii trial for strategic reasons. (Dkt. 173 at 4:20-5:3 ("I feel like I got sold a bill of goods on the May trial date in Hawai'i after -- soon as that got close, then [Igra and Seidl] conveniently moved it to December. By stipulation.").) And rather than disclose the settlement to Defendants and the Court when it was negotiated in October or signed in November, Igra and Seidl waited until January 5, 2017, the day Defendants' response to the Second OSC was due, before producing it. By contrast, Defendants raised the possibility of a statute of limitations defense at the earliest opportunity upon learning that TRT would be claiming ratification by Seidl.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

23.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)

1    deadline in scheduling order is "good cause"). Defendants' motion to amend would readily satisfy

2    those standards.[17]

3          Second, TRT contends that the statute of limitations defense is inapplicable because the

4    "Franchise Tax Board line of cases [cited in Defendants' Second OSC response] is a far cry from

5    the case before this Court." (Mot. at 16:15-16.) However, TRT reads the *V&P Trading* line of

6    cases (cited by the Court in its Order at 12) too narrowly. Those cases involved corporations that

7    lacked capacity to sue by virtue of their delinquent tax status. However, those cases also make

8    clear that subsequent ratification of a lawsuit has no effect on "substantive defense[s]" like the

9    statute of limitations. *Welco*, 47 Cal. App. 3d at 73 (holding that a corporation can cure its

10   delinquent tax status and moot the capacity issue related to the suspension of its corporate

11   powers, but if it does so after the statute of limitations has run, its claims are nevertheless time-

12   barred); *see also Ctr. for Self-Improvement & Cmty. Dev. v. Lennar Corp.*, 173 Cal. App. 4th

13   1543, 1554 (2009) ("[O]ver the years the courts have created a distinction between procedural

14   steps taken on behalf of the suspended corporation while under suspension, which can be

15   resuscitated by revival, and substantive defenses that accrue during the time of suspension, which

16   cannot. The statute of limitations is regarded as a substantive defense.").

17         The same rationale applies to partnerships under basic agency principles. (*See* Mot. at

18   12:10-18 (citing California agency law).) Section 90 of the Restatement (Second) of Agency

19   provides: "[i]f an act to be effective in creating a right against another or to deprive him of a right

20   must be performed before a specific time, an affirmance is not effective against the other unless

21   made before such time." Indeed, the comments to Section 90 leave no doubt that a subsequent

22   ratification is ineffective unless made before the applicable limitations period expires:

23

24   _____

25   [17] On January 5, 2017, Defendants received a copy of the Settlement Agreement and TRT's
     response to the Second OSC and learned that TRT would be arguing that this action has
26   effectively been ratified. (Dkt. 182.) That same day, Defendants flagged the statute of limitations
     as an additional defense in their response to the Second OSC for purposes of preserving it in the
27   unlikely event it is triggered. (Dkt. 185 at 7.) Defendants also requested that they be given an
     opportunity to take discovery relating to the settlement between Igra and Seidl so that they could
28   understand all of the facts surrounding it and the purported ratification. (*Id.* at 3 n.1.)

1

- "The bringing of an action . . . by a purported agent [cannot] be ratified after the cause of action . . . has been terminated by lapse of time." *Id.* at cmt. A.

2

3

- "[T]he purported principal can ratify the bringing of an action . . . if the affirmance comes before a statute of limitations has run on the claim." *Id.* at cmt. C.

4

*Miernicki v. Duluth Curling Club*, 699 N.W.2d 787 (Minn. Ct. App. 2005) is also

5

instructive. In that case, plaintiff filed a dram-shop action against the nightclub where his

6

intoxicated brother became injured without authorization from the injured man's children in

7

whose name the suit was brought. *Id.* at 788. Defendant moved for summary judgment on the

8

ground that the claim was time-barred insofar as the children's subsequent ratification of the suit

9

came after the limitations period had expired. *Id.* at 788-89. On appeal from denial of the motion,

10

the court reversed, citing Section 90 of the Restatement and holding that "[b]ecause [the

11

children's] ratification of the action filed in their name occurred after the statute of limitations had

12

expired, the filing was ineffective." *Id.* at 789. To the extent such an analysis is ever required

13

here, the Court should reach the same conclusion.[18]

14

**IV.   CONCLUSION**

15

Defendants respectfully request that the Court dismiss this case in its entirety and enter

16

judgment in their favor for the reasons stated above and in the Court's June 16, 2016 Order.

17

Dated: February 9, 2017

18

COOLEY LLP
MARK LAMBERT
ANGELA DUNNING

19

By:   */s/ Mark Lambert*
          Mark Lambert

20

21

Attorneys for Defendants
OCULUS VR, LLC and PALMER LUCKEY

22

23

---

24

[18] TRT cites *American Alternative Energy Partners II v. Windridge, Inc.*, 42 Cal. App. 4th 551 (1996), for the proposition that the rule is different for partnerships, but TRT is wrong. In that case, defendant challenged plaintiff's capacity to sue insofar as it had failed to file its limited partnership certificate. The court of appeal held that the effect of failing to file the certificate was that the partnership was, instead, a general partnership, and that general partnerships have capacity to sue under the default rules. *Id.* at 561–62. Here, as TRT concedes, its capacity to sue is not governed by the default rules, but by the TRT Partnership Agreement (*see* Dkt. 153 at 17:10-11), and the Court has already found that "this lawsuit was filed without the mutual authorization required" by that Agreement (Order at 9:24-25).

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

25.

DEFENDANTS' OPPOSITION TO TRT'S MOTION
FOR RELIEF FROM JUNE 16, 2016 ORDER
(CASE NO. 15-CV-02281 WHA)