| | |
|---|---|
| 1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | Robert P. Feldman (Bar No. 69602) |
| 2 | bobfeldman@quinnemanuel.com |
| | Robert W. Stone (Bar No. 163513) |
| 3 | robertstone@quinnemanuel.com |
| | Brian Cannon (Bar No. 193071) |
| 4 | briancannon@quinnemanuel.com |
| | 555 Twin Dolphin Drive, 5th Floor |
| 5 | Redwood Shores, California 94065-2139 |
| | Telephone: (650) 801-5000 |
| 6 | Facsimile: (650) 801-5100 |

*Attorneys for Plaintiff Total Recall Technologies*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>*Plaintiff*,<br><br>vs.<br><br>PALMER LUCKEY and OCULUS VR, LLC, as successor-in-interest to OCULUS VR, Inc.,<br><br>*Defendants*. | Case No. 15-cv-02281-WHA<br><br>**TOTAL RECALL'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM THE COURT'S JUNE 16, 2016 ORDER GRANTING SUMMARY JUDGMENT SUBJECT TO STATED CONDITIONS (DKT. NO. 179)**<br><br>Date: March 8, 2017<br>Time: 8:00 a.m.<br>Location: Courtroom 8, 19th Floor<br>Judge: Hon. William H. Alsup |

## TABLE OF CONTENTS

<mark>Page</mark>

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.     THIS CASE SHOULD NOT BE DISMISSED BECAUSE TOTAL RECALL HAS SATISFIED THE TERMS OF THE JUNE 16 ORDER ......................................................... 2

     A.     Total Recall Is Fully Empowered To Prosecute This Lawsuit, And All Of The Court's Concerns About Authority Have Been Addressed .............................. 2

     B.     To The Extent Necessary, This Lawsuit Is Fully Ratified ....................................... 4

II.    DEFENDANTS' COMPLAINTS ABOUT THE SETTLEMENT AGREEMENT HAVE NO MERIT ................................................................................................................ 8

     A.     The Agreement Is An Efficient Division Of Partnership Assets And Defendants Have No Right To Control How Igra And Seidl Resolve Their Differences ............................................................................................................... 8

     B.     The Agreement Does Not Subvert Justice ............................................................. 9

III.   DEFENDANTS CANNOT RELY ON THE STATUTE OF LIMITATIONS ................... 11

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abraham v. S. E. Onorato Garages*,
  50 Haw. 628 (1968) ................................................................................................................. 7

*Alcala Co. v. Superior Court*,
  49 Cal. App. 4th 1308 (1996) ................................................................................................... 9

*Alternative Energy Partners II v Windridge*,
  42 Cal. App. 4th 551 (1996) ............................................................................................. 11, 12

*Breslin v. City & Cty. of San Francisco*,
  146 Cal. App. 4th 1064 (2007) ............................................................................................... 11

*Cook v. Surety Life Insurance, Co.*,
  79 Haw. 403 (Ct. App. 1995) ................................................................................................... 7

*Gates v. Bank of America National Trust & Savings Association*,
  120 Cal. App. 2d 571 (1953) ................................................................................................ 6, 7

*Golden Hill Paugussett Tribe of Indians v. Town of Southbury*,
  231 Conn. 563 (1995) ............................................................................................................... 6

*Hager v. Gibson*,
  108 F.3d 35 (4th Cir. 1997) .................................................................................................. 5, 6

*Heck v. Heck*,
  63 Cal. App. 2d 470 (1944) ...................................................................................................... 7

*Martin v. Van Bergen*,
  209 Cal. App. 4th 84 (2012) ................................................................................................... 10

*Miernicki v. Duluth Curling Club*,
  699 N.W.2d 787 (Minn. Ct. App. 2005) ................................................................................ 12

*Mysel v. Gross*,
  70 Cal. App. 3d Supp. 10 (App. Dep't Super Ct. 1977) ......................................................... 11

*Smith v. Superior Court*,
  41 Cal. App. 4th 1014 (1996) ................................................................................................. 10

*Synergetics, Inc. v. Hurst*,
  2007 WL 2422871 (E.D. Mo. Aug. 21, 2007) ....................................................................... 10

*Ty Inc. v. Softbelly's Inc.*,
  353 F.3d 528 (7th Cir. 2003) .................................................................................................. 10

*Welco Construction,, Inc. v. Modulux, Inc.*,
  47 Cal. App. 3d 69 (1975) ...................................................................................................... 12

| | |
|---|---|
| 1 | *Williamson v. Superior Court*, |
| |    21 Cal. 3d 829 (1978)..........................................................................................................10 |
| 2 | |
| 3 | **Statutes** |
| 4 | Cal. Civ. Code § 2310 ...............................................................................................................6 |
| 5 | Cal. Civ. Proc. Code § 350................................................................................................11, 13 |
| 6 | Fed. R. Civ. P. 9(a)..................................................................................................................13 |
| 7 | Haw. Rev. Stat. § 425-103(b)..................................................................................................12 |
| 8 | Haw. Rev. Stat. § 425-123(b)(2) ...............................................................................................9 |
| 9 | Haw. Rev. Stat. § 425-139 ........................................................................................................4 |
| 10 | Haw. Rev. Stat. § 425-140 ........................................................................................................4 |
| 11 | |
| 12 | **Miscellaneous** |
| 13 | Restatement (Second) of Agency § 8A ...................................................................................12 |
| 14 | Rev. Uniform Partnership Act § 301.......................................................................................12 |

# INTRODUCTION

In a court-supervised mediation in Hawaii conducted by Judge Rhonda Loo, Thomas Seidl and Ron Igra—the partners of Total Recall—reached a comprehensive settlement that divided their partnership assets. Their agreement settles the question of authority and addresses each of this Court's concerns about Total Recall's lawsuit: the partnership will speak with one voice; everyone will know who binds the partnership; there cannot be separate lawsuits on identical claims; and there is a responsible person for any downside liability should this action against Palmer Luckey and Oculus fail.

Defendants complain that the settlement agreement and restructuring of the partnership does not satisfy the exact conditions set forth in this Court's summary judgment Order. That Order—which contemplated mirror declarations from both partners—was written when Total Recall was comprised of two partners, at a time when a restructuring of the partnership was not before this Court. That is no longer the case. Instead, Seidl has withdrawn from the partnership and ceded all control over this lawsuit to Igra. Properly viewed, the declarations were a means to an end—the end being resolution of who has authority to bind the partnership. By insisting upon a Seidl declaration as if Seidl remained a partner, Defendants have confused the means with the end in this case.

In addition, Defendants' *ad hominem* attacks on Hawaii counsel and Judge Loo should be rejected. Igra's lawsuit against his partner Seidl alleged a lack of cooperation, and it should come as no surprise that a settlement of the Hawaii lawsuit would include a contractual obligation to cooperate. Such provisions are not unusual and are not controversial. That the agreement was negotiated before a Hawaii judge and made to resolve pending litigation makes Defendants' mud slinging all the more transparent.

The settlement agreement removes any uncertainty as to Total Recall's actions in this litigation, both with respect to the past and into the future. To the extent additional ratification is necessary as to the past, Seidl had already ratified this lawsuit by his conduct long before Igra and Seidl executed their settlement agreement. Seidl benefited from the preparation and timely filing of the complaint, as well as the prosecution of this case through the conclusion of discovery. This

benefit, along with notice of the proceedings, serves as ratification by a partner such as Seidl who took no action to stop the case. By allowing this litigation to proceed undisturbed, Seidl ratified it as a matter of law.

Defendants are not entitled to yet another special, separate summary judgment proceeding. First, Defendants have waived the statute of limitations defense. They knew the facts at the outset of the case and raised lack of authority multiple times in pleadings throughout this action. There is no excuse for Defendants' failure to raise the defense before now. In any event, even if not waived, the defense fails because Total Recall—an entity with capacity to sue and be sued—timely filed its complaint, which tolled the statute of limitations. The rule in California is that the filing of a complaint tolls the statute. The California Franchise Tax Board line of cases on which Defendants rely does not set forth a broad exception to California's general rule; rather, it is a narrow statutory exception designed to sanction corporations that are delinquent with their taxes. This exception does not apply to Total Recall.

## ARGUMENT

### I. THIS CASE SHOULD NOT BE DISMISSED BECAUSE TOTAL RECALL HAS SATISFIED THE TERMS OF THE JUNE 16 ORDER

#### A. Total Recall Is Fully Empowered To Prosecute This Lawsuit, And All Of The Court's Concerns About Authority Have Been Addressed

Defendants argue that the case should be dismissed because Total Recall has not provided the "three things" in the exact form as set forth in this Court's June 16, 2016 Order (hereinafter the "Court's Order"). Opp. at 12-13. According to Defendants, the only way Total Recall could satisfy the Court's Order was by providing declarations from Igra and Seidl that mirrored each other to authorize, ratify, and consent to this lawsuit. *Id.*

There are two fatal flaws in Defendants' argument. First, the conditions in the Court's Order are a means to an end, not the end itself. In contrast, the premise of Defendants' argument is that the declarations described in the Court's Order were not a means to resolve the authority question, but the "end" itself. On the contrary, it was clear that the purpose of the stay was to
-2-
TOTAL RECALL'S REPLY
Case No. 15-cv-02281-WHA

afford Plaintiff an opportunity to conclusively establish that Ron Igra had authority to bind Total Recall and speak for the Plaintiff.

There is no defense or counterclaim in this case seeking equitable relief in the form of the exact declarations. Defendants never requested such declarations. In fact, Defendants never mentioned ratification in any of their pleadings or motion papers. *See* Dkt. No. 174 (summary judgment directed only to authority). Instead, this Court—after ruling on a motion concerning authority—identified the declarations as a solution to the problem of two partners whom it found did not agree on the correct course of conduct for the partnership. Dkt. No. 179.

Defendants have elevated the means identified by the Court as the definitive end for this lawsuit. Not so. The solution that the partners negotiated in Hawaii before Judge Loo addresses every problem identified by the Court and permits the focus of this case to return to where it belongs: Palmer Luckey's breach of contract, unfair competition and fraud.

In particular, the Court stated that "the partnership must have one authoritative voice." Dkt. No. 179 at 14:5-6. Following the settlement, that is now the case: only Ron Igra speaks for the partnership. This Court was concerned that "one partner could cause a partnership to sue while another partner could cause it to settle and release the very same claim." *Id.* at 12. This is not possible now because Seidl has "no individual claims related to the California Lawsuit and right to seek judicial supervision or control over the California Lawsuit." Declaration of Thomas Seidl ("Seidl Decl."), Dkt No. 203-1, ¶ 1.[1] The Court stated that "[t]hose outside the partnership have a legitimate need to be able to know who can act for and bind the partnership" and "a legitimate need to know as well who has authority to settle a case." Dkt. No. 179 at 11-12. That concern has now been addressed because only Igra can speak for the partnership regarding this lawsuit.

---

[1] Defendants argue that Defendants face "risk of multiple lawsuits on identical claims." Opp. at 2:18. This is demonstrably false. Only Total Recall controls the contract claims. If Defendants infringe the patent that has now been assigned to Seidl under the Hawaii settlement agreement, that is an entirely separate lawsuit and different claim. Luckey's breach of contract and related fraud is in this Court and should be resolved here.

The second flow with Defendants' position is that it is premised on the incorrect assumption that the partnership would continue with two partners. Indeed, while this was a reasonable assumption at the time of the Court's Order, there is now an entirely new structure, making the two mirror declarations from Igra and Seidl neither logical nor appropriate.

Because Seidl is no longer a partner, he cannot authorize the continued prosecution of this lawsuit. That power belongs to Igra alone, and Igra has exercised it. Defendants' position is tantamount to a claim that they are entitled to have Total Recall remain as a two person partnership, thereby necessitating declarations from both partners. Defendants have no such rights: Hawaii partnership law explicitly allows the sole remaining partner to continue the partnership in order to wind up the business. *See* Haw. Rev. Stat. §§ 425-139, 425-140. Ron Igra, the sole remaining partner, fully authorizes Total Recall to prosecute this lawsuit, agrees to the maintenance of the action, agrees to Quinn Emanuel serving as counsel, and ratifies all actions of the partnership regarding this lawsuit. Declaration of Ron Igra ("Igra Decl."), Dkt. No. 203-2, ¶¶ 5-8. Seidl, for his part as the withdrawn partner, confirms that he has no control over the lawsuit, no right to veto, no individual claims related to the lawsuit, and understands that Igra intends to continue to pursue the lawsuit through Total Recall. Seidl Decl., Dkt. No. 203-1, ¶ 1. There can be no question that this lawsuit is therefore fully authorized—exactly the subject of Defendants' motion.

**B. To The Extent Necessary, This Lawsuit Is Fully Ratified**

Defendants complain that Seidl's declaration does not expressly ratify this lawsuit from the beginning. As a threshold matter, Total Recall and its sole remaining partner have ratified the case and—through agreement with the former partner—taken on full responsibility for all aspects of this lawsuit. For all practical purposes, that ratification establishes that the Plaintiff has authority to prosecute this action, the only respect in which ratification would be germane to this case: certainly, "ratification" is not something Defendants have prayed for or otherwise sought. Put differently, no case law or other legal authority has been cited that would give Defendants a right

to ratification from a former partner, particularly where the remaining partner has expressly authorized and ratified the prosecution of the action.

The foregoing is sufficient to resolve the "ratification" issue such that the Court need not decide whether Seidl's conduct during the pendency of this case amounted to ratification. It is clear, however, that Defendants are wrong that the issue of ratification by conduct was decided in the Court's summary judgment Order: Defendants never raised lack of ratification in their motion or any other pleading (*See* Dkt. No. 133-1), and the only respect in which ratification is addressed in the Court's Order was in the context of the stay. *See* Dkt. No. 179. Certainly, no serious claim can be made that an Order which resolved the question of authority on summary judgment also addressed and resolved the issue of ratification.

Were the Court inclined to consider—even in the current procedural posture—whether Seidl in fact ratified this litigation by his inaction, the record is clear: with full knowledge of the existence of the lawsuit, Seidl took no action to stop it. That is classic ratification. *See Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997). Ratification is a different issue from authority as the case law establishes. Br. at 12-13. Here, there can be no question that Seidl had notice of the lawsuit and that he did not intervene. Defendants argue that Seidl "consistently and vocally objected, both before and after [this action] was filed." Opp. at 15. This argument proves Total Recall's point— it demonstrates that Seidl had full knowledge of the lawsuit and yet did not intervene or otherwise attempt to prevent the prosecution of the case. Seidl may have sent an email to Palmer Luckey for his own benefit, but it is undisputed that he never intervened in this case, nor filed any motion in Hawaii to stop this action, nor any counterclaims. *See* Supplemental Declaration of Ron Igra ("Igra Supp. Decl."), Dkt. No. 204-1, ¶¶ 4-5.[2] Instead, Seidl let this California case proceed and—in the words of the Court—may have been trying to have it "both ways." (March 9, 2016 Hear. Tr. at 10:25). This is ratification as a matter of law.

---

[2] Defendants do not dispute Total Recall's argument on page 13, footnote 3 of its brief that such a counterclaim would have been compulsory under Hawaii law. Seidl made no counterclaim in Hawaii. Igra Supp. Decl., ¶ 5.

*Hager v. Gibson*, 108 F.3d 35 (4th Cir. 1997) is particularly instructive as it is the only case cited by either party concerning an ongoing litigation and is therefore closest to the instant case. In *Hager*, it was undisputed that the shareholder who initiated the bankruptcy action on behalf of the corporation lacked the authority to do so because he had not obtained the other shareholder's consent before filing. 108 F.3d at 38-39. The court nonetheless upheld the district court's finding that the non-consenting shareholder's subsequent conduct constituted ratification. *Id.* at 40. Specifically, the non-consenting shareholder (1) did not raise an objection with the court until more than a year after his "obvious awareness" of the proceedings and not until four months after he was made a formal party to a related adversary proceeding; (2) "[d]uring all this period . . . [he] took no step through available corporate governance procedures to attempt withdrawal of the corporation from the voluntary proceeding;" and (3) as a 50 percent shareholder, he "received the benefits" that inured to the corporation through the unauthorized filing. *Id.* at 40.

Similarly, here, Seidl was indisputably aware of these proceedings from the outset and at no point took any action to notify this Court that he objected or to otherwise intervene in the proceedings. *See Golden Hill Paugussett Tribe of Indians v. Town of Southbury,* 231 Conn. 563, 565 (1995) (affirming lower court's dismissal of action brought on an individual on behalf of an Indian tribe where the official tribal council (1) moved to intervene as defendant and (2) moved to dismiss the action on the ground that plaintiff lacked authority to bring the action on behalf of the tribe).

Moreover, Seidl, as partner in Total Recall, received and retained the benefits of this litigation enforcing Total Recall's rights. Cal. Civ. Code § 2310 ("A ratification can be made . . . by accepting or retaining the benefit of the act, with notice thereof."). The preparation of the complaint and its timely filing well before the statute of limitations benefited Seidl. Indeed, Seidl expressed his knowledge that it was important to file the complaint before the time period expired. Br. at 5 (quoting June 16 Order, Dkt. No. 179 at 5); Dkt. No. 178-3 at TR0000997. Moreover, Seidl benefited from the prosecution of the case through discovery, including the preparation of expert reports supporting Total Recall's claims against Luckey and Oculus. Seidl had full notice

of the lawsuit, received tangible benefits from its filing, and stood to gain greatly should it succeed. His failure to intervene in the lawsuit is therefore ratification as a matter of law.

None of Defendants' cases are on point, and none concern a pending litigation. In *Gates v. Bank of America National Trust & Savings Association*, 120 Cal. App. 2d 571 (1953), a bank's customer did not ratify the bank's payment of unauthorized drafts from the customer's account because the customer immediately demanded that the bank return his funds. *Id.* at 575. By contrast, Seidl made no effort to demand that the Court dismiss this action. In *Cook v. Surety Life Insurance, Co.*, 79 Haw. 403 (Ct. App. 1995), *as amended* (Aug. 30, 1995), clients did not ratify an unauthorized settlement agreement negotiated by their attorney because they did not know of the settlement, the settlement documents and checks were never signed, and they notified the other side of their refusal to settle within a reasonable amount of time. *Id.* at 411. By contrast, Seidl knew of the proceedings, retained its benefits such as the timely filing of the complaint and full fact discovery, and took no action to intervene in this lawsuit. In *Abraham v. S. E. Onorato Garages*, 50 Haw. 628 (1968), the court held that an employer did not ratify his employee's vehicular negligence (of which the employer was not aware) by failing to terminate the employee. *Id.* at 635 . Here, Seidl was always aware that Igra continued to litigate this case on behalf of Total Recall and has continued to retain the benefits of the litigation. In *Heck v. Heck*, 63 Cal. App. 2d 470 (1944), the Court of Appeal upheld the divorce court's finding that certain withdrawals from a partnership constituted income to the partner (and were therefore community property) because, among other things, the other partner did not raise an objection during the divorce action despite being "a party to the action and [being] present during at least a part of the trial." *Id.* at 473-74. Similarly, with respect to the Court's recent decision on sealing (Dkt. No. 201), Seidl had notice of the requests and failed to submit anything to the Court, resulting in him being bound by the decision of the Court on this particular issue. Thus, Seidl's knowledge of this case against Luckey and Oculus, and failure to take any steps to stop it constituted ratification.

## II. DEFENDANTS' COMPLAINTS ABOUT THE SETTLEMENT AGREEMENT HAVE NO MERIT

Defendants argue that allowing this case to proceed because Seidl and Igra have settled their differences "would severely prejudice" them. Opp. at 16. That complaint is not a grounds for objection and is exactly the point: the question of whether Palmer Luckey and his company breached a contract and engaged in fraud should be addressed on the merits. To avoid that reckoning, Defendants make *ad hominem* attacks about Seidl and Igra and improperly impugn the integrity of Hawaii lawyers and a Hawaii state court judge under whose supervision Igra and Seidl reached agreement.

### A. The Agreement Is An Efficient Division Of Partnership Assets And Defendants Have No Right To Control How Igra And Seidl Resolve Their Differences

Pursuant to mediation sessions supervised by Judge Rhonda Loo, Seidl and Igra reached a comprehensive settlement and division of the partnership assets. *See* Br. at 6-7; Dkt. No. 204-2. This is not "gaming the system" as Defendants allege. Opp. at 16:13. There is nothing wrong with Seidl—as a former partner—receiving a share of any proceeds of the lawsuit. Nor is there anything wrong with Igra—a co-inventor on Total Recall's patent and funder to Total Recall technology including the specific components of the Oculus Rift—selling his patent rights to Seidl and agreeing to indemnify Seidl for any costs associated with this California action. Each partner now has sole control over specified partnership assets, and each retains a passive interest in the outcome of the other's work.[3] This is an efficient division of property: it is no secret to this Court

---

[3] As described above, Defendants cannot as a matter of law be subject to separate lawsuits on identical claims. In the Settlement Agreement, the California Lawsuit is defined as this case (Dkt. No. 204-2 at TR00010002), and "all rights or other interests that relate to the California Lawsuit" shall remain property of Total Recall. Dkt. No. 204-2 at TR00010003. Seidl has confirmed by declaration that he has no individual rights in the California lawsuit, including no veto and no right to control. Seidl Decl., Dkt. No. 203-2 . Conversely, Total Recall's VR business including its intellectual property such as the patent is assigned to Seidl. Dkt. No. 204-2 at TR00010004. The various quitclaims serve to settle title that the property other than the contract case belongs to Seidl. Dkt. No. 204-2 at TR00010006. As a result, Defendants cannot be sued on the same claims in separate lawsuits because the different claims have been definitively divided up.

that Seidl and Igra have not gotten along personally and differed in how to approach a person (Luckey) who has enjoyed immense good fortune and prominence (using technology they both believed belonged to them). The Hawaii settlement agreement does not reflect nefarious "machinations" as alleged by Defendants (*See* Opp. at 2:8); instead, it was a structured business solution that emerged from a judicially supervised mediation.

### B. The Agreement Does Not Subvert Justice

Defendants take issue with the portions of the agreement that "Seidl will reasonably cooperate with counsel for TRT with respect to the California Lawsuit"; that "[u]nless subpoenaed, Seidl will not communicate or otherwise cooperate with counsel for Luckey or Oculus with respect to the California Lawsuit"; and that if Seidl is called to testify, his testimony will generally be consistent with his deposition testimony. Dkt. No. 204-2 at TR00010004; Opp. at 19. Defendants argue that such provisions implicate "witness tampering" and appear "calculated to deprive Defendants of a fair trial." Opp. at 19. These arguments are unfortunate.

In Hawaii, Igra sued his partner for lack of cooperation and for making secret agreements with Palmer Luckey to the detriment of the partnership. Dkt 175-11, ¶¶ 30, 39.[4] Under Hawaii law, partners such as Seidl and Igra owe each other a duty "[t]o refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership." Haw. Rev. Stat. § 425-123(b)(2).

It should therefore come as no surprise that a lawsuit alleging lack of cooperation should be resolved with a contractual obligation to cooperate. In many respects, the settlement agreement restates a preexisting duty. Furthermore, the settlement was not a secret side agreement. It was negotiated under supervision of a judge to resolve a lawsuit between two partners. Under

---

[4] With its Motion, Total Recall requested this Court take judicial notice of the Hawaii pleadings. Dkt. No. 199-1. In their opposition, Defendants have raised no objection to either the Hawaii pleadings or Total Recall's request for judicial notice.

Defendants' logic, partners cannot enter partnership agreements in which they pledge duties to each other because to do so would subvert justice.[5] That is not the law.

Likewise, there is no agreement between Seidl and Igra to subvert or buy testimony. *See* Opp. at 21. Seidl has already been deposed in this case—at a time when he and Igra were adversaries in the Hawaii lawsuit. Indeed, the very fact that Seidl has already been deposed in this case (well before the mediation before Judge Loo and the settlement agreement) tends to negate any suggestion that the agreement could affect his testimony in any material way. For that reason, and others, this "consistent" testimony clause is of such little use or impact that counsel in this case will not seek to enforce it and would have no objection to it being struck—notwithstanding its legality. None of Defendants' cases are remotely similar to the case before this Court, and none concern an agreement between partners to settle a lawsuit centered on the partners' cooperative duties to each other.[6]

---

[5] Partners (as well as others such an employees) can and do enter agreements that obligate themselves to cooperate with each other. Indeed, California courts recognize agreements that are far more intrusive than the settlement agreement between the partners of Total Recall. For instance, California recognizes so-called Mary Carter or sliding-scale agreements in which one defendant in a multi-defendant suit settles a claim and agrees to continued participation in the case with an incentive to pay nothing if the plaintiff recovers above a certain amount. *See Alcala Co. v. Superior Court*, 49 Cal. App. 4th 1308, 1312-313 (1996). One of the acknowledged risks of Mary Carter agreements is that the settling defendant plainly has an interest in colluding with the plaintiff to increase the plaintiff's recovery over the threshold quantity. *See id*. California allows such agreements as long as they are disclosed among other conditions. Igra and Seidl's settlement is certainly not a Mary Carter agreement, but the point remains that California recognizes that parties can have interests in the outcome of lawsuits; that is not inherently wrong as long as it is disclosed, as was the case here.

[6] None of Defendants' cases involve an ordinary, good-faith settlement agreement as here; rather, each involves illicit agreements designed solely to deprive others of evidence. In *Ty Inc. v. Softbelly's Inc.,* 353 F.3d 528 (7th Cir. 2003), the plaintiff secretly telephoned a key witness for the other side on the eve of trial and dissuaded the witness from testifying. *Id.* at 534-35. In *Williamson v. Superior Court*, 21 Cal. 3d 829, 832 (1978), an expert for one defendant in a tort action would have testified that another defendant was liable for plaintiff's injuries; on the eve of the expert's deposition the codefendants entered an agreement whereby one codefendant would indemnify the other for any liability arising from plaintiff's injuries in exchange for the other's agreement to withdraw the harmful expert. *Id.* at 832-33. In *Smith v. Superior Court*, 41 Cal. App. 4th 1014, 1028 (1996), the California Court of Appeal would not enforce a permanent injunction entered by stipulation in a Michigan court that prohibited a former employee of the defendant from giving any testimony whatsoever in any litigation against his former employer and prevented

## III. DEFENDANTS CANNOT RELY ON THE STATUTE OF LIMITATIONS

Defendants' request for another special, separate summary judgment proceedings is not justified, for several reasons. Defendants do not and cannot dispute that they have never before pled the statute of limitations as a defense in this case. *See* Opp. at 22-25. As a result, the defense is plainly waived. *Martin v. Van Bergen*, 209 Cal. App. 4th 84, 91 (2012) (citing *Mysel v. Gross*, 70 Cal. App. 3d Supp. 10, 13 (App. Dep't Super Ct. 1977)).

Defendants' excuse for not timely raising the statute of limitations is that they allegedly had no Rule 11 basis for raising it before. Opp. at 23. This is simply not true. Defendants' argument that the statute of limitations was not tolled by the filing of the complaint is based upon their assertion that Total Recall could not file this lawsuit and thus the filing was a nullity. *Id.* at 22:16-18. Defendants have been on notice regarding the argued lack of authority issue from the outset of this case. Indeed, in their April 22, 2016 summary judgment motion, Defendants argued that an email that Seidl sent Defendant Palmer Luckey on May 22, 2015, demonstrated Total Recall's lack of authority. Dkt. No. 174 at 7-8. Thus, Defendants had possession of the documents they claimed supported their authority argument at the outset of this case, and they raised lack of authority as a defense in numerous pleadings and motions. *See, e.g.*, Dkt. Nos. 29 (Motion to Dismiss), 79 (Summary of Hawaii Action and Request for Stay), 146 (Response to Order to Show Cause). Despite notice and opportunity, however, Defendants never raised the statute of limitations defense.

Even if not waived, no separate briefing schedule should be set regarding the statute of limitations defense: Total Recall timely filed its Complaint which, under general and well-established California law tolls the statute. *See* Cal. Civ. Proc. Code § 350 (The Statute of Limitations stops running when "[a]n action is commenced."); *Breslin v. City & Cty. of San*

---

a California plaintiff from deposing or otherwise obtaining any testimony from that former employee. *Id.* at 1018. In *Synergetics, Inc. v. Hurst*, 2007 WL 2422871 (E.D. Mo. Aug. 21, 2007), the "major objective" of a settlement between plaintiff and a third-party was for the third-party not to testify in plaintiff's case. *Id.* at *9.

*Francisco*, 146 Cal. App. 4th 1064, n.18 (2007) ("An action is commenced for statute of limitations purposes when a complaint is filed.").

Defendants seek to avail themselves of the California Franchise Tax Board ("FTB") line of cases, arguing that the rationale of those cases applies here. Opp. at 23. As made clear in *Alternative Energy Partners II v Windridge*, 42 Cal. App. 4th 551 (1996), however, the California Franchise Tax Board line of cases is a statutory exception that applies only to corporations suspended for failure to pay taxes. *Id.* at 563. In *Alternative Energy*, the defendants argued that because the plaintiff was without capacity to maintain its action at the time the complaint was filed and had not gained capacity until after the statute of limitations had run on its causes of actions, the plaintiff's claims were time-barred. *Id.* at 556. The trial court had agreed, relying on *Welco Construction,, Inc. v. Modulux, Inc.*, 47 Cal. App. 3d 69 (1975). *Id.* The Court of Appeal unambiguously reversed, despite the fact that the named plaintiff was a defectively formed limited partnership. *Id.* at 560. The Court of Appeal thus declined to extend the FTB line of cases to the partnership at issue in *Alternative Energy*. *Id.* at 556. Importantly, the policy underlying the FTB line of cases, which is to put "pressure" on "delinquent corporation[s]" to force the payment of taxes, did not apply to the defectively formed partnership. *Id.* at 563. Similarly, the policy does not apply to Total Recall: it has never been suspended by the FTB and has always been an entity that can sue and be sued.

Defendants' out-of-jurisdiction case, *Miernicki v. Duluth Curling Club*, 699 N.W.2d 787 (Minn. Ct. App. 2005), does not create an exception to California's general rule that a timely filed complaint tolls the statue of limitations. There, an attorney brought an action on behalf of named plaintiffs who (1) had not retained the attorney, (2) did not know that their uncle had retained the attorney on their behalf, and (3) did not know of the filing the complaint until after the statute of limitations had run. *Id.* 699 N.W.2d at 788. In other words, the attorney had no agency relationship with the named plaintiffs whatsoever; the attorney could not have bound them to any transaction with third-parties, whether the filing of a complaint, executing a contract or otherwise.

By contrast, a general partner, by virtue of his agency relationship to the partnership, binds the partnership in transactions with third-parties irrespective of the scope of his authority under the

partnership agreement. *See e.g.*, Haw. Rev. Stat. § 425-103(b) ("The partnership agreement may not . . . (10) restrict rights of third parties under this [Act]."); Rev. Uniform Partnership Act § 301, Authors' Cmt. 6.A. (explaining that as a co-owner of the partnership, a general partner has the "inherent agency power" to bind the partnership even though the partner's conduct "fall[s] outside the scope of his actual or apparent authority"). Moreover, a third-party is bound to the same extent as the partnership. Restatement (Second) of Agency § 8A, cmt. c. ("Although the execution of this inherent [agency] power ordinarily operates to create liability against the principal or to cause the loss of his things, it may give the principal rights against the other party to the transaction."). Thus, unlike the situation in *Miernicki*, a general partner commences an action on behalf of the partnership by filing a complaint. Cal. Civ. Proc. Code § 350; *see also* Fed. R. Civ. P. 9(a) ("Except when required to show that the court has jurisdiction, a pleading need not allege . . . (B) a party's authority to sue or be sued in a representative capacity.").

In sum, even if Defendants did not waive a statute of limitations defense—which they have—the statute does not apply because the partnership timely filed a complaint and certainly no special proceeding is warranted.

## **CONCLUSION**

For the foregoing reasons, Total Recall respectfully requests that the Court lift the current stay such that the instant action may proceed promptly to trial.

DATED: February 16, 2017
QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Robert W. Stone*
Robert W. Stone

Attorneys for Plaintiff TOTAL RECALL TECHNOLOGIES