IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>    Plaintiff,<br><br>  v.<br><br>PALMER LUCKEY and OCULUS VR, LLC, as successor-in-interest to Oculus VR, Inc.,<br><br>    Defendants. | No. C 15-02281 WHA<br><br>**ORDER DENYING MOTION FOR RELIEF FROM PRIOR ORDER AND CLOSING FILE** |

## INTRODUCTION

A prior order held this action should be dismissed as unauthorized under the governance rules of the partnership purporting to sue. That order stayed its effect, giving plaintiff a long opportunity to cure the authorization problem and identified two alternative avenues under which the authorization problem could be cured. Time has passed. Neither condition has been met. Plaintiff now moves for relief from the prior order on the theory that the authorization problem has been cured by alternative means. For the reasons stated below, plaintiff's motion is **DENIED**, the stay is **LIFTED**, and the action is **DISMISSED**.

## STATEMENT

A prior order set forth the facts of this case (Dkt. No. 179). Briefly, in 2010, Ron Igra and Thomas Seidl formed a two-person partnership, Total Recall Technologies ("TRT"), with the goal of developing consumer virtual-reality technology. They formed TRT in Hawaii. Seidl supplied the know-how, and Igra supplied the finances. Significantly, the partnership

agreement gave each of the two partners veto power over any decision regarding TRT, as follows (Dkt. No. 133-2 ¶ 19):

> Thomas Seidl or Ron Igra has the right to Vito [*sic*]. This means that for any decision regarding the company Ron Igra and Thomas Seidl have to agree on any action [except for certain sales of a controlling interest in the partnership].

In August 2011, Seidl entered into a written agreement with defendant Palmer Luckey to develop a prototype for a head-mounted virtual-reality display according to certain specifications supplied by Seidl. That written agreement made no reference to TRT. Nevertheless, as in prior orders, this order presumes for the sake of argument that Seidl made the agreement on behalf of TRT. Luckey made a prototype for Seidl.

Luckey eventually formed Oculus LLC, which later re-registered as defendant Oculus VR, LLC, and sold it to Facebook, Inc. Oculus is now a prominent player in virtual-reality technology.

Once Luckey sold Oculus to Facebook in 2014, Igra wanted to sue Luckey on the theory that Luckey had misappropriated Seidl's ideas. Seidl, however, did not want to sue. In 2014, Igra commenced an action in Hawaii state court against Seidl, seeking to compel Seidl to authorize an action against Luckey in TRT's name. Igra and Seidl continued to correspond, but Seidl maintained his objection to suing Luckey and Oculus.[1]

In May 2015, with the Hawaii action still unresolved, Igra, using TRT's name, commenced this action *over Seidl's objection* here in federal court in San Francisco. After substantial motion practice, it became clear that Igra brought this action in TRT's name without Seidl's authorization.[2]

---

[1] The Hawaii action at issue was actually Igra's second lawsuit against Seidl in Hawaii state court relating to this internal dispute. The first had been to compel Seidl to produce documents relating to Seidl's agreement with Luckey. The first action is immaterial to the instant motion. All references to the "Hawaii action" herein refer to the second action, the one seeking to compel Seidl to agree to commence the instant action against Luckey and Oculus.

[2] Although the caption in this action identifies Total Recall Technologies as the plaintiff, this order addresses the plaintiff as Ron Igra inasmuch as the issue herein is Igra's unauthorized pursuit of this action in TRT's name.

2

After discovery closed, which included discovery into the authorization issue, an order stayed the action pending resolution of the Hawaii action but invited defendants to bring an early motion for summary judgment on the authorization issue.  In their motion, defendants contended that Igra lacked authority to pursue this action due to Seidl's refusal to agree to sue.  Igra responded that there remained a dispute of fact as to whether Seidl in fact had exercised his veto pursuant to the partnership agreement, but there was no dispute about the facts of the communication between Igra and Seidl.  Igra merely disputed the legal effect of Seidl's objections.

On June 16, 2016, an order held Seidl had never authorized the lawsuit, so Igra could not maintain this action in TRT's name as a matter of law (Dkt. No. 179) ("the June 16 Order").  The June 16 Order, however, postponed its effect, as follows (*id.* at 14–15):

> Rather than dismissing the action immediately, however, this order will, for the time being, merely maintain the stay and give counsel an opportunity to cure the authorization problem.  To that end, the stay previously entered will remain in effect (i) until such time as Ron Igra and Thomas Seidl, the partners of Total Recall Technologies, file [] sworn declarations herein affirmatively and without qualification stating that both authorize and agree to the maintenance of this civil action in the name of Total Recall Technologies against Palmer Luckey and Oculus VR, LLC, that both ratify all actions taken herein so far on behalf of Total Recall Technologies, and that both consent to continued prosecution of the case by the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, or (ii) until such time as a final order arrives from the Hawaii courts to the same legal effect.  The stay will not last indefinitely but will last at least until the end of December to allow the trial in Hawaii to conclude.

A status conference was scheduled for January 12, 2017.  A few weeks beforehand, the undersigned judge observed that Igra and Seidl had stipulated to dismissal of the Hawaii action.  In advance of the status conference, the parties herein were requested to show cause in writing, supported by sworn declarations, why our case should not be dismissed for the reasons stated in the order on defendants' motion to dismiss.  The written responses addressed the details of a new "Confidential Settlement and Release Agreement" between Igra and Seidl.[3]

---

[3] Both sides sought leave to file the settlement documents under seal, pursuant to Seidl's confidentiality designation.  Seidl failed to submit a declaration supporting the sealability of those documents, although he was served with the sealing motions.  Accordingly, an order denied the sealing motions (Dkt. No. 201).

3

1    Pursuant to the settlement agreement, Seidl withdrew from the TRT partnership, as

2 follows (Igra Supp. Decl., Exh. A ¶ II.A) (Dkt. No. 204-2):

> Seidl agrees to withdraw from the TRT partnership effective October 14, 2016, by executing a Withdrawal from Partnership . . . . Following Seidl's withdrawal from TRT, Seidl shall have no control over TRT or any decision-making rights with respect to TRT.

6    The settlement agreement defined the term "California Lawsuit" to mean our instant

7 action, and assigned rights to it, as follows (*id.* ¶ II.B.1):

> California Lawsuit Shall Remain TRT Property. Following the Withdrawal by Seidl as a partner of TRT, any and all rights or other interests that relate to the California Lawsuit shall remain the property of TRT, and Seidl shall have no right to control any aspect of the California Lawsuit, and Seidl shall have no right to veto the California Lawsuit. Seidl understands that Igra intends to continue to pursue the California Lawsuit through TRT, and Seidl agrees that, with the exception of the rights set forth in Paragraph II.B.3. of this Agreement, he has no individual claims related to the California Lawsuit and shall have no right to seek judicial supervision or control over the California Lawsuit.

14    The settlement agreement required Seidl to "reasonably cooperate with counsel for TRT

15 with respect to the California Lawsuit" and prohibited him from "communicat[ing] with or

16 otherwise cooperat[ing] with counsel for" defendants with respect to this action (*id.* ¶ II.B.2). It

17 also provided that Seidl would receive thirty percent of any monetary award, settlement, or

18 other recovery herein after payment of fees and costs (*id.* ¶ II.B.3). On the other hand, Igra

19 agreed to "defend and indemnify Seidl for any fees, costs, monetary penalty or other liability

20 arising out of the California Lawsuit" (*id.* ¶ II.H).

21    In exchange, Seidl received all of TRT's intellectual property rights, with the exception

22 of any rights in the names "Total Recall Technologies" and "TRT." Seidl agreed to pay Igra a

23 portion of revenues generated from those intellectual property assets (*id.* ¶ II.C). Sieidl also

24 received "all other tangible and intangible assets of TRT," that is, he received all assets

25 "[e]xcept for the rights in the California Lawsuit . . . and the names 'Total Recall Technologies'

26 and 'TRT'" (*id.* ¶ II.E).

4

Igra and Seidl released all claims against each other (*id.* ¶ II.F). They executed the settlement agreement on November 28, 2016. They entered a stipulation of dismissal of the Hawaii action on December 6 (Lambert Decl., Exh. B) (Dkt. No. 207-1).

In support of his response to the request to show cause herein, Igra also submitted declarations from himself and from Seidl.

In Seidl's declaration, he noted his withdrawal from TRT and stated that he understood that he had "no right to control any aspect of the California Lawsuit and no right to veto the California Lawsuit." Moreover, he understood that he had "no individual claims related to the California Lawsuit and no right to seek judicial supervision or control over the California Lawsuit" (Seidl Decl. ¶ 1) (Dkt. No. 189-1). *Significantly, Seidl gave no authorization or ratification of this action and never has.*

For his part, Igra stated that he "as the sole remaining partner of Total Recall, authorize[d] and consent[ed] to the maintenance of" this action and the prosecution of the action by his counsel herein (Igra Decl. ¶ 7) (Dkt. No. 189-2).

At the hearing on January 12, following the briefs on the request to show cause, the undersigned judge asked Igra to move on the question of whether the foregoing satisfied the June 16 Order. This order now follows full briefing and oral argument.

**ANALYSIS**

The June 16 Order held that Igra had commenced this action in TRT's name without authorization inasmuch as Seidl had never approved this action. As stated, the partnership agreement provided, "Thomas Seidl or Ron Igra has the right to Vito [*sic*]. This means that for any decision regarding the company Ron Igra and Thomas Seidl have to agree on any action," subject to an exception not relevant here. Rather than immediately dismiss the action, the order allowed time for Seidl to withdraw his veto (either voluntarily or by order of the Hawaii court) and to ratify all conduct on behalf of TRT in the case so as to cure the problem. Specifically, this action could proceed if Igra and Seidl both filed "sworn declarations herein affirmatively and without qualification stating that both authorize and agree to the maintenance of this civil action in the name of Total Recall Technologies against Palmer Luckey and Oculus VR, LLC,

5

1  *that both ratify all actions taken herein so far on behalf of Total Recall Technologies*, and that
2  both consent to continued prosecution of the case by the law firm of Quinn Emanuel Urquhart
3  & Sullivan, LLP" (Dkt. No. 179 at 15) (emphasis added).[4]

4  Seidl has *not* supplied such a declaration. Nor has he come close.

5  Rather than acknowledge the failure to comply with the terms of the June 16 Order, Igra
6  now contends "Total Recall has exceeded the requirements of the June 16 Order insofar as Total
7  Recall can now and forever more only speak with 'one authoritative voice'" (Pl.'s Mtn. at 10
8  (quoting June 16 Order, Dkt. No. 179 at 14)). Igra's contention is unpersuasive. Neither
9  condition was met. That alone is fatal.

10  To be clear, this action was found unauthorized by the June 16 Order because the
11  undisputed facts demonstrated that Igra had pursued it without Seidl's authorization from the
12  start. The June 16 Order allowed two specific ways to retroactively obtain Seidl's authorization
13  and ratification so as to breathe life into a complaint that had been dead on arrival. Igra has
14  now presented a third, different approach, but that approach falls short, for Seidl has refused to
15  authorize and ratify anything.

16  Absent Seidl's unequivocal authorization and ratification, this lawsuit remained
17  improper from the outset. The June 16 Order gave plenty of time for Seidl to come forward to
18  authorize and to ratify this lawsuit and thereby vivify it.

19  Seidl has studiously refused to do so.

20  The new Igra plan does nothing by way of providing ratification by Seidl, which was a
21  key concern in the June 16 Order. Any lawsuit in the name of TRT would have exposed Seidl,
22  as a partner, to the risk of liability for costs and possible sanctions. This was especially true
23  given Seidl's many concessions that this case lacks merit.[5]

---

[4] As a threshold matter, Hawaii law, which applies to TRT's internal governance, expressly provides that a "partnership continues after dissolution only for the purpose of winding up its business," which includes "prosecut[ing] and defending actions and proceedings" and "settl[ing] disputes by mediation or arbitration . . . ." Haw. Rev. Stat. §§ 435-139(a); 425-140(c). Accordingly, Hawaii law permits Igra to litigate actions properly brought by the partnership notwithstanding the fact that he is the sole remaining partner.

[5] In an April 2014 email responding to Igra's pressure about bringing this action, Seidl wrote, as follows (Dkt. No. 136-9 at 8655):

6

Notably, just days after the action began, Seidl sent Luckey a text message via Skype alerting Luckey to the authorization problem (Dkt. No. 136-13 at 3302) (errors in original):

> I just seen what Igra filed. WAs without my knowledge or permission. Meeting with my lawyer early next week. What he has done seems to be illegal to me. I have not signed anything or let him take action against you.

The June 16 Order required Seidl, as a condition of cure, to approve the lawsuit and to ratify all prior conduct herein by plaintiff's counsel and thus put himself and the partnership in the same position and responsibility as if it had been done right from the start. The retroactive nature of the conditions for cure set forth in the June 16 Order mattered. The statute of limitations had already run by the time of that order, so any follow-on suit would likely have been time-barred. The June 16 Order allowed a cure opportunity to mitigate a potentially harsh result, that is, to allow, *nunc pro tunc*, TRT to vivify the original complaint.

Significantly, to repeat, the new Igra plan studiously avoids any authorization or ratification by Seidl. This is fatal — and all the more aggravating, since Seidl retains a thirty percent stake in any recovery herein. The truth is that the new plan is a clever smoke-and-mirrors work-around to protect Seidl from ratifying anything while creating an appearance that Igra now controls the partnership. But it does nothing to carry us back to the moment in time of the filing of the original complaint to fix the defect that plagued this action from the start. Only Seidl's ratification could have done that.

\*   \*   \*

---

> My thoughts on the vito [*sic*] have not changed. . . . . You said Palmer breached the contract, where was that? You said Palmer stole our ideas, which ideas were those?

In a subsequent exchange soon after, Seidl further admonished Igra (Dkt. No. 136-10 at 8561):

> You carry on the way with threatening Palmer you will burn the one advantage we have from dealing with Palmer, that he feels he owes us on a moral level. Because he does not owe us on a legal level. Don't go messing things up.

In his penultimate statement about this lawsuit to Igra before Igra commenced the action, Seidl again expressed skepticism (Dkt. No. 159-5 at 3737):

> We don't need legal action against [P]almer for a deal. We would always bluff that the case is strong. Stop wasting my time.

7

Perhaps acknowledging his failure to secure Seidl's affirmative and unequivocal authorization, Igra contends we should infer Seidl's ratification from his failure to intervene herein or to countersue in Hawaii, relying on principles of agency law.

Specifically, he cites *Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997). There, one of two shareholders in a corporation filed a bankruptcy petition. The bankruptcy trustee demanded that the other shareholder turn over certain funds that belonged to the corporation. The shareholder received the demand but took no action. The trustee then brought an adversary proceeding against the second shareholder, who moved to dismiss, claiming the first shareholder lacked authority to petition for bankruptcy on his own. *Hager* held that because the second shareholder knew of the bankruptcy, took no action to object, received the benefits of a bankruptcy stay, and failed to avail himself of "available corporate governance procedures to attempt withdrawal of the corporation from the voluntary proceeding" it was not clearly erroneous to find ratification.

Here, by contrast, Seidl has followed one fixed star — give no blessings whatsoever to this lawsuit. Accordingly, *Hager* is inapposite.

Igra's position that our defendants must face an unauthorized lawsuit because Seidl failed to affirmatively seek legal remedies by countersuing in Hawaii or intervening here due to Igra's conduct is entirely without support.

Igra also makes much of the fact that in Seidl's answer in the Hawaii action, Seidl denied the allegation that he asserted his right to veto the action (Dkt. No. 175-15 ¶ 20). That assertion in Seidl's unsworn answer to a group of allegations was inadmissible hearsay, and, in any case, its effect was repudiated by Seidl's subsequent unambiguous statement (his last to Igra about the action before Igra filed it), "Do not take any legal action against [P]almer" (Dkt. No. 159-5 at 7970).

**CONCLUSION**

Accordingly, the stay of the June 16 Order is **LIFTED**, and Igra's motion for relief from that order is **DENIED**. For the reasons stated in the June 16 Order, this action is **DISMISSED**. Judgment will follow.

1   Both sides request that the court take judicial notice of certain filings from the Hawaii
2   action (Dkt. Nos. 199, 208).  The requests for judicial notice are **GRANTED**.

**IT IS SO ORDERED.**

Dated:   March 9, 2017.


WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9