MAYER BROWN LLP
LAUREN R. GOLDMAN (*pro hac vice*)
(lrgoldman@mayerbrown.com)
MICHAEL RAYFIELD (*pro hac vice*)
(mrayfield@mayerbrown.com)
1221 Avenue of the Americas
New York, NY 10016
Telephone: (212) 506-2500
Facsimile: (212) 849-5589

COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MARK F. LAMBERT (197410) (mlambert@cooley.com)
ANGELA L. DUNNING (212047) (adunning@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendants PALMER LUCKEY
and OCULUS VR, LLC

(Additional counsel on signature block)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>  Plaintiff,<br><br>  vs.<br><br>PALMER LUCKEY and OCULUS VR, LLC.,<br><br>  Defendants. | Case No. 15-cv-02281 (WHA)<br><br>**DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 5, 2019<br>Time: 8:00 a.m.<br>Location: Courtroom 8, 19th Floor<br>Judge: Hon. William H. Alsup<br>Trial Date: Not Yet Set<br>Complaint Filed: May 20, 2015<br><br>[*Declaration of Michael Rayfield and Proposed Order filed concurrently herewith*] |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 4

    A.    Total Recall Technologies ............................................................... 4

    B.    Palmer Luckey And The Prototype Displays ................................... 5

    C.    The Oculus Rift ............................................................................... 6

    D.    Seidl's Refusal To Sue Luckey And Oculus ................................... 6

    E.    Igra's Complaint And Defendants' Motion To Dismiss .................... 9

    F.    This Court's Grant Of Summary Judgment ....................................... 10

    G.    Seidl's Failure To Ratify And This Court's Dismissal Of The Suit .................. 11

    H.    The Ninth Circuit's Decision And Remand Proceedings ................... 12

ARGUMENT ................................................................................................................. 13

I.    DEFENDANTS HAVE THE LEGAL RIGHT TO CHALLENGE IGRA'S
AUTHORITY AND TRT'S CAPACITY .......................................................... 14

    A.    Rule 9(a) Expressly Permits A Defendant To Challenge A Party's
Authority And Capacity To Sue ....................................................... 14

        1.    Defendants May Challenge Ron Igra's Authority To File Suit On
Behalf Of TRT Under Rule 9(a)(1)(B) ...................................... 15

        2.    Alternatively, TRT Lacked The Capacity To Sue Without The
Consent Of Both Partners .......................................................... 17

        3.    Defendants Properly Invoked Rule 9(a), Shifting The Burden To
Plaintiff To Demonstrate That The Suit Was Authorized ...................... 18

    B.    As A Matter Of Basic Fairness And Judicial Economy, This Court Has
The Inherent Power To Resolve Plaintiff's Authority And Capacity To
Sue ................................................................................................. 18

II.    THE COURT CORRECTLY HELD THAT THIS SUIT WAS
UNAUTHORIZED .......................................................................................... 20

III.    THE LAWSUIT WAS NOT RATIFIED AFTER THE FACT ............................ 21

    A.    This Court Correctly Held That Igra's Attempted Ratification Of The
Lawsuit Was Ineffective ................................................................. 22

    B.    The Complaint Could Not Be Revived By The Settlement Because All Of
Plaintiff's Claims Were Time-Barred By That Time .......................... 22

1     1.  The Statute Of Limitations Is Not Tolled During A Period When
        The Plaintiff Lacks Authority Or Capacity To Sue ................................. 24

2     2.  The Statutes Of Limitations Ran On All Claims Prior To The
        Hawaii Settlement ..................................................................................... 24

CONCLUSION ............................................................................................................. 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Align Tech., Inc. v. Bao Tran,*
  179 Cal. App. 4th 949 (2009) ............................................................24

*Am. Pipe & Constr. Co. v. Utah,*
  414 U.S. 538 (1974).........................................................................19

*Bank of New York Mellon v. Citibank, N.A.,*
  8 Cal. App. 5th 935, 956 (2017) .....................................................24

*CLD Constr., Inc. v. City of San Ramon,*
  120 Cal. App. 4th 1141 (2004) ...................................................15, 22

*Ctr. for Self-Improvement v. Lennar Corp.,*
  173 Cal. App. 4th 1543 (2009) ........................................................23

*Cuprite Mine Partners LLC v. Anderson,*
  809 F.3d 548 (9th Cir. 2015) ...........................................................13

*De Saracho v. Custom Food Mach., Inc.,*
  206 F.3d 874 (9th Cir. 2000) ..................................................13, 16, 17

*Deirmenjian v. Deutsche Bank, A.G.,*
  2006 WL 4749756 (C.D. Cal. Sept. 25, 2006) ................................17

*Delbon Radiology v. Turlock Diagnostic Center,*
  839 F. Supp. 1388 (E.D. Cal. 1993).............................................16, 17

*DKN Holdings LLC v. Faerber,*
  61 Cal. 4th 813 (2015) .....................................................................19

*Eash v. Riggins Trucking Inc.,*
  757 F.2d 557 (3d Cir. 1985).............................................................18

*Falk v. Children's Hosp. of Los Angeles,*
  237 Cal. App. 4th 1454 (2015) ........................................................24

*Farina Focaccia & Cucina Italiano, LLC v. 700 Valencia St. LLC,*
  2015 WL 4932640 (N.D. Cal. Aug. 18, 2015) ................................17

*Foothills of Fernley, LLC v. City of Fernley,*
  355 F. App'x 109 (9th Cir. 2009) .....................................................25

*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado,*
  200 Cal. App. 4th 1470 (2011) ....................................................23, 24

*Estate of Garcia-Vasquez v. Cty. Of San Diego*,
    2008 WL 4183913 (S.D. Cal. Sept. 9, 2008) ........................................................................18

*ITT Comm. Dev. Corp. v. Barton*,
    569 F.2d 1351 (5th Cir. 1978) ............................................................................................18

*Jacques Krign En Zoon v. Schrijver*,
    151 F. Supp. 955 (S.D.N.Y. 1957) ....................................................................................17

*Estate of Laffoon v. Christianson*,
    2011 WL 1743645 (E.D. Cal. Feb. 22, 2011) ........................................................14, 15, 17

*Leasequip, Inc. v. Dapeer*,
    103 Cal. App. 4th 394 (2002) .....................................................................................23, 24

*Leming v. Oilfields Trucking Co.*,
    44 Cal. 2d 343 (1955) .........................................................................................................21

*Link v. Wabash R. Co.*,
    370 U.S. 626 (1962) ...........................................................................................................18

*In re M.C. Prods.*,
    205 F.3d 1351 (9th Cir. 1999) ............................................................................................18

*Magana v. Commonwealth of N. Mariana Islands*,
    107 F.3d 1436 (9th Cir. 1997) ............................................................................................25

*Pina v. Horel*,
    2008 WL 6856590 (N.D. Cal. Mar. 7, 2008) .....................................................................18

*In re Raffin*,
    284 F. App'x 405 (9th Cir. 2008) ......................................................................................24

*Rodriguez v. Gen. Dynamics Armament & Tech. Prods., Inc.*,
    2013 WL 4603057 (D. Haw. Aug. 29, 2013) ....................................................................20

*Roth v. Moeller*,
    185 Cal. 415 (1921) ............................................................................................................21

*Smith v. Cimmet*,
    199 Cal. App. 4th 1381 (2011) ...................................................................................15, 23

*Snyder v. Cal. Ins. Guar. Ass'n*,
    229 Cal. App. 4th 1196 (2014) ..........................................................................................24

*Stacy v. Colvin*,
    825 F.3d 563 (9th Cir. 2016) .............................................................................................20

*Suever v. Connell*,
    2006 WL 3290404 (N.D. Cal. Nov. 13, 2006) ..............................................................4, 20

iv

*Total Recall Techs. v. Luckey*,
   731 F. App'x 706 (9th Cir. 2018) ...................................................................................... *passim*

*United States v. Osuna-Alvarez*,
   788 F.3d 1183 (9th Cir. 2015) ...............................................................................14, 15

*V&P Trading Co. v. United Charter, LLC*,
   212 Cal. App. 4th 126 ........................................................................................23, 24

*Welco Constr., Inc. v. Modulux, Inc.*,
   47 Cal. App. 3d 69 (1975) ................................................................................23, 24

**Other Authorities**

5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
   & PROCEDURE § 1292 (3d ed. 2017).............................................................14, 16, 18

RESTATEMENT (SECOND) OF AGENCY § 90 (1958) ......................................................23

1

**NOTICE OF MOTION & MOTION**

2   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3       PLEASE TAKE NOTICE THAT, on February 5, 2019, at 8:00 a.m., before the Honorable

4   William H. Alsup, defendants Palmer Luckey and Oculus VR, LLC will and hereby do move for

5   summary judgment on each of plaintiff's claims under Federal Rule of Civil Procedure 56.  Defendants

6   renew the motion for summary judgment filed on April 22, 2016 (Dkt. 135), which the Court granted in

7   its orders of June 16, 2016 (Dkt. 179) and March 9, 2017 (Dkt. 213).  Plaintiff appealed, and the Ninth

8   Circuit remanded for consideration of a limited set of issues related to defendants' motion.  *Total*

9   *Recall Techs. v. Luckey*, 731 F. App'x 706 (9th Cir. 2018).  This Court ordered defendants to file an

10  opening brief on those issues by January 10, 2019.  Dkt. 236.  Defendants file this renewed motion

11  pursuant to that order.

12      Defendants' motion is based on this notice of motion and motion; the memorandum of points

13  and authorities that follows; the pleadings, papers, and other documents on file in these actions; and

14  such other evidence and argument presented to the Court at or prior to any hearing in this matter.

15  Defendants request oral argument on their motion.

16

**STATEMENT OF RELIEF SOUGHT**

17      Defendants seek summary judgment on each of plaintiff's claims based on the following

18  grounds: (1) Ron Igra lacks authority to bring this action in a representative capacity on behalf of Total

19  Recall Technologies ("TRT") under Rule 9(a)(1); (2) TRT lacks capacity to bring this action under

20  Rule 9(a)(1); (3) plaintiff's attempted retroactive ratification of this lawsuit was invalid; and (4) even if

21  the attempted retroactive ratification was valid, the statute of limitations bars plaintiff's claims.

22

**INTRODUCTION**

23      The TRT partnership agreement provided that no lawsuit could be maintained without the

24  approval of both partners, Thomas Seidl and Ron Igra.  Igra filed this suit in TRT's name unilaterally,

25  without Seidl's consent.  Accordingly, this Court granted defendants' motion for summary judgment on

26  the ground that the suit was unauthorized.  Plaintiff appealed, and the Ninth Circuit remanded for this

27  Court to consider "in the first instance" several specific legal questions relating to plaintiff's authority

28  and capacity, while leaving the core of this Court's analysis undisturbed.  Defendants renew their

motion for summary judgment.  For the reasons set forth below and in the Court's prior opinions, the Court should reach the same result and enter judgment in favor of defendants.

This case is nothing more than a failed get-rich-quick scheme.  In spring 2011, Seidl and Igra formed TRT, a general partnership, to develop 3D cameras.  Seidl provided the know-how, and Igra supplied the money.  Seidl entered into an agreement with defendant Palmer Luckey in summer 2011 to develop a prototype for a head-mounted display, hoping it could be used to view footage from TRT's 3D video camera.  Igra contributed $798 for the parts.  Luckey built and sent Seidl one prototype in August 2011, which Seidl rejected, and one in May 2012, which Seidl accepted.  TRT never commercialized any headset.

By early 2012, Luckey had invented an entirely separate product called the Rift, a state-of-the-art headset that uses a head-mounted display panel, innovative lenses, and tracking systems designed to immerse the user in a video game environment.  Luckey co-founded defendant Oculus VR, LLC to commercialize the Rift.  Facebook acquired Oculus for more than $2 billion.

Igra told Seidl that he wanted to "get rich" off of Oculus's success by suing Luckey.  But Igra faced a serious obstacle:  The TRT partnership agreement required that both partners "agree on any action," and Seidl—the only partner who understood the technology and had interacted with Luckey—believed Igra's proposed suit was frivolous.  Seidl repeatedly told Igra: "don't sue Palmer"; "[d]on't go messing things up"; "he does not owe us on a legal level"; "[d]o not take any legal action against [P]almer."  Frustrated, Igra sued Seidl in Hawaii court in December 2014, alleging that Seidl had wrongfully "asserted his right to 'veto' any legal action by [TRT] to pursue claims against Luckey" and "continue[d] to refuse to authorize" the suit.  While that case was pending, Igra filed *this* suit, purportedly on behalf of TRT.  He claimed that the development of the Rift was a "breach of contract and wrongful exploitation of TRT property."

This Court granted defendants' motion for summary judgment on all claims, finding the record "clear" that "Seidl did not agree to commence this action," and that "Igra lacked authority" to commence or maintain it on his own.  Instead of dismissing the case, however, the Court gave Igra an opportunity to cure:  The case could proceed if (1) "*both* [partners] authorize and agree to the maintenance of this civil action in the name of [TRT]"; and (2) "*both* ratify all actions taken herein so

2

far."   Igra could not satisfy either condition.  Seidl steadfastly refused to authorize, much less ratify, the suit.  So Igra devised a new scheme that, he asserted, enabled him to pursue the action unilaterally on behalf of TRT.  Seidl and Igra agreed to a settlement of the Hawaii action whereby Seidl would withdraw from the TRT partnership (but retain all of its assets) and relinquish control over this lawsuit (but retain a 30 percent stake in any recovery).  This Court, however, concluded that this approach did not "come close" to "cur[ing] the authorization problem" and dismissed the case in March 2017.  The Court found that Seidl had "studiously refused" to approve the suit—on either a forward- or backward-looking basis—and had thus done nothing to "breathe life into a complaint that had been dead on arrival."   Igra's plan was merely "a clever smoke-and-mirrors work-around to protect Seidl from ratifying anything while creating an appearance that Igra now controls the partnership."

Plaintiff appealed, arguing that (1) defendants lacked "standing" to contest Igra's authority to sue in TRT's name and TRT's capacity to sue; (2) there was a genuine issue of material fact as to whether Seidl did in fact agree to sue; and (3) Igra retroactively ratified the lawsuit after becoming the sole TRT partner.  Plaintiff also challenged this Court's dismissal of two claims at the pleading stage.  The Ninth Circuit affirmed the Court's ruling on the pleadings, and partially reversed this Court's decision on the first of the three issues above, without disturbing this Court's rulings on the second and third issues.  *Total Recall Techs. v. Luckey*, 731 F. App'x 706 (9th Cir. 2018).  The Ninth Circuit laid out a three-step roadmap for this Court's analysis on remand:

1.      The court first held that federal rather than state law "govern[s] the procedural question of whether Defendants can challenge Plaintiff's authority to file this action," and remanded for this Court "to consider . . . in the first instance . . . whether the issue of a partner's authorization to sue on behalf of a partnership is one of 'capacity' within the meaning of Rule 9(a)(1)(A), or 'authority' within the meaning of Rule 9(a)(1)(B), or whether there is some other basis on which Defendants can raise the issue."  *Id.* at 707.  Both provisions apply:  Whether the case turns on Igra's "authority" to sue in TRT's name or TRT's "capacity" to sue without the consent of both partners, Rule 9(a) and Ninth Circuit precedent expressly permit a defendant to challenge a plaintiff's legal ability to bring a lawsuit.  And in any event, this Court has the inherent power to prevent an unauthorized lawsuit from consuming enormous judicial resources—as this suit has done, and as it will continue to do if it is not dismissed.

1    Any other rule would mean that a partner could sit back and await the outcome of a suit before deciding

2    whether to contest the partnership's authority to sue in the first place.  Indeed, the Court has long

3    suspected that Seidl was engaging in this tactic, and found it "unacceptable."  *See* pp. 19 *infra*.

4         2.     The Ninth Circuit then stated that if this Court concludes that "a partner's authorization

5    to sue on behalf of a partnership is an issue of 'capacity' or 'authority' under Rule 9(a), then it should

6    determine whether Plaintiff offered facts sufficient to establish its authority or capacity to sue," as Rule

7    9(a) requires.  *Total Recall*, 731 F. App'x at 707.  There is no dispute that this is a substantive question

8    governed by California law, and the Court's ruling to that effect was not disturbed on appeal.  This

9    Court correctly held that there is no genuine dispute of fact on this issue.  Seidl's last word on the

10   subject before Igra filed the lawsuit was an unequivocal veto:  "Do not take any legal action against

11   [P]almer."  And despite many opportunities in the two years of litigation that followed, Seidl never

12   wavered from that position.  Igra therefore lacked authority to sue in TRT's name.  And without the

13   agreement of both partners, TRT lacked the capacity to sue.  Igra challenged that ruling on appeal, but

14   the Ninth Circuit left intact the Court's determinations about the factual record; they are law of the

15   case.  *Suever v. Connell*, 2006 WL 3290404, at *1-2 (N.D. Cal. Nov. 13, 2006) ("The Court of Appeals

16   provided a reasoned opinion explaining precisely where this Court had erred . . . [and] leaving open

17   some questions for further consideration on remand. . . .  Even though the Court's prior order in this

18   action has been 'vacated,' to the extent that nothing in the Ninth Circuit's opinion or other changed

19   circumstances call for a different result, the result will be the same.").

20        3.     Finally, the Ninth Circuit directed the Court to consider whether, "even if Plaintiff's

21   attempted retroactive ratification was valid, the statute of limitations had already expired on Plaintiff's

22   claims."  *Total Recall*, 731 F. App'x at 707.  The Court has already held that Igra's attempted

23   ratification was *not* valid.  Only Seidl, the dissenting partner, could have cured the defect in the *original*

24   invalid filing and the invalid proceedings that followed.  The Ninth Circuit did not adopt Igra's contrary

25   position on appeal.  It did, however, suggest an alternative ground for dismissal that defendants had

26   argued in this Court and raised on appeal: that even if Igra's attempted ratification *was* valid, it came

27   too late.  Under California law, the statute of limitations is not tolled while a plaintiff lacks authority or

28   capacity to sue.  It is undisputed that, by the time of the Hawaii settlement, the statute of limitations had

run on all of Igra's claims. As discussed below, the latest date that the statute of limitations could have run on any of Igra's claims was September 7, 2016, over a month *before* Igra claims to have reached a settlement of the Hawaii action in principle (October 14, 2016). The defect in the complaint *could not* be cured at that stage; this case remains unauthorized.

<h3 style="text-align:center">BACKGROUND[1]</h3>

### A.   Total Recall Technologies

In 2011, Seidl and Igra formed TRT in Hawaii for the purpose of developing 3D video technology. SAC (Dkt. 118) ¶¶ 2-3, 9-10. As Igra has acknowledged, the partnership agreement required both partners to agree on any action undertaken by the partnership:

> Thomas Seidl or Ron Igra has the right to Vito [sic]. This means that *for any decision regarding the company Ron Igra and Thomas Seidl have to agree on any action* with the exception of an event laid out in point 20.[2]

Ex. A at 1908 (emphasis added); *see also* Ex. B at 67 (Igra testifying that "[w]ith the exception of a buy-out, we need to agree on decisions").

### B.   Palmer Luckey And The Prototype Displays

Seidl contacted Palmer Luckey about developing a prototype head-mounted display that could be used to view footage from Seidl's 3D camera. In the summer of 2011, the two entered into a contract, which did not mention TRT.[3] In August 2011, Luckey shipped to Seidl a prototype with a single display panel and two lenses per eye. Seidl sent it back, saying that a single-panel headset was of "no use" to him and instructing Luckey to use the parts to make a multi-panel headset. Ex. D at 919; *see also* SAC ¶ 20. Luckey did so and sent the new headset to Seidl in May 2012. This second headset featured no fewer than four display panels and six lenses. Seidl accepted it, saying that it "looks pretty fierce. Nice one." Ex. E at 140132. TRT never launched a product using either design. MTD Order

---

[1]   All exhibits are attached to the Declaration of Michael Rayfield.

[2]   Paragraph 20 relates to partner buy-outs, which are irrelevant here.

[3]   The contract required Luckey to maintain a defined set of "Confidential Information" about the prototype in the "strictest confidence for the sole and exclusive benefit of [Seidl]." Ex. C at 147687. An exclusivity clause provided that Luckey "shall not aid any other person or entity in the design of a Head Mounted Display other than [Seidl]. Unless within a twelve month period from 1st July 2011 [Luckey] has not received a minimum payment in royalties of 10,000 US dollars by [Seidl]." *Id.* at 147688.

(Dkt. 82) at 4.  And Luckey never received any royalty payments under the contract.  *Id.* at 8-9.

### C.     The Oculus Rift

By early 2012, Luckey had designed his own virtual-reality display, the Rift, which featured a single head-mounted display panel, one lens per eye, sensors, and distortion-correction software optimized for video gaming.  FAC (Dkt. 40) ¶¶ 24-27.  In May 2012, Luckey sent a prototype of the Rift to John Carmack, a videogame developer, who presented it at a public showcase.  SAC ¶¶ 26-27, 30.  Around the same time, Luckey registered Oculus LLC, which later became defendant Oculus VR, LLC ("Oculus").  MSJ Op. (Dkt. 179) at 2.

### D.     Seidl's Refusal To Sue Luckey And Oculus

In December 2013, after news outlets reported on Oculus's substantial financing (MSJ Op. at 2), Igra sensed an opportunity and asked Seidl for a copy of his agreement with Luckey.  Seidl complied via the following email:

> Here is the [P]almer [Luckey] contract.
>
> DO NOT CONTACT HIM OR START ANY LEGAL ACTION WITHOUT TALKING TO ME FIRST.
>
> We need him.  Much more useful as an ally.

Ex. F at 1060.

Two months later, Seidl repeated this admonition over Skype:

> [Igra]:  Hi Tom.  As I mentioned on Friday, I need to talk to you about our case with Palmer Luckey. . . .  I'm going to give you until 5 pm tomorrow to respond to me and if I don't get your cooperation, I will take legal action against you as well.
>
> [Seidl]:  Sure take legal action aghainst [sic] me and see what happens.  [W]hat are you going to sue me for? . . .  ***[A]s I told you don't sue [P]almer.***

Ex. G at 16038 (emphasis added).

In March 2014, Facebook announced that it would acquire Oculus for over $2 billion.  SAC ¶ 35.  Igra sent Seidl a Skype message:  "I want to go after [Luckey] right away. . . .  If you cooperate . . . we can both get rich."  Ex. G at 16041.  Seidl responded:  "[M]y views on taking [P]almer to court are the s[a]me as before"; "it makes bad financial sense."  *Id.* at 16042.

Igra nevertheless retained Robert Stone of Quinn Emanuel Urquhart & Sullivan LLP to advise on a potential lawsuit against Luckey.  MSJ Op. at 3.  In July 2014, Igra emailed Seidl again:

> I hope you will cooperate with me on this and *withdraw your veto* and give us your support . . . .
>
> The way I see it is that you have . . . 2 options:
>
> 1.  If you cooperate with us on this case against Palmer we can get rich from a damage settlement and I promise to make it worthwhile for you in the future business we will be doing together.
>
> 2.  You choose not to cooperate—in which case I will go to great effort to get what I feel belongs to me and we will both waste time and money fighting against each other in court and veto actions.

Ex. H at 8658 (emphasis added). Unmoved by Igra's "get rich" proposal, and dubious about the basis for any suit, Seidl responded:

> My thoughts on the vito [sic] have not changed. . . .
>
> *You said Palmer breached the contract, where was that? You said Palmer stole our ideas, which ideas were those?*

*Id.* at 8657 (emphasis added).

The next month, Seidl reiterated his position over Skype:

> [Igra]: Don't you think you should have heard all the facts about our case before making a decision to veto it?
>
> [Seidl]: I already heard all the facts from the many conference calls I did with your attorney. They have two claims . . . A) We had an exclusivity contract, *which your own attorney says we did not* when I talked to him, B) Gave them confidential information, *which we did not*, be specific. If that's the best you got, then *we have nothing* and have to work using Palmer as a friend not someone we can s[ue]. . . . You carry on th[is] way with threatening Palmer you will burn the one advantage we have from dealing with Palmer, that he feels he owes us on a moral level. ***Because he does not owe us on a legal level.*** *Don't go messing things up.*

Ex. I at 8651 (emphases added).

In December 2014, Igra sued Seidl in Hawaii state court, seeking either specific performance compelling Seidl to authorize a suit against Luckey or divestment of Seidl's veto power. Ex. J. Igra alleged that Seidl had "asserted his right to 'veto' any legal action by [TRT] to pursue claims against Luckey," and that he "ha[d] and continue[d] to refuse to authorize [Igra] . . . to pursue [TRT's] legal claims." *Id.* ¶¶ 31, 37. Seidl filed an answer with generalized denials of these claims. Ex. K ¶¶ 20, 25 ("Answering the allegations contained in [these] paragraphs . . . , Seidl denies the allegations.").

The partners met again on January 18. MSJ Op. at 4-5. Igra wanted to sue Luckey and Oculus unless Facebook made an offer to acquire TRT within two weeks. Seidl—continuing to believe that any suit would be baseless—wanted to see whether Luckey would arrange a meeting in which the

partners could demonstrate TRT's camera technology to Facebook.  *Id.*  That night, Seidl sent Igra "minutes" of the meeting, stating that Seidl would write a letter to Luckey seeking to arrange a demonstration while preserving TRT's "legal rights."  Ex. L at 3847.

Igra responded the following morning with a correction:  "If we do not receive a significant offer [to acquire TRT] within 2 weeks you agreed to cooperate with the lawsuit against Palmer/Oculus."  *Id.* at 3846.  Seidl immediately responded:

> About the 2 weeks, let's see how fast we get to [Facebook CEO Mark Z]uckerberg. . . .  We can play by ear.  But I assure you.  If we get[] *nothing* from Palmer *prior to the end date to file*.  I will file.  I cant believe you think I am that stupid.  Is all about how [P]almer responds.  If we get *zero feedback* from Palmer after 2 weeks we go there lawyered up to [F]acebook.  We have to see how fast to [Z]uckerberg.  That is the goal.

*Id.* at 3845 (emphases added).  Seidl thus agreed with Igra that a suit might someday be an option, but *disagreed* on the conditions: he agreed to consider suing only if the parties got "nothing" from Luckey, whereas Igra wanted to sue if they did not receive a "significant offer" within two weeks.

Later that day, Igra emailed back:  "We agreed to wait 2 weeks for a response and there will be no extensions unless there is an offer or a very positive sign of getting one.  Let us not forget that we can still negotiate a buyout after the complaint has been filed and our leverage will also be much better."  *Id.*  Seidl replied:  "Happy with that.  If *no positive signs* in 2 weeks of contacting [Luckey]."  *Id.* at 3844 (emphasis added).  Seidl also noted that Igra had "agreed to go and see an independent attorney to evaluate the case."  Ex. M at 8047.  "You should do that," Seidl said, "before making any legal play towards [P]almer."  *Id.*

Two days later, Igra emailed Seidl that he was "[v]ery disappointed to see that [Seidl had] zero intention of cooperating with . . . the lawsuit."  Ex. N at 2330.  The next day, he wrote Seidl that he had "spent all last night awake in bed thinking about [the] meeting" and "concluded that there [was] no intent on [Seidl's] part to cooperate in the case against Palmer."  *Id.* at 2329.

In February 2015, both Igra and Seidl contacted Luckey about arranging a demonstration of TRT's camera technology.  MSJ Op. at 6.  On February 22, Seidl reiterated to Igra that Seidl's priority was a business deal with Luckey:  "We don't need legal action against [P]almer for a deal. . . .  Stop wasting my time."  Ex. O at 3737.  Seidl then wrote:  "Again.  ***Do not take any legal action against [P]almer***."  Ex. P (emphasis added).  Igra acknowledged Seidl's veto:  "[Y]our refusal to cooperate in

8

1    making our legal claims against Luckey [is] stopping the partnership from getting what it is rightfully

2    due." Ex. O at 3736. That was the partners' last discussion about the lawsuit before Igra filed it.

3        On February 24, 2015, Seidl asked Luckey to sign a letter—which Igra had demanded—about

4    the planned camera demonstration that would acknowledge TRT's reservation of its right to sue under

5    the 2011 contract between Seidl and Luckey. Ex. Q. Luckey instead sent Igra and Seidl the standard

6    form Oculus nondisclosure agreement. Ex. R at 1934. Igra insisted that Luckey sign a rider stating that

7    the planned demonstration would not waive TRT's right to any claim against Luckey or Oculus. *Id.*

8    Luckey declined, ending the discussions. Ex. S at 1932.

9        **E.    Igra's Complaint And Defendants' Motion To Dismiss**

10        In May 2015, Igra commenced this action in TRT's name. Compl. (Dkt. 1).[4] The complaint

11    alleged that Luckey breached his contract with Seidl, and committed various torts, by disclosing

12    unspecified details about the original prototype to third parties, "design[ing] and commercializ[ing]"

13    the prototype, and failing to return it to TRT. SAC ¶ 22; FAC ¶ 22.

14        Shortly after learning about the lawsuit, Seidl told Luckey that the suit was filed "without my

15    knowledge or permission . . . . What [Igra] has done seems to be illegal to me. I have not signed

16    anything or let him take action against you." Ex. T at 113302. Seidl reiterated at his deposition in this

17    case that Igra filed the suit without his consent. Ex. U at 22 ("Q. Did you ever tell Ron Igra that you

18    agreed [TRT] could file a complaint against Palmer Luckey and Oculus VR? . . . [A]. No."); *Id.* at 29

19    ("I believed [the lawsuit] to be illegal, and I stand by that."); *Id.* at 30 ("[T]here was a veto against Igra

20    at the time, preventing him from filing the case").

21        Defendants moved to dismiss under Rule 12(b)(6). Dkt. 48. This Court found Igra's contract

22    claim "barely" "plausible" but permitted it to move past the pleading stage. MTD Op. at 9. The Court

23    dismissed Igra's claims for conversion and breach of the implied covenant with prejudice, and found

24    that the constructive-fraud and unfair-competition claims were insufficiently pleaded. *Id.* at 10-17.

25    Igra then filed a second amended complaint, re-alleging the fraud and unfair-competition claims.

26    

27    ---
     [4]    Because Seidl never authorized the lawsuit on behalf of TRT, we refer to Igra when
     discussing the plaintiff here—as this Court has done in prior orders. *See, e.g.*, Dismissal Op.

28    (Dkt. 213) at 6, 8.

Defendants' answer asserted that "TRT is without authority or capacity to pursue this lawsuit" because the "agreement of both partners is required with respect to actions taken by the partnership" and "Seidl has not consented or agreed." Am. Answer (Dkt. 129) ¶ 2; *see also id.* ¶¶ 41, 50, 55.

### F.   This Court's Grant Of Summary Judgment

In April 2016, this Court issued an order to show cause expressing "concerns that [TRT] lacks standing to assert any claims in this case" because of Seidl's refusal to authorize the action. First OSC (Dkt. 132).[5]  The Court ordered the parties to show cause why the case should not be stayed "until such time as Seidl files herein an executed ratification of the complaint and all actions taken by counsel herein (as if approved from the outset)." *Id.* at 2.

Defendants then moved for summary judgment, arguing that the lawsuit was unauthorized because it was filed without Seidl's permission. Dkt. 174.  Igra conceded that he was "unable to obtain a declaration from Mr. Seidl" ratifying the suit (Pl. Resp. to First OSC (Dkt. 147) at 2), but contended that (a) Seidl agreed to sue during his emails with Igra in January 2015; and (b) defendants lacked "standing" to challenge TRT's authority (Dkt. 178).  Defendants replied that they had the right to challenge plaintiff's authority and capacity under Federal Rule of Civil Procedure 9(a), and that Seidl had never agreed to sue. Dkt. 176.  The Court stayed the case except for proceedings related to the summary judgment motion. Order Partially Staying Case (Dkt. 149).

On June 6, 2016, the Court conditionally granted summary judgment to defendants. MSJ Op. (Dkt. 179).  The Court analyzed Igra's "standing" argument under California law and concluded that defendants had the right to raise the issue:  "Those outside the partnership have a legitimate need to be able to know who can act for and bind a partnership." *Id.* at 11.  The Court then found that the record was "clear" that "Seidl did not agree to commence this action" and "maintains his objection today." *Id.* at 8-9.  Thus, "Igra lacked authority to cause TRT to commence or to continue this litigation." *Id.* at 10.  Instead of dismissing the case immediately, the Court gave plaintiff "an opportunity to cure the

---

[5]      The parties had advised the Court that the Hawaii action would go to trial in May 2016. The Court permitted this suit to progress, "thinking that the authorization issue would be resolved before an inordinate investment of time was made." MSJ Op. at 7.  But Seidl and Igra then stipulated to postpone the Hawaii trial until December—beyond the scheduled September trial date for this action—prompting the First OSC. *Id.*

authorization problem" (*id.* at 14-15):

> [T]he stay . . . will remain in effect (i) until such time as Ron Igra and Thomas Seidl . . . file [ ] sworn declarations herein affirmatively and without qualification stating that both authorize and agree to the maintenance of this civil action in the name of [TRT] against [defendants], that both ratify all actions taken herein so far on behalf of [TRT], and that both consent to continued prosecution of the case by [Quinn], *or* (ii) until such time as a final order arrives from the Hawaii courts to the same legal effect.

## G.    Seidl's Failure To Ratify And This Court's Dismissal Of The Suit

In late 2016, Seidl and Igra settled the Hawaii action.  Seidl's settlement conference statement reiterated his opposition to this lawsuit, citing (a) Seidl's "concerns about the likelihood of success of a case against Mr. Luckey"; (b) his "reasonable business reasons for not agreeing to file suit"; and (c) the fact that Igra had retained Quinn.  Ex. V at 3-4.  On October 14, 2016, Igra and Seidl attended a settlement conference in Hawaii court and reached a resolution in principle, which was reduced to writing on November 28.  Ex. W at 1; Ex. X at 5.  On December 5, the parties stipulated to dismissal of the Hawaii action.  Ex. Y.

The settlement provided that Seidl would "withdraw from the TRT partnership," effective October 14, 2016, and would "have no control over TRT or any decision-making rights with respect to TRT."  Ex. Z at 10003.  The instant "California Lawsuit" against Luckey and Oculus would "remain the property of TRT" and Seidl would "have no right to control any aspect of [this suit]."  *Id.*  The agreement also required Seidl to testify in this case in a manner "generally consistent with his [deposition] testimony," to "reasonably cooperate with counsel for TRT," and to refrain from "communicat[ing] with or otherwise cooperat[ing] with counsel for Luckey or Oculus."  *Id.* at 10004.  In return, Igra agreed (1) to pay Seidl 30 percent of any "recovery as a result of the California Lawsuit"; (2) "to convey to Seidl all [intellectual property] . . . relating in any way . . . to TRT"; (3) to "assign to Seidl all other tangible and intangible assets of TRT" (except for the rights to this suit and the TRT name); and (4) to "defend and indemnify Seidl for any fees, costs, . . . or other liability arising out of the California Lawsuit."  *Id.* at 10004, 10006.

Seidl concurrently executed a declaration noting his prior withdrawal from TRT and his "understanding" that he was therefore unable to control this suit.  Ex. AA at 10028.  But he provided no

1    ratification of the suit, either on a backward- or forward-looking basis.  Nor did his declaration mention

2    his financial stake in the case or his ownership of TRT assets.

3           In December 2016, upon learning of the stipulated dismissal of the Hawaii action, this Court

4    issued a second order to show cause requiring the parties to submit sworn declarations why the case

5    should not be dismissed.  Second OSC (Dkt. 180).  In response, Igra filed Seidl's declaration and one of

6    his own.  Ex. W.[6]  Finding that Seidl "didn't stand behind a thing" (Dkt. 196 at 5), in January 2017 this

7    Court issued a third order to show cause why the case should not be dismissed (Dkt. 192).   Igra

8    conceded that Seidl never ratified the lawsuit and that TRT never complied with the Court's summary

9    judgment ruling, but argued that the settlement rendered "unfounded" the Court's "concerns about

10   Seidl's ratification."   Dkt. 204 at 2, 11-12.   The defendants responded that the case remained

11   unauthorized because Seidl failed to ratify the suit and that Igra's claims were now time-barred in any

12   event.  Dkt. 206 at 12-16, 22-25.

13          The Court dismissed the action in March 2017, concluding that because Seidl had not "come

14   close" to ratifying the case, the suit "remained improper from the outset."  Dismissal Op. (Dkt. 213)

15   at 6.   The Court found Igra's approach to be nothing more than "a clever smoke-and-mirrors

16   work-around to protect Seidl from ratifying anything while creating an appearance that Igra now

17   controls the partnership."  *Id.* at 7.  It "d[id] nothing to carry us back to the moment in time of the filing

18   of the original complaint to fix the defect that plagued this action from the start."  *Id.*  The terms of the

19   settlement created additional problems: "Seidl retain[ed] a thirty percent stake in any recovery" while

20   avoiding any exposure "to the risk of liability for costs and possible sanctions."  *Id.* at 6-7.  Because

21   "Seidl ha[d] followed one fixed star—give no blessings whatsoever to this lawsuit"—the action could

22   not proceed further.  *Id.* at 8.

23          **H.      The Ninth Circuit's Decision And Remand Proceedings**

24          Igra appealed, contesting this Court's decision on the authority/capacity issues and its dismissal

25   of his claims for conversion and breach of the implied covenant of good faith and fair dealing.  The

26

27   [6]      Igra's declaration used the exact ratification language that the district court had
     demanded (Ex. W)—underscoring that Igra understood what was needed but failed to secure the
28   required declaration from Seidl.

Ninth Circuit "affirmed in part" and "reversed and remanded in part." *Total Recall*, 731 F. App'x at

708. It held that this Court "properly dismissed" the two claims on the pleadings. *Id.* at 707. As to the

authority/capacity issue, the court of appeals issued the following decision and directions (*id.*):

> The district court erred in concluding that state law governed the procedural question of whether Defendants can challenge Plaintiff's authority to file this action. *See Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015). We remand for the district court to consider this question in the first instance under federal law, including the possible applicability of either Federal Rule of Civil Procedure 9(a)(1)(A) or 9(a)(1)(B). *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000). Specifically, the district court should consider whether the issue of a partner's authorization to sue on behalf of a partnership is one of 'capacity' within the meaning of Rule 9(a)(1)(A), or 'authority' within the meaning of Rule 9(a)(1)(B), or whether there is some other basis on which Defendants can raise the issue. If the district court concludes that a partner's authorization to sue on behalf of a partnership is an issue of 'capacity' or 'authority' under Rule 9(a), then it should determine whether Plaintiff offered facts sufficient to establish its authority or capacity to sue. The district court should also consider whether, even if Defendants could raise the issue, and even if Plaintiff's attempted retroactive ratification was valid, the statute of limitations had already expired on Plaintiff's claims.

This Court held a case management conference on December 13, 2018. It then issued an order

directing defendants to file their "dispositive motion for the threshold Rule 9(a) issue . . . by January

10, 2019," and directing plaintiff to respond "by January 24, 2019." Dkt. 236. The Court stated that

"[b]riefing shall be limited to the threshold issue our court of appeals mandated the undersigned judge

to consider." *Id.*

## ARGUMENT

### THE COURT SHOULD GRANT SUMMARY JUDGMENT IN DEFENDANTS' FAVOR BECAUSE PLAINTIFF LACKS AUTHORITY AND CAPACITY TO SUE.

This Court should grant summary judgment in defendants' favor.[7] First, defendants have the

right to challenge Igra's authority to sue and TRT's capacity to sue, both under Rule 9(a) and as a

matter of this Court's inherent discretion. Second, as this Court has already held, plaintiff failed to

offer facts sufficient to establish its authority or capacity to sue; the action was unauthorized from the

start because Seidl did not agree to it. Third, Igra's attempt to ratify the suit retroactively was both

ineffectual and untimely.

---

[7]      Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I.   DEFENDANTS HAVE THE LEGAL RIGHT TO CHALLENGE IGRA'S AUTHORITY AND TRT'S CAPACITY.

The procedural question of whether defendants may challenge plaintiff's authority or capacity to sue is governed by federal law.  *Total Recall*, 731 F. App'x at 707.  Rule 9(a) grants defendants an express right to challenge both a partner's authority to sue in the name of the partnership and a partnership's capacity to bring suit in violation of its partnership agreement.  And independent of Rule 9(a), a federal court has the inherent power to resolve this question as a matter of basic fairness and judicial efficiency.

### A.   Rule 9(a) Expressly Permits A Defendant To Challenge A Party's Authority And Capacity To Sue.

Rule 9(a) provides as follows:

(a) **Capacity or Authority to Sue; Legal Existence.**

> (1) ***In General.***  Except when required to show that the court has jurisdiction, a pleading need not allege:
>
>> (A) a party's capacity to sue or be sued;
>>
>> (B) a party's authority to sue or be sued in a representative capacity; or
>>
>> (C) the legal existence of an organized association of persons that is made a party.
>
> (2) ***Raising Those Issues.***  To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

Thus, Rule 9(a) expressly permits a defendant to challenge the plaintiff's "authority to sue or be sued in a representative capacity," or its "capacity to sue or be sued," by making a "specific denial" of such authority or capacity.  "[I]f a litigant properly raises [the] issue, . . . the party-opponent must offer facts establishing its capacity [or authority] to sue."   5A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1292 (3d ed. 2018).

The Ninth Circuit directed this Court to consider whether the issue in this case relates to authority or capacity, two closely related concepts that bear on a plaintiff's ability to sue.  *Total Recall*, 731 F. App'x at 707.  "Authority . . . is the right to exercise power on behalf of [a] represented entity," whereas "capacity . . . refers to the qualification of a party to litigate in court."  FEDERAL PRACTICE & PROCEDURE § 1292; *see also United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185 (9th Cir. 2015) (defining "authority" as "[t]he right or permission to act legally on another's behalf"); *Estate of Laffoon*

14

*v. Christianson*, 2011 WL 1743645, at *1 (E.D. Cal. Feb. 22, 2011) ("'Capacity' refers to a party's personal right to litigate in federal court.").[8]   This motion challenges Igra's authority to sue in TRT's name without Seidl's consent, and therefore falls squarely within the scope of Rule 9(a)(1)(B).  In the alternative, however, this motion can also be viewed as a challenge to TRT's capacity to sue without the agreement of both partners under Rule 9(a)(1)(A).  Either way, Rule 9(a) permits defendants to raise this challenge.

### 1.   Defendants May Challenge Ron Igra's Authority To File Suit On Behalf Of TRT Under Rule 9(a)(1)(B).

Defendants' challenge to Igra's authority is properly raised under Rule 9(a)(1)(B):  When Igra filed this lawsuit over Seidl's clear objection, he did so without the authority to "sue . . . in a representative capacity."  By filing this lawsuit in TRT's name, Igra purported to represent TRT and obtain relief for TRT pursuant to the contract between Seidl and Luckey.  But as discussed above, the partnership agreement provided that "Ron Igra and Thomas Seidl have to agree on any action"— including a lawsuit—taken by the partnership.  Ex. A at 1908.  Because Seidl did not agree to sue, Igra lacked "permission to act legally on [TRT's] behalf."  *Osuna-Alvarez*, 788 F.3d at 1185.

In the joint case management statement ("JCMS") filed last month, Igra argued that "Rule 9(a)(1)(B) has no application here" because TRT "is not suing in a representative capacity" but rather "in its own name."  JCMS (Dkt. 232) at 7.  He contends that Rule 9(a)(1)(B) is limited to "situations where someone is suing on behalf of *another* person—for instance, a guardian filing in his or her own name but seeking to represent the actual interests of another, such as a child, or estate"—and that "Total Recall . . . is not . . . a trustee or guardian for another person's interest."  *Id.*  This argument is meritless for several reasons.

First, Igra misses the point:  Defendants are challenging *Igra's* authority to sue, not TRT's.  Because Igra did not obtain Seidl's permission to sue, he did not have authority to file the lawsuit in TRT's name or on behalf of anyone other than himself.  And if Igra *had* sued in his own name,

---

[8]     California courts often use these terms interchangeably.  *See, e.g.*, *Smith v. Cimmet*, 199 Cal. App. 4th 1381, 1387 (2011) ("[Plaintiff] lacks capacity to sue in California because his authority does not extend beyond [Oregon]." (internal quotation marks omitted)); *CLD Constr., Inc. v. City of San Ramon*, 120 Cal. App. 4th 1141, 1150 (2004) (defining "capacity" as the "legal authority [ ] to sue").

1  defendants would have been able to defeat that suit easily; Igra did not have a contract with Luckey, so
2  he has no individual claim.  The result should not be any different merely because Igra unilaterally put
3  TRT's name on the complaint.

4      Second, Igra's proposed limitation finds no basis in the text of Rule 9 or any authorities
5  applying it.  That is because it makes no sense:  Igra does not explain *why* Rule 9(a)(1)(B) would
6  permit a defendant to challenge a trustee's authority to sue in the name of a trust, but not a partner's
7  authority to sue in the name of a partnership.  In either situation, the defendant is challenging the power
8  of one legal person to sue in the name of another, and it certainly is no more intrusive to ask that
9  question of a partner than it is to ask it of a trustee; both are fiduciaries of another entity.  Indeed, the
10  Wright & Miller treatise expressly includes "partnership[s]" among the entities covered by Rule 9(a).
11  FEDERAL PRACTICE & PROCEDURE § 1292 ("Under [Rule 9(a)], the fact that a plaintiff . . . is
12  participating in the action as a corporation, *partnership*, administrator, guardian, [or] trustee . . . need
13  not be pleaded." (emphasis added)).

14      Third, Igra's cramped reading of Rule 9(a)(1)(B) is foreclosed by the Ninth Circuit's decision in
15  *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874 (9th Cir. 2000), which the court of appeals
16  cited with approval in its remand decision.  *See* 731 F. App'x at 707.  In *De Saracho*, minority
17  shareholders in a closely-held corporation sued a number of defendants, including another minority
18  shareholder and various outsiders.  The suit was filed in the name of the corporation.  The defendants
19  argued that the plaintiff lacked authority to sue without the consent of its board.  206 F.3d at 876-77.
20  The Ninth Circuit recognized that the "defendants" had the right to make that argument under Rule
21  9(a)(1)(B) *even though the suit had been brought in the plaintiff corporation's name*:  "A defendant
22  m[ay] challenge a plaintiff's authority to sue by making a 'specific negative averment.'"  *Id.* at 878.
23  Critically, in so holding, the court of appeals did not distinguish between the defendant who held shares
24  in the corporation and those who were complete outsiders.  *See id.* at 877-78.  *De Saracho* thus stands
25  for the proposition that Rule 9(a) permits an outside defendant to challenge the authority of a
26  shareholder or partner to bring suit in the name of the corporation or partnership.[9]

---

27  [9]     As he did in the earlier summary judgment proceedings, Igra will likely rely on a single
   federal case in support of his position: *Delbon Radiology v. Turlock Diagnostic Ctr.*, 839
28  F. Supp. 1388 (E.D. Cal. 1993).  This Court rightly concluded that *Delbon* does not help Igra.

## 2. Alternatively, TRT Lacked The Capacity To Sue Without The Consent Of Both Partners.

Defendants' motion is also proper under Rule 9(a)(1)(A) as a challenge to TRT's capacity to sue without the consent of both partners.  TRT has no "right to litigate [this case] in federal court" (*Estate of Laffoon*, 2011 WL 1743645, at *1), because any action by TRT required the consent of both partners.  *See, e.g.*, *Farina Focaccia & Cucina Italiano, LLC v. 700 Valencia St. LLC*, 2015 WL 4932640, at *5 (N.D. Cal. Aug. 18, 2015) (acknowledging defendant's ability to "raise the issue of capacity to sue . . . 'by a specific denial,'" but holding that plaintiff had capacity under state law).

Indeed, Rule 9(a)(1)(A) has been applied directly in a challenge to a partnership's capacity.  In *Jacques Krign En Zoon v. Schrijver*, 151 F. Supp. 955 (S.D.N.Y. 1957), the defendant moved to dismiss a case brought by a limited partnership for lack of capacity, arguing that the managing partners of the plaintiff were deceased.  *Id.* at 956.  The court found that it could not resolve this issue based on the complaint, but that the defendant could challenge the plaintiff's "capacity to sue . . . in his answer as provided by Rule 9(a) of the Federal Rules of Civil Procedure."  *Id.*  More recently, a court in this Circuit quoted *Jacques* with approval in requiring a group of defendants to raise a capacity challenge through a "specific negative averment" under Rule 9(a), rather than through a motion to dismiss.  *Deirmenjian v. Deutsche Bank, A.G.*, 2006 WL 4749756, at *30 (C.D. Cal. Sept. 25, 2006).

In the JCMS (at 7), Igra argued that "[t]here is no dispute about Total Recall's capacity—it is a Hawaii partnership with every right to sue and be sued."  Instead, he argues, defendants seek to challenge Total Recall's "internal management authority."  *Id.*  Once again, Igra misses the point.  Defendants do not seek to meddle in TRT's management, nor do they dispute that partnerships generally have the ability to sue.  Defendants' argument is that TRT lacked the capacity to bring *this* lawsuit because Seidl did not consent to it.  It is undisputed that under TRT's "internal management" structure, either partner had the right to veto the lawsuit.  The question here is whether, in the face of Seidl's veto, TRT could bring this lawsuit.  It could not.

---

MSJ Op. at 12-13.  The decision neither addressed Rule 9(a) nor cited any authority other than a treatise (which itself now cites only *Delbon*).  To the extent *Delbon* was ever good law, it has been abrogated by *De Saracho*.  And in any event, *Delbon* is distinguishable:  "Unlike the dissenting partners in *Delbon*, Seidl has not been named as a party herein and he has not released claims against [the] defendants."  *Id.* at 13 (emphasis omitted).

### 3. Defendants Properly Invoked Rule 9(a), Shifting The Burden To Plaintiff To Demonstrate That The Suit Was Authorized.

Defendants raised these issues in precisely the manner contemplated by Rule 9(a): Their answer asserted plaintiff's lack of authority and capacity throughout. Am. Answer ¶¶ 2, 41, 50, 55, Aff. Defenses Nos. 14-15. Defendants then challenged Igra's authority, and TRT's capacity, in their motion for summary judgment. Dkt. 174. Nothing more was required; once defendants "properly rais[ed]" the issue, plaintiff had to "offer facts" establishing that this suit was authorized (FEDERAL PRACTICE & PROCEDURE § 1292), and this Court was obliged to, and did, evaluate those facts and resolve the question.

### B. As A Matter Of Basic Fairness And Judicial Economy, This Court Has The Inherent Power To Resolve Plaintiff's Authority And Capacity To Sue.

Even apart from Rule 9(a), this Court has the inherent power to prevent an unauthorized lawsuit from consuming extensive judicial and party resources; any other rule would be grossly inefficient and unfair. It is well established that there is "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962); *see also In re M.C. Prods.*, 205 F.3d 1351 (9th Cir. 1999) ("a federal district court has the inherent power to administer its docket in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases"); *Pina v. Horel*, 2008 WL 686590, at *2 (N.D. Cal. Mar. 7, 2008) ("[I]n the exercise of its inherent power to administer its docket, the court determines that this action may not be maintained as a group complaint by three unrepresented prisoners."). A court also has authority to "process litigation to a just and equitable conclusion." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978); *see Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 564 (3d Cir. 1985) (courts have inherent power to "achieve justice in their results"). This power necessarily includes the ability to dismiss suits filed by parties that lack authority or capacity. *See, e.g.*, *Estate of Garcia-Vasquez v. Cnty. Of San Diego*, 2008 WL 4183913, at *6 (S.D. Cal. Sept. 9, 2008) (granting summary judgment for defendant because "Plaintiffs offer no evidence to refute or create a triable issue of fact regarding Ms. Regalado-Hernandez's lack of any formal authority to act on behalf of Garcia-Vasquez's Estate").

1    This Court has already explained why this power is so important.  "Courts and parties being

2    sued have a legitimate need to determine if a suit has been properly authorized by a plaintiff entity";

3    otherwise, "one partner could cause a partnership to sue while another partner could cause it to settle

4    and release the very same claim."  MSJ Op. at 12.  That result "would be absurd":  In crafting their

5    strategy and engaging in settlement negotiations, a defendant "need[s] to be able to know who can act

6    for and bind a partnership," and "who has authority to settle a case."  *Id.* at 11-12.  Even worse, if Igra

7    were right about the law, a partner would be able to sit back and see how a suit turns out before

8    deciding whether to be bound by the outcome.  This Court long suspected that Seidl was engaging in

9    that very tactic, and found it "unacceptable":

> It seems clear to the Court that Seidl has not approved our pending litigation and is waiting to
> see how it plays out.  If [TRT's] case is a winner, then we can likely expect Seidl to ratify our
> lawsuit and join in.  Conversely, if the instant lawsuit turns out to be a loser, Seidl can avoid
> costs, Rule 11 sanctions, and any other sanctions that may be imposed on the losing party by
> saying he never agreed to this action. . . .  It is most concerning that so many resources are being
> poured into this case which may have zero merit because Seidl did not agree on this action.

First OSC at 2 (internal quotation marks omitted).

    Indeed, under Igra's rule, a *partnership* would be able to await the outcome and then attack any

unfavorable judgment on the ground that it had lacked authority to sue in the first place.  The Supreme

Court has recognized the injustice of this state of affairs in a different context:  "It [i]s unfair to allow

[plaintiffs] to benefit from a favorable judgment without subjecting themselves to the binding effect of

an unfavorable one."  *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (describing a similar

problem of "one-way intervention" in the context of class actions).  The Court's inherent powers allow

it to take measures to prevent similar tactics in the context of representative actions like this one.[10]

---

[10]    On appeal, Igra attempted to sidestep the fairness concerns that follow from his position,
arguing that there is no risk of multiple suits on the same claim because Seidl would have been
precluded from bringing his own lawsuit under principles of *res judicata*.  That is incorrect.  It is
well established that "claim preclusion applies only to the relitigation of the same cause of action
*between the same parties* or those in privity with them."  *DKN Holdings LLC v. Faerber*, 61 Cal.
4th 813, 825 (2015) (partners are not in privity for purposes of preclusion).  Seidl is not a party
to this suit—in fact, he objected to it—so claim preclusion would not apply.

## II.     THE COURT CORRECTLY HELD THAT THIS SUIT WAS UNAUTHORIZED.

The Ninth Circuit next directed this Court to consider "whether Plaintiff offered facts sufficient to establish its authority or capacity to sue." *Total Recall*, 731 F. App'x at 707.  This is a question of state law:  Both parties have always agreed that the law of California—the forum State—controls the effect of the partnership agreement on TRT's capacity to sue and Igra's authority to sue on TRT's behalf.  *See* MSJ Op. at 9-10; Fed. R. Civ. P. 17(b)(3).

As this Court has explained, the TRT "partnership agreement . . . provided that no lawsuit would be maintained without the approval of both [partners]."  MSJ Op. at 1.  And this Court has already held that there is no genuine dispute that "Seidl has followed one fixed star—give no blessings whatsoever to this lawsuit."  Dismissal Op. at 8.  Igra challenged this ruling on appeal, arguing that this Court "wrongly conclud[ed] that Seidl had not authorized this lawsuit to proceed."  Opening Br. of Plaintiff-Appellant at 11, Case No. 17-15668 (9th Cir.).  The Ninth Circuit, however, left this Court's ruling on this issue undisturbed.  Accordingly, it is law of the case.  *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) ("The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court . . . in the same case."); *Suever*, 2006 WL 3290404, at *1-2; *Rodriguez v. Gen. Dynamics Armament & Tech. Prods., Inc.*, 2013 WL 4603057, at *2 (D. Haw. Aug. 29, 2013) (holding that "the Court's prior rulings and orders are law of the case" where changing them was "not necessary to comply with the Appellate Order").

For this reason, defendants will address the Court's prior analysis only briefly.  Igra has never disputed that Seidl objected to the lawsuit at the outset and steadfastly maintained his objection for months afterward.  His position, both in this Court and on appeal, was that Seidl agreed to sue during the partners' two-day email exchange in January 2015.  *See* MSJ Op. at 8.  That argument fails both factually and legally.

As a factual matter, this Court correctly concluded that "[t]he evidence is clear" that "Seidl did *not* agree to commence th[e] action" during that exchange; he agreed to sue only if the partners received "no positive signs" from Luckey.  MSJ Op. at 8-9 (emphasis added).  But they *did* receive such signs: Luckey responded and "the parties began the process of arranging a demonstration of TRT's video-capture technology" to Facebook; Seidl's precondition was unsatisfied.  *Id.*; p. 8-9 *supra*.

20

More fundamentally, the January exchange is irrelevant as a matter of law:  Seidl *subsequently* told Igra, unambiguously and indisputably, not to sue.  As this Court explained, Seidl's "last word to Igra before Igra filed the instant claim" (MSJ Op. at 9) was the February 22, 2015 email in which Seidl told Igra:  "Do not take any legal action against [P]almer."  Ex. P.[11]  Igra correctly deemed this statement a veto:  "Unfortunately, your refusal to cooperate in making our legal claims against Luckey [is] stopping the partnership from getting what it is rightfully due."  Ex. O at 3736.  Accordingly, Seidl did not agree to the lawsuit *at the time it was filed*—and that is the only time that is pertinent.  *See* Ex. A at 1908 (requiring both partners to "agree"—present tense—"on any action").[12]  Igra recognized as much by continuing to maintain the Hawaii action against Seidl.  Because Seidl did not agree to commence this lawsuit, Igra had no authority to bring it and TRT lacked capacity to bring it.

## III.   THE LAWSUIT WAS NOT RATIFIED AFTER THE FACT.

This Court gave plaintiff "an opportunity to cure the authorization problem" by satisfying two specific conditions:  Igra and Seidl had to declare that (1) "both authorize and agree to the maintenance of this civil action in the name of [TRT]"; and (2) "both ratify all actions taken herein so far on behalf of [TRT]."  MSJ Op. at 14-15.  It is undisputed that plaintiff never complied with these conditions.  Seidl has never supplied a sworn statement agreeing to this suit—either to its original filing, its "maintenance" going forward, or the "actions taken herein so far."  Igra has instead argued that he "exceeded" the Court's conditions by settling the Hawaii action, gaining full control over TRT, and then purporting to authorize and ratify the suit himself on TRT's behalf.  Igra's argument fails for each of two independent reasons.

---

[11]   *See also* Ex. T at 113302 (Seidl emailing Luckey that the lawsuit was filed without his permission); Ex. U at 22, 30 (Seidl testifying that he never "agreed" that TRT "could file a complaint against Palmer Luckey and Oculus," and "there was a veto against Igra at the time").

[12]   *See also, e.g.*, *Leming v. Oilfields Trucking Co.*, 44 Cal. 2d 343, 352 (1955) (an agent's authority to act depends on whether the agent was "acting . . . within the scope of [its] authority[] *at the time of the [relevant] events*" (emphasis added)); *Roth v. Moeller*, 185 Cal. 415, 418 (1921) ("[A] principal has the power to revoke an agent's authority at any time before the agent has completed performance." (emphasis omitted)).

### A.   This Court Correctly Held That Igra's Attempted Ratification Of The Lawsuit Was Ineffective.

This Court has already held that Igra's attempted ratification of the lawsuit was ineffective.  Igra challenged that ruling on appeal, arguing that this Court's enforcement of its conditions for ratification was "neither logical nor appropriate."  Opening Br. of Plaintiff-Appellant at 34.  The Ninth Circuit did not adopt Igra's position.  And this Court's ruling was correct.

First, only Seidl's ratification could address the problem that all prior proceedings—including the complaint, the motion-to-dismiss briefing, and the years of discovery that have taken place—were conducted without a legally cognizable plaintiff.  *See* Dismissal Op. at 6-7 ("[a]bsent Seidl's unequivocal authorization and ratification, this lawsuit remained improper from the outset"; Igra's approach "d[id] nothing to carry us back to the moment in time of the filing of the original complaint to fix the defect that plagued this action from the start").  Second, the Hawaii settlement did not even truly solve the authorization problem going forward, because it indemnifies Seidl from any liability stemming from the litigation, while simultaneously transferring all of TRT's assets to him and giving him a substantial stake in the outcome of this case.  *See id.*  That arrangement is highly prejudicial to the defendants—foreclosing revival of the suit under California law—because it effectively deprives them of any ability to seek costs and sanctions from a solvent party.[13]  As this Court explained, the settlement was "a clever smoke-and-mirrors work-around to protect Seidl from ratifying anything while creating an appearance that Igra now controls the partnership."  *Id.* at 7.  The Court should adhere to its earlier decision.[14]

### B.   The Complaint Could Not Be Revived By The Settlement Because All Of Plaintiff's Claims Were Time-Barred By That Time.

Summary judgment is appropriate for the additional reason that the complaint *could not* be revived because all of the claims were time-barred by the time Igra and Seidl settled the Hawaii suit and Igra purported to ratify this suit.  *See Total Recall*, 731 F. App'x at 707 ("The district court should

---

[13]   *See CLD*, 120 Cal. App. 4th at 1150 (revival permissible only when "defective complaint [ ] can be readily and easily cured without prejudice to either [the opposing party] or the court").

[14]   Igra responded to this argument on appeal by pointing out that a Hawaii judge approved the settlement.  But there is no record of that judge evaluating any of the documents or the effect of the settlement on the defendants in *this* case; all we know is that the judge approved the settlement to the extent it ended the Hawaii dispute between *Igra and Seidl*.

22

[ ] consider whether, . . . even if Plaintiff's attempted retroactive ratification was valid, the statute of limitations had already expired on Plaintiff's claims").

### 1.   The Statute Of Limitations Is Not Tolled During A Period When The Plaintiff Lacks Authority Or Capacity To Sue.

When a plaintiff sues without authority or capacity, California courts may permit an opportunity to cure the defect. *See Smith*, 199 Cal. App. 4th at 1387, 1394 (plaintiff improperly sued because his "authority did not extend beyond Oregon," and "should be given an opportunity to cure the deficiency"). But there is an important exception: A defective complaint *cannot* be cured once the statute of limitations has passed. The "filing of a complaint at a time when [a corporation lacks capacity] does not operate to toll the running of the statute of limitations." *V&P Trading Co. v. United Charter, LLC*, 212 Cal. App. 4th 126, 150 (2012) (citing *Welco Constr., Inc. v. Modulux, Inc.*, 47 Cal. App. 3d 69, 73-74 (1975)). Accordingly, "if the statute runs prior to revival, the action is time barred." *Ctr. for Self-Improvement v. Lennar Corp.*, 173 Cal. App. 4th 1543, 1554 (2009); *see also* RESTATEMENT (SECOND) OF AGENCY § 90 cmt. c (1958) (a "purported principal can ratify the bringing of an action . . . if the affirmance comes before the statute of limitations has run on the claim"). That is unsurprising, because such a complaint is a legal nullity; it does not legally exist and cannot toll anything.

The California courts have uniformly and strictly applied this rule: Plaintiff has never cited a California case (and we have found none) permitting ratification of an unauthorized suit after the expiration of the statute of limitations period. And there are a host of cases holding that such ratification is impermissible. In *Friends of Shingle Springs Interchange, Inc. v. County of El Dorado*, 200 Cal. App. 4th 1470 (2011), for example, the plaintiff corporation filed an action at a time when it "did not have [ ] legal capacity" because it had failed to pay taxes. *Id.* at 1474, 1495. Although the plaintiff's "corporate powers were [later] revived," that did not occur "until after the applicable statute of limitations had run." *Id.* at 1474. The court held that because "the statute of limitations r[an] out prior to revival of [the] corporation's powers, the corporation's actions [were] time barred even [though] the complaint would otherwise have been timely." *Id.* at 1487 (quoting *Leasequip, Inc. v. Dapeer*, 103 Cal. App. 4th 394, 403 (2002)). The court therefore upheld the dismissal of the action. *Id.*

1   at 1498.

2   In *V&P*, the court affirmed a grant of summary judgment to the defendants "because the [statute

3   of] limitations period had run while [the plaintiff's corporate status] was suspended."  212 Cal. App.

4   4th at 129.  The court explained that although "procedural acts in the prosecution . . . of a lawsuit may

5   be validated retroactively by [ ] corporate revival," "[t]he statute of limitations is not a procedural

6   right"; it is "substantive."  *Id.* at 132 (quoting *Welco*, 47 Cal. App. 3d at 73).

7   Igra has asserted that this rule is limited to cases involving "corporations that have failed to pay

8   taxes and consequently lose the right to sue or be sued," and "has never been applied generally."  JCMS

9   at 8.  That is wrong.  In *Friends of Shingle*, the Court of Appeal interpreted *Leasequip* to hold that

10  "[t]he same rule applies when a corporation fails to file the required statement of information."  *Friends*

11  *of Shingle*, 200 Cal. App. 4th at 1486 (citing *Leasequip*, 103 Cal. App. 4th at 402-03).  And in *In re*

12  *Raffin*, 284 F. App'x 405 (9th Cir. 2008), the Ninth Circuit upheld a grant of summary judgment based

13  on the plaintiff's "lack of authority to initiate th[e] suit" on behalf of a trust.  *Id.* at  406-07.  It found

14  that the decision below was "neither unreasonable nor prejudicial to the plaintiffs who could have cured

15  the defect . . . *before the statute of limitations ran*."  *Id.* (emphasis added); *see also Genutec Bus. Sols.,*

16  *Inc. v. Weiss*, 2013 WL 3455731, at *7, *13 (Cal. Ct. App. July 9, 2013) (statute of limitations not

17  tolled while corporation was "under the control of 'ro[gu]e executives and directors'" and lacked the

18  "ability to commence legal action," relying on the "settled" principle that "the statute of limitations is

19  not tolled" during a period of incapacity (citing *Leasequip*, 103 Cal. App. 4th at 402-03)).

20          **2.      The Statutes Of Limitations Ran On All Claims Prior To The Hawaii**
                      **Settlement.**

21

22  Igra has conceded that "Ron Igra and Thomas Seidl learned of Palmer Luckey's breach of the

23  . . . agreement no later than September 7, 2012."  Ex. BB at 13; *see Align Tech., Inc. v. Bao Tran*, 179

24  Cal. App. 4th 949, 969 (2009) (claim accrues when plaintiff discovers relevant conduct).   The

25  limitations period is three years for Igra's fraud claim, and four years for his contract and

26  unfair-competition claims.  *See Bank of New York Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 956

27  (2017); *Falk v. Children's Hosp. of Los Angeles*, 237 Cal. App. 4th 1454, 1462 & n.12 (2015); *Snyder*

28  *v. Cal. Ins. Guar. Ass'n*, 229 Cal. App. 4th 1196, 1213 (2014).

Thus, the *latest* date that the statute of limitations could have run on any of Igra's claims was September 7, 2016.  That was over a month before Igra claims to have reached a settlement in principle of the Hawaii action in principle (October 14, 2016); more than two months before they reduced the settlement to writing (November 28, 2016); almost three months before they stipulated to dismiss the Hawaii action (December 6, 2016); and almost four months before Igra purported to ratify the instant action on TRT's behalf (January 5, 2017).  *See* pp. 11-12 *supra*.  Regardless of which of these dates is determinative, Igra's attempted ratification came too late.

Igra contends (as he did when defendants raised this issue earlier in the litigation) that "Defendants have waived [the statute-of-limitations] argument by failing to plead it" in their answer. JCMS at 7.  But defendants had no basis for raising the statute of limitations at the pleading stage, because the statute became relevant as a ground for dismissal of the case only when this Court concluded that plaintiff lacked such authority, and Igra then attempted to cure that problem retroactively (and belatedly).  That is why, as discussed above, defendants raised plaintiff's lack of authority and capacity, but not the statute of limitations, in their answer.  Defendants had every right to raise the latter issue once the Court held that plaintiff lacked authority and Igra's time to cure the problem ran out.

Moreover, the Ninth Circuit "ha[s] liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings"; they may be raised at any time so long as "the delay does not prejudice the plaintiff."  *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997).  Igra has never claimed any such prejudice.  Nor could he, because he has had every opportunity to address the issue; Igra has been aware of this problem since 2015, and he did not attempt to fix it until the Court ordered him to do.  *See Foothills of Fernley, LLC v. City of Fernley*, 355 F. App'x 109, 111 (9th Cir. 2009) (where statute-of-limitations "issue was fully addressed by the parties," plaintiff "suffered no prejudice" when court raised it *sua sponte*).

### CONCLUSION

The Court should grant summary judgment in defendants' favor on all claims.

1

Dated:  January 10, 2019

2

MAYER BROWN LLP

3

By: */s/ Lauren R. Goldman*
    Lauren R. Goldman
    Michael Rayfield

4

5

COOLEY LLP

6

Michael G. Rhodes
Mark F. Lambert

7

Angela L. Dunning

8

Attorneys for Defendants PALMER LUCKEY
and OCULUS VR, INC.

9

10

DURIE TANGRI LLP

11

Ragesh Tangri (159477)
rtangri@durietangri.com

12

217 Leidesdorff Street

13

San Francisco, CA 94111
Telephone: (415) 362-6666

14

15

Attorneys for Defendant PALMER LUCKEY

16

17

18

19

20

21

22

23

24

25

26

27

28