1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Robert W. Stone (Bar No. 163513)
2  robertstone@quinnemanuel.com
   Brian Cannon (Bar No. 193071)
3  briancannon@quinnemanuel.com
   Andrea Pallios Roberts (Bar No. 228128)
4  andreaproberts@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
5  Redwood Shores, California 94065-2139
   Telephone:    (650) 801-5000
6  Facsimile:    (650) 801-5100

7  Attorneys for Plaintiff TOTAL RECALL
   TECHNOLOGIES
8

9                    UNITED STATES DISTRICT COURT

10        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12
   TOTAL RECALL TECHNOLOGIES,            CASE NO. 15-CV-02281 WHA
13
                   Plaintiff,            **PLAINTIFF TOTAL RECALL**
14                                       **TECHNOLOGIES' OPPOSITION TO**
         vs.                             **DEFENDANTS' RENEWED MOTION**
15                                       **FOR SUMMARY JUDGMENT**
   PALMER LUCKEY and OCULUS VR, INC.,
16                                       Date: February 5, 2019
                   Defendants.          Time: 8:00 am
17                                       Location: Courtroom 8, 19th floor

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

STATEMENT OF RELEVANT FACTS ............................................................................3

ARGUMENT ......................................................................................................................9

I.    FEDERAL LAW PROVIDES NO GROUNDS FOR DEFENDANTS TO CHALLENGE TRT'S AUTHORITY TO FILE AND MAINTAIN THIS ACTION ...........9

    A.    Rule 9 Does Not Give Defendants Standing to Challenge TRT's Internal Management Authority ...........................................................................11

        1.    **Rule 9(a)(1)(B) Does Not Apply – TRT Is Not Suing in a Representative Capacity** ...........................................................12

        2.    **Rule 9(a)(1)(A) Does Not Apply – TRT Has "Capacity To Sue"** ...........14

    B.    This Court's Inherent Authority to Manage Its Docket Does Not Give Defendants Standing to Challenge TRT's Internal Management Authority ...........16

II.    TRT HAS AUTHORITY AND CAPACITY TO MAINTAIN THIS ACTION .................18

III.    THE STATUTE OF LIMITATIONS HAS NOT RUN ON TRT'S CLAIMS ...................19

    A.    Defendants Waived Any Statute Of Limitations Defense By Failing To Plead It ...........................................................................................................19

    B.    Plaintiff's Filing Of The Initial Complaint Tolled The Statute Of Limitations ...............................................................................................20

    C.    California Franchise Tax Board Statutory Exception Cases Do Not Apply ...........20

    D.    Even If The Original Complaint Did Not Toll The Statute Of Limitations, The Doctrine Of Equitable Tolling Should Apply To Toll The Limitations Period ......................................................................................................22

CONCLUSION ................................................................................................................24

06533-00001/10657995.2

# **TABLE OF AUTHORITIES**

## **Cases**

*Anmaco, Inc. v. Bohlken*,
   16 Cal. Rptr. 2d 675 (Cal. Ct. App. 1993) ................................................................. 10

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
   214 Cal. App. 3d 1 (1989) ........................................................................................ 23

*Baldhosky v. Sanchez*,
   656 F. App'x 867 (9th Cir. 2016) .............................................................................. 23

*Bollinger v. National Fire Ins. Co.*,
   25 Cal. 2d 399 (1944) .......................................................................................... 22, 23

*Breslin v. City & Cty. of San Francisco*,
   146 Cal. App. 4th 1064 (2007) .................................................................................. 20

*Cervantes v. City of San Diego*,
   5 F.3d 1273 (9th Cir. 1993) ...................................................................................... 22

*De Saracho v. Custom Food Machinery, Inc.*,
   206 F.3d 874 (9th Cir. 2000) ........................................................................ 10, 13, 14

*Degen v. United States*,
   517 U.S. 820 (1996) ............................................................................................ 16, 17

*Deirmenjian v. Deutsche Bank, A.G.*,
   No. CV 06-00774 MMM CWX, 2006 WL 4749756 (C.D. Cal. Sept. 25, 2006) ...... 15

*Delbon Radiology v. Turlock Diagnostic Center*,
   839 F. Supp. 1388 (E.D. Cal. 1993) .......................................................................... 10

*Eash v. Riggins Trucking Inc.*,
   757 F.2d 557 (3d Cir. 1985) ...................................................................................... 16

*Elkins v. Derby*,
   12 Cal. 3d 410 (1974) .......................................................................................... 22, 23

*Erie R. Co. v. Tompkins*,
   304 U.S. 64 (1938) ........................................................................................... 9, 10, 16

*Estate of Garcia-Vasquez v. Cty. of San Diego*,
   2008 WL 4183913 (S.D. Cal. Sept. 9, 2008) ............................................................ 16

*Foothills of Fernley LLC v. City of Fernley*,
   355 F. App'x 109 (9th Cir. 2009) .............................................................................. 19

*Friends of Shingle Springs Interchange Inc. v. County of El Dorado*,
   200 Cal. App. 4th 1470 (2011) .................................................................................. 21

*Genutec Bus. Sols.,Inc. v. Weiss*,
   2013 WL 3455731 (Cal. Ct. App. July 9, 2013) ....................................................... 21

*Hoose v. Beauchamp,*
2004 WL 1345080 (Cal. Ct. App. June 16, 2004) ............................................................. 23

*ITT Cmty. Dev. Corp. v. Barton,*
569 F.2d 1351 (5th Cir. 1978) ......................................................................................... 16

*Jacques Krijn En Zoon v. Schrijver,*
151 F. Supp. 955 (S.D.N.Y. 1957) ................................................................................. 15

*Jarvis v. K2 Inc.,*
No. C03-1265Z, 2008 WL 630008 (W.D. Wash. Mar. 5, 2008) ..................................... 18

*Johns v. San Diego,*
114 F.3d 874 (9th Cir 1997) ............................................................................................ 11

*Lantzy v. Centex Homes,*
31 Cal. 4th 363 (2003) .................................................................................................... 22

*Leasequip, Inc. v. Dapeer,*
103 Cal. App. 4th 394 (2002) ......................................................................................... 21

*Link v. Wabash R. Co.,*
370 U.S. 626 (1962) ................................................................................................... 16, 17

*Luna Records Corp., v. Alvarado,*
232 Cal. App. 3d 1023 (Ct. App. 1991) .......................................................................... 20

*Magana v. Commonwealth of N. Mariana Islands,*
107 F.3d 1436 (9th Cir. 1997) ........................................................................................ 19

*Martin v. Van Bergen,*
209 Cal. App. 4th 84 (2012) ........................................................................................... 19

*Mather Const. Co. v. U.S.,*
475 F.2d 1152 (Ct. Cl. 1973) .......................................................................................... 14

*Mysel v. Gross,*
70 Cal. App. 3d Supp. 10 (1977) .................................................................................... 19

*Pina v. Horel,*
No. C 07-4989 SI(PR), 2008 WL 686590 (N.D. Cal. Mar. 7, 2008) ............................. 16

*In re Raffin,*
284 F. App'x 405 (9th Cir. 2008) ............................................................................... 21, 22

*Retail Clerks Union Local 648, AFL-CIO v. Hub Pharmacy, Inc.,*
707 F.2d 1030 (9th Cir. 1983) ........................................................................................ 23

*Rothman & Schneider, Inc. v. Beckerman,*
141 N.E.2d 610 (N.Y. 1957) ........................................................................................... 10

*Sade Shoe Co. v. Oschin & Snyder,*
217 Cal. App. 3d 1509 (Ct. App. 1990) .......................................................................... 21

-iii-

*Total Recall Techs. v. Luckey*,
  731 F. App'x 706 (9th Cir. 2018)................................................ 9, 10, 18,19

*U.S. ex rel. Lujan v. Hughes Aircraft Co.*,
  243 F.3d 1181 (9th Cir. 2001) ..................................................... 18

*United States v. Osuna-Alvarez*,
  788 F.3d 1183 (9th Cir. 2015) ..................................................... 13

*Untimax Cement Mfg., Corp. v. CTS Cement Mfg. Corp.*,
  No. SA CV 02–578 AHS, 2011 WL 13152067 (C.D. Cal. Jan. 10, 2011) ................. 18

*V&P Trading Co. v. United Charter, LLC*,
  212 Cal. App. 4th 126 (2012) ...................................................... 21

*Walker v. Armco Steel Corp.*,
  446 U.S. 740 (1980) ............................................................... 12

*Welco Construction, Inc. v. Modulux, Inc.*,
  47 Cal. App. 3d 69 (1975) ......................................................... 21

### Statutory Authorities

Cal. Bus. & Prof. Code § 17200 ...................................................... 8

Cal. Civ. Proc. Code § 350 .......................................................... 20

Cal. Civ. Proc. Code § 369.5 ........................................................ 15

Cal. Rev. & Tax. Code § 23301 ....................................................... 21

Haw. Rev. Stat. § 425-130, effective October 14, 2016 ............................... 18

### Rules and Regulations

Fed. R. Civ. P. 9 ................................... 2, 10, 11, 12, 14, 15, 16, 17, 18, 24

Fed. R. Civ. P. 9(a) ...................................................... 1, 2, 11, 12, 17

Fed. R. Civ. P. 9(a)(1)(A) .................................................. 1, 14, 15

Fed. R. Civ. P. 9(a)(1)(B) .............................................. 1, 11, 12, 13, 14

Fed. R. Civ. P. 9(a)(2) ............................................................. 11

Fed. R. Civ. P. 17(b)(3) ............................................................ 15

### Treatises

5A Wright & Miller, *Federal Practice & Procedure* § 1292 (4th ed. 2018) ............ 12, 14

6A Wright & Miller, *Federal Practice & Procedure* § 1292 (4th ed. 2018) ............ 14

## <u>Additional Authorities</u>

5 Witkin, Cal. Proc. 5th Plead § 970 (2008) ................................................................. 14

59A Am. Jur. 2d Partnership § 438 (2018) .......................................................... 13, 15

14A N.Y. Jur. 2d Business Relationships § 594 (2018).................................................10

06533-00001/10657995.2

Pursuant to the December 14, 2018 Case Management Order After Remand (Dkt. 236), Plaintiff Total Recall Technologies ("TRT") hereby files its Opposition To Defendants' Renewed Motion for Summary Judgment (Dkt. 246). In support of this Opposition, TRT submits the Declarations of Thomas Seidl ("Seidl Decl.") and Andrea Pallios Roberts ("Roberts Decl.").

## INTRODUCTION

Defendants are correct that this case involves a "get-rich-quick scheme," but it was one that was perpetrated by Defendant Palmer Luckey who unlawfully commercialized TRT's head mounted display, breached his written contract with TRT, and secretly cashed in by forming his own company, Defendant Oculus, which he later sold to Facebook. Luckey and Oculus defrauded TRT, which was comprised of two partner inventors in Hawaii, and from the moment TRT initiated this action in 2015, Defendants have sought and used every procedural vehicle available to them to prevent TRT from telling its story of Luckey's misdeeds and having its day in court.

TRT is a Hawaii partnership formed to develop virtual reality systems--a system for which they received a United States patent. It was TRT--not Luckey--that had the breakthrough idea for a consumer-priced head mounted display ("HMD") that provided immersive stereoscopic 3D rendering and a wide field of view. It was TRT that contracted with Luckey to build that HMD using partnership money for parts and technical guidance provided by TRT. Yet it was Luckey who, in breaching the contract and hiding his actions from TRT, wrongfully reaped the financial rewards that should have been TRT's. This lawsuit intends to right that wrong.

After fact discovery, Defendants argued that the TRT partners did not reach adequate consensus in 2015 before filing the Complaint and convinced this Court to dismiss the action. TRT appealed, and the Ninth Circuit reversed and remanded on every aspect of authority and capacity, mandating three tiered questions: (1) Under "federal law" as opposed to state law, can Defendants "challenge Plaintiff's authority to file this action," including "the possible applicability of either Federal Rule of Civil Procedure 9(a)(1)(A) or 9(a)(1)(B)." (2) **_If_** Rule 9(a) applies, "whether Plaintiff offered facts sufficient to establish its authority or capacity to sue." (3) **_If_** Defendants can challenge Plaintiff's authority, and if TRT's ratification was valid, whether any statute of limitations applies.

**First**, there is no federal law that allows Defendants to challenge Plaintiff's internal management authority. By its text, Rule 9 is a pleading standard that applies, *inter alia*, to "a party's capacity to sue or be sued" or "a party's authority to sue or be sued in a representative capacity." Neither provision applies in this case. As such, that should end this inquiry.

"Capacity" is a named party's competency to sue or be sued for all cases. For instance, a minor child lacks capacity to sue. TRT, however, is a Hawaii partnership: there can be no dispute that TRT is a legal entity with the right to sue and be sued. The other relevant provision of Rule 9(a)--a "party's authority to sue or be sued ***in a representative capacity***"--refers to the right to sue on behalf of another. It typically involves situations where a party is suing in its name but on behalf of another person--for instance a guardian filing in his or her own name for the interests of a child. But in this action, TRT is the Plaintiff. It is and always has been the named party. TRT is **not** suing on behalf of another but for its own rights that were violated by Luckey and Oculus.

Defendants appear to recognize that Rule 9 affords them no relief because they repeatedly refer--misleadingly--to the named plaintiff being "Ron Igra," and they argue that Igra is suing in a representative capacity. This is a new assertion--contradicting what Defendants argued on appeal--and as this Court knows, it is false. The Plaintiff is the Hawaii legal entity TRT, not Igra, and Defendants' sleight of hand should be rejected.

Because Rule 9 does not provide relief, Defendants also argue that this Court has unspecified "inherent powers" that provide the right to challenge the internal management authority of a plaintiff. There are, however, no such bespoke powers available for Luckey and Oculus to avail themselves of, and Defendants have identified no case where authority or capacity was challenged in such a manner.

**Second**, even if Rule 9 permitted Defendants to challenge authority, TRT has provided sufficient facts to demonstrate it has authority to proceed. TRT is a Hawaii partnership. Currently, it is composed of one partner who has full authority to control the partnership. The other partner has withdrawn, expressly leaving all interest in this lawsuit with TRT and retaining no right to control any aspect of the case.

06533-00001/10657995.2

**Third**, even if Defendants are permitted to challenge TRT's authority, there is no statute of limitations problem. The original Complaint was filed well before any limitations period ran, and it is black letter law that the filing of the complaint tolls all applicable statutes of limitations. Defendants have identified no applicable exception. Although Defendants point to cases where the filing of a case by a corporation that has not paid its taxes will not toll the statute of limitations, this is a narrow exception to the general rule based on the well-meaning public policy that corporations must pay their California taxes. Defendants point to no cases expanding this exception--none exist. Furthermore, Defendants failed to raise the statute of limitations at any time in their pleadings, meaning that the affirmative defense is waived.[1]

Defendants' attempts to shoehorn this case into the text of Rule 9 -- which by its express terms and plain meaning simply does not apply – should be seen for what it is: another in a long series of efforts to avoid the merits of this case at any cost. Accordingly, TRT respectfully requests that this case be set for trial so that Plaintiff, the aggrieved party in this dispute, can have its long-delayed day in court.

## STATEMENT OF RELEVANT FACTS

### Igra And Seidl's Formation Of TRT

Ron Igra and Thomas Seidl, inventors in Maui, Hawaii, began a partnership in 2010--Total Recall Technologies--with the aim of developing immersive 3D technology for use in virtual reality, including cameras and head mounted displays. Seidl Decl., ¶ 1. In connection with their pursuit of this technology, Igra and Seidl filed a provisional patent application on May 27, 2011, which the United States Patent & Trademark Office ultimately granted as Patent No. 9,007,430 ("System and method for creating a navigable three-dimensional virtual reality environment having ultra-wide field of view."). Roberts Decl., Ex. A.

While developing their system, Igra and Seidl determined that they would need a head mounted display to view the output from the 3D camera that Seidl was building. Seidl Decl., ¶ 2.

---

[1] Even if the initial complaint did not toll the statute, the doctrine of equitable tolling applies to preserve TRT's claims. There is no prejudice to Luckey and Oculus who have had full notice of TRT's claims since 2015.

-3-

1   Igra and Seidl recognized that as of 2010, there were no head mounted displays in the market with

2   a price point attractive to consumers that provided immersive stereoscopic 3D rendering and a

3   wide field of view such that the user could not see the edges of the screen. *Id*. Concluding that

4   such a device was necessary to the pursuit of their system, Igra and Seidl set out to have one built.

5   *Id*.

6       To that end, Seidl posted in an online forum that he was looking for someone to build a

7   head mounted display to his specifications. Roberts Decl. Ex. B. Defendant Palmer Luckey

8   responded on December 13, 2010, stating: "I am interested in working with you to bring a

9   commercial HMD to market." *Id*., Ex. C.

10      ***TRT's Contract With Palmer Luckey***

11      Throughout 2011, Seidl and Luckey exchanged numerous emails in which Seidl described

12  the HMD that Luckey was to build with parts paid for by the partnership. On April 8, 2011, Seidl

13  explained to Luckey that with the initial payment to Luckey, the partnership would have exclusive

14  rights to the design of the HMD. Luckey responded: "Yes. We are on the same page here. Once

15  your patent hits pending, I am sure that we can put together a contract of some sort to finalize it

16  all." Roberts Decl., Ex. D. Because Igra was chiefly responsible for the financial aspects of TRT,

17  he sent the money via Paypal to Luckey on April 11, 2011. Seidl Decl., ¶ 3; Roberts Decl., Ex. E

18  (Igra Dep. at 91:22-92:8).[2]

19      In June 2011, after Igra and Seidl's provisional patent application was filed, Seidl sent

20  Luckey a draft agreement entitled "Nondisclosure, exclusivity and payments agreement" (the

21  "Exclusivity Agreement."). Seidl Decl., Ex. A; *see also* Roberts Decl., Ex. G (Seidl Dep. at

22  164:3-10). The Exclusivity Agreement required, among other things, that Luckey "keep all details

23  including drawings and part suppliers of the Head Mounted Display confidential and shall not aid

24  any other person or entity in the design of a Head Mounted Display other than the disclosing

25

26  _____

27      [2] Although Defendants make much of the fact that TRT provided Luckey with $798, TRT's
    goal was to build a head mounted display using off-the-shelf parts that would ultimately sell at a
    consumer-friendly price. Moreover, in April 2012, Luckey, in violation of the Exclusivity

28  Agreement, planned to sell the Rift for $500. *See* Roberts Decl., Ex. L..

party." Seidl Decl., Ex. A. The Exclusivity Agreement was negotiated by Seidl in his capacity as a partner of TRT. Roberts Decl., Ex. G (Seidl Dep. at 164:3-10); Seidl Decl., ¶ 3.

███████████████████████████████████████████████████

██████████████████████████████ Roberts Decl., Ex. I (Luckey Dep. at 11:5-25, 12:8-15, 13:13-15:19, 22:5-11, 23:3-8, 46:22-25, 54:18-55:1). When sending the Exclusivity Agreement to Luckey, Seidl insisted that Luckey have it witnessed in an effort to avoid any future disputes. Seidl Decl., ¶ 3; Roberts Decl., Ex. I (Luckey Dep., 54:18-20). Despite Seidl's request, however, when Luckey first returned the agreement on July 31, 2011, it was not witnessed. Roberts Decl., Ex. J (at LUCKEY0144452). So Seidl wrote back to Luckey and reminded him to have it witnessed. *Id.* Luckey immediately responded: "Woops, totally forgot about that! Like I said, this is another copy, no idea where the last one (Or the scan of it) went. I will have it witnessed by two people, a former boss and a current coworker, as I see both of them tonight for dinner. Hopefully that works!" *Id.*

Discovery, however, has confirmed that Luckey simply forged the names Tom Alan and Jeff Bacon, neither of whom gave Luckey permission to sign their names. Roberts Decl., Ex. I (Luckey Dep. at 52:11-54:20, 55:2-22); Ex. K (Alan Dep. at 15:9-10, 15:14-16, 17:9-10). Luckey's forgery of the witnesses' signatures was just one of many lies made by Luckey to TRT.

### Luckey's Breach Of The Exclusivity Agreement

Discovery has also confirmed that despite his promises of confidentiality and design exclusivity, Luckey breached his contract and pursued the development of TRT's head mounted display designs as his own. Defendants' suggestion that Seidl and Igra and TRT were engaged in some sort of "get rich quick scheme" (Dkt. 246) ignores that the actual perpetrators of such a scheme--as demonstrated by their breaches and fraudulent conduct--were Luckey and Oculus (now a subsidiary of Facebook).

In particular, on or about April 14, 2012, during the first year of his contract with TRT, Luckey registered the domain name oculusvr.com (Roberts Decl., Ex. L), and posted online that he hoped to bring an HMD to market (with the same characteristics as TRT's specifications) that he dubbed the "Rift":

The 'RIFT' page contains information on the first piece of hardware I hope to bring to market through Oculus, the RIFT. In a nutshell: A wide field of view, highly immersive stereoscopic head mounted display at a price I can afford. After a quick glance at my bank account, I am sure that if I can afford it, you can too! ($500 is the target price).

*Id.*, Ex. L. On that same day, he registered a Kickstarter under the name Oculus as part of his efforts to commercialize. *Id.*, Ex. M. The Rift described on the Oculus web site was TRT's head mounted display with the same parameters provided by Seidl to Luckey: *i.e.*, an HMD, at a consumer friendly price, with highly immersive stereoscopic 3D rendering and a wide field of view. Seidl Decl., ¶ 2.

On May 16, 2012, in violation of the Exclusivity Agreement, and without TRT's knowledge or permission, Luckey provided the Rift to noted videogame developer John Carmack. Roberts Decl, Ex. N, (Carmack Dep. at 101:3-102:14). At the June 5-7, 2012 Electronic Entertainment Expo ("E3") held in Los Angeles, California, Carmack showcased the Rift. *Id.* (Carmack Dep. at 36:18-21, 59:9-13, 114:16-115:1.) Thereafter, and still within the first year of his contract with TRT, on June 13, 2012, Luckey formed Oculus LLC to commercialize the Rift. *Id.*, Ex. I (Luckey Dep. at 612:4-19); Roberts Decl., Ex. P.

TRT first became aware of Luckey's breach in or about September 2012. Seidl Decl., ¶¶ 4-5. When confronted by Seidl about his breach, Luckey acknowledged his obligations under the Exclusivity Agreement but denied that he was in breach, falsely claiming: "I should not be in breach of contract, I kept all details … of my HMD [head mounted display] designs to myself until mid-July, which is also when I filed my LLC. The exclusivity only lasted until July 1st I was free to design something for myself after that exclusivity ended." Roberts Decl., Ex. O at LUCKEY0140131. Seidl disagreed and explained in September 2012 why Luckey was in breach:

Following the letter of the contract, it was not just an NDA but also prevented you from working on another HMD and I know starting a company, producing a prototype and getting a feature at E3 in June can't mean you started later than July 1st unless time travel is another project you looking to fund soon on kickstarter….

Also don't forget the first HMD you sent me did use a single same panel and optics looked very similar to the one I see around. Me pushing you to do wide FOV from day one surely got you inspired on that design.

*Id.*, at LUCKEY0140130. Seidl informed Igra of this confrontation. Roberts Decl., Ex. E, 169:9-18. Seidl confronted Luckey again in December 2012: "Look cmon lets cut the BS. Though you formed Oculus a few days after the contract ended, putting the team together shooting the video for it. etc. etc. All happened when the contract was happening." *Id.*, Ex. H, at LUCKEY0094033. At this point, Seidl testified that he could have sued Luckey "very easily." *Id.*, Ex. G, 284:20-24.

### *TRT's Pursuit Of Claims Against Luckey And Oculus*

Seidl has always maintained that Luckey breached his contract with TRT. Seidl Decl., ¶¶ 6-7. Despite that, Seidl and Igra had differences about approaching Luckey and Oculus. Igra thought that Luckey was stringing TRT along and had no intention of investing in TRT's camera technology. Roberts Decl., Ex. E (Igra Dep. at 218:25-219:19). Seidl, by contrast, thought that Luckey would ultimately do the right thing and honor his contract. Seidl Decl., ¶ 6. But, at no point in time did Seidl waive, or intend to waive any of TRT's rights against Luckey and Oculus in connection with the Exclusivity Agreement. *Id.*[3]

When Seidl indicated that he might not cooperate with a lawsuit against Luckey or Oculus, Igra filed suit against Seidl in the Second Circuit Court of the State of Hawaii on December 5, 2014, No. 14-1-0699(2) (the "Hawaii Action"). Dkt. 199 (Request for Jud. Not.), 175-11. Igra alleged in paragraph 31 of his complaint that "SEIDL asserted his right to 'veto' any legal action by the Partnership to pursue claims against Luckey" and alleged in paragraph 37 of his complaint that "SEIDL has and continues to refuse to authorize IGRA, or any other person or entity, to pursue the Partnership's legal claims." *Id.*, ¶¶ 31, 37. In his Hawaii answer dated January 16, 2015, Seidl specifically denied exercising a veto over any lawsuit against Luckey. Dkt. No. 199,

---

[3]  Defendants devote much of their Motion to the interactions between Seidl and Igra in 2015 in the time period before and after the original Complaint in this action was filed. *See* Dkt. 246, at pages 6-9. Defendants essentially ignore that Seidl has always maintained that Luckey breached the TRT contract and that as of October 2017, there is no question that TRT has the authority to maintain the action because Seidl withdrew from TRT. *See*, Section II, *infra*. In addition, Seidl and Igra are not lawyers and their frank strategy discussions of strategy to remedy a breach could not be shielded by privilege as a big company like Oculus and Facebook would be able to do (and have actively done). In any event the discussions of 2015 are not relevant today.

175-15, at page 2. Shortly thereafter, Igra maintains that he and Seidl agreed that if no deal with Luckey was struck, then TRT would file a lawsuit. Dkt. 108-3.

Accordingly, on May 20, 2015, TRT sued Palmer Luckey and Oculus. Dkt. 1.[4] In its operative pleading, the Second Amended Complaint, TRT asserts claims for breach of contract, constructive fraud, and unfair competition in violation of Business & Professions Code Section 17200. Dkt. 118.

### Settlement Of The Partners' Hawaii Lawsuit

After TRT filed its federal court lawsuit against Luckey and Oculus, the Hawaii state court action between the partners proceeded in parallel. On October 14, 2016, Second Circuit (Maui) Judge Rhonda Loo--following an all-day settlement conference in her courtroom--crafted a settlement between Igra and Seidl which resulted in Seidl withdrawing from the partnership, declaring that all contract rights remain with TRT, and confirming that Seidl had no individual rights in TRT's case against Luckey and Oculus. Dkt. 204-2. Seidl believed then, as he believes now, that his settlement agreement with Igra was intended to permit TRT to continue to pursue this lawsuit against Defendants--to enforce TRT's rights in the Exclusivity Agreement. Seidl Decl., ¶ 8. Seidl continues to believe that Luckey breached his Exclusivity Agreement with TRT and misrepresented his actions in commercializing the Rift during the term of the Exclusivity Agreement. *Id.*, ¶¶ 7-8.

### Proceedings In This Court

On June 16, 2016, this Court ruled on summary judgment that the partners Seidl and Igra did not agree to the original filing of the lawsuit and therefore the suit was unauthorized. Dkt. 179. The Court rejected TRT's argument that Defendants did not have standing to insert themselves into an alleged intra-partnership dispute and that any veto rights over the lawsuit belonged to the partners, not the Defendants. The Court, however, stayed the lawsuit for six months to give counsel time to cure what it termed "the authorization problem." *Id.*

---

[4] On January 16, 2016, on Defendants' Rule 12 motion, the Court dismissed TRT's claims for conversion and breach of the covenant of good faith and fair dealing. Dkt. 82.

1    Following the parties' settlement, and with Seidl having withdrawn from the partnership

2 effective October 14, 2016, Igra, as the only remaining partner of TRT, ratified all of TRT's

3 previous actions in this case.  Dkt. 203-2 (Igra Decl.).  Nonetheless, on March 9, 2017, the Court

4 denied TRT's motion to lift the stay, and judgment was entered against TRT.  Dkt 213.  TRT

5 appealed.  Dkt 219.

6    ***Appeal and Remand***

7    The Ninth Circuit reversed and remanded on the issues of authority and capacity--reversing

8 on the threshold question of Defendants' ability to challenge TRT's authority to file this action, as

9 well as asking this Court to revisit the factual basis for authority (if federal law allows) and the

10 issues of ratification and the statute of limitations.  In relevant part, the Ninth Circuit held:

11    The district court erred in concluding that state law governed the procedural
         question of whether Defendants can challenge Plaintiff's authority to file this
12       action. *See Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir.
         2015). We remand for the district court to consider this question in the first instance
13       under federal law, including the possible applicability of either Federal Rule of
         Civil Procedure 9(a)(1)(A) or 9(a)(1)(B). *De Saracho v. Custom Food Mach., Inc.*,
14       206 F.3d 874, 878 (9th Cir. 2000). Specifically, the district court should consider
         whether the issue of a partner's authorization to sue on behalf of a partnership is
15       one of "capacity" within the meaning of Rule 9(a)(1)(A), or "authority" within the
         meaning of Rule 9(a)(1)(B), or whether there is some other basis on which
16       Defendants can raise the issue. If the district court concludes that a partner's
         authorization to sue on behalf of a partnership is an issue of "capacity" or
17       "authority" under Rule 9(a), then it should determine whether Plaintiff offered facts
         sufficient to establish its authority or capacity to sue. The district court should also
18       consider whether, even if Defendants could raise the issue, and even if Plaintiff's
         attempted retroactive ratification was valid, the statute of limitations had already
19       expired on Plaintiff's claims.
20

21 *Total Recall*, 731 F. App'x at 707; Dkt. 226 at 2.

22                              **ARGUMENT**

23 I.    **FEDERAL LAW PROVIDES NO GROUNDS FOR DEFENDANTS TO
            CHALLENGE TRT'S AUTHORITY TO FILE AND MAINTAIN THIS ACTION**
24

25    TRT has consistently argued that Defendants lack standing to challenge TRT's internal

26 management authority and decision making.  This Court disagreed, holding that California state

27 law permitted such a challenge.  Applying the *Erie* doctrine, the Ninth Circuit reversed and held

28 that this issue is one of federal law.  *See Total Recall Techs. v. Luckey*, 731 F. App'x 706, 707 (9th

-9-                    Case No. 15-CV-02281 WHA

1   Cir. 2018).  It then directed this Court to consider whether Fed. R. Civ. P. 9, or any other source of

2   federal authority, gives Defendants standing to "raise the issue." *Id.*

3           There is, of course, "no federal general common law" that gives Defendants standing to

4   challenge TRT's internal management authority.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

5   After the Ninth Circuit's decision, Defendants may not argue that California law gives them

6   standing.  Instead, Defendants must identify a federal rule or statute that authorizes their

7   challenge.

8           Defendants rely only on two sources of federal law:  Rule 9 and this Court's inherent

9   power.  They have not identified any other source of federal authority.  As a result, they may

10  challenge TRT's internal management authority only if Rule 9 or this Court's inherent power

11  permits them to do so.  Neither do.

12          Despite having briefed this issue exhaustively before this Court (twice) and the Ninth

13  Circuit, Defendants have not found *one* case, from any jurisdiction, where a court has allowed a

14  third-party defendant to challenge a business entity's internal management authority to sue.  This

15  silence speaks volumes because plenty of courts have allowed **insider defendants** (like partners,

16  officers, and shareholders) to challenge their company's internal management authority to sue.

17  *See, e.g.*, *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 877–78 (9th Cir. 2000);

18  *Anmaco, Inc. v. Bohlken*, 16 Cal. Rptr. 2d 675, 678 (Cal. Ct. App. 1993).  And in the factually

19  closest case to this one, *Delbon Radiology v. Turlock Diagnostic Center*, 839 F. Supp. 1388 (E.D.

20  Cal. 1993), Chief Judge Coyle of the Eastern District ruled that a defendant may not challenge the

21  internal management authority of a partnership.  Looking outside this Circuit, the law gets even

22  worse for Defendants.  *See* 14A Barbara J. Arsdale, *et al.*, N.Y. Jur. 2d Business Relationships

23  § 594 (2018) ("A stranger to a corporation has no standing to question the validity of the acts and

24  conduct of the corporation's executive committee with respect to its authority to act."); *see also*

25  *Rothman & Schneider, Inc. v. Beckerman*, 141 N.E.2d 610, 614 (N.Y. 1957) ("[T]he defendants

26  before us, complete strangers to the corporation and actually charged with converting a portion of

27  its assets, should not be permitted to question his authority and thereby frustrate the action.").  But

28  *Delbon* and these other cases aside, given the Ninth Circuit's instructions on remand, Defendants'

-10-

Case No. 15-CV-02281 WHA

TRT OPPOSITION TO RENEWED MOTION
FOR SUMMARY JUDGMENT

failure to identify any federal authority that gives them standing to challenge TRT's internal

authority is fatal to their motion for summary judgment.

### A.   Rule 9 Does Not Give Defendants Standing to Challenge TRT's Internal Management Authority

The full text of Rule 9(a) reads:

(1) *In General.* Except when required to show that the court has jurisdiction, a pleading need not allege:

    (A) a party's capacity to sue or be sued;

    (B) a party's authority to sue or be sued ***in a representative capacity***; or

    (C) the legal existence of an organized association of persons that is made a party.

(2) *Raising Those Issues.* To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

Fed. R. Civ. P. 9(a) (emphasis added).  Per the Ninth Circuit's instructions, it is this text that

Defendants must rely on to find a basis to challenge TRT's authority to file and maintain this case.

Defendants contend that because Rule 9(a)(2) allows defendants to challenge plaintiffs'

"authority to sue or be sued in a representative capacity" as well as their "capacity to sue,"

Defendants may challenge TRT's internal management authority.  This is so, Defendants say,

because a partnership that lacks internal management authority to sue either lacks "authority to sue

or be sued in a representative capacity" or "capacity to sue."  Defendants cannot decide which is

right--authority to sue in a representative capacity or capacity to sue--so they argue that both

apply.

They are wrong either way.  Capacity refers only to a person's competency to sue or be

sued.  *See, e.g., Johns v. San Diego*, 114 F.3d 874, 877 (9th Cir 1997) (explaining that a minor

does not have capacity).  "Capacity" is simply a party's competence to be a party in a lawsuit as a

general matter irrespective of the specific claim at issue.  For example, a minor lacks capacity for

all cases.

A party's "authority" under the text of Rule 9(a)(1)(B) does not apply to authority

generally.  Instead, it applies to the limited circumstance of one's authority to sue or be sued "in a

representative capacity" as Rule 9 states – *i.e.*, for the rights of another, like a trustee on behalf of

a trust. By contrast, Defendants seek to challenge TRT's internal management authority. That sort of challenge, however, does not fall within any reading of plain language of Rule 9, which is precisely why Defendants have found not one case that supports their theory.

### 1. Rule 9(a)(1)(B) Does Not Apply – TRT Is Not Suing in a Representative Capacity

Defendants' first argument (Dkt. 246, at 15-16) is that they can challenge this lawsuit under Rule 9(a)(1)(B) because questions of internal management authority raise an issue of "authority to sue or be sued in a representative capacity." Not only are Defendants wrong, but they cannot keep their story straight.

On appeal, while misquoting Rule 9, Defendants argued to the Ninth Circuit that Rule 9(a) gave them standing to challenge "TRT's authority to sue." *See, e.g.*, Defs.-Appellees Br. at 30, 2017 WL 4239223 (C.A.9) (purporting to quote Rule 9 but entirely omitting the phrase "in a representative capacity"). As TRT explained on reply to the Ninth Circuit, however, while Rule 9(a)(1)(B) permits a party to deny a plaintiff's "authority to sue or be sued *in a representative capacity*," it does not permit a wholesale challenge to one's "authority to sue." *See* Reply Br. at 4, 2017 WL 5152205 (C.A.9).

And there can be no question that authority to sue **in a representative capacity** does not refer to an entity's internal management authority. It refers instead to "the right to exercise power on behalf of [a separate] represented entity." 5A Wright & Miller, *Federal Practice & Procedure* § 1292 (4th ed. 2018). Accordingly, this Rule covers situations where, for example, a guardian sues on behalf of a child, or a trustee sues on behalf of a trust. *See, e.g.*, Fed. R. Civ. P. 17(c) (listing who "may sue or defend *on behalf of* a minor") (emphasis added). But, as TRT explained to the Ninth Circuit, this Rule has no application here because TRT is suing in its own name, **not** in a representative capacity on behalf of someone else. And the plain language of Rule 9(a)(1)(B) does not allow Defendants to challenge an entity's authority to sue *in its own capacity*. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980) ("The Federal Rules should be given their plain meaning.").

Defendants now appear to agree with TRT that Rule 9(a)(1)(B) only refers to challenges concerning a party's authority to sue in a representative capacity--not authority to sue generally. They quote the same Wright & Miller definition of "authority to sue . . . in a representative capacity" that TRT cited above. *See* Dkt. 246, at 14. They also cite a Ninth Circuit case defining "authority" as "[t]he right or permission to act legally on another's behalf." *Id.* (quoting *United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185 (9th Cir. 2015)).

But recognizing that Rule 9(a)(1)(B) offers them no support, Defendants pivot. Ignoring the fact that TRT is plaintiff, they now claim that Defendants are challenging "*Igra's* authority to sue" on behalf of TRT, "*not TRT's*" authority. Dkt. 246, at 15 (second emphasis added). Once more, Defendants seek to mislead. In their Motion, Defendants repeatedly use "Igra" and the pronoun "he" to refer to Plaintiff in a sleight of hand aimed at leading the Court down the path to another appeal. *See, e.g.*, Dkt. 246, at 1, 2, 4, 9, 12, *passim* ("Igra filed," "Igra commenced" "Igra appealed," "Igra argued" etc.). Contrary to Defendants' deception, however, **TRT** is and always has been the named party in this case.

In changing their position, Defendants have made an important concession and have sunk their argument. The text of Rule 9(a)(1)(B) does not give Defendants the right to challenge Igra's authority to sue at all. The plain language of that rule instead gives them the right to challenge "*a party's* authority to sue or be sued in a representative capacity." Igra has never been a "party" in this case. TRT is the only plaintiff. *See, e.g.*, 59A Am. Jur. 2d Partnership § 438 (2018) ("[T]hat a partnership is a party to an action does not in itself make the partners parties."). Thus, Rule 9(a)(1)(B) has no application here.

Finally, Defendants insist that *De Saracho*, in which the Ninth Circuit affirmed a trial court's evidentiary ruling, confirms their reading of Rule 9. Not so, for three reasons.

First, the holding in *De Saracho* simply confirmed the district court's exercise of discretion involving a motion in limine. 206 F.3d at 874. *De Saracho* did not interpret the phrase "authority to sue or be sued in a representative capacity" in Rule 9. Indeed, the sections of *De Saracho* that Defendants cite are dictum because the only issue in *De Saracho* was whether "authority to sue"

Case No. 15-CV-02281 WHA

TRT OPPOSITION TO RENEWED MOTION
FOR SUMMARY JUDGMENT

1    was waivable, not whether Rule 9 gave the parties standing to challenge internal partnership

2    authority.

3           Second, Defendants have abandoned the theory that *De Saracho* purports to endorse.

4    Defendants now concede that they cannot challenge TRT's authority to sue under Rule 9(a)(1)(B);

5    instead, they seek to challenge Igra's authority to sue on its behalf--even though Igra is not a

6    named party.  In *De Saracho*, by contrast, the defendants, including individual partners,

7    challenged the plaintiff *company's* authority to sue.  *See id.* at 877–78.  As TRT and Defendants

8    both agree, Rule 9(a)(1)(B) gives defendants the right to challenge a *party's* "authority to sue . . .

9    in a representative capacity," not general "authority to sue."

10          Third, *De Saracho* is consistent with TRT's position because the partners at issue were on

11   both sides of the lawsuit and one of the disputed issues for trial was their respective authority.  If

12   *De Saracho* stood for what Defendants now claim it does, the Ninth Circuit would not have

13   remanded this case back to this Court to review Rule 9; it would have affirmed under *De Saracho*.

14   It did not because *De Saracho* does not control.

15              **2.**      **Rule 9(a)(1)(A) Does Not Apply – TRT Has "Capacity To Sue"**

16          Next, Defendants argue in the alternative that TRT lacked "capacity to sue" under Rule

17   9(a)(1)(A).  Dkt. 246, at 17.  "[C]apacity to sue or be sued refers to the qualification of a party to

18   litigate in court . . . ."  5A Wright & Miller, *supra*, § 1292.  A minor or insane adult thus lacks

19   capacity to sue as does a dissolved or suspended corporation.  *See, e.g.*, *Mather Const. Co. v. U.S.*,

20   475 F.2d 1152, 1155 (Ct. Cl. 1973) (corporation suspended for failure to pay taxes lacks capacity).

21          If a party has capacity to sue, it generally has a "personal right to come into court" that

22   does not vary based on the cause of action it brings.  6A Wright & Miller, *supra*, § 1559

23   ("Capacity . . . should not be confused with the question of whether a party has an enforceable

24   right or interest . . . .").  That is why a minor has no capacity to sue, but a sane adult has

25   competency to sue and be sued.  *See id.* ("Generally, capacity is conceived of as a procedural issue

26   dealing with the personal qualifications of a party to litigate and typically is determined without

27   regard to the particular claim or defense being asserted."); *see also* 5 Witkin, Cal. Proc. 5th Plead

28   § 970 (2008) ("There is an important distinction, sometimes overlooked, between lack of capacity

to sue and lack of right to sue. The plaintiff, e.g., may be an adult individual, *or a corporation organized in full compliance with statutory requirements*, or a representative fully qualified to bring actions on behalf of his or her principal or beneficiary, *and in all of these situations the plaintiff is possessed of legal capacity to sue*." (emphasis added)).

There is no question that TRT has capacity. Under California law, a partnership has capacity to sue in its own name. *See* Cal. Civ. Proc. Code § 369.5(a). TRT is a partnership, thus TRT has capacity to sue. *See, e.g.*, 59A Am. Jur. 2d Partnership § 438 (2018) (explaining, in a section entitled "Capacity of Partners or Partnership to Sue or Be Sued," that "[a]s long as a partnership exists and has not been dissolved or liquidated, a 'partnership' is a juridical person, distinct from its partners, and is a proper party to maintain an action regarding partnership property." (footnote omitted)). Defendants have not challenged TRT's capacity as a partnership, a legal entity, to sue.

Defendants even agree that TRT "generally ha[s] the ability to sue," but contest its "capacity to bring *this* lawsuit because Seidl did not consent to it." Dkt. 246, at 17. But as explained above, that is not what "capacity" means under Rule 9. That is why Defendants have not found a single case holding that a partnership (or even a corporation) lacked capacity to sue simply because it allegedly lacked internal management authority to sue. The only two cases Defendants cite in this section of its Motion stand for the truism that Rule 9 allows Defendants to raise capacity as an issue by specific denial. *See Jacques Krijn En Zoon v. Schrijver*, 151 F. Supp. 955, 957 (S.D.N.Y. 1957) (holding that a defendant could assert that a dissolved partnership lacked capacity); *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM CWX, 2006 WL 4749756, at *30 (C.D. Cal. Sept. 25, 2006). Simply put, Defendants have cited no authority in support of their "capacity" argument, and no court has viewed "capacity" as Defendants do. Thus, the plain text of Rule 9(a)(1)(A) provides no grounds for Defendants to challenge TRT's decision to file and maintain this action.

06533-00001/10657995.2

**B.** **This Court's Inherent Authority to Manage Its Docket Does Not Give Defendants Standing to Challenge TRT's Internal Management Authority**

Lastly, Defendants argue that this Court's inherent authority gives them standing to raise TRT's internal management authority. Dkt. 246, at 18-20. They point to two inherent powers: "the control vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) (holding that courts have inherent power to dismiss cases for failure to prosecute); and a court's power "to process litigation to a just and equitable conclusion." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (holding that courts lacked inherent authority to fashion a certain kind of injunction).

But none of the cases Defendants cite come close to suggesting that courts have inherent power to grant defendants standing to raise substantive defenses, let alone standing to challenge a business entity's internal management authority to sue. Rather the cases cited concern mundane procedural questions. *See Pina v. Horel*, No. C 07-4989 SI (PR), 2008 WL 686590, at *2 (N.D. Cal. Mar. 7, 2008) (holding that a court may direct plaintiffs to proceed separately, rather than as a group); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 564 (3d Cir. 1985) (holding that courts have inherent authority to sanction an attorney). And the last case Defendants cite, *Estate of Garcia-Vasquez v. Cty. of San Diego*, does not mention a court's inherent authority at all. *See* 2008 WL 4183913, at *6. Rule 9 says what it says, and Defendants cannot backfill by invoking unspecified and apparently unlimited inherent powers of the court.

This is a fatal problem for Defendants. Both *Link* and *Barton*, the primary cases Defendants cite, do not say that district courts have inherent authority to do whatever they generally find to be convenient and fair. Such a wide-ranging mandate would of course squarely conflict with *Erie*. Instead, the decisions ground courts' inherent authority in precedent. *See Link*, 370 U.S. at 630–31 & nn.5, 7 (citing dozens of state court decisions and federal district court local rules); *Barton*, 569 F.2d at 1359 (grounding its inherent authority in "the common law equity tools of a Chancery Court"). Without this judicial caution, "there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others,

1   undertakes to define its own authority." *Degen v. United States*, 517 U.S. 820, 823 (1996).

2   Defendants would have this court ignore these prudential limits and extend inherent authority

3   based on speculative policy arguments alone.

4        Relying on policy and without supporting case law, Defendants argue that they be

5   permitted to challenge TRT's internal management authority to prevent dissenting partners from

6   bringing the same case again or avoiding the consequences of lawsuits by saying the partnerships

7   never had authority to sue in the first place. Alternatively, according to Defendants, dissenting

8   partners might release the partnership's claims, complicating defendants' negotiation strategy and

9   requiring courts to decide who really speaks for the partnership. Neither of these hypothetical

10  scenarios apply here.

11       Seidl has withdrawn from TRT, sworn that all "rights and interests that relate to the

12  lawsuit" remain with TRT, and confirmed that he has "no individual claims related" to the lawsuit.

13  As a result, even if the Court believes that *sometimes* it might need to hear challenges to internal

14  management authority to "achieve the orderly and expeditious disposition of its cases," *Link*, 370

15  U.S. at 631, that is certainly not required here. *See Degen*, 517 U.S. at 823 ("counsel[ing] restraint

16  in resorting to inherent power" (internal citations omitted)). Not only has Seidl withdrawn from

17  TRT, but the lawsuit like any other lawsuit is subject to the rules of *res judicata*. This means that

18  TRT's claims against Luckey and Oculus will be resolved in this case and not in some

19  hypothetical other case.

20       In sum, there is no federal law, in Rule 9 or otherwise, that permits Defendants to

21  challenge the management authority of TRT. As this Court knows, the plaintiff is not Igra, but

22  TRT, a Hawaii partnership with capacity to sue. For that reason, Rule 9 does not apply, and

23  Defendants have cited no other source of federal law that gives them standing to raise this issue.

24  Accordingly, Defendants are not entitled to summary judgment.

25

26

27

28

06533-00001/10657995.2

## II.  <u>TRT HAS AUTHORITY AND CAPACITY TO MAINTAIN THIS ACTION</u>

Although there is no need to reach this issue because Rule 9 does not provide grounds for Defendants' challenge to TRT's authority,[5] the Ninth Circuit's second instruction on remand was for the court to "determine whether Plaintiff offered facts sufficient to establish its authority or capacity to sue." *Total Recall*, 731 F. App'x at 707; Dkt. 226 at page 2. TRT has full authority to proceed because the sole remaining partner has, under oath, fully authorized and ratified this lawsuit.

Defendants argue that the Ninth Circuit left the District Court's analysis "undisturbed" on this issue. Dkt. 246, at 20. Not so. The Court of Appeals reversed and remanded and specifically instructed the District Court to review the determination of authority. Thus, Defendants' assertion that this Court's prior ruling is somehow "law of the case" is misplaced. *See U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir. 2001) ("The doctrine does not apply to issues not addressed by the appellate court."); *Untimax Cement Mfg., Corp. v. CTS Cement Mfg. Corp.*, No. SA CV 02–578 AHS, 2011 WL 13152067, at *4–5 (C.D. Cal. Jan. 10, 2011) (holding that the court was "free to reconsider its prior rulings" that were not "adopted, explicitly or implicitly, by the appellate court's judgment"); *Jarvis v. K2 Inc.*, No. C03-1265Z, 2008 WL 630008, at *3 (W.D. Wash. Mar. 5, 2008).

Following a full day settlement conference before Second Circuit (Maui) Judge Rhonda Loo on October 14, 2016, Judge Loo crafted a resolution of the Hawaii lawsuit between Igra and Seidl whereby Igra and Seidl agreed, *inter alia*, that:  (1) Seidl withdrew from the partnership pursuant to Haw. Rev. Stat. § 425-130, effective October 14, 2016 (Dkt. 204-2); (2) all rights or other interests relating to this lawsuit remained the property of TRT; (3) Seidl agreed to receive

---

[5]  TRT notes that Defendants' Motion exceeds the scope of briefing ordered by the Court. The Court ordered the parties to brief "the threshold Rule 9(a) issue" and "[b]riefing shall be limited to the threshold issue our court of appeals mandated the [Court] to consider. No other motions or issues will be considered." Dkt. 236. Defendants, however, have addressed not just the threshold Rule 9(a) issue, but all of the secondary issues identified by the Ninth Circuit, including the factual basis for authority. TRT understands these issues to be beyond the scope of the ordered briefing but will address these issues because Defendants have devoted the majority of their brief to them—no doubt because they have no support for their position in Rule 9.

Case No. 15-CV-02281 WHA

TRT OPPOSITION TO RENEWED MOTION
FOR SUMMARY JUDGMENT

thirty (30) percent of any net monetary award, monetary settlement, or other recovery resulting from this lawsuit, if any (*id.*); and (4) Igra agreed to indemnify Seidl for any fees and costs arising out of this lawsuit (*id.*). Dkt. 203-2. Following the settlement, TRT submitted declarations to this Court confirming the settlement, explaining that TRT would continue to prosecute this lawsuit and that Seidl had no individual claims relating to TRT's contract with Luckey. Seidl expressly acknowledged: "I have no right to control any aspect of the California Lawsuit and no right to veto the California Lawsuit." Dkt. 203-1; *see also* Seidl Decl., ¶ 8. Both Seidl and Igra intended that their settlement would permit TRT to continue to pursue this lawsuit against Defendants. *Id.*

Although this varied from the Court's earlier model for ratification, that was because TRT's business structure changed under Judge Loo's settlement. With Seidl withdrawn, only Igra could ratify the partnership's acts, and he did so. Dkt. 203-2, ¶¶ 7-8. TRT speaks with one voice, and that voice has ratified all past action.

## III. THE STATUTE OF LIMITATIONS HAS NOT RUN ON TRT'S CLAIMS

Assuming that Defendants can challenge TRT's internal management authority, and assuming that TRT's retroactive ratification was necessary and valid, the third issue on remand is whether "the statute of limitations had already expired on Plaintiff's claims." *Total Recall*, 731 F. App'x at 707; Dkt. 226, at page 1. Once again, TRT believes it is unnecessary to reach this question, but, in any event, the statute of limitations has not run on TRT's claims.

### A. Defendants Waived Any Statute Of Limitations Defense By Failing To Plead It

It is undisputed that Defendants never pleaded a statute of limitations defense in any of their answers, nor have they ever sought leave to amend them. Dkt. 127, 129. The statute of limitations is an affirmative defense and is waived if not timely raised. *Martin v. Van Bergen,* 209 Cal. App. 4th 84, 91 (2012) (citing *Mysel v. Gross,* 70 Cal. App. 3d Supp. 10, 15 (1977)). By failing to plead it, and by raising it well after the close of fact discovery, Defendants have waived the defense.

Defendants cite *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997) (Dkt. 246, at 25) to argue that they did not have to raise the statute of limitations in their answer; but that case concerns the affirmative defense of section 213 of the Fair Labor

06533-00001/10657995.2

1   Standards Act, concerning overtime pay.  Defendants cite no cases that would allow them to raise

2   their defense so late.  In Defendants' other case, unpublished *Foothills of Fernley LLC v. City of*

3   *Fernley*, 355 F. App'x 109 (9th Cir. 2009), the Ninth Circuit found that there was no waiver,

4   which allowed the district court to address the issue.  Obviously, permitting the Defendants'

5   eleventh hour assertion of a limitations defense, well after the close of fact discovery and after

6   their summary judgment motion, when it nowhere appears in their pleadings or discovery answers,

7   would severely prejudice TRT.

8          **B.     Plaintiff's Filing Of The Initial Complaint Tolled The Statute Of Limitations**

9          Even if Defendants had pleaded a statute of limitations defense, the applicable limitation

10  periods have not run.  All applicable statutes of limitation were tolled when TRT filed this case on

11  May 20, 2015.  It is axiomatic that an action is commenced "when the complaint is filed."  Cal.

12  Civ. Proc. Code § 350.  The filing is the relevant event for the statute of limitations.  *See Breslin v.*

13  *City & Cty. of San Francisco*, 146 Cal. App. 4th 1064, 1082 n.18 (2007) ("An action is

14  commenced for statute of limitations purposes when a complaint is filed.").  The general rule is

15  "[t]he filing of the complaint suspended the running of the statute of limitations as to the matters

16  arising out of the transaction set forth therein."  *Luna Records Corp., v. Alvarado*, 232 Cal. App.

17  3d 1023, 1027 (Ct. App. 1991).  Thus, TRT complied with the law, and Defendants were on full

18  notice of the allegations in this case.  Indeed, fact discovery was finished, and the parties were on

19  the eve of trial when the Court stayed and dismissed it.

20          **C.     California Franchise Tax Board Statutory Exception Cases Do Not Apply**

21          Defendants cannot dispute that the general rule is that a filed complaint tolls the statute of

22  limitations.  However, they point to an exception to this rule (Dkt. 246, at 23-24):  a series of cases

23  involving the tax status of California corporations and the *capacity* of delinquent corporations to

24  sue and be sued.  Not only do these cases concern the general capacity of an entity to sue or be

25

26

27

28

06533-00001/10657995.2

1  sued (as opposed to an entity's authority to take a particular action[6]), this narrow line of cases does

2  not apply here.

3       Under this line of tax cases, a complaint does not toll the statute of limitations if it is filed

4  by a corporation that is suspended for failure to pay taxes.  California imposes this rule for an

5  important policy reason:  it encourages companies to pay taxes.  Here, Defendants cannot take

6  advantage of this law because (1) it concerns capacity to sue and (2) it is limited to tax-delinquent

7  corporations for which there is a legislative incentive to encourage tax-paying.

8       For instance, Defendants rely on *V&P Trading Co. v. United Charter*, LLC, 212 Cal. App.

9  4th 126 (2012) for the proposition that a complaint filed without proper internal management

10  authority does not toll the statute of limitations.  Dkt. 246, at 23.  That case, however, has no such

11  holding.  In *V&P*, the corporation V&P sued a warehouse for damage to goods.  V&P, however,

12  had not paid taxes, and under Revenue and Taxation Code section 23301, its "powers, rights and

13  privileges" were suspended.  212 Cal. App. 4th 126 at 132.  "A corporation which has been

14  suspended pursuant to section 23301 is without capacity to prosecute a civil action while

15  suspended."  *Id*. (quoting *Welco Construction, Inc. v. Modulux, Inc.*, 47 Cal. App. 3d 69, 71

16  (1975)).  Courts explain that "the Legislature seeks to pressure delinquent corporations to pay their

17  taxes by prohibiting them from acting as going concerns until the taxes, plus any penalties and

18  fines, have been paid."  *Sade Shoe Co. v. Oschin & Snyder*, 217 Cal. App. 3d 1509, 1515 (Ct.

19  App. 1990)).  Here, in contrast to a tax-delinquent corporation, TRT has always had the capacity

20  to sue or be sued.  And even if authority and capacity are conflated, as Defendants attempt, the

21  limited legislative exception to the general rule should not apply here.

22       Defendants argue that the tax cases apply generally.  Dkt. 246, at 23.  They simply do not.

23  The cases are limited to the suspension of corporate powers rendering corporations without

24  capacity.  Defendants cite *Friends of Shingle Springs Interchange Inc. v. County of El Dorado*,

25  200 Cal. App. 4th 1470 (2011), but in that case, like *V&P*, the Franchise Tax Board suspended the

---

27  [6]  Defendants consistently (and intentionally) conflate "capacity" and "authority" in their
28  briefing.  As explained above, capacity is an entity or individual's general ability to sue or be sued
   in all contexts.

plaintiff corporation for failure to pay taxes.  *Id*.  Similarly, *Genutec Bus. Sols.,Inc. v. Weiss*, 2013 WL 3455731 (Cal. Ct. App. July 9, 2013), which Defendants also cite (Dkt. 246, at 24), cites in dicta to the same line of cases finding no tolling for tax-delinquent corporations.  *Genutec*, 2013 WL 3455731 at *13 (citing *Leasequip, Inc. v. Dapeer*, 103 Cal. App. 4th 394, 402-403 (2002)).  The issue in these cases is identical—and inapposite.

Finally, Defendants cite unpublished *In re Raffin*, 284 F. App'x 405 (9th Cir. 2008), for the proposition that the delinquent tax cases have general applicability.  That case has no such holding.  In *Raffin*, a trustee sued a lender to the trust on behalf of a trust, but she did not have the representative authority to do so—she did not properly represent the trust.  The court observed that the trust could be dissolved, and the suit reinitiated within the time for statute of limitations.  *Id*. at 406-07.  This unpublished decision's reference to the statute of limitations in the context of refiling a case after dissolving a trust does not bear on TRT's case—and certainly does not stand for the proposition that the California Franchise Tax Board cases are of general application.

### D.    Even If The Original Complaint Did Not Toll The Statute Of Limitations, The Doctrine Of Equitable Tolling Should Apply To Toll The Limitations Period

Even assuming, *arguendo*, that TRT's Complaint did not toll the statute of limitations, the doctrine of equitable tolling should apply.  Equitable tolling "is a judge-made doctrine which operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003) (internal quotations and citations omitted).  It applies in "situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Id.*  California courts "have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Elkins v. Derby*, 12 Cal. 3d 410, 418 (1974)).  Here, there can be no question that the notification purpose of a limitations statute has been satisfied as the original Complaint was timely filed and the dispute was litigated through the close of fact discovery before appeal and remand.  As such,

1  even had a statute of limitations defense been well-plead here, it should not lead to the dismissal

2  of this case.

3      The California Supreme Court has applied equitable tolling in situations where a trial court

4  has erroneously dismissed a case. *See Bollinger v. National Fire Ins. Co.*, 25 Cal. 2d 399, 403

5  (1944). There, the court found that equitable tolling applies where: (1) the trial court erroneously

6  granted the initial nonsuit; (2) actions by the defendant prevented disposition of the first action in

7  time to permit a second filing within the limitations period; and (3) the plaintiff had at all times

8  proceeded in a diligent manner. *Id.* Specifically in *Bollinger*, the plaintiff timely filed an action

9  against the insurer, but the court erroneously dismissed it as premature under the policy terms. *Id.*

10  The plaintiff promptly filed a new action, but by then the limitations period had expired. *Id.* The

11  California Supreme Court nonetheless allowed the second action and overruled the trial court's

12  grant of demurrer, explaining: "Since this action is in reality a continuance of the earlier action

13  involving the same parties, facts, and cause of action, and was promptly filed after entry of

14  judgment on the nonsuit, plaintiff should not be deprived of a trial on the merits because he failed

15  to seek other remedies in the municipal court. ***Statutes of limitations are not so rigid as they are***

16  ***sometimes regarded***." *Id.* at 410-11 (emphasis added).

17      California courts continue to follow these equitable principles. *See, e.g.*, *Hoose v.*

18  *Beauchamp*, 2004 WL 1345080, at *4 (Cal. Ct. App. June 16, 2004); *Appalachian Ins. Co. v.*

19  *McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 41 (1989) (tolling statute of limitations where

20  "We conclude the action here before us is in reality a continuance of the earlier action.");

21  *Baldhosky v. Sanchez*, 656 F. App'x 867, 868 (9th Cir. 2016) ("Because we conclude that

22  application of equitable tolling allows relation back to the 2012 filing date, we vacate the district

23  court's judgment and remand for further proceedings consistent with this disposition.").

24      The logic of *Bollinger, et al.* applies here. The instant action, on remand, is simply a

25  continuation of the action filed in 2015, involving the same parties, facts, and causes of actions.

26  Moreover, the tolling of any statute of limitations in this case fully comports with the purpose of

27  equitable tolling. As courts have explained, "a defendant's interest in notice is to enable it to

28  gather and preserve evidence. When the 'notification purpose' of a statute of limitations is

06533-00001/10657995.2

satisfied, the court liberally applies tolling." *Retail Clerks Union Local 648, AFL-CIO v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1035 (9th Cir. 1983) (citing *Elkins v. Derby*, 12 Cal. 3d 410, 417-18 (1974)). Defendants were unquestionably on notice of what TRT's claims were from the initial Complaint filed in this case and can claim no prejudice from application of equitable tolling. Fact discovery was complete and the parties were on the eve of trial when the district court stayed and dismissed the case. To preclude TRT's action under such circumstances "would result in the kind of technical and unjust forfeiture of a trial on the merits that the equitable tolling doctrine was designed to avoid." *Appalachian*, 214 Cal. App. 3d at 42. Thus, even if the filing of the original Complaint did not toll the statute of limitations, and even if Defendants had pleaded a statute of limitations defense, TRT's claims should still be permitted to proceed pursuant to the application of equitable tolling.

## CONCLUSION

As demonstrated, neither Rule 9 nor this Court's inherent powers permit Defendants to challenge the internal management authority of TRT. But even if either of those federal law sources did permit such a challenge, it is undisputed that TRT's case was fully authorized to proceed following the Hawaii settlement crafted by Second Circuit (Maui) Judge Rhonda Loo on October 14, 2016. Moreover, this case is not time-barred. Accordingly, TRT respectfully requests that this case be set for trial.


DATED: January 24, 2019            QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP



                                   By _____*/s/ Robert W. Stone*_____
                                      Robert W. Stone
                                      Brian Cannon
                                      Andrea Pallios Roberts
                                      Attorneys for Plaintiff TOTAL RECALL
                                      TECHNOLOGIES