IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TOTAL RECALL TECHNOLOGIES,

    Plaintiff,

  v.

PALMER LUCKEY and OCULUS VR, LLC, as successor-in-interest to Oculus VR, Inc.,

    Defendants.

No. C 15-02281 WHA

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

A partnership agreement between two individuals provided that no lawsuit would be maintained without the approval of both. Over the objection of one, the other brought a lawsuit in the name of the partnership against third parties. An earlier order dismissed the suit. After remand from our court of appeals, defendants renew their motion for summary judgment. Their motion for summary judgment is **GRANTED**.

## STATEMENT

Prior orders set forth the facts of this case (Dkt. Nos. 179, 213). Briefly, in 2010, Ron Igra and Thomas Seidl formed a two-person partnership, Total Recall Technologies ("TRT"), with the goal of developing consumer virtual-reality technology. The partnership agreement gave each of the two partners veto power over any decision regarding TRT, and stated that "for any decision regarding the company Ron Igra and Thomas Seidl have to agree on any action [except for certain sales of a controlling interest in the partnership]" (Dkt. No. 133-2 ¶ 19). In

August 2011, Seidl entered into a written agreement with defendant Palmer Luckey to develop a prototype for a head-mounted virtual-reality display according to certain specifications supplied by Seidl. Luckey eventually formed Oculus LLC, which later re-registered as defendant Oculus VR, LLC, and sold to Facebook, Inc.

Igra wanted to sue Luckey on the theory that Luckey had misappropriated Seidl's ideas. Seidl, however, did not want to sue. In 2014, Igra commenced an action in Hawaii state court against Seidl, seeking to compel Seidl to authorize an action against Luckey in TRT's name. Igra and Seidl continued to correspond, but Seidl maintained his objection to suing Luckey and Oculus (*see* Dkt. Nos. 179 at 2; 213 at 2–3).[1]

In May 2015, with the Hawaii action still unresolved, Igra, using TRT's name, commenced this action *over Seidl's objection* here in federal court in San Francisco. After substantial motion practice, it became clear that Igra brought this action in TRT's name without Seidl's prior agreement. After discovery closed, an order stayed the action pending resolution of the Hawaii action but invited defendants to bring an early motion for summary judgment on whether this lawsuit had been properly authorized (Dkt. No. 149).

In their motion, defendants contended that Igra lacked authority to pursue this action due to Seidl's refusal to agree to sue (Dkt. No. 135). At no point did TRT respond by raising any arguments as to the applicability of the Rule 9(a) pleading standard. Instead, TRT argued that defendants had no "standing" to challenge TRT's internal business processes (primarily relying on one district court case which did not apply Rule 9(a)) and also that there remained a dispute of fact as to whether or not Seidl had exercised his veto pursuant to the partnership agreement (Dkt. No. 153).

In June 2016, an order held that defendants could challenge the partnership's authority — even as a third party — and that Seidl had never authorized the lawsuit under state law, so Igra could not maintain this action in TRT's name. No dispute between Igra and Seidl existed

---

[1] The Hawaii action at issue was actually Igra's second lawsuit against Seidl in Hawaii state court relating to this internal dispute. The first had been to compel Seidl to produce documents relating to Seidl's agreement with Luckey. The first action is immaterial to the instant motion. All references to the "Hawaii action" herein refer to the second action, the one seeking to compel Seidl to agree to commence the instant action against Luckey and Oculus.

2

about the facts of the communications between them. TRT merely disputed the legal effect of Seidl's objections. Critically, the June 2016 order also postponed its effect subject to stated conditions, to "give counsel an opportunity to cure the authorization problem. To that end, the stay previously entered will remain in effect . . . until . . . the partners of Total Recall Technologies, file [] sworn declarations herein affirmatively and without qualification stating that both authorize and agree to the maintenance of this civil action in the name of Total Recall Technologies against Palmer Luckey and Oculus VR, LLC, that both ratify all actions taken herein so far on behalf of Total Recall Technologies, and that both consent to continued prosecution of the case by the law firm of Quinn Emanuel Urquhart & Sullivan, LLP . . ." (Dkt. No. 179 at 9, 14–15).

Yet, counsel never met the conditions provided by the order. Instead, in December 2016, Igra and Seidl stipulated to dismissal of the Hawaii action, agreeing to a new "Confidential Settlement and Release Agreement" between Igra and Seidl (Dkt. No. 204-1). Pursuant to the settlement agreement, Seidl withdrew "from the TRT partnership effective October 14, 2016, by executing a Withdrawal from Partnership . . . . Following Seidl's withdrawal from TRT, Seidl shall have no control over TRT or any decision-making rights with respect to TRT" (Dkt. No. 204-2, Exh. A ¶ II.A). The settlement agreement defined the term "California Lawsuit" to mean our instant action, and assigned rights to it, as follows (*id.* ¶ II.B.1):

> California Lawsuit Shall Remain TRT Property. Following the withdrawal by Seidl as a partner of TRT, any and all rights or other interests that relate to the California Lawsuit shall remain the property of TRT, and Seidl shall have no right to control any aspect of the California Lawsuit, and Seidl shall have no right to veto the California Lawsuit. Seidl understands that Igra intends to continue to pursue the California Lawsuit through TRT, and Seidl agrees that, with the exception of the rights set forth in Paragraph II.B.3. of this Agreement, he has no individual claims related to the California Lawsuit and shall have no right to seek judicial supervision or control over the California Lawsuit.

The settlement agreement required Seidl to "reasonably cooperate with counsel for TRT with respect to the California Lawsuit" and also provided that Seidl would receive thirty percent of any monetary award, settlement, or other recovery herein after payment of fees and costs (*id.*

3

¶¶ II.B.3; II.C). On the other hand, Igra agreed to "defend and indemnify Seidl for any fees, costs, monetary penalty or other liability arising out of the California Lawsuit" (*id.* ¶ II.H). In exchange, Seidl received all of TRT's intellectual property rights, with the exception of any rights in the names "Total Recall Technologies" and "TRT." Seidl agreed to pay Igra a portion of revenues generated from those intellectual property assets (*id.* ¶ II.C). Seidl also received "all other tangible and intangible assets of TRT," that is, he received all assets "[e]xcept for the rights in the California Lawsuit . . . and the names 'Total Recall Technologies' and 'TRT'" (*id.* ¶ II.E). Igra and Seidl released all claims against each other (*id.* ¶ II.F). They executed the settlement agreement on November 28, 2016. They entered a stipulation of dismissal of the Hawaii action on December 6 (Dkt. No. 207-2, Exh. B).

After this settlement, TRT submitted a declaration from Seidl noting his withdrawal from TRT and stating that he understood that he had "no right to control any aspect of the California Lawsuit and no right to veto the California Lawsuit." He understood, moreover, that he had "no individual claims related to the California Lawsuit and no right to seek judicial supervision or control over the California Lawsuit" (Dkt. Nos. 189-1 at ¶ 1; 213 at 4). For his part, Igra stated that he "as the sole remaining partner of Total Recall, authorize[d] and consent[ed] to the maintenance of" this action and the prosecution of the action by his counsel herein (Dkt. No. 189-2 at ¶ 7). Significantly, however, Seidl never gave any authorization or ratification of this action. Summary judgment was therefore granted in favor of defendants that TRT had not cured the authority problem and judgement was entered in favor of defendants (Dkt. No. 213 at 1, 5).

TRT appealed. On appeal, plaintiff argued that (1) defendants lacked "standing" to contest Igra's authority to sue in TRT's name and TRT's capacity to sue; (2) there was a genuine issue of material fact as to whether or not Seidl did in fact agree to sue; and (3) Igra retroactively ratified the lawsuit after becoming the sole TRT partner (Dkt. No. 246 at 3). In addition, TRT challenged a prior dismissal of two claims at the pleading stage. The court of appeals affirmed those dismissals.

4

As confirmed during oral argument in this action, until its briefing on appeal, TRT had never anchored its arguments that "standing" to contest Igra's authority should be applied under Rule 9. Even on appeal, TRT's Rule 9 arguments were raised solely in its reply briefing to counter defendants, who had raised it. Nevertheless, our court of appeals reversed the summary judgment order as having improperly applied state law rather than federal Rule 9 on the procedural question of whether defendants can challenge plaintiff's authority to file this action. The panel remanded:

> [F]or the district court to consider this question in the first instance under federal law, including the possible applicability of either Federal Rule of Civil Procedure 9(a)(1)(A) or 9(a)(1)(B). Specifically, the district court should consider whether the issue of a partner's authorization to sue on behalf of a partnership is one of "capacity" within the meaning of Rule 9(a)(1)(A), or "authority" within the meaning of Rule 9(a)(1)(B), or whether there is some other basis on which Defendants can raise the issue. If the district court concludes that a partner's authorization to sue on behalf of a partnership is an issue of "capacity" or "authority" under Rule 9(a), then it should determine whether Plaintiff offered facts sufficient to establish its authority or capacity to sue. The district court should also consider whether, even if Defendants could raise the issue, and even if Plaintiff's attempted retroactive ratification was valid, the statute of limitations had already expired on Plaintiff's claims.

*Total Recall v. Luckey*, 731 F. App'x 706, 707 (9th Cir. 2018) (citations omitted). It seems odd that the district court was found to have erred on a point plaintiff never raised in the district court. It further seems strange that the district court was found to have applied state law, when the district court applied federal Rule 17(b) which directed the district court to apply state law. Nevertheless, the instant order must carry out the instruction by our court of appeals.

On remand, TRT provided a new declaration from Seidl which stated: "[a]t no point in time . . . did I intend to waive any of TRT's rights against Palmer Luckey and Oculus in connection with the Exclusivity Agreement . . . When I withdrew from TRT as a partner, I did so with the explicit intention and understanding that TRT would continue to pursue this lawsuit against Defendants . . ." (Dkt. No. 248-18 at ¶¶ 6, 8). This order follows full briefing and oral argument (Dkt. Nos. 246, 248, 253).

5

# ANALYSIS

**1. THE DISTRICT COURT SHOULD CONSIDER WHETHER THE ISSUE OF A PARTNER'S AUTHORIZATION TO SUE ON BEHALF OF A PARTNERSHIP IS ONE OF "CAPACITY" WITHIN THE MEANING OF RULE 9(a)(1)(A), OR "AUTHORITY" WITHIN THE MEANING OF RULE 9(a)(1)(B), OR WHETHER THERE IS SOME OTHER BASIS ON WHICH DEFENDANTS CAN RAISE THE ISSUE.**

**A. RULE 9(a).**

Rule 9 — entitled "Pleading Special Matters" — provides the pleading standard for certain circumstances. Intended to reduce the complexities of pleading under the common law, Rule 9(a) removes the requirement for parties to affirmatively plead their respective "capacity" or "authority" to sue or be sued. But Rule 9(a) does not eliminate those issues. Instead, the rule shifts the obligation to raise the issue from the pleader to the party intending to challenge "capacity" or "authority." Specifically, Rule 9(a) provides as follows:

> (a) **Capacity or Authority to Sue; Legal Existence**.
>
> (1) *In General*. Except when required to show that the court has jurisdiction, a pleading need not allege:
>
> (A) a party's capacity to sue or be sued;
>
> (B) a party's authority to sue or be sued in a representative capacity; or
>
> (C) the legal existence of an organized association of persons that is made a party.
>
> (2) *Raising Those Issues*. To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

This order holds that challenging a party's authority to sue or be sued in a representative capacity is not limited to the specific party named in the caption — but extends to an inquiry into the authority of whoever purports to control the litigation on behalf of that party. For example, in this case, Ron Igra, though he does not appear in the caption, was (and remains) the controlling force behind the plaintiff side of the litigation. Therefore, Rule 9(a)

6

comprehends an inquiry not only into the authority of the named party, but also the authority of the person purporting to control the litigation on the named party's behalf.

If the rule were to the contrary, then a mere shareholder or employee of AT&T, for example, (or even a complete stranger), could bring a lawsuit on behalf of AT&T merely through the trick of naming AT&T as plaintiff. Of course, this cannot be allowed. The adverse party must be able to inquire, before sinking expense into litigation, into the authority of who is actually behind the litigation to determine whether or not the suit is brought by someone with authority to act for the plaintiff.

On the facts of this case, this order, like the previous orders, finds it quite clear that Ron Igra did not have authority to bring suit on behalf of TRT without the consent of his partner, Thomas Seidl.

There is no case on point, but this order draws some support from our court of appeals that "authority . . . in a representative capacity" includes situations in which shareholders or partners bring an action on behalf of an entity such as a corporation or a partnership. In *De Saracho v. Custom Food March., Inc.*, suit had been filed in the name of a corporation and the defendants challenged the corporation's "authority" to sue without the consent of its board. Our court of appeals held that defendants had waived any objection to plaintiff's authorization to sue under Rule 9(a). In highlighting that the "authorization" issue had been improperly raised on the eve of trial, our court of appeals discussed the timing of when the attorney for the individual who controlled the lawsuit on behalf of the corporation received the partnership agreement. "According to defendants," the partnership agreement was "the key document that establishe[d] . . . approval was necessary for [the entity] to bring suit." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 876–77, 879 (9th Cir. 2000), *cert. denied*, 531 U.S. 876 (2000) (citation omitted). If the defendant there had lacked the "standing" to raise the issue, it would have been easy to say so rather than engage in the merits.

TRT attempts to distinguish the authorization challenge in *De Saracho* — a challenge to the *entity's* authority itself to bring suit — from the one in this action, where the challenge is to the *individual partner's* authority to bring suit on behalf of the entity. In other words, in this

7

action, unlike in *De Saracho*, defendants challenge Ron Igra's authority to bring suit, but the plaintiff is TRT. Therefore, TRT says, Ron Igra's authority cannot be challenged under Rule 9(a)(1)(2).

This distinction makes little sense in the context of Rule 9(a)(1)(B). All agree that Rule 9(a)(1)(B) applies when a trustee brings suit on behalf of a trust — yet, in that circumstance, when the "authority" is challenged, the challenged authority is that of the entity bringing the suit (the trustee), not the entity on behalf of which the suit has been brought (the trust). As such, challenging a "*party's* authority to sue . . . in a representative capacity," pertains to the party's ability to sue or be sued in a representative capacity, which includes the authority of those who bring suit on behalf of another.

Further, TRT places too much weight on what is in the caption. While captions flag who the party purportedly is, as they must under Rule 10(a) ("[e]very pleading must have a caption . . . [which] must name all the parties . . . ."), they otherwise hold little weight. "While the caption of a complaint is helpful to the court, it is usually not considered part of the pleader's statement of claim and is not determinative as to the parties to the action." *Sands v. Arizona Dept. of Corrections*, 909 F.2d 1489, 1990 WL 107863, at *2 (9th Cir. 1990) (unpublished); *see also Shoshone-Bannock Tribes v. Fish & Game Com'n, Idaho*, 42 F.3d 1278, 1285 (9th Cir. 1994) (collecting cases); *Hoffman v. Halden*, 268 F.2d 280, 303–04 (9th Cir. 1959), *overruled on other grounds by*, *Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962) (holding that the caption is not determinative to construe the identity of a defendant). As such, it is no argument here that Ron Igra is not listed as bringing this action "in a representative capacity" in the caption or even that TRT is the sole plaintiff here simply because TRT is the sole entity listed in the caption.

*De Saracho* also provides insight on the matter of a defendant's "standing" to challenge the internal management authority of a corporate entity. *First*, the opinion notably found the internal partnership agreement to be relevant to its discussion of Rule 9(a) "authority." *Second*, if defendants had lacked "standing" to challenge the authority of plaintiff to sue then that ground would have been a vastly easier way to dispose of the appeal. TRT struggles to

explain why, if its argument has any merit, the *De Saracho* panel even entertained the challenge under Rule 9(a)(1)(B). *De Saracho*, 206 F.3d at 876–77.

TRT posits that in *De Saracho*, the partners at issue were on both sides of the lawsuit and one of the disputed issues for trial was their respective authority. This purportedly created defendants' "standing." In other words, TRT submits that while *insider* defendants have "standing" to challenge the internal management authority of an entity, *outsider* defendants do not.

Yet, the procedure under Rule 9(a)(2) makes no such distinction. Subsection two is a general rule that allows all parties — all plaintiffs, just as all defendants — to be able to raise the issues of capacity, authority, and legal existence under Rule 9(a). *De Saracho* also speaks in the context of "defendants" raising the challenge without further distinction. No indication exists from either the rule itself or any federal appellate decision that subsection two splits such hairs. As stated by the United States Court of Appeals for the Seventh Circuit: "it is always open to a defendant to show that the plaintiff in a diversity suit lacks capacity, under the law of the plaintiff's state, to bring a suit." *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 705 (7th Cir. 2006) (citing Fed. R. Civ. P. 9(a)), *reh'g denied* (2006). TRT's distinction, therefore, insufficiently explains away *De Saracho*.

TRT has not provided a single decision where any party — because of their status — has been denied a chance to raise the issue of "capacity" or "authority" under Rule 9(a). While other courts have concluded that "strangers" to an entity do not have "standing" to challenge the internal management authority of that entity, none of those cases challenged "capacity" or "authority" *under Rule 9(a)*. *See, e.g.*, *Delbon Radiology v. Turlock Diagnostic Center*, 839 F. Supp. 1388, 1391–93 (E.D. Cal. 1993); *Rothman & Schneider, Inc. v. Beckerman*, 141 N.E. 610, 614 (N.Y. 1957).

\*       \*       \*

In the alternative, TRT also lacks *capacity* to sue. While ordinarily it is true a partnership has capacity to bring suit in California, it still remains within the power of partners to agree to restrict the capacity of their partnership so that a partnership is unable to exercise

9

the full capacity of a usual partnership. Viewed in this way, this issue again is quite clear. TRT's capacity was restricted by agreement. Suit can only be brought with approval of both partners.

As stated, Rule 9(a) is the *pleading* standard. Rule 17(b), however, provides guidance as to how "capacity" should be "determined" based on the entity at issue. Rule 17(b) provides:

> (b) **Capacity to Sue or Be Sued.** Capacity to sue or be sued is determined as follows:
>
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
>
> (2) for a corporation, by the law under which it was organized; and
>
> (3) *for all other parties, by the law of the state where the court is located* . . .

(emphasis added).

It is true that the prior order, analyzed the matter entirely under Rule 17(b). In remanding, however, our court of appeals highlighted a single error in the analysis: "[t]he district court erred in concluding that state law governed the procedural question of whether Defendants can challenge Plaintiff's authority to file this action." *Total Recall*, 731 F. App'x at 707. As such, our court of appeals did not say, let alone even suggest, that the definition of "capacity" in Rule 9(a) cannot be gleaned from Rule 17(b). Indeed, "there is no logical basis for different treatment of the capacity issues addressed in Rules 9(a) and 17(b) of the Federal Rules of Civil Procedure." *Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir. 1996), *cert denied*, 517 U.S. 1244 (1996). The United States Court of Appeals for the Fourth Circuit succinctly described the relationship between the two rules: "Rule 9(a) . . . tells how the factual issue of . . . capacity must be raised. Rule 17(b) prescribes how the issue, once raised, should be decided." *Chrysler Credit Corp. v. Superior Dodge, Inc.*, 538 F.2d 616, 619 (4th Cir. 1976). Our court of appeals has not specifically addressed this point.

*Rule 17(b)(3) points us to apply California law.* One California Court of Appeal decision specifically clarifies what capacity is and why the rule is in place. In *American Alternative Energy Partners II*, the California appellate court defined "incapacity" as "merely a

*legal disability*, *such as* minority or incompetency, which deprives a party of the right to represent his or her own interests in court." Furthermore, "[t]he rules regarding party capacity are designed to assure that whatever judgment is rendered will be binding on the parties involved, and thus effectively resolve the litigation." *American Alternative Energy Partners II v. Windridge, Inc.*, 42 Cal.App.4th 551, 559 (1996) (emphasis added).

TRT's internal partnership agreement (allocating the right of the partnership to sue) falls squarely within the definition provided insofar as it deprives and/or grants TRT the right to represent the partnership's own interests in court. Furthermore, a chief problem in this action has always been that if one partner (Igra) were deemed authorized unilaterally to *assert* claims on behalf of the partnership, then the second partner (Seidl) would have to be deemed authorized unilaterally to *release* claims on behalf of TRT. No judgment therefore could ever be binding on the partnership. In light of this, the determination of the internal management authority, under Rule 17(b)(3), appears to fall squarely with California's definition of "capacity."

TRT asserts that capacity "is simply a party's *competence* to be a party in a lawsuit as a general matter irrespective of the specific claim at issue. For example, a minor lacks capacity for all cases" (Dkt. No. 248 at 11) (emphasis added). But *American Alternative Energy Partners II* lists "competence" merely as an illustrative example for "capacity." *See also Parker v. Bowron*, 40 Cal.2d 344, 351 (1953) ("incapacity is merely a legal disability, *such as infancy or insanity*, which deprives a party of the right to come into court") (emphasis added).

Other than a wide range of academic treatises, TRT cites to two decisions to support its crabbed definition of "capacity" (see Opp. Br. at 11 citing *Johns v. San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) and Opp. Br. at 14 citing *Mather Const. Co. v. U.S.*, 475 F.2d 1152, 1155 (Ct. Cl. 1973)). But those decisions explain the role of capacity in limited contexts: the first decision, in the context of a minor, and the second, in the context of a dissolved or suspended corporation. Even still, TRT never explains — in understanding the limitations to capacity — if a corporation's capacity to sue can be removed when its "powers, rights and privileges" are suspended, why can't a partnership's capacity to sue be removed when the partnership

11

agreement removes the partnership's powers, rights, and privileges to come into court? Cal. Rev. & Tax Code § 23301. In other words, just like a corporation's capacity can be suspended for failure to pay taxes, a partnership's capacity can also be removed through its internal partnership agreement.

As all the academic treatises cited by TRT have suggested, the federal courts have, virtually since the beginning of the Federal Rules of Civil Procedure, been general about the definition of capacity, describing it as "the plaintiff's personal right to come into court." *United States v. Association of Am. Railroads*, 4 F.R.D. 510, 517 (D. Neb. 1945) (Judge John Wayne Delehant). This order hews to a practical construction in holding that partners can agree to disable their partnership from performing the full range of acts (like bringing suit) that might otherwise be permitted under state law. A partnership does not have a personal right to come into court when that partnership has been internally incapacitated from doing so.

The procedure under Rule 9(a)(2) is therefore available to defendants here to raise the issues and challenge both Ron Igra's "authority" and TRT's "capacity."

### B. ANOTHER BASIS ON WHICH DEFENDANTS CAN RAISE THE ISSUE: THIS COURT'S INHERENT POWER TO RESOLVE PLAINTIFF'S AUTHORITY TO SUE.

Other than a party's ability to challenge pleadings under Rule 9(a), a district court must have the inherent power to inquire into the authority of who is actually behind the litigation to determine whether or not the suit is brought by someone with authority to act to prevent an unauthorized lawsuit from consuming extensive judicial and party resources. *See, e.g.*, *In re M.C. Prods.*, 205 F.3d 1351 (9th Cir. 1999); *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962). With this power, Rule 56(f)(3) then allows a court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." To that end, when substantial motion practice reveals that a partner has "gone rogue" and filed a lawsuit in direct contravention to the underlying partnership agreement, judges must be able to learn the underlying nature of the lawsuit before additional resources have been poured into a case which may have zero merit. The alternative would be bad policy. A rogue cannot be allowed to unilaterally maintain an action in the name of a partnership or company, especially

where the defense demonstrates (and asserts early in the action), as here, that the rogue is a rogue.

**2. IF THE DISTRICT COURT CONCLUDES THAT A PARTNER'S AUTHORIZATION TO SUE ON BEHALF OF A PARTNERSHIP IS AN ISSUE OF "CAPACITY" OR "AUTHORITY" UNDER RULE 9(a), THEN IT SHOULD DETERMINE WHETHER PLAINTIFF OFFERED FACTS SUFFICIENT TO ESTABLISH ITS AUTHORITY OR CAPACITY TO SUE.**

Defendants' amended answer to the Second Amended Complaint stated: "Defendants further aver that TRT is without authority or capacity to pursue this lawsuit . . . Igra caused this lawsuit to be filed on behalf of TRT without the required agreement or authorization of Seidl" (Dkt. No. 129 at 2). More than a mere general denial, this statement sufficiently placed TRT on notice that defendants challenged whether TRT was a proper party to this action. *See, e.g.*, *Pugh v. Kobelco Const. Machinery America, LLC*, 413 F. App'x 134, 136 (11th Cir. 2011); *Ralston Oil and Gas Co. v. Gensco, Inc.*, 706 F.2d 685, 691 (5th Cir. 1983); *Marston v. American Emp. Ins. Co.*, 439 F.2d 1035, 1041 (1st Cir. 1971). Defendants, moreover, did so in their answer, and thus, sufficiently early in the proceedings. *See, e.g.*, *Summers v. Interstate Tractor & Equipment Co.*, 466 F.2d 42, 49–50 (9th Cir. 1972); *Federal Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 263 (E.D. Cal. March 3, 1987) (Chief Judge Lawrence Karlton). As such, defendants have complied with subsection two's requirements, and have properly challenged TRT's capacity and Igra's authority to bring suit. TRT must now demonstrate that the lawsuit was properly authorized.

Both sides have previously agreed that under Rule 17(b)(3), California law controls the effect of the partnership agreement on TRT's capacity to sue and Igra's authority to sue on TRT's behalf. Rule 17(b)(3) directs us to apply California law.[2]

---

[2] Because the parties agree that Rule 17(b) should govern here even if the problem is one of "authority," this order assumes that Rule 9(a)(1)(B) "authority . . . in a representative capacity" should be analyzed under Rule 17(b). Indeed, appellate courts have done so. *See, e.g.*, *Jones v. Schellenberger*, 196 F.2d 852, 853 (7th Cir. 1952), *cert denied*, *La Reau v. Jones*, 344 U.S. 876 (1952); *Cooper v. American Airlines*, 149 F.2d 355, 357 (2nd Cir. 1945). Yet, this order notes that in an opinion which has since been cited with approval by the California Supreme Court, Judge Shira Scheindlin affirmatively held that "capacity" and "authority" are two distinct concepts, and so, Rule 17(b) applies solely to "capacity" under Rule 9(a). *See Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F.Supp. 1155, 1159 (S.D.N.Y. 1995) (Judge Shira Scheindlin); *Pacific*

At the time this lawsuit had been filed, the TRT partnership agreement provided that no lawsuit would be maintained without the approval of both partners. Seidl's last word to Igra before Igra filed the instant claim was the email dated February 22, 2015 in which Seidl told Igra: "Do not take any legal action against [P]almer" (Dkt. No. 159-5 at 7970). Igra himself correctly deemed this statement a veto: "Unfortunately, your refusal to cooperate in making our legal claims against Luckey [is] stopping the partnership from getting what it is rightfully due." Between the partnership agreement prohibiting suit without agreement and Seidl's explicit veto, at the time this lawsuit had been filed, TRT has not shown that it had capacity to sue or that Igra had authority to bring suit on TRT's behalf (Dkt. No. 179 at 9).

TRT does not argue with that conclusion. TRT instead argues that the capacity-authority problem had been properly cured by ratification. That is, TRT asserts that it acquired "full authority to proceed because the sole remaining partner has, under oath, fully authorized and ratified this lawsuit" (Dkt. No. 248 at 18).

In its prior order in June 2016 finding that TRT lacked authority, the order meticulously told TRT how it could cure the capacity-authority problem. The order postponed its effect subject to those stated conditions, specifically to "give counsel an opportunity to cure the authorization problem. To that end, the stay previously entered will remain in effect . . . until . . . the partners of Total Recall Technologies, file [] sworn declarations herein affirmatively and without qualification stating that both authorize and agree to the maintenance of this civil action in the name of Total Recall Technologies against Palmer Luckey and Oculus VR, LLC, that both ratify all actions taken herein so far on behalf of Total Recall Technologies, and that both consent to continued prosecution of the case by the law firm of Quinn Emanuel Urquhart & Sullivan, LLP . . . ." (Dkt. No. 179 at 14–15).

TRT did *not* comply with any of these conditions. Instead, TRT changed its corporate structure to silence Seidl's veto of this lawsuit.

It is true that Seidl has, under oath, withdrawn fully from the partnership "with the explicit intention and understanding that TRT would continue to pursue this lawsuit against

*Gas & Electric Co. v. County of Stanislaus*, 16 Cal.4th 1143, 1161 (1997).

14

Defendants . . . ." The Hawaii settlement, however, did not follow the prescribed remedy. The settlement indemnified Seidl from any liability stemming from the litigation while simultaneously transferring all of TRT's assets to Seidl and giving him a substantial stake in the outcome of this case (thirty percent) (Dkt. No. 213 at 6–7). That arrangement was a litigation gimmick — prejudicial to the defendants because it effectively deprived defendants of any ability to seek any costs and sanctions from a solvent party. Significantly, Seidl never authorized the lawsuit before the corporate structure changed — nor did he ever retroactively ratify the lawsuit.

3. **THE DISTRICT COURT SHOULD ALSO CONSIDER WHETHER, EVEN IF DEFENDANTS COULD RAISE THE ISSUE, AND EVEN IF PLAINTIFF'S ATTEMPTED RETROACTIVE RATIFICATION WAS VALID, THE STATUTE OF LIMITATIONS HAD ALREADY EXPIRED ON PLAINTIFF'S CLAIMS.**

The latest date that the statute of limitations could have run on any of TRT's claims was September 7, 2016. That was over a month *before* Igra and Seidl even reached a settlement in principle of the Hawaii action (October 14, 2016) and almost four months before Igra purported to ratify the instant action on TRT's behalf (January 5, 2017). TRT makes three arguments to counter the limitations bar: (1) defendants failed to plead the limitations bar and therefore waived it; (2) filing the complaint tolls the limitations period; (3) equitable tolling applies. As to the first argument, defendants raised the limitations argument as soon as TRT's time to cure the pleading ran out — defendants could not have pled the limitations bar in their answer, for example, because the limitations period had yet to run.

As to the second argument, the complaint was defective when filed (due to the lack of capacity and authority), so no tolling applies due to the filing of the complaint. *See, e.g.*, *V&P Trading Co. v. United Charter, LLC*, 212 Cal. App. 4th 126, 150 (2012); *In re Raffin*, 284 Fed. Appx. 405, 406–07 (9th Cir. 2008). TRT would limit the California holdings to circumstances where corporations have not paid taxes and therefore their capacity to sue has been suspended for the distinct policy reason of encouraging corporations to pay taxes. While this policy concern may have been the impetus for suspending the corporation's capacity, the policy

appears to have little relevance to whether or not the limitations period should be tolled when a complaint has been filed by an entity which lacks capacity. In any event, in *In re Raffin*, the statute of limitations continued to run after the complaint had been filed when a trustee did not have the representative authority to sue a lender on behalf of a trust. Our court of appeals concluded that the decision below was "neither unreasonable nor prejudicial to the plaintiffs who could have cured the defect . . . before the statute of limitations ran." 284 F. App'x 405, 406–07 (9th Cir. 2008). The filing of the complaint here did not toll the statute of limitations.

As to the third argument, equitable tolling does not apply. Equitable tolling applies in "situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003) (internal quotations and citations omitted). California courts "have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Elkins v. Derby*, 12 Cal. 3d 410, 418 (1974)).

It is true that the California Supreme Court has applied equitable tolling in situations where a trial court has erroneously dismissed a case. There, however, the California Supreme Court applied three factors — none of which apply here. *Bollinger v. National Fire Ins. Co.*, 25 Cal. 2d 399, 403 (1944).

Igra commenced litigation against Seidl to compel him to authorize the lawsuit, and so, plaintiffs here knew early on that they had a "capacity" or "authority" problem. Indeed, this problem was further compounded when defendants challenged Igra's authority to bring suit in their second amended answer — and then, when an order issued specifically directing TRT in a step by step guide to ratify this suit, not only did defendants not prevent plaintiff from complying, but TRT sat on its hands and did not ratify until after the limitations period ran. Finally, the error isolated by the court of appeals in the prior order did not prejudice TRT in terms of the limitations period. To that end, equitable tolling would be inappropriate here.

**CONCLUSION**

Under federal law, defendants had "standing" to challenge TRT's "capacity" and "authority" to litigate this suit. Ron Igra did not have "authority" to bring suit and TRT did not have "capacity." The attempted ratification both was too little and occurred too late. As such, defendants' motion for summary judgment is **GRANTED**. Judgment will be entered separately.

**IT IS SO ORDERED.**

Dated: March 7, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE