| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | COOLEY LLP<br>MICHAEL G. RHODES (116127)<br>(rhodesmg@cooley.com) |
| ROBERT W. STONE (Bar No. 163513)<br>robertstone@quinnemanuel.com<br>BRIAN CANNON (Bar No. 193071)<br>briancannon@quinnemanuel.com<br>ANDREA PALLIOS ROBERTS (Bar No. 228128)<br>andreaproberts@quinnemanuel.com<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065-2139<br>Telephone:   (650) 801-5000<br>Facsimile:   (650) 801-5100 | MARK F. LAMBERT (197410)<br>(mlambert@cooley.com)<br>ANGELA L. DUNNING (212047)<br>(adunning@cooley.com)<br>3175 Hanover Street<br>Palo Alto, CA 94304-1130<br>Telephone:   (650) 843-5000<br>Facsimile:   (650) 849-7400 |
| | MAYER BROWN LLP<br>LAUREN R. GOLDMAN<br>lrgoldman@mayerbrown.com |
| MICHAEL D. POWELL (Bar No. 202850)<br>mikepowell@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, California 94111-4788<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700 | MICHAEL RAYFIELD<br>mrayfield@mayerbrown.com<br>1221 Avenue of the Americas<br>New York, NY 10016<br>Telephone:   (212) 506-2500<br>Facsimile    (212) 849-5589 |
| Attorneys for Plaintiff TOTAL RECALL TECHNOLOGIES | DURIE TANGRI LLP<br>Ragesh Tangri (159477)<br>rtangri@durietangri.com<br>217 Leidesdorff Street<br>San Francisco, CA 94111<br>Telephone: (415) 362-6666 |
| | Attorneys for Defendants FACEBOOK TECHNOLOGIES LLC.<br>and PALMER LUCKEY, non-party Facebook, Inc. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>PALMER LUCKEY & FACEBOOK TECHNOLOGIES, LLC (F/K/A OCULUS VR, LLC),<br><br>Defendants. | Case No. 15-cv-02281 (WHA) (SK)<br><br>**JOINT LETTER BRIEF REGARDING DEPOSITION SUBPOENA TO MARK ZUCKERBERG**<br><br>Hon. Sallie Kim<br><br>**Trial Date: <u>March 1, 2021</u>**<br>**Close of Supplemental Discovery:**<br><u>**September 30, 2020**</u> |

1  The undersigned hereby attest that counsel for plaintiff Total Recall Technologies

2  ("TRT") and counsel for defendant Facebook Technologies, LLC (f/k/a Oculus VR, LLC)

3  ("FBT") met and conferred telephonically on September 10, 2020, and have complied with

4  Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery

5  before filing this joint letter brief.  Technical issues with Microsoft Word delayed the filing of this

6  Joint Letter.

Dated: September 21, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP

COOLEY LLP

By: _/s/ Michael D. Powell_
     Michael D. Powell

By: _/s/ Mark F. Lambert_
     Mark F. Lambert

Attorneys for Plaintiff TOTAL RECALL TECHNOLOGIES

Attorneys for Defendants
PALMER LUCKEY
FACEBOOK TECHNOLOGIES, LLC, and non-party Facebook, Inc.

I. **DEFENDANTS' STATEMENT**

Plaintiff's eleventh-hour request to depose Mark Zuckerberg, the well-known CEO of non-party Facebook, Inc. ("Facebook"), parent company of Defendant Facebook Technologies LLC ("FBT"), is an obvious attempt to harass Defendants. Plaintiff's request for discovery into Defendant Palmer Luckey's departure from Oculus has come completely untethered from its original (already strained) claimed relevance—that it might relate to the dismissal of this case in March 2017. Stuck with a case built on a contract that is worthless according to the former TRT partner who signed it, Plaintiff seeks to depose Zuckerberg about political matters relating to Luckey that were the subject of testimony to Congress and media rumor. Plaintiff does not even bother to justify its request with a connection to anything relating to the case (the relevant events occurred in 2011 and 2012), and it has not exhausted less burdensome discovery. The request to depose Zuckerberg is a clear abuse of discovery and should be denied.

Zuckerberg's deposition is squarely precluded by the apex doctrine, which, anticipating the exact type of discovery misuse now at hand, prohibits the deposition of a high-level executive *unless* the executive has unique, non-repetitive, personal knowledge of the specific facts at issue *and* other, less burdensome means of obtaining that information have been exhausted without success. Neither element is present here. Plaintiff seeks to depose Zuckerberg on two topics: (1) Luckey's separation from Facebook, and (2) FBT's finances. There is no basis for Plaintiff's assertion that Zuckerberg has relevant, *unique* personal knowledge about either subject. Even if he did, Plaintiff has, to date, not exhausted *or even explored* less burdensome alternatives. Plaintiff failed to serve interrogatories, and has taken *none* of its three allotted depositions per the Amended Case Management Order (Dkt. 270) including its 30(b)(6) deposition. Plaintiff's clear goal is to leverage the discovery process for improper means and put asymmetric pressure on Defendants. TRT's effort to depose Mr. Zuckerberg should be denied.

A. **Background**

Plaintiff's case is built on a 2011 contract Luckey entered into with former TRT partner, Tom Seidl, under which Luckey developed a head mounted display prototype. Plaintiff alleges

Honorable Sallie Kim
September 21, 2020
Page Two

that Luckey used this prototype as the basis for the Oculus Rift, in breach of the agreement. Though Mr. Seidl, the author of the contract and the TRT signatory, told TRT's only other member that "the contract is bullshit" and "even your own lawyer realizes there is nothing," TRT has pursued this case. (TR00007919.) All of the relevant events occurred years before Facebook's 2014 acquisition of Oculus. The lawsuit was filed in 2015, and Luckey left Oculus in March 2017. At the CMC held on July 23, 2020, Plaintiff argued that it needed "limited" discovery into FBT's finances and the reasons why Luckey left Facebook, insinuating that his departure may have been related to this litigation. The Court granted discovery into Luckey's departure, observing it was possible Luckey "was terminated for something having to do with this lawsuit," given that "he was terminated two weeks after [Defendants] won summary judgment."

At no time before, during, or after the CMC did Plaintiff advise Judge Alsup or Defendants that it would seek to depose Zuckerberg himself on the subject of Luckey's separation. Nor did Plaintiffs ever suggest to Judge Alsup or in prior briefing on their RFPs that they needed the discovery into Luckey's separation from Facebook to pursue speculation about a *political motive*. Understandably, because this information has zero relevance to anything at issue in the litigation. Plaintiff waited until September 8, 2020 to raise the issue of Zuckerberg's deposition and did not serve its subpoena until September 14, 2020, *two weeks* before the close of discovery. The circumstances surrounding Plaintiff's request for Zuckerberg's deposition, including the timing, strongly suggest an improper, tactical, motive.

### B. Argument

Courts have long recognized that requests for depositions of high-ranking executives "create[] a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan 25, 2007). Accordingly, "parties seeking to depose a high ranking corporate officer must first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Id.* (internal citations omitted). Here, Plaintiff can show *neither* of the two

required elements necessary to compel Zuckerberg's deposition.

*First*, Plaintiff cannot demonstrate that Zuckerberg has "unique, non-repetitive, firsthand knowledge" of anything relevant to the case. *Celerity, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan 25, 2007). Plaintiff's primary assertion of need for Mr. Zuckerberg's deposition comes from a role that it suggests Zuckerberg must have had in Luckey's separation from Facebook, by virtue of his position as CEO and because he commented briefly on the topic while testifying before Congress on other matters. Nothing in Zuckerberg's statements to Congress demonstrate the requisite "unique" knowledge of the reasons for Luckey's separation. Indeed, the documents that FBT produced, including communications related to the departure, Luckey's 2017 separation agreement (including indemnity provision), his personnel file and performance reviews show no unique connection to Zuckerberg. Plaintiff also cites an article discussing an exposé on Oculus authored by a journalist which suggests that Zuckerberg and "other executives" pressured Luckey to publicly support a particular political candidate in September 2016. Setting aside the credibility and layered hearsay problems with a source like this—an article about a book, using Zuckerberg's name to sell copies—it does not even connect Zuckerberg to the separation, much less establish that Zuckerberg has *unique*, first-hand, non-repetitive knowledge of the reasons for Luckey's eventual separation from Oculus months after the events described.[1] Plaintiff's final justification for its request—that Zuckerberg has personal knowledge about the current financial condition of FBT—is facially untenable and even if true, would not justify an apex deposition. Plaintiff served a Rule 30(b)(6) deposition notice setting forth matters concerning FBT's financial condition as its single permitted topic. There is no justification for Zuckerberg's deposition on this subject.

*Second*, Plaintiff has not come close to meeting the other apex deposition prerequisite: that it has "exhausted" less burdensome sources for the information it seeks. Other than document requests, Plaintiff has not taken *any other discovery related to these issues*. Indeed, "[c]ourts

---

[1] In fact, the book described in the article dispenses entirely with TRT's suggestion that Luckey's separation has anything to do with this case. The author claims the decision to terminate Mr. Luckey communicated to him in January 2017, well before the March 9, 2017 summary judgment decision that TRT used as the asserted basis for obtaining this discovery.

regularly require interrogatories, requests for admission, and depositions of lower level employees before allowing the deposition of an apex witness." *Affinity Labs of Texas v. Apple, Inc.*, No. C09-4436 CW (JL), 2011 WL 1753982, at *6 (N.D. Cal. May 9, 2011); *Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *5 (N.D. Cal. Feb. 2, 2012) (denying apex depositions because plaintiff "has not shown that other less intrusive means of discovery, such as interrogatories, have been exhausted without success."); *Dauth v. Convenience Retailers, LLC*, No. C 13-047 MEJ, 2013 WL 4103443, at *2 (N.D. Cal. Aug. 12, 2013) (denying apex deposition until "other less intrusive discovery methods, including interrogatories or depositions of lower-ranking employees, have proven unsuccessful[.]")  Despite having three depositions (including a 30(b)(6) deposition) at its disposal, Plaintiff has taken no depositions to date and has not even proposed taking the deposition of another Facebook witness regarding Luckey's separation.  Nor did Plaintiff serve a single interrogatory or request for admission despite ample time and opportunity to do so.  Plaintiff alleges that FBT's document production has been insufficient, speculating that there *must have been* extensive email discussions by decision makers about the reasons for Luckey's termination, but that is simply not the case.  With respect to financial documents, over a month ago, FBT produced detailed financial information about FBT's revenue.  FBT will additionally comply with the Court's Order to produce documents related to its own assets and liabilities by September 30, 2020.  (Dkt. 288.)  In any event, Plaintiff, who has taken no other discovery on FBT's finances or Luckey's separation, is not entitled to an apex deposition because it is dissatisfied with Defendants' ongoing document production on these topics.  *See, e.g. Affinity Labs of Texas*, 2011 WL 1753982, at *3 (N.D. Cal. May 9, 2011) (barring apex deposition even where Apple had "no documents" because plaintiff failed to exhaust other discovery).  In contrast to Defendants, Plaintiff has not produced *a single document* since discovery re-opened.

TRT has not alleged any unique information that Zuckerberg possesses, nor has it exhausted less burdensome discovery channels, as clearly required.  An apex deposition is not permitted under these circumstances or on this record. Defendants and non-party Facebook respectfully request an Order quashing Plaintiff's subpoena to Mark Zuckerberg.

## II.     PLAINTIFFS' STATEMENT

Total Recall ("TRT") seeks a two-hour deposition of Facebook CEO Mark Zuckerberg concerning Palmer Luckey's termination and Facebook Technologies LLC's ("FBT") financial condition.[2] Defendants have now twice been ordered to provide discovery on each of these subjects. *See* Dkt 272 (Transcript of CMC Proceedings Re-Opening Discovery on Luckey's Termination and Defendants Financial Condition), Dkt. 281 (Ordering Discovery on Luckey's Termination), and Dkt. 288 (Ordering Discovery on FBT's Financial Condition). Zuckerberg has unique personal knowledge on both matters.

Concerning Luckey's termination, *The Wall Street Journal* reported that Luckey—who left Facebook in late March 2017—alleged that Facebook fired him for his political views and ultimately negotiated a settlement worth at least $100 million made up of accelerated stock awards and cash bonuses Luckey would have received through 2019.[3] Plaintiff learned August 10, 2020, that this settlement included a full indemnification by Facebook of Luckey's potential liability in this Action. Zuckerberg knows why Luckey was terminated and has twice testified before Congress on this very topic—claiming that the dismissal was not for Luckey's political beliefs but declining to state the ***true*** reasons.[4] FBT and its owner Facebook cannot hide behind the apex doctrine when Defendants have twice been ordered to provide discovery concerning Luckey's termination—yet Plaintiff is no closer to knowing the reasons for Luckey's termination than at the beginning of this supplemental discovery period.[5]

---

[2] Trying to avoid the deposition of its CEO, Facebook offers inflammatory and uncited accusations about the merits of the case and witness commentary. These assertions are misleading and entirely irrelevant to the issue before the Court. TRT respectfully submits that they should be disregarded.

[3] *See* https://www.bizjournals.com/sanjose/news/2018/11/12/palmer-luckey-forced-out-facebook-trump-report-fb.html.

[4] Defendants' contention that TRT newly focuses on political motivations for Luckey's termination is misplaced. Defendants are withholding evidence of the "true" reasons for Luckey's firing whether it be because of the $500M *Zenimax* verdict the month before his departure, the summary judgment decision in this case just two weeks before his departure, or something else completely. Zuckerberg claims to know.

[5] After being ordered to produce documents relating to Luckey's termination, FBT produced only a single email (and 20 versions of its email chain that is heavily redacted with no privilege log provided) which **does not even discuss the reason for Luckey's termination**. Nonetheless, FBT has indicated that its production on this topic is complete. This is surprising considering that the unredacted email was dated December 13, 2016, while Mr. Luckey was not terminated until March 20, 2017, leaving at least a three-month document gap leading to Mr. Luckey's termination.

Concerning FBT's financial condition, FBT has been ordered to provide this discovery because it is relevant to punitive damages, but to date, FBT has refused to produce cash flow and income statements, balance sheets, or board level financial reports that would show the level of financial support its parent Facebook provides to cover FBT's losses and sustain its growth. Absent such critical information, neither the Court nor the jury will have available the necessary information to evaluate FBT's true financial condition for purposes of determining an appropriate punitive damages award. Because Zuckerberg necessarily receives executive and board level financial reports (so-called board packages) on the FBT Virtual Reality business unit, Plaintiffs believe he is uniquely qualified to offer testimony on the magnitude of the financial support Facebook provides to FBT. FBT does not contend otherwise.[6]

### A. TRT's Deposition Of Zuckerberg Is Hardly An Eleventh-Hour Request.

In the July 20, 2020 Case Management Conference Statement, TRT noted that Zuckerberg testified before Congress "that Luckey was not fired 'because of a political view' and that it instead involved 'a specific personnel matter that seem like it would be inappropriate to speak to here." Dkt. 268. At the CMC, Judge Alsup ordered discovery into the full reasons why Luckey was terminated (Transcript, Dkt. 272), and Your Honor had to re-confirm that all reasons for his termination needed to be disclosed in Your August 31, 2020, Order (Dkt. 281). Moreover, Judge Alsup re-opened discovery for the purpose of supplementing defendants' financial condition—a subject that likewise required Your Honor's confirmation in Your September 9, 2020, Order (Dkt. 288).[7] Consequently, TRT respectfully requests that the Court overrule Zuckerberg's APEX objection and order his deposition.

### B. Zuckerberg Cannot Show He Has No Relevant Knowledge.

Zuckerberg tries to put the burden on TRT to show good cause for deposing Zuckerberg. This is not the law. "Absent extraordinary circumstances, it is very unusual for a court to prohibit

---

[6] TRT has served a 30b6 notice on FBT relating to its financial condition. However, counsel for FBT refuses to produce financial reports showing FBT's full financial condition. TRT fears that only the highest-level executives will be privy to information related to Facebook's financial support of FBT.
[7] Defendants did not request any further discovery.

the taking of a deposition." *Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (citation omitted). As a result, a "party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Even when the apex doctrine is at issue, "the burden remains on the party" seeking to avoid the deposition. *See Hunt*, 2015 WL 1518067, at *1 n.1; *see also Powertech Techs., Inc.*, 2013 WL 3884254, at *1 (explaining that "[t]he apex deposition principle is not an automatic bar that the party propounding the discovery must overcome by a showing of good cause"). A claimed lack of knowledge, by itself, or the fact that the apex witness has a busy schedule, are both insufficient bases to foreclose otherwise proper discovery. *Groupion, LLC*, 2012 WL 359699, at *2. "[T]he purpose behind the apex doctrine is to prevent harassment of a high-level corporate official *where he or she has little or no knowledge*." *Ray v. BlueHippo Funding, LLC*, 2008 WL 4830747, at *2 (N.D. Cal. Nov. 6, 2008) (emphasis added). This is not the case here.[8] TRT can prove here (below) that Zuckerberg does have relevant personal knowledge of both Luckey's termination and the financial condition of FBT. *Apple Inc.*, 282 F.R.D. at 262 ("[W]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.").

### C. TRT Has Exhausted Other Discovery.

As for the second consideration—less intrusive discovery methods, formal "exhaustion" of other discovery means is not "an absolute requirement." *Hunt v. Continental Cas. Co.*, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015). And even if it were not an absolute requirement, TRT has met this factor. TRT has consistently requested discovery concerning Luckey's termination and FBT's financial consideration and has consistently been rebuffed by Defendants—leading to two court orders, which Facebook continues to defy.

### D. Zuckerberg Has Unique Knowledge Of Luckey's Termination.

As to the subject of Luckey's termination as stated in the August 18, 2020 joint letter

---

[8] TRT not prove conclusively that the deponent has unique non-repetitive information; rather, "where a corporate officer may have *any* first-hand knowledge of relevant facts, the deposition should be allowed." *Grateful Dead Prods. v. Sagan*, 2007 WL 2155693, at *1 n.5 (N.D. Cal. 2007) (original emphasis).

brief, Zuckerberg twice testified before Congress about the reasons for Luckey's termination, and publicly denied Luckey was terminated due to his political views despite widespread reporting that this was the reason. According to the Wall Street Journal, "Internal Facebook emails suggest the matter was discussed at the highest levels of the company. In the fall of 2016 … Facebook executives including Mr. Zuckerberg pressured Mr. Luckey to publicly voice support for libertarian candidate Gary Johnson, despite Mr. Luckey's yearslong support of Mr. Trump, according to people familiar with the conversations and internal emails viewed by The Wall Street Journal." *See* https://uploadvr.com/palmer-luckey-oculus-harris-book/.

This information directly contradicts Zuckerberg's testimony before Congress. TRT is entitled to learn the truth behind Luckey's termination as the Court ordered. Thus far, nothing Defendants have produced comes close to either corroborating or disproving Luckey's claim that he was let go for his political beliefs. Because Zuckerberg has unique, personal knowledge of this topic—and FBT does not argue otherwise—the deposition of Zuckerberg is appropriate.

E. **Zuckerberg Has Unique Knowledge Of FBT's Financial Condition.**

Zuckerberg can also offer testimony concerning FBT's financial condition. Judge Alsup ordered the parties "to produce updated financial information so updated damages reports can be done." *Id*. at 6:4-5. To date, defendant FBT has produced very limited financial information showing that the Oculus business operates at a substantial loss but has withheld any documents showing the true financial condition of Oculus's successor FBT. The limited sales and cost information produced by FBT so far (which does not even identify how much money Facebook invests in Oculus/FBT each year) suggests that FBT is likely supported to the tune of billions of dollars by its parent, Facebook. This lack of transparency into the financial condition of FBT necessitates TRT's examination of Zuckerberg who, as Chairman of the Board and CEO of Facebook, necessarily receives executive and board level financial reports concerning the operating performance of FBT and Facebook's continuing investment in FBT to cover its losses and ensure continued growth of the Oculus VR platform.

For all of the foregoing reasons, FBT's motion should be denied.

Respectfully submitted,

| | |
|---|---|
| Quinn Emanuel Urquhart & Sullivan, LLP | Cooley LLP |
| /s/ *Robert W. Stone* <br> Robert W. Stone, *Counsel for Plaintiff* | /s/ *Mark F. Lambert* <br> Mark F. Lambert, *Counsel for Defendants* |

234134009