UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOTAL RECALL TECHNOLOGIES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PALMER LUCKEY and FACEBOOK TECHNOLOGIES, LLC (F/K/A OCULUS VR, LLC),<br><br>　　　　Defendants. | No. C 15-02281 WHA<br><br>**ORDER DENYING TRT'S MOTIONS IN LIMINE NUMBERS FOUR AND FIVE** |

### 1. TRT'S MOTION IN LIMINE 4.

Defendants timely served a list of issues on which they would offer expert testimony on September 18, 2020, in accordance with the amended case management order (Dkt. No. 460-5). Defendants' list of expert topics stated: "Defendants will offer expert testimony on head mounted display technology and design" (*id.* at 3).

Plaintiff also timely disclosed its list of expert issues on September 18 (Dkt. No. 460-4). Plaintiff's list of expert issues related only to damages (*ibid.*). The only expert plaintiff has offered is Alan Ratliff, on the issue of damages. Plaintiff timely disclosed Ratliff's expert report on October 16.

Defendants disclosed the Balakrishnan report on October 30, 2020, the deadline for opposition reports under the amended case management order. The parties agree that plaintiff did not offer an expert report on any of the issues addressed by the Balakrishnan report.

Plaintiff argues the Balakrishnan report was untimely because it addressed issues for which defendants bear the burden of proof and, therefore, the report should have been disclosed by the deadline set for opening reports under the amended case management order, not the deadline for opposition reports.

Plaintiff misunderstands the case management order. That order provided, as relevant (Dkt. No. 270 at ¶ 3) (emphases in original):

> The last date for designation of expert testimony and disclosure of full expert reports under FRCP 26(a)(2) as to any issue on which a party has the burden ("opening reports") shall be **OCTOBER 16**. Fresh expert reports are required, not merely updates to old reports. Within **FOURTEEN CALENDAR DAYS** of said deadline, all other parties must disclose any expert reports on the same issue ("opposition reports"). . . . If the party with the burden of proof neglects to make a timely disclosure, the other side, if it put in expert evidence on the same issue anyway, must disclose its expert report within the fourteen-day period.

The contract construction order stated (Dkt. No. 427 at 10): "The parties expected that Luckey would use the parts purchased with Seidl's $798 to make a good faith effort to build prototypes suitable for Seidl's stated purpose . . . ." (Dkt. No. 427 at 10). TRT bears the burden—not defendants—to show that Luckey did not make a good faith effort to build prototypes suitable for Seidl's stated purpose. The Balakrishnan report goes to that issue because it purports to show that the E3 Rift embodied design tradeoffs making it suitable for use with video games, but unsuitable for use with 3D 360-degree real world video (Seidl's stated purpose). Thus, notwithstanding that TRT chose not to prepare an expert report on the issues addressed by Dr. Balakrishnan, the Balakrishnan report was timely disclosed as an opposition report under the case management order because it addresses issues as to which plaintiff—not defendants—bears the burden of proof.

Next, TRT contends the Balakrishnan report should be excluded because it addresses within the ordinary experience of lay jurors. This argument fails as well. *First*, the evidence and arguments made thus far in the trial plainly belie the notion that the design and function of HMDs is within the ordinary experience and knowledge of lay jurors. TRT's first witness, Mr. Seidl, an optical engineer, testified extensively about several different design aspects and

features of HMDs, especially the one within his field of knowledge: optics. TRT is wrong that the issues addressed by the Balakrishnan report are within the ordinary knowledge of lay jurors.

*Second*, Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Balakrishnan report satisfies those standards.

TRT also contends that Dr. Balakrishnan's opinions about the MK1, MK2, and E3 Rift are impermissibly based on facts for which he does not have personal knowledge because he has not examined those devices firsthand. The MK2 is present in the courtroom and has already been discussed extensively. The E3 Rift is also present in the courtroom and presumably Mr. Luckey and Mr. Carmack, who have extensive personal knowledge about the device, will lay a foundation for it and describe its technical features. Rule of Evidence 703 provides that an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." To the extent the testimony of Luckey and Carmack does not satisfy that requirement, Dr. Balakrishnan may examine the E3 Rift in person in the courtroom thereby gaining personal knowledge of the device; he can then testify as to his opinions about the differences between the devices on the fly. Any defects in his opinions can then be brought out on cross examination.

As for the MK1, the device no longer exists, but the two individuals most familiar with it, Seidl and Luckey, will have testified about it extensively before Dr. Balakrishnan testifies. That testimony, combined with the other evidence admitted at trial, satisfies the rules of

evidence. The rest is a matter of cross examination. Therefore, TRT's motion *in limine* number four is **DENIED**.

### 2. TRT'S MOTION IN LIMINE 5.

TRT's motion *in limine* number five contends that certain portions of defendants' two expert reports, Balakrishnan report (HMD design and function) and the Hansen report (damages), should be excluded because the reports rely on documents that should have been identified in response to TRT's interrogatories. In addition, TRT contends that the Balakrishnan report improperly relied on an October 2020 interview Dr. Balakrishnan had with Luckey one month after the close of fact discovery. For the following reasons, the motion is **DENIED**.

*First*, TRT's motion does not specifically identify a *single* document relied upon by defendants' experts that TRT contends should have been identified in response to an interrogatory.

*Second*, defendants' responses to the interrogatories appear adequate; in fact, they are more specific and extended than usual in big-firm litigation. For example, TRT's interrogatory number one stated:

> Describe, in detail, with reference to supporting DOCUMENTS the timeline of development of the OCULUS RIFT or any other HEAD MOUNTED DISPLAY between the period January 1, 2010, and December 31, 2012, including dates of first conception, the building and testing of any prototypes, and the demonstration of any prototypes to others.

Luckey's December 2015 amended response provided a detailed, eleven-page chronology supported by many, many references to bates-numbered documents. This was more than adequate.

*Third*, the Hansen report did rely on documents identified in response to TRT's interrogatories. For example, paragraph 126 of the Hansen report stated (emphasis in original):

> In addition to the founders, Oculus hired experienced executives from the gaming and technology industries to lead various efforts within the company, which Mr. Ratliff's analysis ignores. **Table 3** below illustrates executives hired by Oculus prior to the Facebook acquisition in March 2014, including Mr. Luckey, Mr. Iribe, Mr. Antonov, and Mr. Mitchell.

4

Table 3 then provides a list of Oculus executives, their title at Oculus, their date of hire, and their previous position. For these points, the Hansen report cited almost entirely to public, web-based sources like LinkedIn profiles, an article from Business Insider, and the Oculus website (for the latter, see below). The table also cited two documents by bates number: LUCKEY 0323532 and LUCKEY0312031-093. The first was specifically identified in response to TRT's interrogatory number 16, which said: "List all PERSONS who worked for or on behalf of OCULUS between April 15, 2012 and the acquisition of OCULUS by FACEBOOK . . . ." (Dkt. No. 461-6 at 14, 15).

Another example is paragraph 130 of the Hansen report, which cites to attachment 6 of the report for a discussion of Oculus' research and development budget. Attachment 6 of the Hansen report is a lengthy profit and loss table for Oculus from July 2012 through 2020. For the period July 2012 through 2013, the Hansen report cited a document bates-numbered "LUCKEY0353646" (Hansen Rep., attach. 6, n.1). This document was specifically identified in response to TRT's interrogatory number 15, which stated: "Describe, in detail, with reference to supporting DOCUMENTS where applicable, the nature and extent of all R&D INVESTMENTS in the OCULUS PRODUCTS from July 1, 2012 through to the acquisition of OCULUS by FACEBOOK" (Dkt. No. 461-6 at 13, 14).

Why isn't this good enough? TRT has not explained. Again, TRT's motion does not specifically identify a single document it contends defendants' experts relied on, but which defendants did not identify in response to TRT's interrogatories.

*Fourth*, TRT contends that Dr. Balakrishnan should not be allowed to give opinions based on his October 2020 interview with Luckey because that interview occurred after the close of fact discovery. Dr. Balakrishnan interviewed Luckey on October 29, 2020. The Balakrishnan report explicitly cited (where relevant): "Interview with Palmer Luckey, October 29th, 2020" (Balakrishnan Rep. ¶ 34, n. 28). Defendants disclosed the Balakrishnan report to TRT on October 30, 2020, one day after the interview. *One*, it is hypocritical of TRT to criticize defendants for this practice when its own expert, Alan Ratliff, relied on an interview with Igra but did not even state the date of the interview: "Interview with Ron Igra" (Ratliff

Rep. ¶ 18, n. 24, ¶ 34, n. 37).  *Two*, TRT questioned Dr. Balakrishnan about his interview with Luckey during its deposition of him.  *Three*, any prejudice shall be cured by the procedure stated by the Court at the pretrial conference:  Luckey must testify before Balakrishnan and lay the foundation for everything in the interview.  TRT may then cross-examine Luckey about the interview.  Dr. Balakrishnan may then testify as to the opinions stated in his report based upon the interview.

\*          \*          \*

The Balakrishnan report relied on documents found on the Oculus website (controlled by defendants) for its discussion of the design and development of the DK1 ("designer kit 1") which was, apparently, Oculus' first commercialized HMD (*see, e.g.*, Balakrishnan Rep. ¶ 89, nn. 79–82).  The Balakrishnan report attempted to rebut the assertion of Ratliff that the E3 Rift prototype could have been easily commercialized without further investment by showing the differences between the E3 Rift and DK1.

At the pretrial conference, for the first time, plaintiff's counsel accused defendants of "sandbagg[ing]" plaintiff by withholding documents that should have been produced in response to reasonable document requests but then uploading those documents to the Oculus website so that Balakrishnan could rely on them as public information notwithstanding that defendants did not produce them in discovery (Pretrial Conf. Tr. 68:21).

First, contrary to counsel's representations at the pretrial conference, plaintiff did not raise this alleged scheme in its motions *in limine*, instead raising it for the first time at the pretrial conference.  This misled the judge.

Nonetheless, troubled by the allegations of this scheme by defendants to evade their discovery obligations and abuse the process, and being unaware that the motion didn't raise the issue, the Court ordered plaintiff's counsel to investigate when the documents relied upon by Balakrishnan and Hansen were uploaded to the Oculus website.  To that end, the Court allowed plaintiff's counsel to take two depositions:  (1) a person knowledgeable at Keystone Strategies,

an outside consultant of defendants; and (2) a person knowledgeable at Facebook Technologies (successor to Oculus).

TRT's motion *in limine* number five is **DENIED**. If the depositions turn up any worthwhile evidence, that can be used at trial, subject to the rules of evidence.

**IT IS SO ORDERED.**

Dated: October 6, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE